IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

```
ANTELMA DOMINGUEZ-PEREZ, et. al.,  )
     Plaintiffs,                    )
                                    )
     v.                             )   CIVIL ACTION NO. B-96-116
                                    )
JANET RENO, et. al.,                )
     Defendants.                    )
```

United States District Court
Southern District of Texas
FILED

NOV 7 1996

Michael N. Milby
Clerk of Court

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FOR MOOTNESS AND LACK OF STANDING**

Come Plaintiffs, by and through the undersigned, and file the instant opposition to Defendants' Motion to Dismiss for Mootness and for Lack of Standing, (hereinafter cited as (DIS:___)).

I. BACKGROUND

The instant suit was filed as a class action. At the initial hearing, it was noted that, as a result of the instant action, INS had (finally) scheduled interviews on the N-600 applications of the named Plaintiffs. It was also noted that it was likely that the applications would be granted, and Plaintiffs would seek leave to file an amended Complaint adding new Plaintiffs, so as to avoid any problem of mootness, at least until such time as the issue of class certification had been resolved. At that time, the Court granted oral leave for Plaintiffs to file such an amended Complaint.

Pursuant to this authorization, Plaintiffs are filing their First Amended Petition and Complaint, hereinafter cited as (PET1:___), dropping two of the original Plaintiffs, who have received their Certificates of Citizenship, and social security cards, and adding several new ones. In keeping with the spirit of the Court's ruling at that hearing, Plaintiffs will address Defendants' motion in the context of their First Amended Petition and Complaint.

## II. DEFENDANTS' MOTION TO DISMISS

Defendants' Motion to Dismiss is premised on two, equally flawed, bases. First, is the assumption that, simply because they have (finally) granted Certificates of Citizenship to three of the four named Plaintiffs, and the fourth, Mario Salinas-Grimaldo, was unable to appear for his interview, the action is no longer viable.

With respect to the three named Plaintiffs to whom Certificates of Citizenship have been issued, Defendants claim that the case is moot. With respect to Mr. Salinas, Defendants appear to assume that the instant case is about whether or not he is a citizen, rather than whether he should be granted employment authorization, and a replacement social security card, while that determination is being made. [1] They also seem to claim that the determination of his citizenship has been hindered by the fact that he could not appear at his interview. This is simply not true. There are no factual or legal issues which remain to be resolved before a determination can be made that he acquired U.S. citizenship at birth. He needs only to sign his photos, swear to his application, and take the oath of citizenship. As was suggested by his counsel, these tasks could easily be accomplished through counsel, or by one of the INS Agents who regularly visit his place of detention.

The second basis of Defendants' motion is that Mr. Salinas lacks standing, because he has allegedly suffered no "injury in fact." This is not true, for two reasons. As was noted at the initial hearing, Mr. Salinas *did* attempt to obtain employment prior to his detention, and was unable to do so, because he did not have the

---

[1] Defendants have apparently not grasped the essence of the Complaint, as they appear to consider that the problem is based in the supposed "denial" of the Certificates of Citizenship. *See,* (DIS:7) ("Salinas has not been denied a certificate of citizenship, as alleged in the Complaint. Complaint Para. 24"). Mr. Salinas made no such allegation. Rather, at Para. 24, he noted that as of filing the Complaint, no interview had been scheduled on his N-600.

documents required by 8 USC Section 1324a. Moreover, it is a futile act to apply for employment when one lacks the documents which must be shown in order to be lawfully hired.

### III. ISSUES PRESENTED

A. PLAINTIFFS HAVE STANDING TO BRING THE INSTANT ACTION, WHICH IS NOT RENDERED MOOT BY THE FACT THAT CERTIFICATES OF CITIZENSHIP HAVE BEEN GRANTED TO THREE OF THE FOUR INITIAL PLAINTIFFS.

B. DEFENDANTS SHOULD NOT BE ALLOWED TO PLAY PROCEDURAL GAMES, IN LIEU OF ADDRESSING THE ISSUES RAISED HEREIN.

### IV. ARGUMENT

A. PLAINTIFFS HAVE STANDING TO BRING THE INSTANT ACTION, WHICH IS NOT RENDERED MOOT BY THE FACT THAT CERTIFICATES OF CITIZENSHIP HAVE BEEN GRANTED TO THREE OF THE FOUR INITIAL PLAINTIFFS.

