IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 7 1997

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ANTELMA DOMINGUEZ-PEREZ, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | No. B-96-116 ) ) |
| JANET RENO, et al., | ) ) |
| Defendants. | ) ) ) |

**POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS FOR LACK OF JURISDICTION AND FOR FAILURE
TO STATE A CLAIM**

Defendants Janet Reno, Doris Meissner, E. M. Trominski, and Shirley S. Chater ("Defendants") hereby move the Court to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As a prefatory note, it is important to clarify plaintiffs' status at the outset of the argument. The plaintiffs claim to be citizens.[1] Plaintiffs' First Amended Petition for Writ of Habeas Corpus, and Complaint for Declaratory and Injunctive Relief ¶¶ 28, 32, 36, 29, 41, 42 (hereinafter "Amended Complaint"). Yet each of them also claims to have been born abroad. Id. Whether they actually are citizens is the issue to be determined by the Immigration and Naturalization Service in adjudicating their applications for certificates of

---

[1] Plaintiffs also seek to represent a class. Defendants have filed an Opposition to Class Certification, which is still pending. Any references to the purported class are purely for the sake of argument.

746

2

citizenship.  Section 342 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1452(a); 8 C.F.R. § 341.  The INS has had the opportunity to adjudicate six of the nine applications filed by plaintiffs, resulting in an issuance of certificates of citizenship to one plaintiff and a denial of the applications to five plaintiffs.  Since the INS has not had the opportunity to adjudicate the remaining applications, whether the remaining plaintiffs are, in fact, citizens is not yet properly before the court.  Section 360 of the INA, 8 U.S.C. § 1503.  As persons born abroad, the plaintiffs with pending applications are presumed to be aliens until they prove to the INS that they are citizens. Hauenstein v. Lynham, 100 U.S. 483 (1879); Corona-Palomera v. INS, 661 F.2d 814 (9th Cir. 1981).  The court must decide this motion on the basis of that presumption.

### BACKGROUND

Plaintiffs are nine people who claim to be United States citizens who were born abroad to a parent who was a citizen of the United States.  Plaintiffs' First Amended Petition for Writ of Habeas Corpus, and Complaint for Declaratory and Injunctive Relief ¶¶ 4-9 (hereinafter "Amended Complaint").  Plaintiffs claim to have filed applications for certificates of citizenship before the Immigration and Naturalization Service ("INS"). Amended Complaint ¶¶ 28, 32, 36, 39, 41, 42.  Two of the plaintiffs also claim that they have applied for social security cards with the Social Security Administration ("SSA") and were not issued cards.  Amended Complaint ¶¶ 29, 33.

747

3

Plaintiff Antelma Dominguez-Perez ("Dominguez") claims to have been born in Mexico. Amended Complaint ¶ 32. She alleges that her mother was a citizen of the United States at the time of Dominguez' birth. Amended Complaint ¶ 32. The complaint indicates that Dominguez filed an N-600 application before the INS on July 21, 1994. Amended Complaint ¶ 32. She further asserts that she filed an application for a social security card, using her N-600 application as proof of citizenship. Amended Complaint ¶ 33. She indicates that she was not issued a social security card. Amended Complaint ¶ 33. After a hearing on October 10, 1996, she was issued a certificate of citizenship. 35.

Plaintiff Mario Guadalupe Salinas Grimaldo ("Salinas") alleges he was born in Mexico. Amended Complaint ¶ 28. Salinas indicates that his father was a citizen at the time of his birth. Amended Complaint ¶ 28. He alleges that he filed an N-600 application for a certificate of citizenship on June 22, 1995. Amended Complaint ¶ 28. He states that at one point he held a social security card but has since lost it. Amended Complaint ¶ 29. He asserts that he filed an application for a new social security card, using his brother's certificate of citizenship to establish proof of his own citizenship. Amended Complaint ¶ 29. He indicates that he was not issued a social security card. Amended Complaint ¶ 29. Presently, Salinas is incarcerated after being convicted of possession of marijuana in an amount of more than four (4) ounces, but less than five (5) pounds, for which he

748

4

was sentenced to five years imprisonment.  He did not appear at a hearing on his N-600 application scheduled for October 10, 1996.

Plaintiffs Cecelia ("Cecelia"), Jose Guadalupe ("Jose"), Abel ("Abel"), Francisca ("Francisca"), and Luis Alberto ("Luis") de la Cruz-Perez ("the de la Cruz siblings") are brothers and sister who purport to have been born in Mexico.  Amended Complaint ¶ 41.  They allege that their mother was born in Brownsville, Texas, and is a U.S. citizen.  Amended Complaint ¶ 41.  They claim their applications have been pending since 1992.

Plaintiff Maria del Rosario Gutierrez de Limas ("Limas") claims to have been born in Mexico.  Amended Complaint ¶ 42.  She alleges that her mother was a U.S. citizen born in Guadalupe County, Texas.  Amended Complaint ¶ 42.  She admits that her first N-600 application was denied on September 1, 1993.  Amended Complaint ¶ 42.  She claims to have filed an appeal on September 15, 1993, and alleges that the application is still pending. Amended Complaint ¶ 42.

Plaintiff Graciela Alvarez de Zuniga ("Zuniga") alleges that she was born in Mexico.  Amended Complaint ¶ 36.  She avers that her mother was a U.S. citizen, born in Coachella, California. Amended Complaint ¶ 36.  She claims that she first applied for a certificate of citizenship in 1978 and that her application was denied.  Amended Complaint ¶ 36.  She alleges that she filed a new application in 1993.  Amended Complaint ¶ 36.  She admits that she could have obtained work authorization but has refused to do so.  Amended Complaint ¶ 36.

5

Plaintiff Diana Maria Gonzalez de Santos ("Santos") does not allege that she was born abroad. Amended Complaint ¶ 39. She does not allege that at least one of her parents was a U.S. citizen. Amended Complaint ¶ 39.

Plaintiffs purport to represent a class of:

> all people who have filed or will file N-600 applications with the I.N.S. district office in Harlingen, whose claims to U.S. citizenship are being adjudicated, have been or will be unable to obtain social security cards because of lack of any of the specified documents evidencing their U.S. citizenship, which are acceptable to the Social Security office, and lack of any document from INS evidencing their right to be employed in the United States as prima facie U.S. citizens [sic].

Amended Complaint ¶ 14. Plaintiffs seek relief in the form of a declaratory judgment that the practice of the INS and SSA violates the Social Security Act, the Immigration and Nationality Act, the Administrative Procedure Act, and the Fifth Amendment of the United States Constitution; an injunction stopping the INS and Social security practice; an order restraining Defendants from not issuing employment authorization; an order restraining Defendant Chater from not issuing social security cards to all applicants with pending N-600 applications; an order restraining Defendant Chater from not conducting administrative review of denials of social security cards; an order requiring Defendants to notify all members of the class of relief granted in this action; and an award of costs, attorney fees, and such other relief as deemed proper. Amended Complaint at 19-20.

