**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

JAN 24 1997

Michael N. Milby
Clerk of Court

ANTELMA DOMINGUEZ-PEREZ, et. al.       )
                                       )
    Plaintiffs,                        )
                                       )       CIVIL ACTION NO. B-96-116
JANET RENO, et. al.                    )
                                       )
    Defendants,                        )


PLAINTIFFS' OPPOSITION TO DEFENDANTS' (SECOND) MOTION
TO DISMISS, FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM
AND RENEWED CALL FOR ENTRY OF DEFAULT, AND RULE 11 SANCTIONS


### I. INTRODUCTION

Come Plaintiffs, by and through the undersigned, and respectfully
file the instant opposition to Defendants' (second) Motion to
Dismiss, [1]  filed on January 7, 1997, asserting that this Court
lacks jurisdiction to hear the instant case, and that Plaintiffs
have not stated a claim upon which relief can be granted. [2]
Supplemental Points and Authorities, more fully documenting the
grounds for Plaintiffs' opposition, will be filed shortly. [3]

---

[1]  Said motion is hereinafter referred to as "Defendants'
Motion to Dismiss," and cited as (INS:__ ).

[2] Most of Respondents' arguments were raised in their initial
motion to dismiss, to which Plaintiffs replied on November 7, 1996.
See, Plaintiffs' Opposition to Defendants' Motion to Dismiss for
Mootness and Lack of Standing. These arguments were rejected by the
Court on November 15, 1996, when the first motion was denied.
Nonetheless, Defendants simply reiterate the prior arguments, with
no recognition of the fact that they have been previously
considered, and rejected, by this Court, and with no attempt to
address the rebuttal points raised by Plaintiffs.

[3] Given the urgent problems addressed in *Espinoza et al v.
Trominski et al*, C.A. B-96-240, Plaintiffs' counsel has not had
time to fully brief the red herrings raised by Defendants herein,

706

Simultaneously, Plaintiffs' would renew their call for entry of default against Defendants, and for Rule 11 sanctions. Defendants still have not filed a "responsive pleading," as ordered by this Court. [4]  And the supporting Points and Authorities contain an astonishing number of untruths, misrepresentations of Plaintiffs' claims, and misstatements of law, which should not be tolerated from an Officer of the Court, much less one who appears before the Court as a representative of the Department of Justice.

## II.    DEFENDANTS' POSITION IS TOTALLY WITHOUT MERIT

Notwithstanding the 41 pages covered by the Points and Authorities in support of Defendants' Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim, (hereinafter cited as INS2:__)), there is not one argument of substance.

Defendants first assert that the claims of Plaintiffs Dominguez-Perez, and the De La Cruz siblings, are moot, (INS2:6-8). With respect to Plaintiff Perez, as was noted in the First Amended Complaint, the issuance of her Certificate of Citizenship does not moot her claim. The injury caused by Defendants' refusal to provide her with employment authorization, and a Social Security

_____

and will file supplemental points and authorities within the next two weeks, if the Court has not already denied Defendants' motion.

[4]    The simple fact that Defendants (twice) requested additional time to file a "responsive pleading *or motion*," demonstrates that they are well aware of the difference. They were granted an extension to file a responsive pleading, but not to file "a responsive pleading *or motion*." Their lack of good faith is also shown by their repeated representations that the reason more time was needed was to enable them to "address the court's concerns regarding the availability of work authorization for the plaintiffs as discussed at the hearing on November 15, 1996," (Defendants' Motion for Clarification etc., at page 3), although they have made no pretext of addressing those concerns. Moreover, entry of default would only serve to speed up the case, as Plaintiffs are still required to prove their entitlement to the relief requested before judgment is entered. F.R.Civ.P. 55(e).

707

card, during the time that her N-600 was pending, has depressed the family income to the point where it has jeopardized her ability to immigrate her minor children.  This Court, sitting in equity, could easily devise a remedy for this problem, so the claim is not moot.

Defendants' claim that Plaintiff Perez lacks standing is based on a mischaracterization of her claim. Ms. Perez does not argue, as Defendants assert, that her children may be found ineligible for adjustment of status due to "any difficulty she may have had in proving her claim to citizenship," (INS2:14-15), but that she will be unable to carry her burden of proving that they will not become public charges. The income of Ms. Perez and her husband has been significantly diminished in recent years due to her inability to obtain interim employment authorization during the (lengthy) period that her N-600 was pending. *See*, Plaintiffs' First Amended Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief, (hereinafter cited as (PET:__)), at par. 53. [5]

Defendants' claim as to the De La Cruz siblings is even more frivolous.  The denial of their N-600 applications is under appeal, and would therefore not affect employment authorization based on a pending N-600 application.   In urging a contrary position, Defendants misstate the law, (INS2:7) (emphasis added):

> The de la Cruz siblings should also be dismissed, as their claims are moot.  The applications filed by the de la Cruz siblings have been denied.  *According to INS regulations, when an application for certain immigration benefits is denied, any temporary work authorization accompanying that application is automatically terminated.* 8 C.F.R. § 274a.13(d).

