an asylum application under the standard of failure to state a claim must fail. The <u>Nietzke</u> decision also undermines the defendant's argument that an asylum application can be categorized as frivolous, on the basis of a determination that it fails to state a claim for asylum under existing law. Given the plain wording of the relevant regulations, a request for employment authorization may be rejected only if the underlying asylum application is "indisputably meritless" or "lacks an arguable basis in either fact or law." Moreover, while the INS may be justified in disbelieving an asylum application that describes "fantastic or delusional scenarios," it is not free, under the frivolous standard, to reject a request based on subtle credibility determinations regarding factual allegations in the application, whether those credibility determinations are made during informal interviews or in light of information gathered from objective, external research reports.

In many respects, a request for temporary employment authorization is analogous to a motion to reopen deportation proceedings to apply for asylum, pursuant to 8 C.F.R. §3.2. In order to prevail on a motion to reopen, the movant must establish a <u>prima facie</u> case that he or she is a refugee -- that is, has a well-founded fear of persecution. <u>See</u> <u>Ghadessi v. INS</u> 797 F.2d 804, 805 (9th Cir. 1986). To make such a showing, an alien "need only present an affidavit that is not inherently unbelievable, and that, if true, would establish a clear probability of future persecution." <u>Hernandez-Ortiz v. INS</u>, 777 F.2d 509, 514 (9th

24

675

Cir. 1985). More important, in <u>Ghadessi</u>, the Ninth Circuit held that the determination of whether an applicant has presented a <u>prima facie</u> case is not discretionary, and is to be reversed if not "correct" or "in accordance with the law." <u>Id.</u>; <u>accord</u> <u>Abudu v. INS</u>, 802 F.2d 1096, 1100 (9th Cir. 1986). Upon review of the <u>Abudu</u> decision, the Supreme Court expressly declined to rule on the Ninth Circuit's decision that the interpretation of the term <u>prima facie</u> was nondiscretionary and subject to <u>de novo</u> review by federal courts. <u>INS v. Abudu</u>, 108 S.Ct. 904, 911 (1988).

From the evidence adduced to date, it appears that defendant misapplies its interpretation of the term frivolous with respect to its review of both the factual allegations and legal theories underlying claims for asylum. Rather than denying requests for employment authorization based on a finding that the factual allegations in an asylum application are "inherently unbelievable," or "fantastic or delusional," it appears that defendant utilizes the interview process to make credibility determinations concerning these allegations. Defendant then denies as frivolous those requests in which the examiner, based on such an interview, finds the applicant to be "unconvincing," <u>see</u> Notes on Interview, File of Milton Honoris Rosa-Rivera, or in which an immigration judge has found the applicant to be "not particularly credible." <u>See</u> Declaration of Edward J. Czechowicz, Deportation Officer, at 6. Such subtle credibility determinations have no place in an evaluation under the frivolous standard.

25   674

In addition, an alien's responses in the interview appear to be used to contradict the factual allegations contained in the alien's asylum application, not to supplement them. Thus, for instance, Plaintiff Cisneros' request for employment authorization was denied, based on an interview in which the examiner found that the alien failed to articulate one of the five grounds for persecution. Yet, in his application for asylum, Cisneros alleges that he is a former member of a civil defense patrol, that he is known to have political opinions contrary to guerrilla forces in El Salvador, that he fears being killed by these guerrillas unless he agrees to join their ranks, and that he has received threats from the guerrillas. The factual allegations in this application are neither "inherently unbelievable" nor "fantastic or delusional." Moreover, these allegations specify that Cisneros is being persecuted because he holds a political opinion contrary to that of the guerrilla organization, one of the five grounds of persecution qualifying an alien for a discretionary grant of asylum, as specified in U.S.C. §§1101(a)(42)(A), 1158(a) (specifying a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion" as constituting qualifications for asylum). The United States Court of Appeals for the Ninth Circuit has held that a specific threat of kidnapping or conscription by guerrillas (in El Salvador)

aimed at a citizen who did not wish to join their ranks, may constitute a "well-founded fear of persecution." See <u>Arteaga v. INS</u>, 836 F 2d 1227 (9th Cir. 1988).

