IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ANTELMA DOMINGUEZ-PEREZ, et. al., | § § § § | |
| Plaintiffs, v. | § § § | CA NO. B-96-116 |
| JANET RENO, et. al., | § § § § | |
| Defendants. | § | |

United States District Court
Southern District of Texas
FILED

FEB 11 1997

Michael N. Milby
Clerk of Court

**SUPPLEMENT TO PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS**

In their earlier response to Defendants' Motion to Dismiss, plaintiffs indicated that they had not had sufficient time to exhaustively research all of the issues raised by the defendants. In the interest of expediency, and because plaintiffs believed defendants' motion to be frivolous, plaintiffs filed their initial response, indicating that a supplement would be forthcoming if the Court had not yet ruled on defendants' motion. Plaintiffs now offer this supplement to aid the court on three issues raised by defendants. Plaintiffs continue to assert that defendants' motion is frivolous; at the same time, plaintiffs recognize that the motion addresses important threshold questions and want the court to feel confident that no barriers exist to its jurisdiction.

I. **DEFENDANTS HAVE NOT SHOWN THAT PLAINTIFFS' CONSTITUTIONAL CLAIMS ARE INVALID.**

    A.   Defendants' argument that plaintiffs should be treated as "aliens" for purposes of determining their constitutional rights is unconvincing.

Defendants' argument that plaintiffs must be considered "aliens" for purposes of assessing

the merits of their constitutional claims is not supported by either statute or case law, (INS2: 1-2). Defendants argue that INS has not had an opportunity to adjudicate the applications of the remaining plaintiffs, therefore they should be treated as aliens in analyzing their constitutional claims, (INS2: 2). Defendants ignore the fact that plaintiffs are not applying for citizenship, as a lawful permanent resident would apply for naturalization. Plaintiffs are simply applying for affirmation that they acquired United States citizenship at birth.

The Immigration and Nationality Act ("INA"), pursuant to 8 U.S.C. §1401, provides that children born outside the United States to certain U.S. citizens <u>shall</u> <u>acquire</u> U.S. citizenship <u>at birth</u> if they meet the requirements set out in the statute. The provision providing the statutory authority for the issuance of a certificate of citizenship states that a person "who is a citizen of the United States by virtue of...paragraph (c), (d), (e), or (g) of section 1401 [the acquired citizenship provisions]...may apply to the Attorney General for a certificate of citizenship." 8 U.S.C. §1452(a). It is clear that Congress did not intend individuals who claim citizenship under 8 U.S.C. §1401 to become citizens only after the Immigration and Naturalization Service issued a certificate of citizenship; rather Congress conferred citizenship on this group at the time of birth.

Defendants also argue that as persons born abroad, "the plaintiffs with pending applications are presumed to be aliens until they prove to the INS that they are citizens," (INS2: 2). Neither, <u>Hauenstein v. Lynham</u>, 100 U.S. 483 (1879) nor <u>Corona-Palomera v. I.N.S.</u>, 661 F.2d 814 (9th Cir. 1981), in any way support such a sweeping assumption, (INS2: 2).

<u>Corona-Palomera v. I.N.S.</u>, 661 F.2d 814 (9th Cir. 1981) involves the narrow issue of whether the government met its burden of establishing the petitioners' alienage and whether the

burden properly shifted to the petitioners to establish the time, place and manner of their entry into the United States. Corona-Palomera v. I.N.S., 661 F.2d 814 (9th Cir. 19811). In their deportation case, petitioners made no claim that they were United States citizens. The Ninth Circuit found that the admission of birth certificates showing petitioners' birth abroad was sufficient evidence to presume alienage and shift the burden of proof to the petitioners. Id. at 818. Since the petitioners could not overcome the presumption, the Ninth Circuit found that the Immigration Judge acted properly in finding them deportable. Id.

