52

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 27 1998

Michael N. Milby
Clerk of Court

ANTELMA DOMINGUEZ-PEREZ,   )
   et al,   )
      )
      Plaintiffs,   )
      )   No. B-96-116
   v.   )
      )
JANET RENO, et al.,   )
      )
      Defendants.   )
_____)

## DEFENDANTS' OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendants Janet Reno, Doris Meissner, E. M. Trominski, and Kenneth S. Apfel[1] ("Defendants") hereby file their objections to the United States Magistrate Judge's Report and Recommendation ("Magistrate's Report"). The Magistrate's Report improperly recommends certification of the class despite the fact that none of the named plaintiffs has a pending application. Moreover, the Magistrate's Report would improperly grant relief despite the Court's lack of subject matter jurisdiction. Furthermore, the Magistrate's Report incorrectly evaluated whether plaintiffs stated a claim. Additionally, the Magistrate's Report improperly grants summary judgment in favor of plaintiffs <u>sua</u> <u>sponte</u>. Finally, the Magistrate's Report errs by granting excessive injunctive relief against the Social Security Administration

_____

[1] For the Court's information, Shirley S. Chater has been replaced by Kenneth S. Apfel as head of the Social Security Administration, making Mr. Apfel in his professional capacity the appropriate defendant.

despite finding no violation of any law by that agency and by
granting an injunction against the Immigration and Naturalization
Service clearly in excess of the scope of the constitutional
violation where the granted relief is not limited to the same
form of relief afforded similarly situated aliens.

### BACKGROUND

Plaintiffs are nine people who claim to be United States
citizens who were born abroad to a parent who was a citizen of
the United States.  Plaintiffs' First Amended Petition for Writ
of Habeas Corpus, and Complaint for Declaratory and Injunctive
Relief ¶¶ 4-9 (hereinafter "Amended Complaint").  Plaintiffs
claim to have filed applications for certificates of citizenship
before the Immigration and Naturalization Service ("INS").
Amended Complaint ¶¶ 28, 32, 36, 39, 41, 42.  Two of the
plaintiffs also claim that they have applied for social security
cards with the Social Security Administration ("SSA") and were
not issued cards.  Amended Complaint ¶¶ 29, 33.

Plaintiff Antelma Dominguez-Perez ("Dominguez") claims to
have been born in Mexico.  Amended Complaint ¶ 32.  She alleges
that her mother was a citizen of the United States at the time of
Dominguez' birth.  Amended Complaint ¶ 32.  After a hearing on
October 10, 1996, she was issued a certificate of citizenship.
Amended Complaint ¶ 35.  She has moved to withdraw from the
litigation.

Plaintiff Mario Guadalupe Salinas Grimaldo ("Salinas")
alleges he was born in Mexico.  Amended Complaint ¶ 28.  Salinas

271

indicates that his father was a citizen at the time of his birth.
Amended Complaint ¶ 28.  He alleges that he filed an N-600
application for a certificate of citizenship on June 22, 1995.
Amended Complaint ¶ 28.  He states that at one point he held a
social security card but has since lost it.  Amended Complaint ¶
29.  He asserts that he filed an application for a new social
security card, using his brother's certificate of citizenship to
establish proof of his own citizenship.  Amended Complaint ¶ 29.
He indicates that he was not issued a social security card.
Amended Complaint ¶ 29.  Presently, Salinas is incarcerated after
being convicted of possession of marijuana in an amount of more
than four (4) ounces, but less than five (5) pounds, for which he
was sentenced to five years imprisonment.  He did not appear at a
hearing on his N-600 application scheduled for October 10, 1996.
He has moved to withdraw from the litigation.

Plaintiffs Cecelia ("Cecelia"), Jose Guadalupe ("Jose"),
Abel ("Abel"), Francisca ("Francisca"), and Luis Alberto ("Luis")
de la Cruz-Perez ("the de la Cruz siblings") are brothers and
sister who purport to have been born in Mexico.  Amended
Complaint ¶ 41.  They allege that their mother was born in
Brownsville, Texas, and is a U.S. citizen.  Amended Complaint ¶
41.  They claim their applications have been pending since 1992.
On June 25, 1996, the INS denied their N-600 applications.  See
Attachment A.  They have taken no appeal from the decision.

Plaintiff Maria del Rosario Gutierrez de Limas ("Limas")
claims to have been born in Mexico.  Amended Complaint ¶ 42.  She

3

alleges that her mother was a U.S. citizen born in Guadalupe County, Texas. Amended Complaint ¶ 42. She admits that her first N-600 application was denied on September 1, 1993. Amended Complaint ¶ 42. She claims to have filed an appeal on September 15, 1993, and alleges that the application is still pending. Amended Complaint ¶ 42. She has moved to withdraw from the litigation.

Plaintiff Graciela Alvarez de Zuniga ("Zuniga") alleges that she was born in Mexico. Amended Complaint ¶ 36. She avers that her mother was a U.S. citizen, born in Coachella, California. Amended Complaint ¶ 36. She claims that she first applied for a certificate of citizenship in 1978 and that her application was denied. Amended Complaint ¶ 36. She alleges that she filed a new application in 1993. Amended Complaint ¶ 36. She admits that she could have obtained work authorization but has refused to do so. Amended Complaint ¶ 36. Her application has been granted, and she was given a certificate of citizenship. See Attachment B. She has moved to withdraw from the litigation.

Plaintiff Diana Maria Gonzalez de Santos ("Santos") does not allege that she was born abroad. Amended Complaint ¶ 39. She does not allege that at least one of her parents was a U.S. citizen. Amended Complaint ¶ 39. Her application has been denied. See Attachment C.

Plaintiffs purport to represent a class of:

> all people who have filed or will file N-600
> applications with the I.N.S. district office in
> Harlingen, whose claims to U.S. citizenship are being
> adjudicated, have been or will be unable to obtain

273

> social security cards because of lack of any of the
> specified documents evidencing their U.S. citizenship,
> which are acceptable to the Social Security office, and
> lack of any document from INS evidencing their right to
> be employed in the United States as prima facie U.S.
> citizens [sic].

Amended Complaint ¶ 14. Plaintiffs seek relief in the form of a

declaratory judgment that the practice of the INS and SSA

violates the Social Security Act, the Immigration and Nationality

Act ("INA"), the Administrative Procedure Act ("APA"), and the

Fifth Amendment of the United States Constitution, an injunction

stopping the INS and SSA practices, an order restraining

defendants from not issuing employment authorization, an order

restraining defendant Apfel from not issuing social security

cards to all applicants with pending N-600 applications, an order

restraining defendant Apfel from not conducting administrative

review of denials of social security cards, an order requiring

Defendants to notify all members of the class of relief granted

in this action, and an award of costs, attorney fees, and such

other relief as deemed proper. Amended Complaint at 19-20.