Regardless of the fact that three of the four initial named Plaintiffs have received their Certificates of Citizenship, the instant action is not moot. A number of new Plaintiffs have been added, [2] and Mr. Salinas' case remains.

The argument that Mr. Salinas lacks standing is groundless. Under the current administrative interpretation of 8 USC Sec. 1324a, a job applicant is *required* to present documents proving identity and employment eligibility, just as an employer is required to verify having seen such documents, *U.S. v. Vargas-Morales*, 5 OCAHO 732, at 5-6 (1996); *U.S. v. Chavez-Ramirez*, 5 OCAHO 774, at 6 (1995).

---

[2] The new Plaintiffs would be very pleased if, as a result of their participation herein, INS also expedited their cases, and granted their Certificates of Citizenship. This is what they have sought for years. If this were to occur before the issue of class certification has been resolved, there are many more people who are similarly situated, who could be added as named Plaintiffs, and who would be more than happy to be next in line for such treatment.

3



To apply for employment with a reputable employer, without such documents, would be a futile act, which is not required before seeking equitable relief. *See, Samaad v. City of Dallas,* 940 F.2d 925, 934 (5th Cir. 1991) (to demonstrate that the case is ripe, where complainant did not avail himself of available remedies, he must show that seeking such remedies would have been a futile act).

Moreover, Plaintiffs *did* allege injury. In their Original Complaint, at Paragraph 15, it was formulated as follows:

> As a result of defendants' policies and practices, plaintiffs have been prevented from working in the United States, having their earnings reported, and obtaining other benefits under the Social Security Act. They are also unable to obtain unemployment insurance, and cannot participate in a wide variety of state and federal programs.

Nor is this simply a question of "pleading" a non-existent injury. As was discussed at the initial hearing, Mr. Salinas *did* seek employment during the period that his N-600 was pending, and before he was incarcerated. He was denied available jobs on more than one occasion, because he did not have the documents required by 8 USC Sec. 1324a to demonstrate his eligibility to be employed, to wit, a social security card, and/or employment authorization document from INS. To avoid any conceivable argument that the original allegations of injury were not sufficiently explicit, they have been made more so in the First Amended Petition. *See,* (PET1:30,37,41,42,46).

Defendants also mischaracterize Mr. Salinas' attempt to convince the Social Security Office of his U.S. citizenship, (DIS:12) ("Remarkably, Salinas decided to submit his brother's certificate of citizenship to establish his citizenship."). Mr. Salinas presented a copy of his N-600 application, with supporting documents. The Certificate of Citizenship of his brother was

958

simply one of the supporting documents, demonstrating that were no outstanding legal or factual issues. If his older brother acquired U.S. citizenship through their U.S. citizen father, so did he.

Defendants cite *Snake River Farmers' Association v. DOL*, 9 F.3d 1993), in support of their argument that Mr. Salinas has not suffered any real injury, and therefore has no standing, (DIS:6-8,10-12). This argument is premised on the assumption that Mr. Salinas never attempted to obtain employment before he was detained. As previously discussed, this premise is false. He did make such attempts, and was repeatedly turned down, because he lacked proof of his eligibility to be employed.

Once he is released from detention, (and assuming that INS continues to refuse to cooperate in obtaining his signature, and administering the oath of allegiance while he is detained), Mr. Salinas will face the same difficulty. There is no assurance that his N-600 will be promptly adjudicated, and given the current stance of Defendants, little likelihood that they will have voluntarily solved the problems complained of herein. His difficulties present a classic case of a problem which is capable of repetition, but evading review. *See, Baccus v. Parrish*, 45 F.3d 958, 962 (5th Cir. 1995).