The Court should dismiss the instant action. The claims of six individual plaintiffs are moot. The plaintiffs, both as

6

individuals and as a purported class, lack standing to bring a
claim because they cannot demonstrate that they have suffered a
cognizable injury, that they can meet the requisite causation
element of standing, or that the Court can redress their
injuries.  Moreover, the claims of the plaintiffs, as individuals
and as a purported class, are not ripe.  Nor have the plaintiffs,
as individuals or as a purported class, exhausted their available
remedies.  Furthermore, the individual plaintiffs and the class
they purport to represent fail to state claims for which relief
can be granted, for there is no violation of the INA, the Social
Security Act, the Administrative Procedures Act ("APA"), or the
Fifth Amendment.

### ARGUMENT

I.  **PLAINTIFFS DOMINGUEZ AND THE DE LA CRUZ SIBLINGS SHOULD BE
DISMISSED AS PLAINTIFFS BECAUSE THEIR CLAIMS ARE MOOT.**

The action brought by plaintiffs Dominguez, and the de la
Cruz Siblings should be dismissed as moot.  Under Article III of
the Constitution, federal courts may only adjudicate "actual,
ongoing cases or controversies."  Deakins v.Monaghan, 484 U.S.
193, 199 (1988).  A litigant must have suffered, or be threatened
with, an actual injury traceable to the defendants and likely to
be redressed by a favorable judicial decision.  Lewis v.
Continental Bank, 494 U.S. 472, 477 (1990).  The courts may not
"decide questions that cannot affect the rights of litigants in
the case before them."  Lewis v. Continental Bank, 494 U.S. at
477.  A federal court may only decide "real and substantial
controvers[ies] admitting of specific relief through a decree of

751

a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." _Id_. While a suit may have been considered alive at the inception of the suit, "[t]he parties must continue to have 'personal stake in the outcome' of the lawsuit." _Id_. at 478, _citing_ Los Angeles v. Lyons, 461 U.S. 95, 101 (1990).

In the instant case, six of the plaintiffs -- Dominguez and the de la Cruz siblings -- have had their N-600 applications adjudicated. Plaintiff Dominguez was granted her certificate of citizenship and has obtained a social security card. Now having the right to seek employment, the court would afford her no additional relief if it were to order the INS to grant temporary work authorization, and the case should be considered "classically moot." Iron Arrow Honor Society v. Heckler, 464 U.S. 67, 70 (1983). Nor may she rely on the fifth cause of action, Amended Complaint ¶ 53, for as is discussed _infra_ at 13, she lacks standing to bring the claim. Accordingly, her claim should be dismissed.

The de la Cruz siblings should also be dismissed, as their claims are moot. The applications filed by the de la Cruz siblings have been denied. According to INS regulations, when an application for certain immigration benefits is denied, any temporary work authorization accompanying that application is automatically terminated. 8 C.F.R. § 274a.13(d). Thus, their claims are moot, as they have become ineligible for the

752

8

underlying form of relief, and they should be dismissed as plaintiffs. Lewis, 494 U.S. at 477.

## II.  THE ACTION SHOULD BE DISMISSED FOR LACK OF STANDING.

Plaintiffs in the instant case have failed to establish that they have standing. The Supreme Court has determined that there are three major components of standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). First, "the plaintiff must have suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" Id. at 560 (citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" Id. at 560 (citations omitted) (ellipsis in original). Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 560-61 (citations omitted). "A defendant's violation of a statutory duty is not enough -- the judiciary lacks power to correct the executive branch on the petition of one who is without an injury in fact that is fairly traceable to the executive action and likely to be redressed by the requested relief." Snake River Farmers' Association v. Department of Labor, 9 F.3d 792, 795 (9th Cir. 1993). The foregoing are not mere pleading requirements; rather, they are "an indispensable part of the plaintiff's case.

753

9

Lujan, 504 U.S. at 561.  The party invoking federal jurisdiction
bears the burden of establishing each of the foregoing elements,
Id. at 561;  Plaintiffs fail to show establish even one.

### 1. Plaintiffs, individually and as a class, lack standing to bring the causes of action alleged in their complaint because they have suffered no injury in fact.

In meeting the constitutional minimum for standing, a
plaintiff must have suffered an injury in fact.  Lujan, 504 U.S.
at 560.  The plaintiffs are unable to establish the invasion of a
legally protected interest which is "concrete and particularized"
and "actual or imminent," as opposed to "conjectural" or
"hypothetical."  Id. at 560.  "It is the role of courts to
provide relief to claimants, in individual or class actions, who
have suffered, or will imminently suffer, actual harm; it is not
the role of courts, but that of the political branches, to shape
the institutions of government in such fashion as to comply with
the laws and the Constitution."  Lewis v. Casey, 116 S.Ct. 2174,
2179 (1996).  Simple allegations of intentions to seek employment
"some day" are insufficient to constitute an actual or imminent
injury.  Snake River, 9 F.3d at 796.  The plaintiffs do not
demonstrate any injury to themselves.  They claim to be injured
because they are unable to obtain employment stemming from the
alleged failure of the INS to promulgate regulations granting
them temporary work authorization and because of the SSA's
alleged failure to accept a completed N-600 application as proof
of work authorization sufficient to obtain a social security
number.  Additionally, Plaintiff Dominguez claims to have an

754

10

application for adjustment of status for her children which is jeopardized.  Amended Complaint ¶ 35.  In actuality, none of these plaintiffs or the class they purport to represent has sustained legally cognizable injuries.

> **a.  There is no injury to plaintiffs, individually or as a class, because the defendants are not required by statute to provide temporary work authorization.**

Plaintiffs allege that they have not been issued temporary work authorizations.  Amended Complaint ¶¶ 28, 32, 36, 39, 41, 42.  The plaintiffs, individually and as a purported class, have suffered no injury in fact because the allegation that they are harmed by the fact that INS has not promulgated regulations to give them temporary work authorization is erroneous.  A claimant may only challenge a failure to promulgate regulations where there is a specific statutory requirement to do so.  Fernandez v. Brock, 840 F.2d 622, 628 (9th Cir. 1988).  Here, the plaintiffs point to no such statutory requirement -- nor could they, for no such requirement exists.

The only statutory requirement imposed on the INS relevant to this litigation is that it issue certificates of citizenship to those people who have been found "to the satisfaction of the Attorney General" to be citizens.  Section 341(a) if the INA, 8 U.S.C. § 1452(a).  The Attorney General has defined the acceptable forms of establishing citizenship.  8 C.F.R. § 341.1, et seq.  The plaintiffs -- with the exception of Dominguez -- have not been found to be citizens, nor have their applications been denied, with the exception of the de la Cruz siblings.

11

Amended Complaint ¶¶ 28, 32, 26, 29, 41, 42.  The statute makes
no requirement that the Attorney General provide work
authorization to applicants.  8 U.S.C. § 1452(a).

The only statutory duty imposed on the SSA is to issue
social security numbers and cards to those who produce adequate
proof of age, U.S. citizenship or authorized alien status, and
true identity, as determined by regulations.  42 U.S.C.
§ 405(c)(2)(ii).  The SSA has published regulations delineating
acceptable forms of proof of citizenship.  20 C.F.R. § 422.107.
The plaintiffs have offered no such documentation.  Complaint ¶¶
24, 26, 28.