---

[5]  At worst, the Court might find that there was a pleading deficiency, in that Plaintiff Perez did not specifically plead her right to assert the interests, and act on behalf, of her minor children.  In such a case, leave should be granted to amend the pleadings accordingly, c.f., F.R.Civ.P. 15(a).

708

Said regulation says no such thing. [6]  To the contrary, it provides that where INS fails to adjudicate an application for employment authorization within a specified period of time, interim employment authorization must be provided.  If the application *for employment authorization* is denied before the interim authorization expires, under §274a.13(d), the interim authorization is terminated. [7]  As such, §274a.13(d) provides an opportunity for an individual to work where INS unduly delays adjudicating a request for employment authorization.  It makes no reference to applications for other "immigration benefits,"  and is therefore inapplicable herein. Contrary to Defendants' assertions, employment authorization is routinely, and properly, extended during appeals of denials of the underlying application, [8] as Plaintiffs have previously noted. [9]

---

[6]  It is unknown whether Defendants' various misstatements of the law represent a deliberate attempt to mislead this Court, or an abysmal ignorance of immigration law and practice.  In either event, counsel should be admonished to take greater care in making representations to the Court.

[7]  Termination of employment authorization issued, for example, to an applicant for adjustment of status, under  8 C.F.R. §274a.12(c)(9), would be governed by 8 C.F.R. §274a.14, which does *not* provide for termination upon denial of the application.

[8]  For example, 8 C.F.R. §274a.12(c)(9) provides that employment authorization for applicants for adjustment of status shall be granted "during the period the application is pending (including any period when and administrative appeal or judicial review is pending)..."  *See also,* §§274a.12(c)(10) and (c)(16), containing equivalent provisions for applicants for suspension of deportation, and registry, respectively.

[9]  *C.f.,* Plaintiffs' First Amended Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief, at paragraph 24:  "This entitlement persists whether the underlying application is pending before the Immigration and Naturalization Service, and Immigration Judge, the Board of Immigration Appeals, or even during judicial review."  Had Defendants filed a responsive pleading by the due date of January 6, 1997, presumably they would have checked the accuracy of Plaintiffs' allegation, and would not have made such misrepresentations to the Court.  This fact further demonstrates the need for entry of default, and Rule 11 sanctions.

Perhaps the most amusing aspect of Defendants' Second Motion to Dismiss is the claim that Plaintiffs have not been injured because Defendants are "not required by statute to provide temporary work authorization," (INS2:10). This is exactly the point. Plaintiffs allege that the Attorney General's refusal to grant provisional employment authorization is a denial of Equal Protection, not a statutory violation. [10] They assert that she has the *authority* to grant such authorization, as is implicitly recognized by 8 U.S.C. §1324a(h)(3)(B), which distinguishes between aliens authorized to be employed by virtue of a specific provision of the Immigration and Nationality Act, and those who have been granted such authorization by the Attorney General, presumedly without a specific statutory provision mandating that she do so. [11]

Similarly, Plaintiffs allege that Commissioner Chater's failure to provide them with social security cards violates their Fifth Amendment rights *and* the Commissioner's statutory duty to provide social security cards to those who produce such evidence as "may be necessary" to establish eligibility. *See*, 42 USC 405(c)(2)(ii). Defendants misstate the law when they claim that the Commissioner's duty is simply to issue cards to those who establish eligibility "as determined by the regulations." (INS2:11). Plaintiffs assert

---

[10] *Fernandez v. Brock*, (p.10), relied on by Defendants at (INS:10-11), is inapposite for this very reason. In that case, Plaintiffs claimed an injury for the Defendant's failure to promulgate regulations mandated by statute. Contrary to Defendants' assertion herein, Plaintiffs here do not challenge the simple fact that Defendants have promulgated no regulations. Rather, they challenge Defendants' failure to provide employment authorization and social security numbers, by regulation or otherwise.

[11] Defendants represented to this Court previously that, due to the presumption of alienage of a person born abroad, they believed that persons such as Plaintiffs could be granted employment authorization, even without a change in the regulations. It is unknown at this point in time whether they are pursuing this avenue, but it would appear that they have decided to continue their policy of denying such persons the right to be employed while their claims of U.S. citizenship are being adjudicated.

710

herein that the regulations are inconsistent with the statute.
Eligibility as United States citizens can be established by means
other than the documents specified in the regulation, such as by
presentation of evidence demonstrating that they have acquired U.S.
citizenship at birth.  It was precisely this that Plaintiffs Perez
and Salinas attempted to do, by offering copies of their N-600
applications, as filed with INS. *See* Plaintiffs' Exhibits C and G.

Next on the scale of frivolity is Defendants' assertion that if
Plaintiffs were denied employment because they did not have
"evidence of work authorization," they would have a cause of action
against the potential employer "based on invidious discrimination,"
(INS2:12,18).  This is absurd.  8 USC §1324a(a) makes it unlawful
for a person "to hire" an individual, "knowing" that this person is
not authorized to be employed.  It would very probably be unlawful
for an employer "to hire" a foreign-born job applicant, who had no
employment authorization, and no social security card, and who
truthfully answered the potential employer's legitimate questions.[12]
It would certainly *not* be unlawful to refuse to hire such a person.