By reason of the similarity between the legal theory underlying Cisneros' asylum application and that considered by the Ninth Circuit <u>Arteaga</u>, it cannot reasonably be concluded that Cisneros' claim to asylum has no "arguable basis in law," unless his application is totally disregarded and the determination is made solely on the basis of the alien's responses during the interview. Nothing in the regulations authorizes the INS to entirely disregard the allegations in an asylum application when evaluating a request for employment authorization. In fact, 8 C.F.R. §274a(12)(c)(8) specifically directs the INS to determine whether the <u>application</u> is nonfrivolous. Thus, the use of an informal interview to contradict the factual allegations contained in an otherwise nonfrivolous application for asylum appears to be inconsistent with the plain wording of the regulation.

Finally, no mechanism exists in defendant's evaluation process by which defendant can consider whether a novel legal theory underlying an asylum application has an "arguable basis in law." Defendant routinely rejects requests for temporary employment authorization founded on asylum applications that do not precisely mimic the legal theories currently established in asylum law. The Supreme Court has stated, however, that a complaint that may fail on legal grounds is not necessarily

27  678

frivolous. See Neitzke, 109 S.Ct. at 1833. Moreover, the Fifth Circuit has recently recognized the significant impact that subtle differences in legal theories may have on the success of an application for asylum. See Sanchez-Perdomo v. INS, No. 88-4765, slip. op. (5th Cir. March 22, 1989). In Sanchez-Perdomo, the Fifth Circuit concluded that, while required military service alone does not state a claim for asylum, a claim that an alien may be required to serve in the military and commit acts violating his political and moral beliefs may succeed, and is, at least, not frivolous. The current INS practice of granting employment authorization only when the application for asylum is premised on a legal theory recognized under established asylum law flies in the face of the frivolousness standard, and undermines the goals that that standard is adopted to advance.5

---

5/The problem with defendant's failure to look beyond established law to determine whether an asylum application is frivolous is crystallized in Cruz-Lopez v. INS, 802 F.2d 1518 (4th Cir. 1986). In Cruz-Lopez, the Fourth Circuit determined that the alien, a Catholic El Salvadoran male, had failed to establish either a "clear probability of persecution" or a "well-founded fear of persecution" grounded on evidence that he had received one threatening note of a type common to that country, but had never been otherwise threatened or harmed. Chief Judge Winter dissented. The dissenting opinion concluded that the handwritten note was rendered a credible threat by the general level of political violence attending the Salvadoran civil war, and, therefore, Cruz-Lopez had demonstrated a well-founded fear of persecution. Under defendant's current practice of denying as frivolous requests for work authorization based on asylum applications whose legal theories do not comport with established law, Cruz-Lopez would not have been eligible for employment authorization, notwithstanding the fact that he had filed an asylum application credible enough to convince Chief
(Continued)

Given this court's conclusion that defendant's application of the term nonfrivolous may be contrary to the law, plaintiffs have established a likelihood of success on this claim.

3. **Filing a Request for Temporary Employment Authorization from a Red Cross Shelter.**

Plaintiff Menendez, who is in the custody of the Brownville, Texas, Red Cross Shelter, claims that she was precluded from requesting temporary employment authorization when an INS official refused to accept her written request, and informed her that she could not apply for employment authorization until she was released from custody. This assertion is made only on behalf of Menendez, and is supported only by her affidavit. In response, defendant asserts that aliens at the Brownsville shelter are free to sign themselves out every day for the entire day, and that Menendez could have signed herself out of the shelter and presented her application at a nearby INS office. Plaintiffs cite no authority for their argument that the alleged action violates INS regulations, nor do they assert that the INS official was following agency policy or acting in the customary manner of all INS officials.

Even if Menendez could meet the strict prerequisites for the issuance of a preliminary injunction, an even more fundamental problem precludes this court from addressing her claims for injunctive relief. To invoke the jurisdiction of the federal

---

Judge Winter that he had sustained his burden of proof on the merits.

29

courts, Menendez must demonstrate that the issue she raises -- the possibility that she will be precluded from requesting employment authorization -- constitutes a justiciable case or controversy which plaintiff has standing to raise in federal court. Article III of the U.S. Constitution requires the plaintiff to show that the "conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." KVUE, Inc. v. Austin Broadcasting Corp., 709 F.2d 922, 927 (5th Cir. 1983), aff'd. 465 U.S. 1092 (1984), citing Railway Mail Ass'n. v. Corsi, 326 U.S. 88, 93 (1945). This doctrine of justiciability is closely related to the rule that parties seeking relief in federal court must have standing to sue. The standing doctrine requires a party to demonstrate a "personal stake in the outcome" of a case. Baker v. Carr, 369 U.S. 186, 204 (1962). It is not enough that the plaintiff allege abstract injury from the challenged official conduct. Rather, she "must show that she has sustained or is immediately in danger of sustaining some direct injury as the result of the . . . conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." City of Los Angeles v. Lyons, 461 U.S. 95, 102-03 (1983) (citations omitted).