Nothing in the opinion suggests that this presumption should apply when considering the constitutional rights of a foreign-born United States citizen. Defendants assume that the assignment of the burden of proof in a deportation hearing (a procedural issue) should govern how the deprivation of substantive rights (constitutional rights) should be evaluated. The Ninth Circuit was not wrestling with a constitutional claim by individuals outside of deportation proceedings who have made a prima facie showing of U.S. citizenship. Defendants are comparing apples with oranges.

Hauenstein v. Lynham, 100 U.S. 628 (1980) has absolutely nothing to do with the rights of someone who claims United States citizenship and it is quite shameful that defendants even cite it. This 1880 case involves an interpretation of the 5th article of the Treaty between the United States and the Swiss Confederation and whether the treaty's provisions take precedent over a conflicting state law. None of the plaintiffs were United States citizens or ever made claim to U.S. citizenship. As is obvious from the facts, this case does not come close to supporting defendants' position that this Court should presume that plaintiffs are "aliens" for purposes of analyzing their constitutional claims.

B.  The general proposition that Congress and the executive Branch can treat aliens and citizens differently does not defeat plaintiffs' constitutional claims.

Defendants argue that plaintiffs' claims fall short of a constitutional violation because due process does not require that all aliens enjoy the same privileges as citizens or that all aliens be treated alike, (INS2: 34). Plaintiffs' constitutional challenge to defendants' policies does not involve a claim by a class of aliens for rights equal to those citizens. To the contrary, plaintiffs, foreign-born United States citizens, are seeking the same right to engage in lawful employment as is afforded to several classes of aliens. Defendants ignore the significance of the fact that they have already found that three of the original four plaintiffs acquired U.S. citizenship at birth. Clearly then, at the time these plaintiffs were deprived of the right to engage in lawful employment (while their applications for Certificates of Citizenship were pending), defendants agree that they were in fact citizens of the United States.

In an apparent acknowledgement of plaintiffs' position that they are U.S. citizens and should be treated as such for purposes of analysis, defendants argue that Congress is free to deny rights to an United States citizen that it has granted to an alien, (INS2: 34-35, citing Matthews v. Diaz, 426 U.S. 67 (1976)). In Matthews v. Diaz, the Supreme Court stated that, "[A] host of constitutional and statutory provisions rest on the premise that a legitimate distinction between citizens and aliens may justify attributes and benefits for one class not accorded to the other; [footnote deleted]." Matthews v. Diaz, 426 U.S. 67, 78-79 (1976) (emphasis added). In a footnote cited by the defendants, the Supreme Court describes several statutory provisions restricting the rights of aliens and mentions two attributes characteristic of citizens and not aliens. See, 426 U.S. at 78, n. 12. Neither of the statutory provisions cited makes the case that the Executive Branch is free to deprive citizens of rights it grants to aliens.

619

The cited provisions include the selective service registration statute excluding aliens admitted as non-immigrants under 8 U.S.C. 1101(a)(15) from the registration requirements. See, 50 U.S.C. §453(a). The effect of the selective service statute is not that aliens are getting more "rights" than United States citizens, but rather is a recognition of the fact that citizens stand in a different relationship to the sovereign than a foreign national who is temporarily present in the United States. They, as citizens, have different attributes than aliens, and are required to shoulder additional responsibilities to the State. The fact that Congress can place more responsibilities on a United States citizen than on certain groups of aliens does not in any way support Defendants' argument that the Executive Branch is free to grant more benefits (related to a constitutionally protected liberty interest such as the right to seek lawful employment) to aliens than to individuals who have made a prima facie showing of United States citizenship.[1] Unlike the selective service statue, defendants' policies result in a denial of an important liberty interest to United States citizens.