### SUMMARY OF DEFENDANTS' MOTION TO DISMISS

On January 7, 1997, defendants moved to dismiss the instant

litigation for lack of jurisdiction and for failure to state a

claim. Defendants filed Defendants' Points and Authorities in

Support of Defendants' Motion to Dismiss for Lack of Jurisdiction

and for Failure to State a Claim ("Defendants' Points and

Authorities") in support of its motion.

274

In Defendants' Points and Authorities, defendants argued that the claims of Plaintiffs de la Cruz siblings and Plaintiff Dominguez-Perez were moot because all of their applications had been adjudicated. Defendants' Points and Authorities at 6. Defendants also argued that the plaintiffs, individually and as a whole, lack standing to bring the claims. Defendants' Points and Authorities at 8. Moreover, Defendants' argued that the claims of plaintiffs were not ripe because none had a final adjudication of their claims and that they had failed to exhaust their administrative remedies. Defendants' Points and Authorities at 20, 24. Additionally, defendants argued that the court did not have jurisdiction under the Administrative Procedures Act because temporary work authorization was a discretionary act and because there was no final agency action. Defendants' Points and Authorities at 30-32.

In addition to jurisdictional arguments, defendants also argued that the complaint failed to state a claim. First, defendants argued that plaintiffs failed to state a claim under the INA, the Social Security Act, or the APA because there was no statutory duty for the INS to provide temporary work authorization to citizens and because the SSA was not required to give a social security card to those who did not demonstrate work authorization. Defendants' Points and Authorities at 32-34. Defendants argued that the decision to provide temporary work authorization for aliens while not offering it to citizens did not upset the Equal Protection Clause because citizens had more

6

275

than one method by which to obtain proof of work authorization. Defendants' Points and Authorities at 37. Defendants also demonstrated that the Due Process Clause was not violated where the Social Security Administration did not provide a right to appeal a denial of a social security card. Defendants' Points and Authorities at 39.

## OBJECTIONS

### I. THE MAGISTRATE'S REPORT IMPROVIDENTLY RECOMMENDS CERTIFICATION OF CLASS

In order to certify a class, the plaintiffs must satisfy all of the requirements imposed by Fed. R. Civ. P. Rule 23(a) and one of the requirements under Fed. R. Civ. P. Rule 23(b). The requirements of Rule 23(a) are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. The plaintiffs have elected to proceed under Rule 23(b)(2), which establishes a fifth prerequisite: that plaintiffs demonstrate "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ." Fed. R. Civ. P. 23(b)(2). The burden of establishing the foregoing requirement rests squarely upon the plaintiffs in this case. Castano v.

276

American Tobacco Company, 84 F.3d 734, 740 (5th Cir. 1996).  "A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class."  Id., citing General Telephone v. Falcon, 457 U.S. 147, 161 (1982) (emphasis added).  The failure to satisfy any one of the prerequisites of Rule 23(a) or the additional requirement of Rule 23(b) requires denial of the class certification.  Rutledge v. Electric Hose & Rubber Co., 511 F.2d 668, 673 (9th Cir. 1975).  Moreover, the named plaintiffs must provide an adequate statement of the basic facts to support each prerequisite.  Rutledge, 511 F.2d at 673.  Conclusory averments or mere repetition of the requirement of the rule are not sufficient.  Falcon, 475 U.S. at 158.

   A.   **The Magistrate's Report Concluded That Named Plaintiffs Fairly And Adequately Represented The Class Despite The Fact That Named Plaintiffs' Claims Are Moot And That Many Plaintiffs Are Withdrawing From The Lawsuit**

   The Magistrate's Report improperly finds that named plaintiffs are adequate representatives of the putative class because "each has been harmed."  Magistrate's Report at 4.  This cursory conclusion does not provide a "rigorous analysis."  Falcon, 457 U.S. at 161.  Moreover, it is wrong.

   A court abuses its discretion where it certifies a class after the named plaintiffs' claims have become moot.  Rocky v. King, 900 F.2d 864, 868-69 (5th Cir. 1990).  Here, the claims of all the named plaintiffs have become moot.  As was argued in Defendants' Motion to Dismiss, the claims of plaintiff Dominguez-Perez and plaintiffs de la Cruz siblings have become moot.

277

Defendants' Motion to Dismiss at 6.  Dominguez-Perez received a certificate of citizenship, which can now be used to obtain work authorization.  The de la Cruz siblings have had their applications denied and have taken no appeal from the denial. Additionally, plaintiff Santos has received a certificate of citizenship.  <u>See</u> Attachment B.  Petitioner Zuniga has had her applications denied.  <u>See</u> Attachment C.  Accordingly, the foregoing plaintiffs' claims are moot, and they cannot adequately represent the class.

Brief mention should be made of the two plaintiffs not mentioned in the foregoing paragraph -- plaintiffs Salinas and Gutierrez.  Plaintiffs Salinas and Gutierrez have withdrawn from the litigation.  Accordingly, they cannot adequately and fairly represent the class.

**B.    The Magistrate Incorrectly Suggests That No Issues Of Fact Are Relevant To Plaintiffs' Claims**

The Magistrate finds that class certification is appropriate because this case involves only legal issues.  He is incorrect. First, the Magistrate's Report wholly belies his cursory assertion that only legal issues are present.  The magistrate relies upon factual findings to support his decision regarding the merits of the plaintiffs' petition.  <u>See</u>, <u>e.g.</u>, Magistrate's Report at 6.  He also concludes that passports are available only through a process which "can be lengthy."  Magistrate's Report. To find that similarly situated people are treated differently, the magistrate cites a story which is presented only in

9

28

plaintiff's petition.   This finding has not been admitted nor has any proof of the story been presented.   Moreover, the magistrate apparently requires defendants to substantiate any claim that there is a greater incidence of fraud in N-600 applications. Magistrate's Report at 6.   As to these facts, not only is there no basis in the record for the conclusions, but additional discovery is also necessary to make such findings.

## II.   THE MAGISTRATE'S REPORT INCORRECTLY FINDS THAT THE DISTRICT COURT HAS SUBJECT MATTER JURISDICTION

### A.   This Court Lacks Jurisdiction Because The Named Plaintiffs' Claims Have Become Moot

The Court lacks jurisdiction because the claims of the named plaintiffs have become moot.   The courts may not "decide questions that cannot affect the rights of litigants in the case before them."   Lewis v. Continental Bank, 494 U.S. 472, 477 (1990).   A federal court may only decide "real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."   Id. While a suit may have been considered alive at the inception of the suit, "[t]he parties must continue to have 'personal stake in the outcome' of the lawsuit."   Id. at 478, citing Los Angeles v. Lyons, 461 U.S. 95, 101 (1990).