Defendants also cite *Fernandez v. Brock*, 840 F.2d 622, 628 (9th Cir. 1988), supposedly as authority for the proposition that a "claimant may only challenge a failure to promulgate regulations where there is a specific statutory requirement to do so," (DIS:8). Said case says no such thing. *Fernandez* dealt with rights *created* by statute, which would not necessarily have been resolved if the requested regulations had been adopted, *Id.*. Here, the *problem* is created by the statute, 8 USC 1324a. The *right* of a United States citizen to engage in lawful employment is grounded in the Constitution. *See, Phillips v. Vandygriff*, 711 F.2d 1217, 1222 (5th Cir. 1983) (quoting *Truax v. Raich*, 239 U.S. 33, 41 (1915))

5

959

(the right to work for a living "is of the very essence of the personal freedom and opportunity that it was the purpose of the [fourteenth] Amendment to secure."). *See also Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) ("Without doubt, ['liberty' in the fourteenth amendment] denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life ....").

Moreover, the problem could be solved without promulgating any new regulations. Indeed, an attorney for Defendants had indicated, prior to the commencement of the instant action, that such a solution was forthcoming. The Attorney General possesses a reserve power to grant employment authorization, independent of the categories specified in the regulations, to wit, 8 CFR Section 274a.12, which power may be exercised "under such conditions, and for such reasons, as the Attorney General may deem appropriate." 8 USC Section 1324a(h)(3).

If the Attorney General seeks to rectify the problem by promulgating a regulation, or in some other manner, is wholly within her discretion. Plaintiffs are not insisting on any particular *means* by which it must be solved. Rather, they insist only that a solution be devised.

B.  DEFENDANTS SHOULD NOT BE ALLOWED TO PLAY PROCEDURAL GAMES, IN LIEU OF ADDRESSING THE ISSUES RAISED HEREIN.

Defendants have raised several other, clearly frivolous, defenses, insinuating, for example, that Mr. Salinas' problem could have been solved if he had sought to obtain proof of his citizenship by seeking a U.S. passport, or "consular report of birth," instead of filing an N-600, (DIS:13).

Defendants have failed to explain how he could, so many years after the fact, obtain a "consular report of birth." Nor is there any

6



reason to believe, much less any showing by Defendants, that an application for a U.S. passport would have been processed more expeditiously than the N-600, or that he could have obtained provisional employment authorization, or a social security card, while that application was pending. True, he could have sought a passport, instead of filing an N-600. He could also have jumped off a bridge. Neither of these acts would have solved his problem, so the "availability" of such procedures is irrelevant.

Defendants also assert that Mr. Salinas has not proven that the reason he was not able to obtain employment was the lack of employment authorization and a social security card, (DIS:12) ("the employers may simply not be hiring; the plaintiffs may be unqualified for the types of work they have been seeking; or more importantly, the plaintiffs may have never attempted to obtain employment whatsoever."). Here, Respondents seem to be urging two equally absurd propositions: first, that Plaintiffs must *prove* their case in order to defeat a motion to dismiss, even at this stage of the proceedings, and second, that if Plaintiffs had "really" wanted to, they could have obtained employment, even without having any of the documents which they must present to a potential employer before they could be lawfully hired. Certainly Defendants are not suggesting that Plaintiffs should have utilized false documents, but they offer no viable alternative.

From the entire motion, it is clear that Defendants have opted to play procedural games, choosing to delay the action, rather than attempt to resolve the problem. The Court should not tolerate the continued infringement upon the rights of the Plaintiffs, and the class they seek to represent.

It is therefore urged that the Defendants' Motion to Dismiss be denied, and that a hearing be scheduled on Plaintiffs' Motion for Class Certification, at the earliest possible date.

961

Respectfully Submitted,

_____
LISA BRODYAGA

402 E. Harrison, 2nd floor
Harlingen, TX  78550
(210) 421-3226

MARY KENNEY
LYNN COYLE
Lawyers' Committee for Civil Rights
Under Law of Texas
Immigrant and Refugee Rights Project
2311 N. Flores
San Antonio, TX  78212
(210) 736-1503

Thelma O. Garcia
301 E. Madison
Harlingen, Texas 78550
(210) 425-3701

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was mailed, first class postage prepaid to Ernesto Molina, Esq., OIL, Box 878, Ben Franklin Station, Washington, D.C. 20044, this 6th day of November, 1996.


_____

962