Neither the statutory duties of the INS nor those of the SSA
imposes the affirmative obligation on the defendants to issue
temporary work authorizations.  Absent such statutory duties, the
plaintiffs lack standing to challenge the failure to promulgate
regulations.  <u>Fernandez</u>, 840 F.2d at 628.

Even if the statutes did impose an affirmative obligation,
the mere failure to comply with a statutory duty is not enough to
constitute an injury in fact; there must be a concrete injury.
<u>Lujan</u>, 504 U.S. at 560.  The plaintiffs must show that they had
obtained employment and needed work authorization or that they
had an imminent expectation of a job.  <u>Snake River</u>, 9 F.3d at
797.  They have not.  Accordingly, plaintiffs have suffered no
injury.  <u>Lujan</u>, 504 U.S. at 560.

///

///



12

**b.    There has been no injury to plaintiffs because plaintiffs have expressed only "some day intentions" of having a job.**

Plaintiffs allege that they have been unable to obtain social security cards.  Amended Complaint ¶¶ 29, 40, 41, 42. Only Salinas has not been issued a social security card after filing for one.  Amended Complaint ¶ 29.  Moreover, Dominguez has obtained a social security card.  Amended Complaint 35.  It is apparent that the remaining plaintiffs and the purported class have not filed for social security cards.  Thus, they have suffered no injury in fact, and they lack standing to bring their challenges under the INA, the Social Security Act, the Equal Protection Clause, the fundamental rights analysis, and the Due Process claim regarding the availability of administrative appeals from a nonissuance of a social security card.  <u>Lujan</u>, 504 U.S. at 560.

Plaintiffs argue that they have made good faith efforts to obtain employment, only to be denied for lack of work authorization.  Amended Complaint ¶¶ 30, 33, 37, 40, 41.  This, however, is unlikely.  "Pre-employment questioning concerning the applicant's national origin, race or citienship exposese the employer to charges of discrimination if he does not hire that applicant."  <u>Collins Foods v. I.N.S.</u>, 948 F.2d 549, 552 (1991). If plaintiffs were seeking employment and were denied because they did not produce evidence of work authorization before being hired, they would have a cause of action against the employer based on invidious discrimination.  <u>Collins Foods</u>, 948 F.2d at

757

552.  Until plaintiffs obtain a job, only to lose it for failure
to produce evidence of work authorization, they have sustained no
injury in fact.  Thus, they lack an injury in fact and standing.
Lujan, 504 U.S. at 560.

     As for Salinas, even taking into consideration the
nonissuance of social security cards, he cannot be said to have
suffered an injury in fact.  His application was denied because
he could not provide the required documents evincing work
authorization.  Amended Complaint ¶ 29.  He must show that he has
been unable to retain jobs for lack of work authorization, that
he had the imminent expectation of employment, or that he was
improperly denied a social security card.  Snake River, 9 F.3d at
796-97.  He has not alleged that he has been unable to retain
jobs because of his lack of a social security card.  Nor has he
even alleged that he would have had had employment but for his
lack of work authorization.  He certainly does not allege that
the Social Security Administration did not follow its regulations
in not issuing him a duplicate social security card.  Without
such considerations, his injury and that of his class is merely
speculative and falls into the "some day intentions" which Lujan
proscribes.  Lujan, 504 U.S. at 564; Snake River, 9 F.3d at 796.
"Such 'some day' intentions -- without any description of
concrete plans, or indeed even any specification of when some day
will be -- do not support a finding of the 'actual or imminent'
injury that our cases require."  Lujan, 504 U.S. at 564.  This
requirement is no less appropriate when the allegation is one for

14

a wish to have employment "some day."  <u>Snake River</u>, 9 F.3d at

796.  Moreover, he has certainly not been harmed by the

unavailability of administrative appeal over the denial, for he

is free to file his application anew in a corrected form.

Additionally, he has not shown that the SSA made any error

warranting an administrative appeal, and it is manifestly clear

that he has not provided the documents stated to be adequate to

merit a social security card.  Because he has not shown that he

would have employment or that he has been denied employment,

Salinas and the purported class have not shown injury in fact,

and lack standing.  <u>Id</u>.

     **c.   Dominguez lacks standing to bring the claim
regarding the pending application for adjustment
of status for her children.**

Dominguez alleges that she has an application for the

adjustment of status of two of her children pending and that the

application is in danger of being denied.  Amended Complaint ¶

35.  Dominguez' claim that she is at risk of having the

adjustment of status applictions she has filed on behalf of her

children does not qualify as an injury in fact.  <u>Lujan</u>, 504 U.S.

at 560.  The INS has found her to be a U.S. citizen, and has

issued her a certificate of citizenship.  So long as she can

prove the requisite family relationship, the INS would have no

basis for denying the visa petitions she filed for her children.

Section 204(b), 8 U.S.C. § 1154(b).  Thus, any "risk" that her

children may be found ineligible for adjustment of status would

arise not from any difficulty she may have had in proving her



15

claim to citizenship, but may stem her inability to prove parentage or from the ineligibility of her children for adjustment of status on substantive grounds. Cf. Sections 212(a) and 245, 8 U.S.C. §§ 1182(a) & 1255. What is clear is that, to date, the INS has not denied her children's adjustment applications. At a minimum, she must have applied for the benefit and been denied. There having been no denial, her claimed harm is "conjectural" or "hypothetical." Lujan, 504 U.S. at 560. She has no injury in fact, and her claim should be dismissed. Lujan, 504 U.S. at 560.[2]

   **2.   Plaintiffs lack standing because they fail to show the requisite causality element.**

   Even assuming they are able to show some injury in fact, the plaintiffs cannot fulfill the second requirement of standing. The second requirement for standing is that a plaintiff must show "a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant . . . .'" Lujan, 504 U.S. at 560, citing Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 41-42 (1976). None of the alleged injuries is "fairly traceable" to the conduct of the defendants. Lujan, 504 U.S. at 560.

---

   [2]  As a final note, it bears mentioning that if Dominguez' children are fourteen or oler, she is not entitled to file their adjustment of status applictions on their behalf. 8 C.F.R. § 103.2(a)(2). If that were the case, their age would provide an additional basis for concluding that the denial of their adjustment applictions would not be a legal injury to Dominguez.

16

a.  **Plaintiff Salinas and the members of the purported class seeking replacement documents cannot satisfy the causation requirement.**

Plaintiff Salinas alleges that he once held a social security card, but has since lost it.  Amended Complaint ¶ 29. He now seeks a replacement document.  Amended Complaint ¶ 29. Plaintiff Salinas and at least those class members seeking replacement documents are unable to demonstrate their injuries are failrly traceable to the conduct of the Defendants.  The INS has promulgated regulations which permit Salinas and members of the purported class seeking replacement documents to obtain employment for a limited period.  8 C.F.R. §274a.2(b)(1)(vi). Plaintiff Salinas alleges that he has merely lost his social security card and that he is unable to work without it.  Amended Complaint ¶ 29.  The purported class includes aliens seeking replacement documents.  Amended Complaint ¶ 14.  Thus, any inability to obtain work stems from their refusal to utilize INS regulations permitting them to work for limited periods.  The harms are not fairly traceable to the conduct of the Defendants, and the claims should be dismissed.  Lujan, 504 U.S. at 560.