Defendants also represent to the Court that, (INS2:16,27):

> Plaintiff Salinas and approximately half of the purported
> class are eligible for a temporary work authorization by
> statute, which they have elected not to pursue. Plaintiffs
> and members of the purported class who are
> seeking replacement documents may obtain a type of
> temporary work authorization for up to ninety days while
> they obtain their replacement documents.  8 C.F.R.
> §274a.12(b)(1)(vi).

_____

[12] Even if Plaintiffs "proved" their claim to U.S. citizenship
at the job interview, if they admitted that they did not have any
of the documents which the potential employer is required to
verify, under 8 U.S.C. §1324a(b), that employer would be well
within his or her rights in refusing employment.  In fact, it would
probably be considered unlawful to hire such a person, even someone
whose claim to U.S. citizenship is as unassailable as Mr. Salinas'.

6

711

Sadly, this is simply another in a long string of falsehoods contained in this pleading. [13]   The regulation requires that within three days of hire, an otherwise employable person who has lost his or her documents must present to the employer "a receipt for the application of the replacement documentation." Upon presentation of such a receipt, the individual has ninety days to produce the actual replacement document. But the Social Security Administration will not issue "a receipt for the application of the replacement documentation" unless and until the application for the replacement card is approved, i.e., unless and until the applicant has demonstrated *continued* entitlement to a social security card, under the same standards that apply to the issuance of the initial card.

Mr. Salinas applied for a duplicate social security card.   But because he could not produce any of the documents acceptable to the Social Security Administration for that purpose, his application was rejected, and he was not given the necessary "receipt for the application of the replacement documentation." Plaintiffs' Exhibits C, D, and F, herein incorporated by reference.

In the First Amended Complaint, (at paragraph 31), Mr. Salinas alleged that he had applied for various jobs, and had been "denied employment for no other reason than that he did not have either a social security card; or a document from INS, demonstrating that he was entitled to be employed during the pendency of his N-600 application. He could (truthfully) tell potential employers that he believes he is a United States citizen, and had lost his social security card, but, when asked, he would also have to admit that the SSA had refused to give him a duplicate card.   Under such circumstances, he found no-one who would hire him.   Even if he had been hired, he would only have been able to (lawfully) maintain

---

[13]   As employees of the Department of Justice, Defendants' counsel should be held to at least as high an ethical standard as would private counsel, and should be subjected to sanctions where those standards are not met.

employment for three day stretches, because he would not have been able to provide a receipt for a duplicate social security card. Such a scenario neither gives rise to a claim against the employers who refused to hire him, nor relieves Respondents of their responsibility for his plight. As noted in *Etuk v. Slattery*, 936 F.2d 1433, 1446 (2nd Cir. 1991) (emphasis added):

> The INS argues, however, that it bears no responsibility for the fact that employers will not honor legally sufficient documentation. We disagree. ... [T]he INS has established elaborate procedures to ensure employer compliance with IRCA. The INS cannot so easily "pass the buck." ... To blame employers for what is essentially the product of the INS's own actions would be improper.

Defendants also appear to believe that this Court lacks the power to "redress" Plaintiffs' grievances, (INS2:19-20). To the contrary, this Court, sitting in equity, has virtually unlimited power to fashion remedies, as appropriate. *See generally, U.S. v. Criminal Sheriff, Parish of Orleans*, 19 F.3d 238, 239 (5th Cir. 1994); *Cohen v. Brown University*, 991 F.2d 888, 906 (1st Cir. 1993).

Defendants' other arguments, regarding ripeness, (INS2:20-24), and exhaustion of remedies, (24-27), are so frivolous that Plaintiffs are reluctant to expend significant energy in addressing them. Defendants have already admitted, [14] that persons such as Plaintiffs cannot be legally employed, and that they cannot obtain either social security cards, or employment authorization, based on their properly filed N-600 applications, setting forth a *prima facie* claim to U.S. citizenship. There are no appeals for them to pursue. *Cf.*, 8 C.F.R. §274a.13(c), and Plaintiffs' Exhibit "F." There are simply no administrative remedies to exhaust.

---

[14] *See*, Defendants' Responses to Plaintiffs' First Set of Requests for Admissions, [sic], Plaintiffs' Exhibit J, Requests Nos. 13, 14, 15, and 19.