With respect to her claims for preliminary injunctive relief, plaintiff Menendez has satisfied neither of these closely related prerequisites to bringing such a federal claim. The

threshold requirements that a plaintiff must satisfy to demonstrate that she has standing to raise a justiciable controversy are most clearly laid out in City of Los Angeles v. Lyons, 461 U.S. 95 (1983). There, Lyons sought damages arising out of injuries he had received from a chokehold administered by the Los Angeles police during a routine traffic stop, and an injunction prohibiting the use of chokeholds in all but situations when there is the threat of the immediate use of deadly force against the officer. The Supreme Court rejected Lyons' plea for injunctive relief for lack of standing, finding that Lyons had "failed to demonstrate a case or controversy with the City that would justify the equitable relief sought." Lyons, 461 U.S. 95, 106 (1983). See also Carter v. Orleans Parish Public Schools, 725 F.2d 261 (5th Cir. 1984). The court concluded that standing to challenge the city's actions was not established merely by the fact that plaintiff had been injured by the practice in the past, absent a credible assertion that he faced a real and immediate danger of suffering the same injury in the future. Lyons, 461 U.S. 95 (1983).

In this case, plaintiff has alleged that she was, on one occasion, told that she would be unable to file a request for temporary employment authorization. However, she has not alleged that she attempted to file this request in accordance with INS procedures, and, more important, fails to make a credible showing that, even if the INS agent's alleged action was unlawful, she is likely to be harmed by a repetition of this action in the future.

In <u>Lyons</u>, the Supreme Court held that the mere allegation that the challenged conduct was authorized by the city is insufficient to make such a showing. <u>Lyons</u>, 461 U.S. at 107. The Court required the plaintiff to make a credible showing that "he, himself, will not only again be stopped by the police, but will also be choked without any provocation or legal excuse." <u>Lyons</u>, 461 U.S. at 106 n.7. Thus, in order to raise a case or controversy, plaintiff would not only have to allege that she was unlawfully precluded from filing her request, but also that the INS ordered or authorized its agents to act in such a manner and that she is likely to be a victim of this unlawful activity in the future.

The United States Court of Appeals for the Fifth Circuit applied the <u>Lyons</u> analysis in a recent decision, emphasizing the importance of the requirement that the plaintiff allege a "credible threat" of future injury that is "more than a mere speculative and remote possibility." <u>Hill v. City of Houston, Tex.</u>, 764 F.2d 1156, 1161 (5th Cir. 1985), <u>cert. denied</u>. 107 S.Ct. 3222 (1987). The plaintiff in <u>Hill</u> had been arrested four times under the challenged ordinance, and "repeatedly and steadfastly" asserted that he would continue to act in such a manner as to subject himself to future arrests. <u>Id.</u> Under these circumstances, the Fifth Circuit found that Hill had established a sufficiently realistic threat of future injury to satisfy the threshold requirements of standing and justiciability in his suit for declaratory and injunctive relief.

Plaintiff in this case, however, has failed to allege any such facts that would render her likelihood of future injury any more than a remote and speculative possibility. Thus, because Menendez has failed to adequately invoke the jurisdiction of the federal courts, the motion for preliminary injunction must be denied as moot as to her claims; and her claim for permanent injunctive relief against the Attorney General should be dismissed.

## Conclusion

The court's distress at the violence and terror inflicted on civilian victims of the tragic civil war in El Salvador cannot be overstated. Nor, however, can its respect for the manner in which the INS has risen to the complex and formidable challenge of controlling the influx of illegal immigrants into this country from Central and South America. The motion before the court does not require that these sympathies be balanced. Rather, plaintiffs have ask the court to evaluate whether defendant's regulations are lawful, and whether the INS applies these regulations in a lawful manner. Indeed, as these issues are raised in a motion for preliminary injunction, the court must determine not that plaintiffs have prevailed on the merits, but only, inter alia, that they have established a substantial likelihood of success on the merits. Because all plaintiffs but Menendez have made such a showing with respect to one of their

33     684

claims, it is determined that, as to them, the motion for preliminary injunction should be granted in part and denied in part.

SIGNED this 21st day of July, 1989.

_____
Chief Judge