The other provision cited in this footnote is 19 U.S.C. §1586 which attaches penal consequences to unlawful unlading or transshipment of vessels. A subsection of 19 U.S.C. §1586 makes it unlawful for any citizen of the United States to engage in unlawful unlading or transshipment of any vessel subject to the forfeiture provisions under U.S. law "at any place." In contrast, the statute makes it unlawful for any foreign national to engage in this conduct only if the illegal unlading or transshipment occurs "at any place within the United States or within one league of the coast of the United States." 19 U.S.C. §1586(e). The fact that this statute

---

[1] Furthermore, in assessing the selective service statue under an equal protection analysis, it is certainly rational to exclude non-immigrant aliens who by definition are not permanently residing in the United States from selective service registration.

620

imposes criminal liability on a broader range of conduct by citizens than aliens proves nothing. This disparity clearly results from limitations under international law in the United States' power to punish conduct by foreign nationals outside U.S. territory.

Plaintiffs do not dispute the Supreme Court's view there is no general prohibition on congress treating aliens and citizens differently. As the two statutory provisions described above illustrate, along with the privileges of U.S. citizenship come certain responsibilities to the sovereign that may not be imposed on guests of the United States. However, the general authority to treat aliens and citizens differently does not justify disparate treatment which burdens the protected liberty interests of foreign-born United States citizens. The Executive Branch cannot irrationally deprive foreign-born United States citizens of the ability to engage in lawful employment while at the same time granting this privilege to "similarly situated" aliens.[2]

> B. The proper test for determining the validity of plaintiffs' constitutional claims is whether defendants' policies are rationally related to a legitimate governmental interest and defendants' policies fail to meet this standard.

Defendants make essentially two arguments with respect to plaintiffs' equal protection claim. First, defendants argue that to make a valid constitutional claim, plaintiffs have the "heavy burden" of showing that there is no set of circumstances which would render the Act valid, (INS2: 36). Second, defendants argue that the courts have limited review over issues regarding the admission of aliens, (INS2: 34-35).

In arguing that plaintiffs have failed to meet their burden of proof, defendants ignore the

---

[2] Furthermore, even if plaintiffs should be "presumed" to be aliens, due process still requires that the disparate treatment of different classes of aliens be "rational."

procedural posture of the case. Defendants challenge plaintiffs' constitutional claims under Rule 12(b)(6). They produce no evidence to support their motion, but instead rely only on legal arguments. As a consequence, plaintiffs allegations must be taken as true. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, ___, 112 S. Ct. 2130, 2137 (1992). Moreover, at this early juncture, plaintiffs burden is limited to making a colorable constitutional claim. As discussed below, plaintiffs have made such a claim and defendants' motion must be denied.

Additionally, defendants neglect to offer any explanation as to how plaintiffs have failed to meet their burden. In other words, defendants conspicuously neglect to articulate under what circumstances the denial of work authorization to those who have made a prima facie claim of U.S. citizenship could be considered "valid."[3] The filing of an N-600 application constitutes a prima facie, non-discretionary, claim to United States citizenship. Defendants' policies represent an across the board denial of work authorization (and social security cards) to all individuals with pending N-600 applications. There are no circumstances which would render such an across the board policy valid.

Plaintiffs' claim is distinct from the case, <u>El Rescate Legal Services v. EOIR</u>, 959 F.2d 742 (9th Cir. 1992), cited in defendants' motion, (INS2: 37). In <u>El Rescate</u>, plaintiffs challenged on its face the statutory and regulatory scheme concerning the quality of interpretation in proceedings before the Executive Office of Immigration Review and the scope of the proceedings required to be translated. <u>Id</u>. The Ninth Circuit found no constitutional infirmity merely because the regulations left the responsibility for determining what parts of the

---

[3] Defendants speculate about possible reasons why their policy "may" be valid, but offer no evidentiary support for their speculation (INS2: 37).

hearing needed to be translated to the discretion of the Immigration Judge. 959 F.2d at 752. Therefore, the regulatory scheme could be rendered valid, and, as a result, the court concluded that plaintiffs' facial challenged failed. Id.