Here, the claims of the named plaintiffs have become moot. With the exception of plaintiffs Salinas and Gutierrez, every plaintiff has had their N-600 application adjudicated.   In the case of plaintiffs Dominguez-Perez and Santos, certificates of

279

citizenship were issued.  Thus, they has no surviving interest in
the outcome of the lawsuit.  In the cases of the others, the
applications for certificates of citizenship have been denied.
None of the remaining named plaintiffs has filed an appeal with
the Administrative Appeals Unit, which could only be timely filed
within ten days of the denial of the application.  8 C.F.R.
§§ 103.3(a) & 341.6.  Moreover, while plaintiff Gutierrez alleges
to have filed an appeal from the denial of her application in
1993, the Administrative Appeals Unit has no record of her appeal
being docketed, and she has otherwise presented no evidence that
she has ever had an application or appeal pending.  See
Attachment D.

        Plaintiffs may attempt to file a new application, thinking
that this would cure the court's lack of jurisdiction.  They
would be incorrect.  Their new applications would be deemed
motions to reopen.  An alien who files a motion to reopen does
not become eligible for temporary work authorization because they
have not filed an application; rather, they have filed a motion
to reopen which would permit them to file an application.

**B.    Plaintiffs lack standing because they fail to show the
        requisite causality element**

        In order to have standing to bring a lawsuit, a plaintiff
must show "a causal connection between the injury and the conduct
complained of -- the injury has to be 'fairly . . . trace[able]
to the challenged action of the defendant . . . ." Lujan, 504
U.S. at 560, citing Simon v. Eastern Kentucky Welfare Rights

280

Organization, 426 U.S. 26, 41-42 (1976).  None of the alleged injuries is "fairly traceable" to the conduct of the defendants. Lujan, 504 U.S. at 560.

> **1.  Plaintiff Salinas and the members of the purported class seeking replacement documents cannot satisfy the causation requirement.**

Plaintiff Salinas and at least those class members seeking replacement documents are unable to demonstrate their injuries are fairly traceable to the conduct of the Defendants.  The INS has promulgated regulations which permits Salinas and members of the purported class seeking replacement documents to obtain employment for a limited period.  8 C.F.R. § 274a.2(b)(1)(vi). Plaintiff Salinas alleges that he has merely lost his social security card.  Amended Complaint ¶ 29.  The purported class includes aliens seeking replacement documents.  Amended Complaint ¶ 14.  Thus, any inability to obtain work stems from their refusal to utilize INS regulations permitting them to work for limited periods.  The same reasoning applies to the purported class member who are seeking replacement documents.  Thus, the harms are not fairly traceable to the conduct of the Defendants, and the claims should be dismissed.  Lujan, 504 U.S. at 560.

Plaintiff Salinas should be dismissed for an independent reason:  his inability to obtain work is due to his conviction for possession of marijuana, for which he is presently in prison. His present inability to obtain gainful employment is his incarceration, which is sufficient to break any causation traceable to the defendants' conduct.  Unable to meet his burden

281

of showing causation, he lacks standing to bring the instant
action.  Lujan, 504 U.S. at 560.

> **2.    Plaintiffs and the purported class in general are
> unable to meet their burden of showing causation.**

Any harm incurred by plaintiffs and the purported class is
not fairly traceable to an alleged failure to adjudicate the N-
600 applications or an alleged failure to promulgate regulations.

The SSA has carefully set out a variety of materials that
will suffice to establish citizenship. 20 C.F.R. § 422.107.  The
plaintiffs elected to pursue only the certificate of citizenship
process.  They have refused to try to obtain a U.S. passport.
Complaint ¶ 16.  They have not attempted to obtain a consular
report of birth.  It was their decision, and their decision
alone, to submit the N-600 application in order to obtain a
social security card.  Their decision not to initiate any of the
alternative mechanisms of establishing citizenship -- such as a
U.S. passport or consular report of birth -- caused the
nonissuance of their cards.  It was their decision to file
facially deficient applications before the SSA which has caused
the alleged injuries.  Because the alleged injuries are not
fairly traceable to the conduct of the defendants, the plaintiffs
lack the requisite standing.  Lujan, 504 U.S. at 560.

Additionally, the harms (such as not being able to obtain
work) may be the result of normal administrative delay.
Defendants may rely on the normal adjudication of applications to
provide work authorization, for normal administrative delays are

13

282

sufficient to break the chain of causation between the
experienced harm and the alleged administrative conduct.  Snake
River, 9 F.2d at 796.

### C.   This Court Lacks Jurisdiction Because Plaintiffs Have Failed to Exhaust Their Administrative Remedies

The Court also lacks jurisdiction because the named
plaintiffs have not exhausted their administrative remedies.  The
courts require an exhaustion of remedies.  McCarthy v. Madigan,
503 U.S. 140, 144 (1992).  "Exhaustion is required because it
serves the twin purposes of protecting administrative agency
authority and promoting judicial efficiency."  Id. at 145.  Above
and beyond these twin purposes, the requirement of exhaustion has
been found to serve a variety of purposes, such as:  (1) to avoid
premature interruption of the administrative process; (2) to let
the agency develop the necessary factual background upon which
decisions should be based; (3) to permit the agency to exercise
its discretion or apply its expertise; (4) to improve the
efficiency of the administrative process; (5) to conserve scarce
judicial resources, since the complaining party may be successful
in vindicating rights in the administrative process and the
courts may never have to intervene; (6) to give the agency a
chance to discover and correct its own errors; and (7) to avoid
the possibility that "frequent and deliberate flouting of
administrative processes could weaken the effectiveness of an
agency by encouraging people to ignore its procedures."  Patsy v.
Florida International University, 634 F.2d 900, 903, 904-05, (5th

14

283

Cir. 1979), <u>rev'd on other grounds</u> <u>sub nom.</u> <u>Patsy v. Florida</u>
<u>International University</u>, 457 U.S. 496 (1982) (<u>citing</u> <u>McKart v.</u>
<u>U.S.</u>, 395 U.S. 185, 193-95 (1969).)  "The exhaustion of
administrative remedies requires not that only administrative
remedies selected by the complainant be first exhausted, but
instead that <u>all those prescribed administrative remedies which</u>
<u>might provide appropriate relief</u> be pursued prior to seeking
relief in the federal courts." <u>Hessbrook v. Lennon</u>, 777 F.2d
999, 1002 (5th Cir. 1985) (emphasis added).  Thus, when an
alternative modes exists for obtaining the desired relief, the
plaintiff is obliged to pursue it.  <u>Id</u>. at 1003.  The fact that a
plaintiff may suffer an irreparable injury by having to exhaust
administrative remedies is <u>no reason</u> not to exhaust those
remedies.  <u>Myers v. Bethlehem Shipbuilding</u>, 303 U.S. 41, 50
(1938) (emphasis added).