Plaintiff Salinas' should be dismissed for an independent reason:  his inability to obtain work is due to his conviction for possession of marijuana, for which he is presently in prison. His present inability to obtain gainful employment is his incarceration, which is sufficient to break any causation traceable to the defendants' conduct.  Unable to meet his burden

17

of showing causation, he lacks standing to bring the instant
action.  Lujan, 504 U.S. at 560.

> **b.   Plaintiffs and the purported class in general are
> unable to meet their burden of showing causation.**

Any harm incurred by plaintiffs and the purported class is
not fairly traceable to an alleged failure to adjudicate the N-
600 applications or an alleged failure to promulgate regulations
establishing temporary work authorization or additional forms of
proving work authorization.  The SSA has carefully set out a
variety of materials that will suffice to establish citizenship.
20 C.F.R. § 422.107.  It is the plaintiffs who elected to pursue
only the certificate of citizenship process.  They have refused
to try to obtain a U.S. passport.  Complaint ¶ 16.  They have not
attempted to obtain a consular report of birth.  It was their
decision, and their decision alone, to submit the N-600
application -- and in the case of Salinas, a certificate of
citizenship which was not his -- in order to obtain a social
security card.  Their decision not to initiate any of the
alternative mechanisms of establishing citizenship -- such as a
U.S. passport or consular report of birth -- caused the
nonissuance of their cards.  It was their decision to file faulty
applications before the SSA which has caused the alleged
injuries.

Moreover, the Social Security Administration is entitled a
presumption of regularity in the execution of its duties.
Citizens for the Preservation of Overton Park v. Volpe, 401 U.S.
402, 425 (1971).  Plaintiffs do not allege that the SSA has not

18

followed its regulations.  Nor do they deny that once all of the required documents are submitted, a social security card will be issued.  The plaintiffs have failed to produce the required documents, thus their injury is not failurly traceable to the conduct of the Defendants.  Because the alleged injuries are not fairly traceable to the conduct of the Defendants, the plaintiffs lack the requisite standing.  Lujan, 504 U.S. at 560.

Additionally, the alleged injuries are simply the result of normal administrative delay.  Defendants may rely on the normal adjudication of applications to provide work authorization, for normal administrative delays are sufficient to break the chain of causation between the experienced harm and the alleged administrative conduct.  Snake River, 9 F.2d at 796.

Moreover, there are even more potential causes:  the employers may simply not be hiring; the plaintiffs may be unqualified for the types of work they have been seeking; or more importantly, the plaintiffs may have never attempted to obtain employment.  Snake River, 9 F.3d at 796.  Actually, if the plaintiffs have been denied work because they were unable to produce evidence of work authorization, they may have a cause of action against the prospective employer.  Collins Foods, 948 F.2d at 552.  Congress has provided protection against invidious discrimination.  42 U.S.C. § 2000e, et seq.  The INS has been clear in indicating that employers should not ask for evidence of work authorization until after they have hired the person. Collins Foods, 948 F.2d at 552.  Employers being in violation of

19

the law is sufficient to break the chain of causation, and the harm is not fairly traceable to the conduct of the Defedants. <u>Snake River</u>. 9 F.3d at 796.

Similarly, the nonissuance of social security cards is not "fairly traceable" to the conduct of the defendants. <u>Lujan</u>, 504 U.S. at 560. For example, in filing her social security card application, Dominguez' primary source of proof of citizenship was her N-600 application filed before the INS. Amended Complaint ¶¶ 32. This application is not proof of citizenship; rather it merely initiates the administrative process. 8 C.F.R. § 341.7. Salinas did not even do so much as submit his N-600 application; remarkably, he decided to submit his brother's certificate of citizenship to establish his citizenship. Amended Complaint ¶ 29. This is not proof of <u>his</u> citizenship. Similarly, the individual applications filed by the remaining plaintiffs and the purported class will vary greatly in what documentation is submitted with the applications. Thus, they cannot establish that their injuries are fairly traceable to the conduct of the defendants.

**c.   Plaintiffs and the purported class cannot satisfy the redressibility requirement of standing.**

Plaintiffs must show that their injury will be 'redressed by a favorable decision.'" <u>Lujan</u>, 504 U.S. at 560-61. It is unlikely that a favorable decision will redress the plaintiffs' alleged injuries. First, there is no requirement for administrative review. <u>See</u> <u>infra</u> at VI(E). Moreover, these individual plaintiffs lack standing to challenge the absence of

764

20

such review.  For example, consider the complaint that Defendant
Chater has failed to provide administrative review of
nonissuances of social security card.  An order for such review
is unlikely to cure the nonissuance of the social security card.
It is manifestly clear that plaintiffs have not submitted the
required documents delineated as proof of work authorization.  20
C.F.R. 477.107(d).  Thus, there is no error to allege on review,
and administrative review would not result in the issuance of a
social security card.  The relief they seek before the Court
would not cure their harm, and the action should be dismissed.
Lujan, 504 U.S. at 560-61.

**III. THE INSTANT ACTION SHOULD BE DISMISSED FOR LACK OF RIPENESS**

        Federal jurisdiction is limited to claims that are ripe for
adjudication.  Abbott Laboratories v. Gardner, 387 U.S. 136, 148
(1967).  In particular, courts are reluctant to apply injunctive
and declaratory judgment "unless the administrative action
challenged [has] been 'felt in a concrete way by the challenging
parties.'"  Reno v. Catholic Social Services, 509 U.S. 43, 57
(1993)(citation omitted).  An examination of ripeness involves a
two-part test:  (1) the fitness of the issues for judicial
consideration; and (2) the hardship to the parties of withholding
court consideration.  Abbot Laboratories, 387 U.S. at 148.

    **A.    Plaintiffs' claims, as individuals and as a class, are
            not ripe.**

        The issues in the instant case are not ripe for
consideration.  Issues fit for judicial determination are those
which are purely legal.  Jobs, Training and Services v. East



21

<u>Texas Council of Governments</u>, 50 F.3d 1318, 1325 (5th Cir. 1995).
If there is a factual question requiring an agency to apply its
expertise, the Court should defer to the agency in making such a
determination.  <u>Id</u>.  Here, plaintiffs claim to be citizens.
Amended Complaint ¶¶ 28, 32, 36, 39, 41, 42.  Whether they are
citizens is a factual question calling for the expertise of the
INS.  8 U.S.C. § 1452(a).  The agency has not yet decided these
factual predicates -- except in the case of Dominguez and the de
la Cruz siblings -- nor have the plaintiffs been denied
certificates of citizenship, with the exception of the de la Cruz
siblings.  Amended Complaint ¶ 28, 32, 36, 39, 41, 42.