713

Defendants' attempt to blame Plaintiffs for their plight is equally cynical. Citing paragraph 20 of the First Amended Complaint, Defendants claim that Plaintiffs have "openly refused" to pursue the only alternate route of obtaining proof of citizenship open to them, to wit, that of seeking a U.S. passport. They falsely claim that the "only reason given is that there are 'mail' delays which they do not wish to suffer," (INS2:26). Once again, this not only misses the point, but is simply untrue, and should result in Rule 11 sanctions. Paragraph 20 states as follows (emphasis added):

> To obtain a Certificate of Citizenship from INS, a U.S. citizen must file an Application for Certificate of Citizenship ("N-600 application") with supporting evidence at the I.N.S. office having jurisdiction over the applicant's residence. 8 C.F.R. §§341.1 and 241.2. Supporting documents include the applicant's birth certificate, the applicant's United States citizen parent's birth certificate, and documents evidencing compliance with any requirements that the United States citizen's parent have resided in the United States. An applicant for a Certificate of Citizenship can wait extended periods of time before the I.N.S. finally adjudicates an N-600 application and issues a Certificate of Citizenship. *Other means of acquiring evidence of U.S. citizenship acceptable to the social Security Administration, such as obtaining a U.S. passport, require the presentation of the same or equivalent evidence, and also frequently entail lengthy delays. During the time that an N-600 application, (or application for a U.S. passport), is pending, Defendants will not issue any document authorizing the applicant to be employed in the United States,* such as are provided to aliens who have applied for certain immigration benefits, during the pendency of such applications.

By placing the word "mail" in quotation marks, Defendants have deliberately attempted to create the false impression that Plaintiffs used that term in Paragraph 20. It is clear from the sentence in which it is embedded that the "lengthy delays" referred to in that paragraph are not caused by the U.S. Postal Service, but refer to the time consumed in adjudicating the application.

9

714

If, for example, the citizenship, or physical presence, of the U.S. parent were in dispute, the delay in issuing a passport while these facts are established would be roughly the same as in the case of an N-600 application.  The primary difference would be the lack of an administrative appeal. The denial of a passport would require a federal suit before it could be resolved. 8 USC 1503(a). Again, no interim employment authorization would be issued.

The measures suggested by Defendants, applying for a passport, or consular report of birth, [15] are alternatives to N-600 applications, not alternative means of obtaining employment authorization, while a claim to citizenship is being determined.  None would enable the applicants to obtain employment authorization, or social security cards, *while their requests for these alternative forms of proof of U.S. citizenship were pending*, a fact which Defendants studiously ignore.  The same obfuscation of the issues enables Defendants to argue that the case is not ripe as to those Plaintiffs whose N-600s are still pending, (INS2:21). Defendants correctly note that Plaintiffs cannot seek a declaratory judgement on their claims to citizenship until their applications are finally denied.

This is irrelevant.  Plaintiffs are not complaining about the status of their N-600 applications, or even the delay in adjudicating them. Rather, they seek employment authorization while those applications are being determined. [16]

And Defendants' claim that Plaintiffs filed "faulty applications before the SSA," (INS2:17), is simply an acknowledgment that in the

---

[15]  Plaintiffs could not obtain such reports, which may only be sought by the U.S. citizen parent.  In Mr. Salinas' case, his U.S. citizen father was too ill to travel, and passed away very shortly after INS finally acknowledged his birth in the United States. Moreover, INS no longer issues "citizen identification cards," so Plaintiffs could not obtain this form or proof either.

[16]  Similar arguments made a pp 22 and 30.

10

715

absence of the specified documents, they are not entitled to social
security cards, and any attempt to obtain one would be futile. [17]

Defendants' arguments under 42 U.S.C. §405(g), (INS2:28-29), simply
prove Plaintiffs' point.  Defendants assert that §405(g) "limits
judicial review to final decisions ... made after a hearing."
(INS2:28).  But Plaintiffs were not afforded, and, in the absence
of any of the specified documents, were advised that they were not
entitled to, a hearing on their request for social security cards.
Plaintiffs' Exhibit F.  Since Plaintiffs challenge the refusal to
issue such cards on Equal Protection, i.e., "constitutional"
grounds, they fall squarely within the mandate of *Brandyburg v.
Sullivan*, 959 F.2d 555, 558-559 (5th Cir. 1992) (decision made
without a hearing can only be challenged on constitutional
grounds), which case was cited by Defendants at(INS2:28).

Contrary to Defendants' assertions, moreover, the Supreme Court has
specifically held that the exhaustion requirement of §405(g) is not
jurisdictional.  *Bowen v. City of New York*, 476 U.S. 467, 482-483
(1986).  Similarly, the 60 day requirement is a non-jurisdictional
statute of limitations, that can be equitably tolled, *Id*. at 478.

Continuing up the scale of frivolity, we reach Defendants'
arguments about "finality," (INS2:31-32).  Defendants have refused
to issue employment authorization, or social security cards, on the
basis of properly filed N-600 applications setting forth a *prima
facie* claim to U.S. citizenship.  The fact that Plaintiffs could
make repeated applications, with the certainty that they would be
rejected, does not keep the denial from being "final."

---

[17]    Defendants also persist in claiming that Mr. Salinas
attempted to obtain a social security card by presenting "a
certificate of citizenship which was not his," (INS2:17).
Plaintiffs are becoming tired of Defendants' repeated and willful
misrepresentation of facts and law to this Court, and would
strongly urge that the Court impose Rule 11 sanctions of sufficient
"teeth" to act as a deterrent in the future.

716

Last, but not least, we reach Defendants' argument that Plaintiffs have not stated a claim upon which relief can be granted under the Equal Protection Clause, (INS2:34-38). The case at bar has nothing to do with Congress'·plenary power over the "admission of aliens," (INS2:34). The challenge herein is not to an "immigration provision," (INS2:35). Nor are we concerned with distinctions between "classes of aliens," (*Id.*).