In the instant case, the across the board denial of work authorization to N-600 applicants is not valid under any circumstances. In this sense, plaintiffs' claim is much closer to the petitioner's claim in Francis v. I.N.S., 532 F.2d 268 (1976). In Francis, the petitioner challenged the denial of his right to file for relief from deportation under 8 U.S.C. §1182(c).[4] The petitioner argued that the unavailability of this waiver in deportation proceedings constituted a denial of his equal protection rights because it was irrational to make the waiver available to those who have departed the country and were subsequently placed in exclusion proceedings, but deny the waiver to those similarly situated aliens who have never made a departure. The Court agreed and found the distinction irrational, thereby making the waiver available to those in deportation proceedings who have never made a departure from the United States. The blanket denial of the waiver to the class of persons defined in Francis is similar to the across-the-board denial of work authorization to N-600 applicants. Under neither policy does there exist a set of circumstances which would render the scheme valid. Plaintiffs' constitutional claims meet the test articulated in El Rescate.

Defendants' second argument is that review is limited to whether there is a "legitimate and bona fide reason" for the defendants' actions, (INS2: 35). Defendants cite minimizing

---

[4] 8 U.S.C. §1182(c) provides that aliens lawfully admitted for permanent residence who temporarily proceeded aborad and who are returning to a lawful unrelinquished domicile of seven years may be admitted to the United States at the discretion of the Attorney General without regard to certain provisions rendering such an alien excludable from the U.S.. 8 U.S.C. §1182(c).

fraudulent applications and avoiding a flood of applications as possible "legitimate" reasons for denying work authorization to N-600 applicants while granting it to many aliens seeking discretionary immigration benefits, (INS2: 37). In addition, defendants opine that perhaps N-600 applicants do not need work authorization and for this reason the Attorney General is correct in making it unavailable to this group, (INS2: 27).

The "facially bona fide and legitimate reason" standard is not appropriate in this case. This standard is generally limited to situations where a United States citizen is claiming a deprivation of rights as a <u>collateral effect</u> of the application of a statute or regulation aimed at limiting the rights of aliens. For example, at issue in <u>Fiallo v. Bell</u>, 430 U.S. 787 (1977), were the rights of alien children, not United States citizens. "Of prime importance in the Court's decision to review the INA provisions challenged in <u>Fiallo</u> with such deference was its conclusion that at issue there were the rights of the alien children, not the rights of United States citizens." <u>Anetekhai v. I.N.S.</u>, 876 F.2d 1218, 1222 (5th Cir. 1990). Similarly, in <u>Kleindeinst v. Mandel</u>, 408 U.S. 753 (1972), United States citizens challenged a policy on the basis that their first amendment rights were violated when a prominent speaker from Belgium was denied admission to the United States on the basis of his writings on world communism. Unlike plaintiffs' claim, the challenged statute involved the admissibility of aliens and the interests of United States citizens were only collaterally effected.[5]

---

[5] The Supreme Court stated, "In the case of an alien excludable under 212(a)(28), Congress has delegated conditional exercises of the power to the Executive. We hold that when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant." <u>Kleindienst v. Mandel</u>, 408 U.S. 753, 770 (1972).

624

Rodriguez v. I.N.S., 9 F.3d 408 (9th Cir. 1993), also cited by defendants involves a statute which deals purely with distinctions among classes of aliens and the rights of United States citizens were not at issue. The Ninth Circuit had to determine whether Congress could lawfully distinguish among classes of aliens with criminal convictions in determining who would be eligible to apply of relief from deportation. Id. The Court concluded that such distinctions were a proper exercise of Congressional power. Id.