The named plaintiffs have failed to exhaust their
administrative remedies in two separate ways.  First, they have
failed to appeal the denials of their N-600 applications.
Plaintiffs de la Cruz siblings, Zuniga, and Santos have not
pursued an appeal to the Administrative Appeals Unit, which had
to be filed within ten days of the denial of their application.
An appeal could have yielded a certificate of citizenship which
would provide proof of work authorization.  By not utilizing this
appeal, they have failed to take advantage of  "those prescribed
administrative remedies which might provide appropriate relief. .
. ." <u>Hessbrook</u>, 777 F.2d at 1002.

15

284

Second, they have failed to exhaust any of the other
administrative means for obtaining work authorization.  The
plaintiffs and the purported class have pursued proof of
citizenship only in the form of a certificate of citizenship.
Amended Complaint ¶¶ 28, 32, 36, 39, 41, 42.  Social Security
regulations permit a variety of means for establishing U.S.
citizenship or permission to work.  20 C.F.R. § 422.107(d).
Among these forms are:  (1) certificate of citizenship; (2)
certificate of naturalization; (3) passport; (4) citizen
identification card; and (5) consular report of birth.[2]  20
C.F.R. §422.107(d).  Any one of these modes of obtaining remedy
will satisfy the requirement of proof of U.S. citizenship
required for a social security card.

In the instant action, plaintiffs have not only failed to
pursue any of these alternative modes of proof, but they have
openly refused to do so.  Amended Complaint ¶ 20.  The only
reason given is that there are "mail" delays which they do not
wish to suffer.  Amended Complaint ¶ 20.  Such an allegation is
not only ludicrous, but it also demonstrates that plaintiffs are
disingenuous in bringing their action.  The truth is that they
wish to shortcut the system at great expense and waste not only
their own resources, but the court's as well.

_____

     [2]  As an example, seeking a passport is a legitimate option
the plaintiffs could pursue.  By regulation, the Department of
State provides that:  "In lieu of a certificate of citizenship,
the applicant may submit evidence of his or her parent(s)'
citizenship at the time of his or her birth, and evidence of his
or her and his or her parent(s) residence and physical presence
in the United States."  8 C.F.R. 51.44(b)(2).

The requirement of exhaustion of remedies is especially poignant in this case, where the plaintiffs allege that they are being treated differently than certain other aliens.  Amended Complaint ¶ 24.  INS regulations establish that an alien seeking a temporary work authorization cannot obtain such authorization unless the INS is unable to adjudicate his or her application for relief within ninety days, 8 C.F.R. 274a.13(d), or in some cases, 180 days, 8 C.F.R. 208.7(a)(1).  Because certain documents, e.g., a U.S. passport or a consular report of birth, could be obtained within that 180 day period, it is incumbent upon the alien to seek those forms of relief.  Hessbrook, 777 F.2d at 1002.

Moreover, Plaintiff Salinas and approximately half of the purported class are eligible for a temporary work authorization by statute, which they have elected not to pursue.  Plaintiffs and members of the purported class who are seeking replacement documents may obtain a type of temporary work authorization for up to ninety days while they obtain their replacement documents. 8 C.F.R. § 274a.12(b)(1)(vi).  Until such time as they have obtained employment, worked for the regulatory ninety day authorization period, and still not obtained their replacement documents, they have failed to exhaust their administrative remedies, and their actions should be dismissed.

Finally, it bears repeating that the fact the plaintiffs might suffer some "irreparable injury" as a result of having to exhaust remedies does not excuse the requirement to exhaust those remedies.  Myers, 303 U.S. at 50.  The plaintiffs have failed to

exhaust the available remedies which would provide adequate relief and thereby deprived the court of jurisdiction. Hessbrook, 777 F.2d at 1003.

The magistrate makes an improper finding that a passport — which he acknowledges is a viable option for plaintiffs — can only be obtained after a "lengthy" process. Magistrate's Report at 2. There is no evidence in the record of such a considerable delay. Plaintiffs have made no demonstration that the passport process is any lengthier than a certificate of citizenship. Indeed, in light of the fact that some plaintiffs alleged to have applications pending since 1992, any suggestion by the plaintiffs that the passport process can be lengthy is wholly disingenuous. Moreover, any delay inherent in the process can be attributed to the proof provided in any given application. The point is that plaintiffs have never made any attempt to obtain proof of work authorization beyond filing an N-600 application.

### III. THE MAGISTRATE'S REPORT INCORRECTLY RECOMMENDS THAT PLAINTIFFS STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The Magistrate's Report also incorrectly fails to find that plaintiffs have failed to state a claim upon which relief can be granted. Magistrate's Report at 5. More precisely, the magistrate finds that the INS has violated the Equal Protection Clause by providing temporary work authorization to certain aliens while denying such authorization to persons filing N-600 applications. Magistrate's Report at 5-7. The magistrate is incorrect.

18

287

## A.    Standard Of Review

The Supreme Court has repeatedly held that "[o]ver no conceivable subject is the legislative power of Congress more complete" than it is over aliens.  Reno v. Flores, 507 U.S. 292, 305 (1993) (quoting Fiallo v. Bell, 430 U.S. 787, 792 (1977)). "The fact that an Act of Congress treats aliens differently from citizens does not in itself imply that such disparate treatement is 'invidious.'"  Mathews v. Diaz, 426 U.S. 67, 79 (1976).  As the Supreme Court has stated:

> The fact that all persons, aliens and citizens alike,
> are protected by the Due Process Clause does not lead
> to the further conclusion that all aliens are entitled
> to enjoy all the advantages of citizenship or, indeed,
> to the conclusion that all aliens must be placed in a
> single homogenous legal classification.

Diaz, 426 U.S. at 78.  Indeed, Congress may, and does, afford benefits to citizens which are not afforded to aliens and -- more importantly -- afford benefits to aliens which are not afforded to citizens.  Diaz, 426 U.S. at 78, n.12.