     The lack of fitness for review in the instant case is
especially poignant as to Defendants Reno, Meissner, and
Trominski.  The plaintiffs may seek a declaratory judgment on
their claim to citizenship, but only once the defendants deny
their claim to citizenship.  Section 360(a), 8 U.S.C. § 1503(a).
But Defendants Reno, Meissner and Trominski have not denied the
plaintiffs' claims to citizenship:  the applications for
certificates of citizenship remain pending.  The issues in the
case, as to Defendants Reno, Meissner, and Trominski are not yet
ripe for adjudication.  Thus, the issues in this case are not yet
ripe for adjudication.  <u>Jobs</u>, 50 F.3d at 1325.

     As a second consideration of fitness, it bears mentioning
that ordinarily, a plaintiff's claim does not become ripe until
he or she has taken the affirmative steps necessary and the
defendant agency has denied the plaintiff's request.  <u>Catholic</u>

Social Services, 509 U.S. at 59-60.  A plaintiff must exhaust the procedures available to remedy his or her harm before the claims become ripe.  Sandia Federal Savings & Loan v. Vernon Savings & Loan, 860 F.2d 608, 610 (5th Cir. 1988).  As the Ninth Circuit states in Freedom to Travel Campaign v. Newcomb, 82 F.3d 1431, 1435 (9th Cir. 1996), "a plaintiff . . . would first have to apply for and be denied the benefit before having a ripe claim."  Here, the SSA has provided no less than six different mechanisms for establishing citizenship.  20 C.F.R. 422.107.  Of these, plaintiffs, individually and as a class, have elected to use only one:  certificates of citizenship.  Amended Complaint ¶¶ 28, 32, 36, 39, 41, 42.  That leaves five modes of remedy unused, neglected.  Thus, the issues in this case are not ripe for adjudication.  Sandia, 860 F.2d at 610.

Additionally, the hardships in the instant case favor the side of the government.  Abbot Laboratories, 387 U.S. at 148.  Deference to agency process is due where the precipitous invocation of judicial remedies threaten to disrupt agency practice.  Jobs, 50 F.3d at 1325.  Judicial intervention at this juncture -- where the agency has not been permitted to employ its expertise to make factual determinations and reach a final decision -- would lead to numerous claims on a variety of allegations which would undermine the functioning of the agency and disrupt the courts.  Id.  The harm to plaintiffs is minimal, as they have demonstrated that they are willing to prolong determinations of their applications, having applied for

23

continuances on hearings for their applications.  Moreover, they
do not have an imminent expectation of jobs.  Thus, no
significant hardships befall them, and the Court should grant
deference to the relevant agencies.  Furthermore, Plaintiffs have
elected not to pursue any of the other mechanisms which exist for
obtaining proof of work authorization.  Amended Complaint ¶ 20.
Accordingly, the claims in the instant case are not yet ripe.
Abbot Laboratories, 387 U.S. at 148.

    **B.    The claim of Plaintiff Dominguez regarding her children
is not ripe for adjudication.**

    Dominguez' claim that her application for adjustment of
status for her children is at risk is not ripe for adjudication.
A plaintiff's claim does not become ripe until she has taken the
affirmative steps necessary and the defendant agency has denied
the plaintiff's request.  Catholic Social Services, 509 U.S. at
59-60.  A plaintiff must exhaust the procedures available to
remedy his or her harm before the claims become ripe.  Sandia,
860 F.2d at 610.  As the Ninth Circuit states in Freedom to
Travel Campaign, 82 F.3d at 1435, "a plaintiff . . . would first
have to apply for and be denied the benefit before having a ripe
claim."  Dominguez' application is still pending, and there is no
need to interfere with the administrative process at this
juncture.  Her claim that her application could be denied is
sheer speculation.  It is equally true that her application could
be granted.  The determination of her application is a question
of fact for the INS to determine.  Section 245 of the INA, 8
U.S.C. § 1255.

768

24

Moreover, the hardships favor the government, which has a substantial interest in adjudicating her application.  <u>Abbot Laboratories</u>, 387 U.S. at 148.  The hardship to her is minimal, as she may yet obtain the relief she seeks from the adjudication of her application.  The plaintiffs should not be permitted to expend not only their own resources, but those of the Court and the Defendants to create a shortcut to relief.  Thus, the court should dismiss her claim as not ripe for adjudication.  <u>Abbot Laboratories</u>, 387 U.S. at 148.

**IV.    THE INSTANT ACTION SHOULD BE DISMISSED BECAUSE THE PLAINTIFFS HAVE NOT EXHAUSTED THE AVAILABLE MODES OF ADMINISTRATIVE REMEDIES.**

In addition to the requirement of ripeness, the courts require an exhaustion of remedies.  <u>McCarthy v. Madigan</u>, 503 U.S. 140, 144 (1992).  "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency."  <u>Id</u>. at 145.  Above and beyond these twin purposes, the requirement of exhaustion has been found to serve a variety of purposes, such as:  (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to

769

25

discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." Patsy v. Florida International University, 634 F.2d 900, 903, 904-05, (5th Cir. 1979), rev'd on other grounds sub nom. Patsy v. Florida International University, 457 U.S. 496 (1982) (citing McKart v. U.S., 395 U.S. 185, 193-95 (1969).) "The exhaustion of administrative remedies requires not that only administrative remedies selected by the complainant be first exhausted, but instead that all those prescribed administrative remedies which might provide appropriate relief be pursued prior to seeking relief in the federal courts." Hessbrook v. Lennon, 777 F.2d 999, 1002 (5th Cir. 1985) (emphasis added). Thus, when an alternative mode exists for obtaining the desired relief, the plaintiff is obliged to pursue it. Id. at 1003. The fact that a plaintiff may suffer an irreparable injury by having to exhaust administrative remedies alone is no reason not to exhaust those remedies. Myers v. Bethlehem Shipbuilding, 303 U.S. 41, 50 (1938) (emphasis added).

The plaintiffs and the purported class have pursued proof of citizenship only in the form of a certificate of citizenship. Amended Complaint ¶¶ 28, 32, 36, 39, 41, 42. Social Security regulations permit a variety of means for establishing U.S. citizenship or permission to work. 20 C.F.R. § 422.107(d). Among these forms are: (1) certificate of citizenship; (2)

770

26

certificate of naturalization; (3) passport; (4) citizen
identification card; and (5) consular report of birth.[3]  20
C.F.R. §422.107(d).  Any one of these modes of obtaining remedy
will satisfy the requirement of proof of U.S. citizenship
required for a social security card.

In the instant action, plaintiffs have not only failed to
pursue any of these alternative modes of proof, but they have
openly refused to do so.  Amended Complaint ¶ 20.  The only
reason given is that there are "mail" delays which they do not
wish to suffer.  Amended Complaint ¶ 20.  Such an allegation
demonstrates that plaintiffs are disingenuous in bringing their
action.  The truth is that Plaintiffs wish to shortcut the system
at great expense and waste not only their own resources, but
those of the administrative agencies and the court as well.