Rather, the concern is for the denial to putative U.S. citizens of a benefit provided to admitted aliens, even those whose claim is derivative of the putative U.S. citizen's claim to citizenship. It is simply a denial of Equal Protection to have permitted Ms. Perez' husband to obtain employment authorization, and a social security card, on the basis of her claim to U.S. citizenship, while denying that benefit to her.

And even if "rational basis" were the appropriate test, there is no rational basis for the instant distinction. It is beyond the pale that Defendants would claim with a straight face that "INS may also determine that citizens have no need for temporary work author-ization," (INS2:37). It is inconceivable that foreign-born U.S. citizens do not need to work, but other foreign-born persons do.

The alleged desire to prevent fraudulent citizenship claims, but not fraudulent claims for other benefits, which carry the possibility of employment authorization, is equally arbitrary. For example, as occurred herein, in the case of Plaintiff Perez, an alien may obtain employment authorization on the basis of his or her spouse's claim to U.S. citizenship. If the spouse's claim were fraudulent, what would be the rational basis for preventing the alleged U.S. citizen from obtaining employment authorization, and a social security card, while the spouse is able to do so, on the basis of the same fraudulent claim?

And Defendants' "floodgates" argument, (INS2:37), is simply too

inarticulate to warrant a response.  Floodgates?  What floodgates?
A floodgate of persons filing N-600 applications, establishing a
*prima facie* claim to U.S. citizenship?  What a lovely "flood" that
would be, even from Defendants' perspective!  It would enable them
to document, as citizens, those persons with valid claims, and
place those whose claims cannot be sustained under deportation
proceedings.  Is that not what INS is supposed to be doing?

As noted, Plaintiffs will file more detailed points and authorities
in the near future, if the Court has not previously denied the
Defendants' second motion to dismiss.  However, in the interests of
not burdening the Court with the need to read another "book," and,
(given the total frivolity of the Defendants' position), of
potentially saving the Government an award of attorneys' fees, it
is urged that the Court promptly deny the instant motion.

Respectfully submitted,

LISA S. BRODYAGA
402 E. Harrison, 2nd floor
Harlingen, TX 78550
(210) 421-3226

MARY KENNEY
LYNN COYLE
Lawyers' Committee for Civil Rights
Under Law of Texas
2311 N. Flores
San Antonio, TX 78212
(210) 736-1503

THELMA GARCIA
301 E. Madison
Harlingen, Texas 78550
(210) 421-3226

13

718

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing, together with Plaintiffs'
Exhibit "K," was mailed, first-class postage prepaid, to Ernesto
Molina, Jr., Attorney, OIL, Box 878, Ben Franklin Station,
Washington, D.C. 20044, on January 24, 1997.

719

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


ANTELMA DOMINGUEZ-PEREZ, et. al.     )
                                     )
        Plaintiffs,                  )
                                     )        CIVIL ACTION NO. B-96-116
JANET RENO, et. al.                  )
                                     )
        Defendants,                  )


PLAINTIFFS' EXHIBIT "K"


3

720

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ANTELMA DOMINGUEZ-PEREZ,       )
et al.,                        )
                               )
          Plaintiffs,          )
                               )      No. B-96-116
     v.                        )
                               )
JANET RENO, et al.             )
                               )
          Defendants.          )
_____)

**DEFENDANTS' RESPONSES TO PLAINTIFFS'
SECOND SET OF REQUESTS FOR ADMISSIONS
AND AMENDMENTS TO PLAINTIFFS' SECOND
SET OF REQUESTS FOR ADMISSIONS**

1.  **Admit that Defendants have no reason to believe that on June
    27, 1995, Plaintiff Mario Salinas-Grimaldo did not present
    the documents identified as Plaintiffs' Exhibit "C" to the
    Harlingen, Texas, office of the Social Security Office.**

**Response:**

     The request is objected to as overly broad and vague as to
"no reason to believe."  To the extent that "no reason to
believe" is construed as meaning the Defendants have no basis on
which to confirm or deny the submission of the documents to the
Social Security Office, it is admitted.

2.  **Admit Plaintiffs' Exhibit "D" are true and unaltered
    documents which originated with the Harlingen, Texas office
    of the Social Security Administration, and that Defendants
    have no reason to believe that on or about June 27 through
    June 29, 1995, these documents were not given by an agent of
    said office, in person and/or by mail, either to Plaintiff
    Mario Salinas-Grimaldo, or to his attorney, Lisa S.
    Brodyaga.**

**Response:**

     The request is objected to as vague as to "true and
unaltered" and as to "no reason to believe."  To the extent that
"true and unaltered" is construed as meaning the documents
resemble documents submitted to the Social Security
Administration on behalf of Plaintiff Salinas, and to the extent
that "no reason to believe" is construed that Defendants
presently have no basis on which to deny either the authenticity
or actual sending of the documents, it is admitted.