In the Fifth Circuit, the appropriate standard remains whether the statute bears a rational relationship to a legitimate governmental interest. Anetekahai v. I.N.S., 876 F.2d 1218 (5th Cir. 1989).[6] Several courts have found comparable irrational distinctions in violation of the due process guarantees under the U.S. Constitution. For example, in Hampton v. Mow Sun Wong, 426 U.S. 88 (1976), the Supreme Court struck down a regulation by the Civil Service Commission excluding all non-citizens from most positions of federal service. In finding the regulation unconstitutional, the Supreme Court stated:

> We do not agree, however, with the petitioner's primary submission that the federal power over aliens is so plenary that any agent of the National Government may arbitrarily subject all resident aliens to different substantive rules from those applied to citizens.

Id. at 101. The Court went on to note that, "When the Federal government asserts an overriding national interest as justification for a discriminatory rule which would violate the Equal Protection Clause if adopted by a State, due process requires that there be a legitimate basis for presuming that the rule was actually intended to serve that interest." Id. at 103. After reviewing the interests asserted by the Chairman of the Civil Service Commission, the court

---

[6] In this case, the Fifth Circuit declined to adopt the "facially bona fide and legitimate reason" standard but instead applied the rational basis standard. Anetekhai, 876 F.2d 1222, n.7.

625

found that they could form an acceptable rationalization for such a discriminatory rule. Id. at 116.

As previously mentioned, in Francis v. I.N.S., the Second Circuit Court of Appeals struck down the irrational distinction between those who have remained in the country and those who have departed with respect to eligibility for a waiver of deportation under 8 U.S.C. §1182. Francis v. I.N.S., 532 F.2d 268 (2nd Cir. 1976). This rule was followed in the Fifth Circuit in the case of Ghassan v. I.N.S., 972 F.2d 631, 633, n.2 (5th Cir. 1992). The Eleventh Circuit found unconstitutional, for similar reasons as those stated in Francis, the denial of a waiver under 8 U.S.C. §1182(h) to a class of aliens who never departed, when the waiver was available to those who made a departure.

Significantly, however, under either standard, plaintiffs have made a colorable showing that defendants' policies are unconstitutional. Defendants have not rebutted this claim by demonstrating any basis for this policy - either rational or facially bona fide and legitimate. Defendants recitation of possible reasons for their policy cannot substitute for proof of the actual basis of their policy.

Plaintiffs' due process claims are valid. Defendants have failed to articulate any plausible reason for depriving applicants for Certificates of citizenship interim work authorization while making it available to aliens seeking discretionary immigration benefits.

## II. PLAINTIFFS' COMPLAINT SATISFACTORILY DEMONSTRATES THAT EACH HAS SUFFERED ACTUAL INJURY.

Defendants' arguments that plaintiffs lack standing must fail for two significant reasons. First, defendants misstate the law when they claim that "plaintiffs must show that they had obtained employment and needed work authorization or that they had an imminent expectation

11

626

of a job," (INS2: 11).[7]  Second, defendants speculate that plaintiffs' allegations of actual injury are "unlikely", apparently because no proof of these allegations has been offered at this initial pleading stage. In fact, however, plaintiffs have each suffered an actual, concrete injury as demonstrated in their First Amended Complaint.

    1. Contrary to defendants' assertions, plaintiffs have been injured by the very fact that they cannot obtain work authorization from the defendants, and thus they do not need to make any further showing that they have actually been denied employment. "It cannot validly be disputed that an unreasonable denial of work authorization, or an unlawful delay in adjudicating work authorization, results in substantial threat of harm to plaintiffs, by preventing them from working to support themselves pending resolution of their claims..." Ramos v. Thornburgh, Memorandum Opinion, at 6 (E.D. Tex. July 21, 1989) (attached hereto). See also, National Center for Immigration Rights v. I.N.S., 743 F.2d 1365 (9th Cir. 1984); Diaz v. I.N.S., 648 F.Supp. 638, 647-48 (E.D. Cal. 1986).