In striking the balance between the Equal Protection Clause and the interest of Congress and the Executive Branch in regulating immigration, the Supreme Court determined that "when the Executive exercises this (delegated) power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification [against important rights]."  Kleindienst v. Mandel, 408 U.S. 753, 770 (1972) (emphasis added).  Accordingly, the test for determining the



constitutionality of an immigration provision is whether the
legislation is based upon a "facially legitimate and bona fide
reason." Fiallo, 430 U.S. at 794 (quoting Kleindienst, 408 U.S.
at 770); Rodriguez v INS, 9 F.3d 408, 414 (1993). In this
regard, distinctions between classes of aliens will be upheld
unless the choices made are "wholly irrational." Mathews, 426
U.S. at 83.[3] Apart from not being "wholly irrational," the
distinctions that Congress made here were completely logical. A
legislative or regulatory scheme will "not be set aside as the
denial of equal protection of the laws if any state of facts
reasonably may be conceived to justify it." Linnas v. INS, 790
F.2d 1024, 1032 (2d Cir.), cert. denied, 479 U.S. 995 (1986); see
Giusto v. INS, 9 F.3d 8, 10 (2d Cir. 1993). Moreover, "[o]nce a
facially legitimate and bona fide reason is found, courts will
not look beyond the exercise of discretion, nor test it by
balancing its justification against the constitutional interest
asserted by those challenging the statute." Campos v. INS, 961
F.2d 309, 316 (1st Cir. 1992). The same standard of review

---

[3] It should be noted that the alien bears the burden of
showing that the statute violates the Constitution. Berroteran-
Melendez v. INS, 955 F.2d 1251, 1258 (9th Cir. 1991), citing
McQueary v. Blodgett, 924 F.2d 829, 835 (9th Cir. 1991). See
McQueary, 924 F.2d at n.7 ("The burden of proof rests with the
person alleging unconstitutional discrimination. This standard
has rarely been utilized by the Court to invalidate a state
provision, and normally gives great deference to the validity of
the questioned provision."); see also Mathews, 426 U.S. at 82 (an
alien challenging the constitutionality "of a particular line
Congress has drawn has the burden of advancing principled
reasoning that will at once invalidate that line and yet tolerate
a different line separating some aliens from others."); Yeung v.
INS, 76 F.3d 337, 339 (11th Cir. 1995) (alien has burden of
showing the statute is unreasonable) (as modified on reh'g).

289

applies with equal force to the Executive Branch.  <u>Kleindienst</u>, 408 U.S. at 770.

The courts have held that "'where there is a rational basis for Congress's exercise of its power, whether articulated or not, the [c]ourt will uphold the immigration laws that Congress enacts.'"  <u>Runnett v. Schultz</u>, 901 F.2d 782, 787 (9th Cir. 1990) (quoting <u>Adams v. Howerton</u>, 673 F.2d 1036, 1042 (9th Cir.), <u>cert. denied</u>, 458 U.S. 1111 (1982)).  <u>See also</u> <u>FCC v. Beach Communications, Inc.</u>, 508 US. 307, 315 (1993) ("a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."); <u>Heller v. Doe</u>, 509 U.S. 312, 321 (1993) ("A classification does not fail rational-basis review because it 'is not made with mathematical nicety or . . . it results in some inequality.'" (quoting <u>Dandridge v. Williams</u>, 397 U.S. 471, 485 (1970))).

**A.    N-600 applicants are not similarly situated to aliens**

In beginning an evaluation under the Equal Protection Clause, plaintiffs must identify some similarly situated group that receives different treatment.  Here, plaintiffs allege that aliens are granted temporary work authorization while they are not.  Amended Complaint ¶ 24-26.  Plaintiffs, however, are not similarly situated to aliens.  From their birth, plaintiffs are afforded no less than four means of establishing work authorization and citizenship.  A citizen has an inherent right to work in the United States and may obtain proof of work

290

authorization by obtaining such proof from a variety of agencies
in the form of a passport, social security card, or consular
birth certificate.  8 C.F.R. § 274a.2(b)(1)(v); 20 C.F.R.
422.107(d).  An alien, on the other hand, has no inherent right
to work in the United States and can only receive work
authorization from the INS.  See, e.g., 8 U.S.C. § 1324a(h)(3); 8
C.F.R. § 274a.12(a); 20 C.F.R. § 477.107(e).  The extraordinary
limits which are placed upon aliens make the provision of
temporary work authorization appropriate in light of the volume
of cases the INS will have to process.

**B.    The Magistrate's Report Improperly Places the Burden of Proof on Defendants**

The Magistrate's Report improperly shifts the burden of
proof to the defendants.  The defendants have no obligation to
produce evidence to sustain the rationality of a statutory
classification.  Heller v. Doe, 509 U.S. 312, 319 (1993).  A
classification in a statute bears a "strong presumption of
validity," and those attacking the rationality of the legislative
classification have "the burden to negate every conceivable basis
which might support it," whether or not the basis has a
foundation in the record.  Id. at 320, see also FCC v. Beach
Communications, Inc., 508 U.S. 307, 314-15 (1993).  "'[W]here
there is a rational basis for Congress's exercise of its power,
whether articulated or not, the [c]ourt will uphold the
immigration laws that Congress enacts.'"  Runnett v. Schultz, 901
F.2d 782, 787 (9th Cir. 1990) (quoting Adams v. Howerton, 673

22

F.2d 1036, 1042 (9th Cir.), <u>cert</u>. <u>denied</u>, 458 U.S. 1111 (1982)).
Because the courts never require a legislature to articulate its
reasons for enacting a statute, it is "entirely irrelevant for
constitutional purposes whether the conceived reason for the
challenged distinction actually motivated the legislature."
<u>Beach Communications</u>, 508 U.S. at 315.  This strong presumption
of validity applies with equal force to the Executive Branch.
<u>Kleindienst</u>, 408 U.S. at 770.

Here, the Magistrate's Report shifts the burden of proof to
the defendants:

> Defendants have made no claim that there is any greater
> incidence of fraudulent applications for Certificates
> of Citizenship, than for any other type of permanent
> status in the U.S., for which employment authorization
> is permitted, and have tendered no other justification
> for this disparate treatment.

Magistrate's Report at 6.  This shifting of the burden is
contrary to law, for the plaintiffs alone carry the burden "to
negate every conceivable basis" for the disparate treatment.  If
the possibility of a greater incident of fraud is a conceivable
reason for not granting work authorization, then that is
sufficient grounds for supporting the defendants' choice of
policy.  Moreover, as is discussed in the next section, the
magistrate's characterization of the government's proffered
explanation is incorrect.

///

///

///

C. **Congress And The Executive Have Several Facially Legitimate And Bona Fide Reasons For Providing Temporary Work Authorization To Aliens While Not Providing Such Authorization To N-600 Applicants**

1. **Congress and the Executive have facially legitimate and bona fide reasons**

In Defendants' Points and Authorities, the defendants forward no less than four legitimate and bona fide reasons to justify the INS's policy of affording temporary work authorization to aliens but not to citizens. Defendants' Points and Authorities at 37. Inexplicably, the Magistrate's Report concludes that the defendants provided only one reason. Magistrate's Report at 6. The Magistrate's Report is clearly incorrect.

Of the reasons provided by defendants, perhaps the most important facially legitimate and bona fide reason is the prevention of fraud. As the Magistrate's Report concedes, the government has a substantial interest in deterring fraudulent applications. Congress and the Executive may legitimately decide that the risk of fraud presented by providing temporary work authorization is an unnecessary risk. Indeed, this need is especially important in the N-600 context, where the INS performs an investigatory function which includes contacting and cooperating with foreign governments — a process which inherently requires time.