The requirement of exhaustion of remedies is especially
poignant in this case, where the plaintiffs allege that they are
being treated differently than certain other aliens.  Amended
Complaint ¶ 24.  INS regulations establish that an alien seeking
a temporary work authorization cannot obtain such authorization
unless the INS is unable to adjudiate his or her application for
relief within ninety days, 8 C.F.R. 274a.13(d), or in some cases,
180 days, 8 C.F.R. 208.7(a)(1).  Because certain documents, e.g.,

---

[3]  As an example, seeking a passport is a legitimate option
the plaintiffs could pursue.  By regulation, the Department of
State provides that:  "In lieu of a certificate of citizenship,
the applicant may submit evidence of his or her parent(s)'s
citizenship at the time of his or her birth, and evidence of his
or her and his or her parent(s)'s residence and physical presence
in the United States."  8 C.F.R. 51.44(b)(2).

27

a U.S. passport or a consular report of birth, could be obtained within that 180 day period, it is incumbent upon the alien to seek those forms of relief. Hessbrook, 777 F.2d at 1002.

Moreover, Plaintiff Salinas and approximately half of the purported class are eligible for a temporary work authorization by statute, which they have elected not to pursue. Plaintiffs and members of the purported class who are seeking replacement documents may obtain a type of temporary work authorization for up to ninety days while they obtain their replacement documents. 8 C.F.R. § 274a.12(b)(1)(vi). Until such time as they have obtained employment, worked for the regulatory ninety day authorization period, and still not obtained their replacement documents, they have failed to exhaust their administrative remedies, and their actions should be dismissed.

Finally, it bears repeating that the fact the plaintiff might suffer some "irreparable injury" as a result of having to exhaust remedies does not excuse the requirement to exhaust those remedies. Myers, 303 U.S. at 50. The plaintiffs have failed to exhaust the available remedies which would provide adequate relief and thereby deprived the court of jurisdiction. Hessbrook, 777 F.2d at 1003.

**V.    THE INSTANT ACTION SHOULD BE DISMISSED AS TO THE SOCIAL SECURITY ADMINISTRATION BECAUSE PLAINTIFFS HAVE NOT COMPLIED WITH THE REQUIREMENTS FOR CHALLENGING SOCIAL SECURITY ADMINISTRATION DECISIONS.**

In their case against the SSA, plaintiffs are attempting to work around statutory limitations on judicial review. Review of decisions of the SSA is provided by Congress in 42 U.S.C. §

28

405(g), which states:  "Any individual, after any final decision of the Secretary made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action commenced within sixty days . . . ."  This review is the sole and exclusive procedure, as Congress provided in 42 U.S.C. § 405(h), that:

> The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing.  No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided.

The Supreme Court has stated that section 405(g), 42 U.S.C. § 405(g) limits judicial review to final decisions of the Commissioner of the Social Security made after a hearing. Califano v. Sanders, 430 U.S. 99, 104 (1977).[4]  All those decisions which can be made without a hearing "are not reviewable by the federal courts unless the claimant challenged the action on constitutional grounds."  Brandyburg v. Sullivan, 959 F.2d 555, 559 (5th Cir. 1992).  Section 405 should be viewed as a limited waiver of sovereign immunity, and thereby afforded a strict construction.  Schillinger v. U.S., 155 U.S. 163 (1894); Lehman v. Nakshian, 453 U.S. 156, 160 (1981).  Here, the challenge plaintiffs bring regards the nonissuance of social security cards in violation of the Social Security Act.  Amended

---

[4]     The SSA was formerly within the Department of Health and Human services.  It has since been removed from that department and established as a separate agency with a separate commissioner.  Any suit which would have been filed against the Secretary of the Department of Health and Human Services may now be filed against the Commissioner of Social Security.

Complaint ¶ 50.  The nonissuance of a social security card does
not require a hearing, thus the Court may not review the denial.
The informal procedures are best suited to cope with the numbers
of application received by the Social Security Administration,
affording individualized attention to each applications.  First,
the documents required to be submitted to receive a social
security card are spelled out by regulation.  20 C.F.R. §
422.107(d).  When an applicant submits one of the required
documents, he or she is issued a card.  20 C.F.R. § 422.107(c).
If a card is not issued, a letter is provided explaining to the
applicant how to remedy the application.  The nonissuance of a
social security card is not final and binding on the applicant.
They are not foreclosed from filing another application.  There
is no time prohibition in which they cannot file another
application.  This system works to the benefit of the applicants.

Moreover, plaintiffs are not permitted to circumvent the
sixty day requirement for judicial review.  Brandyburg, 959 F.2d
at 559; Section 405(g) of the Social Security Act, 42 U.S.C.
§ 405.  The only date mentioned for the denial of their
applications was the denial of Salinas' application on June 28,
1995.  Complaint ¶ 25.  They did not file an action until August
24, 1996 -- well beyond the sixty day filing requirement.  There
is no other date alleged.  Thus, the court is deprived of
jurisdiction to consider the claim, and the action should be
dismissed because there is no final administrative decision and
because the plaintiffs are filing beyond the sixty day time limit

774

30

imposed by the jurisdictional statute.  <u>Brandyburg</u>, 959 F.2d at 559.

VI.  **THE COURT LACKS JURISDICTION OVER THE INSTANT CASE UNDER THE APA.**

A.  **The Court is statutorily precluded from reviewing discretionary acts of the Defendants under the APA.**

Plaintiffs seek relief based on the APA, but the Court is precluded from reviewing the instant case under the APA.  Section 701(a)(2) of 5 U.S.C., states that the court may not review those decisions left solely to the discretion of the executive branch. The INA states that the INS must issue certificates of citizenship to those people who have been found "to the satisfaction of the Attorney General" to be citizens.  Section 341(a) of the INA, 8 U.S.C. § 1452(a).  The Attorney General has defined the acceptable forms of establishing citizenship.  8 C.F.R. § 341.1, et seq.  The only statutory duty imposed on the SSA is to issue social security numbers and cards to those who produce adequate proof of age, U.S. citizenship or authorized alien status, and true identity, as determined by regulations. 42 U.S.C. § 405(c)(2)(ii).  The SSA has published regulations delineating acceptable forms of proof of citizenship.  20 C.F.R. § 422.107.  Both the INA and the Social Security Act leaves acceptable forms of identification to the unfettered discretion of the defendants.  Moreover, the decision to grant temporary work authorization is similarly within the unfettered discretion of the Attorney General.  Thus, it is manifest that the Court is

775

31

deprived of jurisdiction to review the decision of the defendants
under the APA.

**B.   The Court lacks jurisdiction over the APA claim because
the plaintiffs and the purported class fail to satisfy
the requirement of finality.**

Courts refuse to intervene in cases where there has been no
final agency action. <u>Jobs</u>, 50 F.3d at 1324; <u>Brandyburg v.
Sullivan</u>, 959 F.2d 555, 560 (5th Cir. 1992). The requirement is
imposed by the Administrative Procedures Act. 5 U.S.C. § 702.
This requirement states that a plaintiff may only get judicial
review of a <u>final</u> agency action. <u>Jobs</u>, 50 F.3d at 1324 (emphasis
added). "If there is no 'final agency action' as required by the
controlling statute, a court lacks subject matter jurisdiction."
<u>Jobs</u>, 50 F.3d at 1324, <u>quoting</u> <u>Veldhoen v. United States Coast
Guard</u>, 35 F.3d 222, 225 (5th Cir. 1994). In deciding whether
finality has been reached, the court considers whether a decision
has been issued that has the effect of law on the plaintiff.
<u>Catholic Social Services</u>, 509 U.S. at 58.