2

3.    **Admit that Plaintiffs' Exhibit "E" is a true copy of a pleading filed with the Immigration Court in Harlingen, Texas on or about July 11, 1995 by an agent of Defendants.**

**Response:**

The request is objected to as vague as to "true copy" and as to "agent."  To the extent an answer is required, it is admitted.

4.    **Admit that Defendants have no reason to believe that Plaintiffs' Exhibit "F" are not true copies of letters sent on or about the dates indicated to the Harlingen, Texas, office of the Social Security Administration, attention Mario Gonzalez, Branch Manager.**

**Response:**

The request is objected to as vague as to "no reason to believe" and as to "true copies."  To the extent that "true copies" is construed as meaning the documents appear to be those sent to Mario Gonzalez, and to the extent that "no reason to believe" is construed as meaning that at present the Defendants have no basis on which to deny the authenticity of the documents or that they were actually sent and/or received, it is admitted.

5.    **Admit that Defendants·have no reason to believe that Mr. Gonzalez did not leave a message on the telephone answering machine of Attorney Lisa Brodyaga on or shortly before August 7, 1995, to the effect that there was no further review of the denial of his application for duplicate social security card available to Mr. Salinas-Grimaldo, and that he was not entitled to a hearing on his application before an Administrative Law Judge.**

**Response:**

The request is objected to as vague as to "no reason to believe."  To the extent that "no reason to believe" is construed as meaning that at present the Defendants have no basis on which to confirm or deny whether such telephone call was placed and/or received or whether the stated subject matter was the actual subject matter of the call, it is admitted.

6.    **Admit that at no time since he first made application for a duplicate social security card in June 1995 have Defendants had any reason to believe that Plaintiff Salinas-Grimaldo did not acquire U.S. citizenship at birth.**

**Response:**

722

3

Denied.

7.  **Admit that the documentation provided as Plaintiffs' Exhibit
    "C" presents a <u>prima facie</u> case establishing Mr. Salinas-
    Grimaldo's claim to have acquired United States citizenship
    at birth.**

**Response:**

   The request is objected to as calling for a legal judgment
only within the purview of the INS adjudicatory process and as
vague as to "prima facie."  To the extent that a response is
required, it is denied.

8.  **Admit that Defendants have no reason to believe that
    Plaintiffs' Exhibit "G" does not represent a true copy of
    the application and documentation provided to the Harlingen,
    Texas office of the Social Security Administration on or
    about November 21, 1995, <u>by Plaintiff Antelma Dominquez
    Perez</u>.**

**Response:**

   Admitted.

9.  **Admit that Plaintiffs' Exhibit "H" is a true and unaltered
    document generated by·the Harlingen, Texas office of the
    Social Security Administration, and that Defendants have no
    reason to believe that said document was not given by an
    agent of said office, in person and/or by mail, either to
    Plaintiff Antelma Dominguez Perez, or to her attorney, Lisa
    S. Brodyaga, on or about November 21, 1995.**

**Response:**

   The request is objected to as vague as to "true and
unaltered" and as to "no reason to believe."  To the extent that
"true and unaltered" is construed to mean that the documents
resemble those received by the Social Security Administration,
and to the extent that "no reason to believe" is construed as
meaning that Defendants presently have no basis on which to
confirm or deny the authenticity of the documents or the actual
submission or receipt of those documents, it is admitted.

10. **Admit that at the time of answering the instant Requests for
    Admission, it would be futile for Plaintiffs Graciela
    Alvarez de Zuniga, Diana Maria Gonzalez de Santos, Ceceilia,
    Jose, Abel, Francisca, and Luis Alberto De La Cruz Perez,
    and Maria Del Rosario Gutierrez De Limas to apply for social
    security cards at any office of the Social Security
    Administration in the Rio Grande Valley, by presenting
    application forms filed out in a manner similar to those of**

4

Mario Salinas-Grimaldo and Antelma Perez Dominguez, (see
Exhibits "C" and "G"), together with file-stamped copies of
their N-600 applications and supporting documentation, in
that they would not be provided with social security cards
on the basis of these applications, and, in the absence of
any of the documents specified in the letter of June 27,
1995, from Mario Gonzalez, Branch Manager of the Harlingen,
Texas office of the Social Security Office, to Plaintiff
Mario Salinas-Grimaldo, (see Plaintiffs' Exhibit "D"), said
Plaintiffs would not be afforded a hearing before an
Administrative Law Judge at which to further demonstrate
their entitlement to social security cards by proving that
they acquired U.S. citizenship at birth as claimed in their
N-600 applications.

**Response:**

Admitted to the extent that "futile" is construed to mean
that in the absence of those documents enumerated in 20 C.F.R.
§ 422.107, the Social Security Administration will not issue a
social security card and that Plaintiffs would not be granted a
hearing before an Administrative Law Judge and to the extent that
"supporting documentation" is construed as meaning any
documentation useful to support an N-600 application, excluding
those documents enumerated in 20 C.F.R. § 422.107.