    As with the denial of employment authorization, the denial of a social security number ("SSN"), in and of itself, constitutes the plaintiffs' injury in this case. An SSN is a statutory benefit, the issuance of which is necessary to receive other benefits under the Social Security Act. "A determination of eligibility for an SSN, therefore, constitutes a property interest protected by the Due Process Clause of the Fifth Amendment." Jones v. Bowen, 692 F.Supp. 887, 892 n.6 (N.D. Ill. 1988), citing Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 1019 (1970).

---

[7] Defendants later contradict this statement when they make the more absurd argument that "[u]ntil plaintiffs obtain a job only to lose it for failure to produce evidence of work authorization, they have sustained no injury in fact," (INS2: 13).

627

Furthermore, plaintiffs have additionally alleged injury as a result of defendant Chater's refusal to provide a hearing to challenge the denial of an application for an SSN. Plaintiffs "need not demonstrate that review of the decision would result in the issuance of an SSN or duplicate card"; the denial of an SSN without an opportunity for a hearing "constitutes sufficient injury to confer standing to challenge the constitutionality of the procedure." Jones v. Bowen, 692 F.Supp., at 891.

2. Defendants are forced to acknowledge that plaintiffs have in fact alleged exactly the type of injury that defendants believe is required: that each plaintiff "made good faith efforts to obtain employment, only to be denied for a lack of work authorization," (INS2: 12).[8] Defendants proceed to speculate that these allegations are "unlikely". Id. Similarly, without offering any evidence, defendants' later speculate about other potential causes for plaintiffs' inability to obtain employment, (INS2: 18). ("...the employers may simply not be hiring; the plaintiffs may be unqualified for the types of work they have been seeking; or, more importantly, the plaintiffs may have never attempted to obtain employment.") Such speculation is both unsupported and entirely irrelevant in considering the merits of a motion to dismiss.

As the Supreme Court has noted, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we

---

[8] At other points in their brief defendants are less honest: they repeatedly, and falsely, claim that plaintiffs have not made this "necessary" allegation. See, e.g., (INS2: 13) ("Nor has [plaintiff Salinas] even alleged that he would have had employment but for his lack of work authorization.") Similar to all other plaintiffs, plaintiff Salinas specifically alleged that "[h]e applied for various jobs, and was denied employment for no other reason than that he did not have either a social security card, or a document from INS, demonstrating that he was entitled to be employed during the pendency of his N-600 application." (emphasis added) Plaintiffs First Amended Complaint, ¶ 30.

628

'presume that general allegations embrace those specific facts that are necessary to support the claim.'" <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, __ , 112 S.Ct. 2130, 2137 (1992), quoting <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990). It is only later, in response to a motion for summary judgment, that plaintiffs must provide evidentiary support for their allegations of injury. <u>Lujan</u>, <u>supra</u>, 112 S.Ct., at 2137.[9]

In their first amended complaint, plaintiffs alleged facts sufficient to support their claims of injury, even under defendants' incorrect and heightened standard for such injury. Defendants have offered no evidence to support their speculations that plaintiffs were denied jobs for a reason other than that which plaintiffs have alleged: the lack of either work authorization or a social security card. Thus, in reviewing defendants' Rule 12(b)(1) motion, "plaintiff[s] [are] left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised - the court must consider the allegations in the plaintiff[s'] complaint as true." <u>Williamson v. Tucker</u>, 645 F.2d 404, 412 (5th Cir. 1981) (Finding that where a motion to dismiss for lack of subject matter jurisdiction is based on the face of the complaint, and no evidence outside the complaint has been offered, the allegations in the complaint must be taken as true.)[10] Here, as defendants acknowledge at 12, plaintiffs have plead exactly the type of injury that defendants claim is necessary. Defendants offer no evidence to rebut these claims,

---

[9] Significantly, both of the cases relied upon by defendants were decided at the summary judgment stage, not on motions to dismiss before discovery was complete. <u>See</u>, <u>Lujan</u>, <u>id</u>.; <u>Snake River Farmers' Association v. Department of Labor</u>, 9 F.3d 792 (9th Cir. 1993).