Congress and the Executive may legitimately decide to limit the government's exposure to fraudulent applications in the N-600

24

context in light of the fact that putative citizens have more than adequate access to several procedures which will evince and confirm their citizenship — all of which can be obtained before the putative citizen is old enough to work.  A putative citizen may apply for a passport at any age.  A putative citizen can obtain a consular report of birth.  A putative citizen may even obtain a social security card.  Faced with all of these possibilities available to putative citizens, Congress and the Executive may legitimately decide that the risk of fraud is an unnecessary risk to add to the N-600 process.  On the other hand, Congress and the Executive may determine that temporary work authorization for an alien is appropriate in light of the fact that an alien may obtain work authorization only from the INS.  Indeed, in light of the fact that such aliens may be seeking asylum, temporary work authorization becomes justified to alleviate the traumatic upheaval which may be presented by displacement of persons.

### 2.    The Magistrate's Report Improperly Looks Behind the Defendants' Facially Legitimate Reason

The Magistrate's Report attaches significance to its finding that the defendants have not shown that there is any greater incidence of fraud in the N-600 application process.  Magistrate's Report at 6.  This, however, misses the point.  First, as was discussed above, the burden is not on the defendants, nor may the court look behind any facially legitimate reason to assess whether it was the actual motivation.  Nor can

294

the magistrate reasonably suggest that there is no concern
regarding fraud in the N-600 application process.  The point is
that the defendants elect not to create that risk in light of the
number of procedures available to putative citizens.

　　Moreover, the consideration of whether there is greater
fraud in the N-600 context is irrelevant.  The Supreme Court has
frequently upheld under-inclusive classifications on the sound
theory that a legislature may deal with one part of a problem
without addressing all of it.  See, e.g., Williamson v. Lee
Optical Co., 348 U.S. 483, 488-89 (1955).  Thus, the Supreme
Court has found that a statute is not invalid under the
Constitution because it might have gone farther than it did,
Roschen v. Ward, 279 U.S. 337, 339 (1929), that a legislature
need not "strike all evils at the same time," Semler v. Dental
Examiners, 294 U.S. 608, 610 (1935), and that "reform may take
one step at a time, addressing itself to the phase of the problem
which seems most acute to the legislative mind." Williamson, 348
U.S. at 489.  Here, the INS may legitimately confront part of the
problem of fraud.  Indeed, it has also become clear that Congress
wishes the problem of fraud to be addressed.  In 1996, Congress
amended the INA to require the Attorney General to provide
greater security and to prevent document fraud.  Section 412(a)
of the Illegal Immigration Reform and Immigrant Responsibility
Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1997).  In
that provision, Congress specifically struck the certificate of
citizenship as proof of work authorization.  IIRIRA § 412(a).



Congress further provided to instruct the Attorney General to protect against fraud in the work authorization context.    IIRIRA § 412(a).  The provision of temporary work authorization after the mere filing of an N-600 application is incongruous with Congress's removal of the certificate of citizenship as proof of work authorization.  Fraud is a concern, it is legitimate, and it is bona fide.

### 3.    Plaintiffs never dispute the defendants' facially legitimate reasons

More important than the magistrate's error is the fact that plaintiffs — despite filing an opposition to defendants' motion to dismiss and a supplemental to their opposition — never allege that the government does not have an interest in deterring fraud. Because they have never once challenged the defendants' reason, they have waived any such response.

## IV.   THE MAGISTRATE'S REPORT IMPROPERLY RECOMMENDS A GRANT OF RELIEF SUA SPONTE

The magistrate judge exceeded his authority in recommending a grant of the plaintiff's petition for writ of habeas corpus <u>sua sponte</u>.  Generally, the authority of the magistrate judge is provided and circumscribed by statute:

> Notwithstanding any provision of law to the contrary—
>
> > (A)   a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion . . . to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. . . .

296

> (B)   a judge may also designate a magistrate to
> conduct hearings, including evidentiary
> hearings, and to submit to a judge of the
> court proposed findings of fact and
> recommendations for the disposition, by a
> judge of the court, of any motion excepted in
> subparagraph (A). . . .

28 U.S.C. § 636(b)(1).

Here, the magistrate judge exceeded his authority by granting the petition for writ of habeas corpus without anything in the nature of a motion for summary judgment being filed by plaintiffs.   In recommending a grant of the petition for writ of habeas corpus, the magistrate raised a motion for summary judgment sua sponte.   There are limited circumstances in which a magistrate judge may raise a motion for summary judgment sua sponte.   See e.g., American and Foreign Insurance Company v. Bolt, 106 F.3d 155, 159 (6th Cir. 1997) (magistrate may raise a motion for directed verdict sua sponte); Ramsey v. Coughlin, 94 F.3d 71, 74 (2d Cir. 1996) (magistrate may raise motion for summary judgment sua sponte if no issue of material fact is presented).   Even assuming this case was dismissed pursuant to Fed. R. Civ. P. 56 as summary judgement, the magistrate's decision to raise the issue sua sponte was erroneous:

> Before granting summary judgment sua sponte, the
> district court must assure itself that following the
> procedures set out in Rule 56 would not alter the
> outcome.   Discovery must either have been completed, or
> it must be clear that further discovery would be of no
> benefit.   The record must, therefore, reflect the
> losing party's inability to enhance the evidence
> supporting its position and the winning party's
> entitlement to judgment.

Ramsey v. Coughlin, 94 F.3d 71, 74 (2d Cir. 1996).

297

Here, the magistrate's suggestion that the petition should be granted is wholly inappropriate. Because defendants' motion to dismiss was filed pursuant to Fed. R. Civ. P. 12(b), the pleadings are not yet complete. Under Fed. R. Civ. P. 11, the government may elect to file a dispositive motion rather than file an answer. An answer to the complaint will become due ten days after the denial of the dispositive motion.

Additionally, to grant the petition at this juncture would be not only improper, but unfair. Under the jurisprudence of the equal protection clause, the plaintiffs must disprove any possible reason for disparate treatment of similarly situated persons. The plaintiffs have yet to disprove every such reason, which makes a dismissal improper. Additionally, plaintiffs have never alleged that the government has no interest in deterring fraud.

Defendants are of the opinion that the law is clear in establishing that discovery is completely unnecessary and inappropriate for equal protection analysis. See, e.g., Beach Communications, 508 U.S. at 315. However, because the magistrate intends to endeavor in an inappropriate factual investigation to challenge the government's explanation, additional discovery will be necessary. Discovery is not complete. For example, the magistrate states that "Defendants have made no claim that there is any greater incidence of fraudulent applications for Certificates of Citizenship, than for any other type of permanent status in the U.S. . . . ." Magistrate's Report at 6.