The instant complaint contains no final actions. As
plaintiffs concede, their N-600 applications are still pending
before the INS, with the exception of Dominguez and the de la
Cruz siblings. Amended Complaint ¶ 28, 32, 36, 39, 41, 42.
Indeed, for some of them, a hearing was scheduled for September
11, 1996, but was continued until October 7, 1996, at the
plaintiffs' request. Neither do administrative delays convert
what is a nonfinal action into a final action. <u>Jobs</u>, 50 F.3d at
1325. Thus, the INS has not made a final determination, and the

32

plaintiffs have not satisfied the finality requirement of the APA and the judicial rule. Jobs, 50 F.3d at 1324.

As for the SSA, what constitutes a "final action" is at the discretion of the Commissioner. Brandyburg, 959 F.2d at 559-60, citing Weinberger v. Salfi, 422 U.S. 749 (1975) (finding the definition of "final action" was at the discretion of the Secretary of Health, Education and Welfare, the erstwhile head of the SSA). The Commissioner has not determined that the denial of a social security card constitutes a "final agency action." Nor is it likely that such a denial is a final action, for an applicant is free to refile an application for the card, and no penalty is imposed. Catholic Social Services, 509 U.S. at 58. The denial lacks the "effect of law" on the party, and they are free to submit their application in either a remedied or identical form. See supra at V.

## VII. PLAINTIFFS FAIL TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED PURSUANT TO RULE 12(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

### A. Plaintiffs fail to state a claim under the INA or the SSA.

The plaintiffs, individually and as a purported class, fail to state a claim that the INS or the SSA has acted contrary to the INA or the Social Security Act. A claimant may only challenge a failure to promulgate regulations where there is a specific statutory requirement to do so. Fernandez, 840 F.2d at 628. Here, the plaintiffs point to no such statutory requirement -- nor could they, for no such requirement exists.

33

The only statutory requirement imposed on the INS is that it issue certificates of citizenship to those people who have been found "to the satisfaction of the Attorney General" to be citizens.  Section 341(a) of the INA, 8 U.S.C. § 1452(a).  The Attorney General has defined the acceptable forms of establishing citizenship.  8 C.F.R. § 341.1, et seq.  The plaintiffs have not been found to be citizens, nor have their applications been denied.  Amended Complaint ¶¶ 28, 32, 36, 39, 41, 42.  The statute makes no requirement that the Attorney General provide work authorization to applicants.  8 U.S.C. § 1452(a).

The only statutory duty imposed on the SSA is to issue social security numbers and cards to those who produce adequate proof of age, U.S. citizenship or authorized alien status, and true identity, as determined by regulations.  42 U.S.C. § 405(c)(2)(ii).  The SSA has published regulations delineating acceptable forms of proof of citizenship.  20 C.F.R. § 422.107. The plaintiffs have offered no such documentation.  Amended Complaint ¶¶ 28, 32, 36, 39, 41, 42.

Neither the statutory duties of the INS nor those of the SSA imposes the affirmative obligation on the defendants to issue temporary work authorizations.  Absent such statutory duties, the plaintiffs lack standing to challenge the failure to promulgate regulations.  Fernandez, 840 F.2d at 628.

**B.   Plaintiffs fail to state a claim under APA.**

As was discussed above, Plaintiffs are unable to invoke the Court's jurisdiction through the APA.  See supra at VI.

778

34

Plaintiffs also fail to state a claim under the APA. "Section 702 [of the APA] does not create substantive rights. There is no right to sue for a violation of the APA in the absence of a 'relevant statute' whose violation 'forms the legal basis for [the] complaint.'" El Rescante Legal Services v. EOIR, 959 F.2d 742, 753 (9th Cir. 1992), citing Lujan v. National Wildlife Federation, 496 U.S. 871 (1990). As was discussed supra at VII(A), there is no statutory duty which has been violated by the defendants. Accordingly, there is no claim under the APA.

**C.    Plaintiffs fail to state a claim under the Equal Protection component of the Due Process Clause of the Fifth Amendment.**

**1.    Standard of Review**

The Supreme Court has repeatedly held that "[o]ver no conceivable subject is the legislative power of Congress more complete" than it is over the admission of aliens. Reno v. Flores, 507 U.S. 292, 305 (1993) (quoting Fiallo v. Bell, 430 U.S. 787, 792 (1977)). "The fact that an Act of Congress treats aliens differently from citizens does not in itself imply that such disparate treatement is 'invidious.'" Mathews v. Dias, 426 U.S. 67, 79 (1976). As the Supreme Court has stated:

> The fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship or, indeed, to the conclusion that all aliens must be placed in a single homogenous legal classification.

Diaz, 426 U.S. at 78. Indeed, Congress may, and does, afford benefits to citizens which are not afforded to aliens and -- more importantly -- affords benefits to aliens which are not afforded

779

to citizens. <u>Diaz</u>, 426 U.S. at 78, n.12. In striking the balance between the Equal Protection Clause and the interest of Congress and the Executive Branch in regulating immigration, the Supreme Court determined that "when the Executive exercises this (delegated) power negatively on the basis of <u>a facially legitimate and bona fide reason</u>, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification [against important rights]." <u>Kleindienst v. Mandel</u>, 408 U.S. 753, 770 (1972) (emphasis added). This test equally applies to all cases involving important rights, such as the Equal Protection component of Due Process. <u>Fiallo</u>, 430 U.S. at 794-95. Accordingly, the test for determining the constitutionality of an immigration provision is whether the legislation is based upon a "facially legitimate and bona fide reason." <u>Fiallo</u>, 430 U.S. at 794 (quoting <u>Kleindienst</u>, 408 U.S. at 770); <u>Rodriguez v INS</u>, 9 F.3d 408, 414 (1993). In this regard, distinctions between classes of aliens will be upheld unless the choices made are "wholly irrational." <u>Mathews</u>, 426

780

36

U.S. at 83.[5]  Apart from not being "wholly irrational," the

distinctions that Congress made here were completely logical.[6]

### 2.    Burden of Proof

The plaintiffs have burden of proving a denial of equal

protection.  Rust v. Sullivan, 500 U.S. 173, 182 (1991).  .  In

making their claim, the plaintiffs "face a heavy burden."  Rust,

500 U.S. at 182.  Plaintiffs must demonstrate "'that no set of

circumstances exists under which the Act would be valid.  The

fact that [the regulations] might operate unconstitutionally

under some conceivable set of circumstnaces is insufficient to

---

[5]  It should be noted that the alien bears the burden of
showing that the statute violates the Constitution.  Berroteran-
Melendez v. INS, 955 F.2d 1251, 1258 (9th Cir. 1991), citing
McQueary v. Blodgett, 924 F.2d 829, 835 (9th Cir. 1991).  See
McQueary, 924 F.2d at n.7 ("The burden of proof rests with the
person alleging unconstitutional discrimination.  This standard
has rarely been utilized by the Court to invalidate a state
provision, and normally gives great deference to the validity of
the questioned provision."); see also Mathews, 426 U.S. at 82 (an
alien challenging the constitutionality "of a particular line
Congress has drawn has the burden of advancing principled
reasoning that will at once invalidate that line and yet tolerate
a different line separating some aliens from others."); Yeung v.
INS, 76 F.3d 337, 339 (11th Cir. 1995) (alien has burden of
showing the statute is unreasonable) (as modified on reh'g).