11. Admit that at the time of the filing of the First Amended
Complaint herein, it would have been futile for Plaintiffs
Graciela Alvarez de Zuniga, Diana Maria Gonzalez de Santos,
Cecilia, Jose, Abel, Francisca and Luis Alberto De La Cruz
Perez, and Maria Del Rosario Gutierrez De Limas to apply for
social security cards at any office of the Social Security
Administration in the Rio Grande Valley, by presenting
application forms filled out [sic] in a manner similar to
those of Mario Salinas-Grimaldo and Antelma Perez Dominguez,
(see Exhibits "C" and "G"), together with file-stamped
copies of their N-600 applications and supporting
documentation, in that they would not have been provided
with social security cards on the basis of these
applications, and in the absence of any of the documents
specified in the letter of June 27, 1995, from Mario
Gonzalez, Branch Manager of the Harlingen, Texas office of
the Social Security Office, to Plaintiff Mario Salinas-
Grimaldo, (see Plaintiffs' Exhibit "D") said Plaintiffs
would not have been afforded a hearing before an
Administrative Law Judge at which to further demonstrate
their entitlement to social security cards by proving that
they acquired U.S. citizenship at birth as claimed in their
N-600 applications.

**Response:**

724

5

Admitted to the extent that "futile" is construed to mean
that in the absence of those documents enumerated in 20 C.F.R.
§ 422.107, the Social Security Administration will not issue a
social security card and that Plaintiffs would not be granted a
hearing before an Administrative Law Judge and to the extent that
"supporting documentation" is construed as meaning any
documentation useful to support an N-600 application, excluding
those documents enumerated in 20 C.F.R. § 422.107.

12. **Admit that Defendants have no reason to believe that**
    **Plaintiffs' Exhibit "I" does not represent a true and**
    **accurate copy of correspondence sent on or about the dates**
    **indicated thereon, to the persons to whom they were**
    **addressed, with copies sent to the persons as indicated**
    **thereon.**

**Response:**

The request is objected to as vague as to "no reason to
believe" and as to "true and accurate copy." To the extent that
"no reason to believe" is construed as meaning that at present
Defendants have no basis on which to confirm or deny either the
authenticity of the documents or the actual sending of the
documents, it is admitted.

13. **Admit that Defendants have no reason to believe that the**
    **addressees, and persons shown as having been sent copies, of**
    **the correspondence identified as Plaintiffs' Exhibit "I" did**
    **not receive said correspondence.**

**Response:**

The request is objected to as vague as to "no reason to
believe." To the extent that "no reason to believe" is construed
as meaning that at present Defendants have no basis on which to
confirm or deny either the authenticity of the documents or the
actual receiving of the documents, it is admitted.

14. **Admit that none of the persons by whom the correspondence**
    **identified as Plaintiffs' Exhibit "I" was received ever**
    **replied in writing to said correspondence.**

**Response:**

Admitted.

15. **Admit that there is no legal bar to the issuance by the**
    **Attorney General of temporary employment authorization**
    **documents to persons who present documentation demonstrating**
    **that they were born outside the United States, who have**
    **filed N-600 applications setting forth a _prima facie_ claim**
    **to United States citizenship, solely on the basis of the**

725

6

fact that they had presented such documentation, where the phrase "legal bar" is defined as any provision or principle of law which would render such an act **ultra vires** on the part of the Attorney General.

**Response:**

The request is objected to as overly broad and vague as to what is meant by "legal bar," as to "prima facie claim," and as to "ultra vires."  To the extent that a response is required, it is denied.

16.  **Admit that if the Attorney General issued temporary employment authorization documents to persons who present documentation demonstrating that they were born outside the United States, and who have filed N-600 applications setting forth a prima facie claim to United States citizenship, solely on the basis of the fact that they have presented such documentation, such an act would not be ultra vires on the part of the Attorney General.**

**Response:**

The request is objected to as overly broad and vague as to what is meant by "ultra vires."  To the extent that a response is required, it is denied.

17.  **Admit that various Attorneys General of the United States provided documents purporting to authorize employment authorization in the United States to certain classes of persons prior to the enactment of specific statutory authorization to do so.**

**Response:**

The request is objected to as vague as to "certain classes" and as to "specific statutory authorization."  To the extent a response is required, it is denied.

18.  **Admit that various Attorneys General of the United States have asserted an implicit authority to provide documents purporting to authorize employment authorization in the United States to certain classes of persons prior to the enactment of specific statutory authorization to do so.**

**Response:**

The request is objected to as vague as to "implicit authority."  To the extent a response is required, it is denied.

19.  **Admit that after the enactment of 8 U.S.C. § 1324a, various Attorneys General of the United States have provided**

724

7

documents purporting to authorize employment authorization
in the United States to certain persons and/or classes of
persons who are not lawful permanent residents and who are
not specifically authorized to be employed by any provision
of the Immigration and Nationality Act.

**Response:**

The request is objected to as vague as to "certain persons
and/or class of persons" and "not specifically authorized."  To
the extent that "not specifically authorized" is construed to
mean some statutory basis exists, it is denied.

20.  Admit that in the case of none of the classes of individuals
who are authorized to obtain employment authorization by 8
C.F.R. § 274a.12(c) does there exist specific statutory
authorization for the Attorney General to grant such
employment authorization.