[10] As noted, defendants have offered absolutely no evidence to rebut plaintiffs' factual allegations supporting their claim to injury. Had defendants offered such evidence, however, this Court would be required to give plaintiffs an opportunity for discovery and for a hearing to establish jurisdiction. <u>Williamson v. Tucker</u>, 645 F.2d, at 414.

629

and thus their motion to dismiss must fail on this basis.

### III. PLAINTIFFS HAVE STATED A COGNIZABLE CLAIM AGAINST THE SOCIAL SECURITY ADMINISTRATION UNDER 42 U.S.C. §405(g).

1. Plaintiffs challenge the nonissuance of social security numbers by Commissioner Chater on two grounds. First, they claim that the Commissioner's refusal to consider an N-600 application as evidence of citizenship violates the Social Security Act and the Fifth Amendment. Plaintiffs' First Amended Complaint, ¶ 50. Second, they additionally allege that her refusal to provide an administrative hearing following a denial of an SSN violates the due process clause of the Fifth Amendment. Id., ¶ 51.

Plaintiffs bring both of these challenges pursuant to 42 U.S.C. §405(g), the statutory grant for judicial review of decisions by the Commissioner. A determination by the Commissioner not to issue a social security number is a decision under 42 U.S.C. §405(c). Like all other decisions under this section, a decision not to issue a social security number is subject to administrative and judicial review under §405(g). Jones v. Bowen, 692 F.Supp., at 892 ("Applicants for SSNs and duplicate cards are entitled to judicial review to redress errors in the denial of applications, as with any other decision of the Secretary.")

In their second motion to dismiss, defendants now argue that the case against defendant Chater should be dismissed because plaintiffs have not satisfied alleged "jurisdictional" requirements of 42 U.S.C. §405(g): that there be a final administrative decision and that the suit be filed within sixty days of this final decision, (INS2: 29). This jurisdictional argument is specifically foreclosed, however, by several Supreme Court decisions holding that neither the §405(g) exhaustion requirement nor the sixty day statute of limitations is jurisdictional. Bowen v. City of New York, 476 U.S. 467, 478, 482-483 (1986); see also, Mathews v. Eldridge, 424

15

630

U.S. 319, 328 n.9 (1976); Weinberger v. Salfi, 422 U.S. 749, 764 (1975).[11] Rather, the exhaustion requirement is subject to waiver and the statute of limitations to equitable tolling. For the reasons discussed below, the present case is an appropriate instance for both a waiver and equitable tolling.

    2. 42 U.S.C. §405(g) limits judicial review of a claim under the Social Security Act to "any final decision of the Secretary made after a hearing to which [the applicant] was a party." Defendants argue that the Commissioner's denial of a SSN cannot be reviewed because it is a decision made without a hearing, and thus is outside of the parameters of §405(g), (INS2: 29). It is extremely ironic that defendants' attempt to preclude judicial review on this basis, since a hearing is exactly what plaintiffs seek and what defendants have, to date, denied.

    Furthermore, as defendants note, the Supreme Court has excepted from this statutory rule those cases that raise a colorable constitutional claim, (INS2: 28); see, e.g., Califano v. Sanders, 430 U.S. 99 (1977). Plaintiffs here specifically challenge the constitutionality of the Commissioner's actions, and thus the "availability of judicial review is presumed". Id., 430 U.S., at 109.

    Similarly, the fact that the Commissioner provides no administrative procedure to challenge the denial of an SSN forecloses her argument that judicial review is precluded because

---

[11] Plaintiff Salinas presented a claim for a social security number to the Social Security Administration when he filed his application for a duplicate social security card, and thus he has met the only "jurisdictional" requirement of §405(g). Plaintiffs' First Amended Complaint, ¶ 29; see, Bowen v. City of New York, 476 U.S., at 483; Mathews v. Eldridge, 424 U.S., at 328. As such, this Court has jurisdiction to consider his claim brought on behalf of himself and similarly situated individuals who have or will apply for a SSN and have or will be denied. See, Jones v. Bowen, 692 F.Supp. 887, 889 n. 1.