Furthermore, the magistrate relies upon a factual allegation raised by the plaintiffs involving Plaintiff Dominguez-Perez. Magistrate's Report at 6. These two factual allegations require discovery to develop. The period for discovery, which is normally set after a conference pursuant to Fed. R. Civ. P. 26(f), was never set by the magistrate, and the discovery he has permitted has not closed. Thus, the Magistrate's Report improvidently decides the case _sua sponte_.

## V. THE MAGISTRATE'S REPORT INCORRECTLY GRANTS RELIEF BEYOND THE SCOPE OF APPROPRIATE INJUNCTIVE RELIEF

Moreover, even assuming the Magistrate's Report withstands scrutiny, it is erroneous for another reason: the scope of its injunction is too broad. An injunction is a form of equitable relief. _Lowery v. Circuit City Stores_, --- F.3d ---, 1998 WL 612926 at 22. As such, an injunction "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." _Id._, _quoting_ _Madsen v. Women's Health Ctr._, 512 U.S. 753, 765 (1994). This is particularly important when government agencies are involved:

> Although a federal court has broad equitable powers to remedy constitutional violations, it must tailor the scope of injunctive relief to fit the nature and extent of the constitutional violation established.

_Haitian Refugee Council v. Smith_, 676 F.2d 1023, 1041 (5th Cir. 1982) (hereinafter, _HRC_), _citing_ _Califano v. Yamasaki_, 442 U.S. 682, 702 (1979).

///

///

30



**A.    The Magistrate's Report Improperly Enjoins The SSA
       Without A Finding Of A Constitutional Infirmity In Any
       Act By That Agency**

Here, the magistrate has recommended an overly broad

injunction to issue against both the INS and the SSA.   The

Magistrate's Report contains no finding of a constitutional

infirmity in the conduct of the SSA.   Indeed, no mention is made

of the SSA until the magistrate's recommended injunction.

Magistrate's Report at 7.   The only constitutional infirmity

found was with the policy of the INS.   Accordingly, no injunction

may issue against the SSA.

Nor can it be suggested that an injunction against the SSA

is "necessary" to effect relief.   The SSA has promulgated rules

which recognizes the use of a temporary work authorization issued

by the Attorney General to obtain a social security card:

> If the applicant submits an unexpired Immigration
> and Naturalization Service document(s) which shows
> current authorization to work, a social security
> number will be assigned or verified and a card
> which can be used for work will be issued.   If the
> authorization of the applicant to work is
> temporary or subject to termination by the
> Immigration and Naturalization Service, the SSA
> records may be so annotated.

20 C.F.R. § 422.107 (1997).   There is no reason to believe that a

social security card cannot be issued pursuant to that regulation

once the applicant obtains temporary work authorization from the

Immigration and Naturalization Service.   Nor may such a claim be

presently raised, for that claim is not ripe until such time as

the SSA acts upon the application.   Indeed, such a claim against

31



the SSA may be inappropriate altogether in light of the limitation on review of SSA decisions.  42 U.S.C. § 405(g); Califano v. Sanders, 430 U.S. 99, 104 (1977).

### B.    The Magistrate's Report Would Grant An Excessive Injunction Against The INS

The Magistrate's Report would also grant an excessive injunction against the INS.  In crafting an injunction, the court is obliged to narrowly tailor the injunction to resolve the constitutional infirmity.  HRC, 676 F.2d at 1041.

Here, the Magistrate's Report finds a violation of the Equal Protection Clause where the INS does not provide temporary work authorization to N-600 applicants in the same manner that is afforded to aliens in other contexts.  Magistrate's Report at 6-7.  However, the injunction issued against defendants enjoins them from "[d]enying Plaintiffs and other class members a document evidencing their right to work in the United States. . . ."  This injunction goes well beyond the proper scope of an injunction.  The plaintiffs have not been shown to have a "right to work in the United States."  Plaintiffs have not been shown to be citizens, therefore they have no right to work.  At most, an appropriate injunction would only require the INS to provide temporary work authorization to N-600 applicants in the same manner in which it is afforded to aliens.

///

///

///

32

301

## CONCLUSION

For the foregoing reasons, the Court should decline to adopt the Magistrate's Report and Recommendation.  The Court should deny certification of class.  Moreover, the Court should dismiss for lack of subject matter jurisdiction.  The Court should also find that plaintiffs fail to state a claim upon which relief may be granted because no violation of equal protection is apparent. In the alternative, the court should modify the scope of the injunction by refusing to issue an injunction against the defendant Apfel and the SSA, and by limiting the scope of the injunction against defendants Reno, Meisner, and Trominski.


Respectfully submitted,


FRANK HUNGER
Assistant Attorney General
Civil Division

BRENDA E. ELLISON
Senior Litigation Counsel
Office of Immigration Litigation


ERNESTO H. MOLINA, JR.
Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
Post Office Box 878
Ben Franklin Station
Washington, D.C. 20044
(202) 616-9344

ATTORNEYS FOR DEFENDANTS

DATED: November 25, 1998

33

302

ATTACHMENT A

303



**U.S. DEPART. NT OF JUSTICE**

Immigration and Naturalization Service

*2102 Teege Avenue*
*Harlingen, Texas 78550-4667*

*Harlingen District Office*

Cecilia De La Cruz Perez
C/O Robert H. Crane, Atty.
P.O. Box 1042
Weslaco, Texas 78596

Re: A72 016 713
Related Files: A72 016 714-Jose Guadalupe De La Cruz Perez
A72 016 715-Abel De La Cruz Perez
A72 016 716-Francisca De La Cruz Perez
A72 016 717-Luis Alberto De La Cruz Perez

### DECISION ON APPLICATION FOR CERTIFICATE OF CITIZENSHIP

Upon consideration, it is ordered that your Application for Certificate of Citizenship be denied for the following reasons:

Section 309(c) of the Immigration and Nationality Act, as amended, provides:

> "notwithstanding the provisions of subsection (a) of this section, a person
>
> born, on or after the effective date of this Act, outside the United States and out of wedlock shall be held to have acquired at birth the nationality status of his mother, if the mother had the nationality of the United States at the time of such person's birth, and if the mother had previously been physically present in the United States or one of its outlying possessions for a continuous period of one year."

The record of the Service reflects that on July 6, 1992 you filed an application for a certificate of citizenship. You claim to have acquired citizenship through your mother, a United States citizen. At the time of your birth, you claim to have been born out of wedlock.

On January 4, 1993 you were accorded an interview in connection with your pending application. It was determined in that interview that you needed to submit additional evidence of your mother's one-year continuous physical presence in the United States or its outlying possessions, prior to your birth. You were also advised that you needed to submit additional evidence of your mother's United States citizenship. Furthermore, it was explained to you that before a decision could be made on your application, a search of the birth records in Mexico would be conducted in order to see whether or not your birth had been registered in Mexico. You were advised that as soon as the search of the Mexican birth records was completed you would be provided with a notice letting you know when to appear for the next interview.