[6]  The courts have held that "'where there is a rational
basis for Congress's exercise of its power, whether articulated
or not, the [c]ourt will uphold the immigration laws that
Congress enacts.'"  Runnett v. Schultz, 901 F.2d 782, 787 (9th
Cir. 1990) (quoting Adams v. Howerton, 673 F.2d 1036, 1042 (9th
Cir.), cert. denied, 458 U.S. 1111 (1982)).  See also FCC v.
Beach Communications, Inc., 508 US. 307, 315 (1993) ("a
legislative choice is not subject to courtroom fact-finding and
may be based on rational speculation unsupported by evidence or
empirical data."); Heller v. Doe, 509 U.S. 312, 321 (1993) ("A
classification does not fail rational-basis review because it 'is
not made with mathematical nicety or . . . it results in some
inequality.'" (quoting Dandridge v. Williams, 397 U.S. 471, 485
(1970))).

781

37

render [them] wholly invalid.'" El Rescante Legal Services v.
EOIR, 959 F.2d 742, 752 (1992), quoting Rust, 500 U.S. at 182.

### 3. Congress and the Executive Branch have legitimate, bona fide reasons

Plaintiffs are unable to meet their burden of showing that
the government has no legitimate and bona fide reason for not
extending temporary work authorization to those who file N-600
applications. Fiallo, 430 U.S. 794-95. There are numerous
reasons which may be forwarded as legitimate and bona fide.
Congress and the Executive Branch may simply wish to avoid
fraudulent applications. The INS may also determine that
citizens have no need for temporary work authorization. They may
also wish to avoid opening the floodgates to applications,
thereby overwhelming administrative agencies.

Perhaps the most important reason is that Congress and the
Executive may feel there are alternative methods available which
permit people to obtain the documents they want. Here, that is
especially important, as the SSA's regulations have provided
multiple methods for obtaining a social security card. 20 C.F.R.
§ 422.107(d). Thus, the INS is entitled to view those options as
providing citizens -- putative or otherwise -- to obtain proof of
work authorization well before the need for such authorization
arises. Clearly, if the plaintiffs or their purported class had
elected to obtain a consular report of birth, a passport, or even
the social security card process permitting parents to obtain
cards for their children, such documents would have adequately
provided proof of work authorization. Congress and the Executive

Branch are free to make these distinctions, even if they seem confusing and arbitrary.  Rodriguez, 9 F.3d at 413.  When it comes to receipt of immigration benefits, the lines are to be drawn by Congress and the Executive Branch.  Fiallo, 430 U.S. at 798.  If there is a flaw in the authorization scheme, that flaw is for the political branches to fix, not the courts.  Rodriguez, 9 F.3d at 413.

**D.   Plaintiffs fail to state a claim under the fundamental rights aspect of the Due Process Clause.**

Plaintiffs claim that the defendants' actions infringe a fundamental right, namely the right to work.  Amended Complaint ¶ 46.  This argument is unavailing, for the Court's review is still limited to whether there was a legitimate and bona fide reason. Anetekhai v. INS, 876 F.2d 1218, 1220-21 (1989).  Plaintiffs' fundamental rights claim suffers the same flaws as the plaintiffs' Equal Protection claim:  Congress may make distinctions between citizens and aliens and between classes of aliens.  Diaz, 426 U.S. at 78.  The same reasoning applies to actions of the Executive Branch.  Fiallo, 430 U.S. at 794-95.  In either case, the Court's review is limited to a determination of whether there is a legitimate and bona fide reason.  Fiallo, 430 U.S. at 794-95; Rodriguez, 9 f.3d at 414.  As was discussed in the previous section, there are a variety of reasons which explain why temporary work authorization is afforded to some aliens and not to others.  Congress and the Executive Branch are free to make these distinctions, even if they seem confusing and arbitrary.  Rodriguez, 9 F.3d at 413.  When it comes to receipt

39

of immigration benefits, such as temporary work authorization, the lines are to be drawn by Congress and the Executive Branch. <u>Fiallo</u>, 430 U.S. at 798. If there is a flaw in the authorization scheme, that flaw is for the political branches to fix, not the courts. <u>Rodriquez</u>, 9 F.3d at 413.

   **E.    Plaintiffs and the purported class fail to state a
          claim of violation of Due Process where Defendant
          Chater does not provide the right to an administrative
          appeal for the nonissuance of social security cards.**

   Plaintiffs' claim that Defendant Chater violates the Due Process Clause in failing to provide for administrative appeals from the denial of social security cards is fallacious. Here, plaintiffs challenge the absence of a level of administrative appellate review as a denial of Due Process. This argument is without merit. A consideration of procedural Due Process indicates that a layer of review is unnecessary. In <u>Mathews v. Eldridge</u>, the Supreme Court established a balancing test to determine whether Due Process required additional procedures. 424 U.S. 319 (1976). The Court established a three-part consideration: (1) the interest of the plaintiff; (2) the risk of error; and (3) the interest of the government in adjudicating. <u>Id</u>. at 335.

   The interest of the plaintiffs is clear: they wish to obtain social security cards. Because the applicants may apply frequently and seek alternative methods for proving work authorization, their interest is minimized.

   The risk of error mitigates against further procedures. First, the regulations are clear on what constitutes sufficient

784

40

documentation for obtaining a social security card.   20 C.F.R. §
422.107.   Moreover, the risk of error is greatly minimized by the
fact that applicants to whom social security cards are not issued
are given their applications along with an explanation as to why
the application is defective.   Thus, they are provided an
explanation of how to cure the defect.   The decision is not
legally binding on the applicant, and they may submit new
applications at any time, with or without the cured defect.
Thus, the risk of error becomes minimized, and review would add
nothing to the process.   Additionally, the presence of many forms
of establishing work authorization further reduce the risk of
error.   8 C.F.R. 274a.2(b)(1)(v).

The interest of the government in the current procedures is
substantial.   In weighing the government's interest, the Court
should consider administrative burden and other societal costs.
Mathews, 424 U.S. at 346.   The SSA is responsible for numerous
applications for social security cards.   The SSA keeps track of
files by the social security number issued to applicants.   In
order to keep track of all of the millions of applications the
SSA maight receive in a single year, an entirely new tracking
system would need to be employed, creating a substantial
financial burden on the SSA and creating confusion as the system
is instituted.   Coupled with that burden, to have to adjudicate
the numerous appeals which would stem from the nonissuance of a
card would be extremely burdensome.   The informal procedures,
where the applicant may apply as frequently as he or she wishes