**Response:**

The request is objected to as vague as to "specific
statutory authorization."  To the extent that "specific statutory
authorization" is construed as meaning some statutory basis for
the enactment, it is denied.

21.  Admit that 8 U.S.C. § 1324a(h)(3)(B) implicitly recognizes
the inherent power of the Attorney General to grant
employment authorization to persons in whose case the
Immigration and Nationality Act contains no specific
statutory provision authorizing them to be employed in the
United States.

**Response:**

The request is objected to as vague as to "implicitly
recognizes," as to "inherent power," and as to "specific
statutory provisions."  To the extent that "implicitly
recognizes" is construed as meaning does not preclude such power,
to the extent that "inherent power" is construed as meaning
powers conferred upon the Attorney General, and to the extent
that "specific statutory provisions" is construed as meaning
enumeration within a statutory provision, it is admitted.

22.  Admit that on April 19, 1996, Plaintiff Antelma Dominguez
Perez filed with the Harlingen, Texas office of INS, I-130
visa petitions, and I-485 applications for adjustment of
status, on behalf of her two minor Mexican national
children, Maria Dolores Perez-Dominguez, and Jose Luis
Perez-Dominguez, on which no action has been taken to date,
and that under current procedures, and in the absence of

728

8

special handling, it is unlikely that they will be scheduled
for interviews before April 1, 1997.

**Response:**

The request is objected to as vague as to "scheduled for
interviews before April 1, 1997."  To the extent that "scheduled
for interviews before April 1, 1997" is construed as meaning that
before April 1, 1997, the applications will have been scheduled
for a hearing, it is admitted as to the submission of the I-130
and I-485 petitions, and denied as to the likelihood of the
scheduling of interviews.

23. **Admit that Defendants have no [sic] adopted no procedures,
locally or nationwide, and, as of December 16, 1996, none
were under active consideration in the Harlingen INS Office,
to enable applications such as those filed by Plaintiff
Dominguez Perez on behalf of her children to be scheduled
for interviews before April 1, 1997.**

**Response:**

The request is objected to as overly broad and vague as to
date of the filing of the applications.  To the extent an answer
is required, it is denied.

24. **Admit that in the Harlingen INS Office appplications [sic]
for adjustment of status are not scheduled for appointments
in strict chronological order based on the date of filing,
and that the mean time between filing an applications for
adjustment of status and the scheduling of an appointment
thereon in cases involving employment based petitions is at
least three months less than the mean time between the
filing of such an applications and the scheduling of an
appointment thereon in cases involving family based
petitions.**

**Response:**

The request is objected to as overly broad and vague as to
"strict," as to "employment based," and as to "family based."  To
the extent a response is required, it is admitted.

25. **Admit that some persons who filed applications for
adjustment of status in the Harlingen INS Office on or after
April 19, 1996 have already been scheduled for appointments.**

**Response:**

Admit.

729

9

Submitted by,

FRANK HUNGER
Assistant Attorney General
Civil Division

DAVID V. BERNAL
Senior Litigation Counsel
Office of Immigration Litigation


ERNESTO H. MOLINA, JR.
Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
Post Office Box 878
Ben Franklin Station
Washington, D.C. 20044
(202) 616-9344

Dated:   January 22, 1997 ATTORNEYS FOR RESPONDENT

730

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**


ANTELMA DOMINGUEZ-PEREZ, et. al.     )
                                     )
      Plaintiffs,                    )
                                     )     CIVIL ACTION NO. B-96-116
JANET RENO, et. al.                  )
                                     )
      Defendants,                    )


**ORDER DENYING**

DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION
AND FOR FAILURE TO STATE A CLAIM,

AND
**ORDER GRANTING**

PLAINTIFFS' REQUEST FOR DEFAULT, AND
RULE 11 SANCTIONS


Upon consideration of Defendants' Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim, the response of the Plaintiffs, and the entire history of the case,

IT IS HEREBY ORDERED that said motion be, and the same hereby is, DENIED.

And upon further consideration of Plaintiffs' Request for Default, and Rule 11 Sanctions, the response of the Defendants, if any, and the record as a whole, and it appearing to the Court that Plaintiffs' motion is well founded,

731

IT IS HEREBY ORDERED that said motion be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that default be entered against Defendants, and that a hearing be scheduled, pursuant to Rule 55(e), Federal Rules of Civil Procedure, to permit Plaintiffs to fully establish their claim or right to relief, and

IT IS FURTHER ORDERED that, pursuant to Rule 11, Federal Rules of Civil Procedure, Defendants be sanctioned for their frivolous motions and dilatory tactics by paying reasonable attorneys' fees, in an amount to be determined at a later date, to Plaintiffs to compensate for the time required to defend against Defendants' frivolous motions and dilatory tactics.

IT IS FURTHER ORDERED that the Clerk of Court shall ensure that all parties, and counsel of record, are served with certified copies of the instant Order.

DONE at Brownsville, Texas,


this _____ day of _____, 1997.


_____
                    JUDGE PRESIDING

2

732