631

she has not issued a "final decision", (INS2: 29).[12] Because plaintiffs "have proceeded as far as they may go within the Department of Health and Human Services, the [ ] denials of their requests for SSNs, new SSNs or duplicate cards constitute final decisions within the meaning of the Act." Jones, 692 F.Supp., at 890; Attorney Registration and Disciplinary Com'n v. Schweiker, 715 F.2d 282, 289 (7th Cir. 1983) (Finding that, since a request for a hearing would have been denied, and the plaintiff had gone as far as it could go within the agency, the agency's decision was final within the meaning of the statute.)

In short, the exhaustion requirement embedded in the §405(g) provision for a "final decision...made after a hearing" must be waived; the "no process" policy of defendant Chater, challenged on constitutional grounds by the plaintiffs, is exactly what prohibits such exhaustion. "[A]pplication of the exhaustion doctrine is 'intensely practical.'" Bowen v. City of New York, 476 U.S., at 2032, quoting Eldridge, 424 U.S., at 331, n.11. Here, it would not only be futile for plaintiffs to exhaust their administrative remedies, see, City of New York, 476 U.S., at 2033, it would be impossible.

3. Defendants also challenge plaintiffs failure to file this suit within sixty days of the denial of plaintiff Salinas' application for a duplicate social security card, (INS2: 29). Equities favor tolling the statute of limitations in this case for two related reasons.

First, the customary purpose for a statute of limitation is not served here. Statutes of limitations are "designed to promote justice by preventing surprises through the revival of claims

---

[12] Plaintiff Salinas requested reconsideration in a timely fashion but was specifically advised that no further administrative review was available. See, Plaintiffs' Exhibits D and F, previously filed with the Court. The defendants have since admitted that it is their policy to provide no review of these decisions. See, Plaintiffs' Exhibit J, Defendants' Response to Plaintiffs' Second Set of Requests for Admissions, No. 21.

17

632

that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." City of New York, 476 U.S., at 2030, n. 13, quoting American Pipe and Construction Co. v. Utah, 414 U.S. 538, 554 (1974). Defendants admit, however, to keeping no record of denied applications for social security numbers; to the contrary, they routinely return denied applications and all attached evidence to the applicant. See, Plaintiffs' Exhibit J, Defendants' Response to Plaintiffs' First Request for Admissions, Nos. 20-21. Thus, unlike social security disability claims which frequently involve voluminous evidentiary records, there is no record here that could become stale.

It is also the practice of the agency to invite repeated applications for SSNs from denied individuals, (INS2: 28). Plaintiff Salinas could easily have followed this advice and, sixty days prior to this lawsuit, filed a new application, attaching the same evidence. This new application would have been returned to him for the same reason his 1995 application was returned, and the Social Security Administration would have kept no record.

Clearly, no injustice results to defendant Chater from tolling the sixty day period, when the agency itself invites the "continuing revival of claims." American Pipe and Construction Co., 414 U.S., at 554.

Respectfully submitted,

*[signature]*

MARY A. KENNEY
LYNN COYLE
Lawyers' Committee for Civil
Rights Under Law of Texas
Immigrant and Refugee Rights Project
2311 N. Flores Street
San Antonio, Texas 78212-3817
(210) 736-1503
FAX 736-3958

LISA BRODYAGA
402 E. Harrison, 2nd floor
Harlingen, Texas 78550
(210) 421-3226

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 1996, a true and correct copy of the foregoing document was sent via U.S. certified mail, return receipt requested to the following:

Ernesto H. Molina, Jr., Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P O Box 878, Ben Franklin Station
Washington, DC 20044

*[signature]*

MARY A. KENNEY

634