304

On November 2, 1993 you appeared for an interview. It was explained to you that a search of the Mexican birth records produced a birth certificate showing you were born in Matamoros, Tamaulipas, Mexico on July 9, 1954.

Since you were not aware of this information, you requested an extension of your interview date in order to submit additional evidence of the citizenship of your mother.

On June 9, 1994 a report was taken of the testimony of a witness, Mr. Felix Perez. Mr. Perez stated that he met you when you were one month old. As your God-father, he knew of your birth. However, he stated that he was not present at the time of your birth. He came about this information through his mother.

On November 1, 1994 you appeared for another interview. The issue of your mother's citizenship was discussed. The issue of your mother's one-year continuous physical presence in the United States or its outlying possessions was also discussed. After careful review of your case, it was concluded that, based upon the evidence, you failed to establish by a preponderance of the evidence that your mother was born in the United States. In addition, it was also concluded that you failed to establish that your mother had been physically present in the United States or its outlying possessions for a continuous period of one year, prior to your birth.

On November 22, 1994, this office received an additional affidavit. No supporting evidence was submitted with the affidavit. However, the affidavit was examined. In view of these facts, the following decision is made.

Regarding the issue of your birth, you have established that your were born out of wedlock.

Concerning the issue of your mother's citizenship, the documents which you presented failed to establish by a preponderance of the evidence that she was born in the United States. As evidence of her citizenship, you submitted a Texas delayed birth certificate. The birth certificate shows her date of birth as being July 9, 1954, in Brownsville, Texas. The birth was registered on March 28, 1974. However, based upon a search of the birth records which was conducted in Mexico, the Service located a Mexican birth certificate in Matamoros, Tamaulipas, showing that your mother was in fact born in Mexico. The birth was registered on November 10, 1954 and is more contemporaneous than the Texas delayed birth certificate. Furthermore, although requested, evidence such as school records, social security records, census records, voter's registration records, property records, or other records were not submitted which would be considered in determining if your mother was born in the United States.

Four affidavits were submitted. The first one dated February 1, 1974, was signed by Enriqueta E. Perez giving information that Herminio Perez Jr. was born on December 5, 1958 at Brownsville, Texas.

A statement dated August 24, 1990, given by Bertha Perez states that she knew that Elvia is a U. S. citizen because she was present at the time of her birth. She assisted in the delivery and was there until Elvia was born. Since Ms. Perez appears to have had important and relevant information concerning the birth of Elvia Perez, she was given the opportunity to appear for an interview and to relate the facts as she knew them. However, according to Mr. Felix Perez, she did not want to come to the interview.



An affidavit dated November 21, 1994, submitted by Bartola de la Cruz de Garza states she first met Elvia Perez Estrada in 1972. The affidavit does not state whether or not Mrs. Garza has any actual knowledge of your mother's birth in the United States.

An affidavit submitted by Felix Perez dated November 17, 1993, states that when Enriqueta Perez was due to deliver her children she would come to the home next to his.   When Enriqueta was born, his mother assisted in the birth of Elvia Perez in July 1954. He also states that he personally does not remember the actual birth of the children but has always known that Enriqueta's children were born there.

Based upon these facts and the weighing of the evidence, it is concluded that you have failed to establish by a preponderance of the evidence that your mother was born in the United States.

Regarding the issue of your mother's physical presence in the United States prior to your birth, it is concluded that insufficient evidence was presented showing that your mother had been physically present in the United States or its outlying possessions for a continuous period of one year, prior to your birth. The evidence submitted consisted of your mother's baptismal certificate, one letter and two affidavits.

It is concluded that your mother has failed to pass on citizenship to you. She was not a citizen of the United States at the time of your birth. It is further concluded that she was not physically present in the United States or its outlying possessions for a continuous period of one year, prior to your birth. The application, therefore, is hereby denied.

If you desire to appeal this decision, you may do so. Your notice of appeal must be filed within 15 days from the date of this notice. If no appeal is filed within the time allowed, this decision is final. Appeal in your case may be made to the Chief Administrative Appeals Unit, U.S. INS, 425 I Street, NW. Room 2209, Washington, D.C. 20536 on the enclosed Form I-290B.

If an appeal is desired, the Notice of Appeal shall be executed and filed with this office, together with the required fee of $110. A brief or other written statement in support of your appeal may be submitted with the Notice of Appeal.

Any questions which you may have will be answered by the local immigration office nearest your residence, or at the address shown in the heading to this letter.

Sincerely,

E. M. Trominski
District Director

Enclosure:  I-290B

EMT/LPD/OVG/RM/yh

306

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, and 4a & b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt Fee will provide you the signature of the person delivered to and the date of delivery.

3. Article Addressed to:

CECILIA DE LA CRUZ PEREZ
C/O ROBERT H. CRANE, ATTY. AT LAW
P.O. BOX 1042
WESLACO, TEXAS 78596

A72.016 713/714/715/716/717

5. Signature (Addressee)

6. Signature (Agent)

PS Form 3811, November 1990  ☆U.S. GPO: 1991-287-066   **DOMESTIC RETURN RECEIPT**

Is your **RETURN ADDRESS** completed on the reverse side?

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

4a. Article Number

P 473 152 125

4b. Service Type
☐ Registered     ☐ Insured
☐ Certified      ☐ COD
☐ Express Mail   ☐ Return Receipt for Merchandise

7. Date of Delivery

8. Addressee's Address (Only if requested and fee is paid)

Thank you for using
Return Receipt Service.

307

DIEXM/ANNEX          Immigration & Naturalization Service,      2102 Teege Ave. Harlingen, Texas 78550

# FAX

Date: _Aug. 5, 1998_

Number of pages including cover sheet: ____

| To: | From: |
|---|---|
| _ERNIE MOLINA_ | Rosie Garcia _Rosie Garcia_ |
| Phone: | Phone: (956) 389-7014 |
| Fax phone: | Fax phone: (956) 389-7070 |
| CC: | |

**REMARKS:**   ☐ Urgent    ☐ For your review    ☐ Reply ASAP    ☐ Please comment



ATTACHMENT B

309



**CITIZENSHIP**

**·DUPLICATE·**

No. AA610288

This Certificate No. A74 509 165

Diana Ng Santos

DIANA NG SANTOS

RIO GRANDE CITY, TEXAS

FEMALE

IT IS PUNISHABLE BY U.S. LAW TO COPY,
PRINT OR PHOTOGRAPH THIS CERTIFICATE,
WITHOUT LAWFUL AUTHORITY.

Now therefore

JULY 28, 1964

MARCH

NINETY-EIGHT

COMMISSIONER OF IMMIGRATION AND NATURALIZATION

310