IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 0 9 2004

Michael N. Milby
Clerk of Court

ANTELMA DOMINGUEZ-PEREZ, )
   et al, )
                       )
   Plaintiffs, )
                       )   No. B-96-116
v. )
                       )
TOM RIDGE, et al., )
                       )
   Defendants. )

## DEFENDANTS' OPPOSITION TO PETITIONERS/PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS FEES, COSTS AND EXPENSES

Defendants, by and through undersigned counsel, hereby file their opposition to Petitioners/Plaintiffs' Motion for Award of Attorneys Fees, Costs and Expenses ("Fee Motion").

## BACKGROUND

The named plaintiffs claim to be United States citizens who were born abroad to a parent who was a citizen of the United States. Plaintiffs' First Amended Petition for Writ of Habeas Corpus, and Complaint for Declaratory and Injunctive Relief ¶¶ 4-9 (hereinafter "Amended Complaint"). Plaintiffs claim to have filed N-600 applications for certificates of citizenship before the Immigration and Naturalization Service ("INS"). Amended Complaint ¶¶ 28, 32, 36, 39, 41, 42. Two of the plaintiffs also claim that they have applied for social security cards with the Social Security Administration ("SSA") and were not issued cards. Amended Complaint ¶¶ 29, 33.

Plaintiffs purport to represent a class of:

> all people who have filed or will file N-600 applications with the I.N.S. district office in Harlingen, whose claims to U.S. citizenship are being adjudicated, have been or will be unable to obtain social security cards because of lack of any of the specified documents evidencing their U.S. citizenship, which are acceptable to the Social Security office, and lack of any document from INS evidencing their right to be

employed in the United States as prima facie U.S. citizens [sic]. Amended Complaint ¶ 14. Plaintiffs seek relief in the form of a declaratory judgment that the practice of the INS and SSA violates the Social Security Act, the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and the Fifth Amendment of the United States Constitution, an injunction stopping the INS and SSA practices, an order restraining defendants from not issuing employment authorization, an order restraining defendant Apfel from not issuing social security cards to all applicants with pending N-600 applications, an order restraining defendant Apfel from not conducting administrative review of denials of social security cards, an order requiring Defendants to notify all members of the class of relief granted in this action, and an award of costs, attorney fees, and such other relief as deemed proper. Amended Complaint at 19-20.

On November 12, 1998, the magistrate judge issued his report and recommendation. See Magistrate's Report and Recommendation ("Magistrate's Report"). In the Magistrate's Report, the magistrate recommended that plaintiffs' motion for class certification be granted and that plaintiffs represent all people who have filed or will file an N-600 application with the INS District Office in Harlingen, Texas, in whose cases there has been no final adjudication of their claim to United States citizenship. The magistrate also concluded that plaintiffs demonstrated that defendants' policies deprive them of equal protection in violation of the Fifth Amendment. Magistrate's Report at 5. The magistrate concluded that N-600 applicants received disparate treatment from that afforded to similarly situated persons, i.e., "foreign-born persons seeking permanent status in the U.S." Magistrate's Report at 6. The magistrate determined that the defendants failed to demonstrate a facially legitimate and bona fide reason to support the distinction. Magistrate's Report at 6. Accordingly, the magistrate recommended that declaratory

relief be ordered finding that defendants' policies of refusing to issue class members authorization to work in the United States and social security cards violates Equal Protection. Magistrate's Report at 8. He further recommended enjoining defendants from "denying Plaintiffs and other class members a document evidencing their right to work in the United States," and that defendant Apfel be enjoined from refusing to issue social security cards to persons presenting such a document. Magistrate's Report at 7. On November 27, 1998, defendants filed timely objections to the Magistrate's Report.

In the Court's Order dated February 26, 1999, the Court adopted the Magistrate's Report subject to the Court's being available to address the defendants' concerns regarding fraudulent applications on an individual basis and that the temporary work authorizations issued are to be temporary, pending the final adjudication of plaintiffs' N-600 applications. Order dated February 26, 1999 at 1.

On March 12, 1999, defendants filed their motion to alter or amend judgment pursuant to Rule 59(e). In particular, defendants argued that plaintiffs should be permitted to seek temporary work authorization only after complying with the procedures imposed on other appliants, that defendants should not be required to raise fraud concerns to the Court on an individual basis, and that defendant Apfel should not have an order against her insofar as there was no particular finding against her.

On October 29, 2004, the Court amended its February 26, 1999 order. The order as corrected resolved the concerns raised in the defendants' 59(e) motion.

## ARGUMENT

## PLAINTIFFS ARE NOT ENTITLED TO RECOVER ATTORNEY FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT, OR IN THE ALTERNATIVE, ARE ENTITLED TO RECOVER ONLY A DIMINISHED AWARD

The Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), guides the Court's analysis of plaintiffs' motion. That section, in relevant part, states:

> Except as otherwise specifically provided by statute, a court shall award to a <u>prevailing party</u> other than the United States fees and other expenses, ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action ... unless the court finds that the position of the United States was <u>substantially justified</u> or that <u>special circumstances make an award unjust</u>.

28 U.S.C. § 2412(d)(1)(A)(emphasis added). Fees can only be awarded "if (1) the claimant is a 'prevailing party'; (2) the position of the United States was not 'substantially justified'; and (3) there are no special circumstances that make an award unjust." <u>Sims v. Apfel</u>, 238 F.3d 597, 599-600 (5th Cir. 2001) (citing <u>Commissioner v. Jean</u>, 496 U.S. 154, 158 (1990)). Furthermore, because EAJA is a waiver of governmental sovereign immunity, the statute must be strictly construed. See <u>Estate of Cervin v. Commissioner of Internal Revenue</u>, 200 F.3d 351, 355 (5th Cir. 2000).

### I.    PLAINTIFFS' FEE MOTION IS PREMATURELY FILED

Ordinarily, under EAJA, a prevailing party may request fees thirty days after the entry of a "final judgment." 28 U.S.C. § 2412(d)(1)(2). A "final judgment" is defined as "a judgment which is final and not appealable. . . ." 28 U.S.C. § 2412(d)(2)(G) <u>Briseno v. Ashcroft</u>, 291 F.3d 377, 380 (5th Cir. 2002) (a "final judgment" is one "from which no appeal can be taken") ; <u>Newsome v. Shalala</u>, 8 F.3d 775, 777-78 (11th Cir. 1993); <u>Baker v. Sullivan</u>, 956 F.2d 234, 235 (11th Cir. 1992).

4

In the instant case, the Court has issued an amended decision dated October 29, 2004, as part of the resolution of the government's concerns raised in its Rule 59(e) motion. Pursuant to Fed. R. App. P. 4(a)(1)(B), Defendants are afforded sixty days in which to file an appeal from that decision – that is, by December 28, 2004. Plaintiffs, however, now move for attorneys fees, before the time for an appeal has elapsed. That motion should be dismissed as premature.

## II. PLAINTIFFS SHOULD BE DENIED FEES BECAUSE OF THEIR FAILURE TO DEMONSTRATE THE RATE AT WHICH THEY CONTRACTED FOR THEIR ATTORNEYS

Plaintiffs should be denied fees because they have failed to properly document the rate at which they contracted for attorney services. In the instant case, the plaintiffs provide no information showing the rate at which they retained counsel. EAJA fees are not intended to be a windfall for attorneys. Rather, the $125 fee represents Congress' estimation of a reasonable rate. "[I]t is nonetheless clear that the [] hourly rate is a statutory ceiling and not a floor." Estate of Lee v. National Flood Ins. Program, 812 F.2d 253, 257 (5th Cir. 1982) (citing Chipman v. Secretary of Health and Human Services, 781 F.2d 545, 547 (6th Cir.1986)). Accordingly, it is incumbent upon an applicant to demonstrate the rate at which they contracted for attorneys. Indeed, it is entirely possible that plaintiffs' negotiated a flat-rate for services, in which case they cannot recover for an hourly rate. Thus, they have failed their burden, and the Fee Motion should be denied.

## III. PLAINTIFFS ARE NOT ENTITLED TO FEES BECAUSE THE POSITION OF THE UNITED STATES WAS SUBSTANTIALLY JUSTIFIED

### A. Burden of Proof

Putting aside for the moment whether Plaintiffs will ultimately be "prevailing parties" in this case, the Court should deny plaintiffs Application for Fees because

the Government was substantially justified. The government may defeat an application for fees by demonstrating that the government's litigation position was substantially justified. Jean v. Nelson, 863 F.2d 759, 767 (11th Cir. 1988); United States v. Certain Real Estate Property Located At 4880 S.E. Dixie Highway, 838 F.2d 1558, 1562 (11th Cir. 1988). The Supreme Court has expounded upon the meaning of "substantially justified":

> We are of the view, therefore, that as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high degree," but rather "justified in substance or in the main" — that is, justified to a degree that could satisfy the reasonable person. That is no different from the "reasonable basis both in law and fact" formulation . . . .

Pierce v. Underwood, 487 U.S. 552, 565 (1988). The fact that the government's position was not the prevailing one is not the appropriate test. See Nail v. Martinez, ___ F.3d ___, 2004 WL 2636037 at *5 (5th Cir. Nov. 19, 2004). "The test is essentially one of reasonableness." CFTC v. Dunn, 169 F.3d 785, 786 (11th Cir. 1999), quoting FEC v. Political Contributions Data, 995 F.2d 383, 386 (2d Cir. 1993).[1] The Fifth Circuit has explained that "This standard is not overly stringent, however, and the position of the government will be deemed to be substantially justified 'if there is a "genuine dispute" . . . or "if reasonable people could differ as [to the appropriateness of the contested action."'" Davidson v. Veneman, 317 F.3d 503, 506 (5th Cir. 2003) (quoting Pierce, 487 U.S. at 565) (brackets and ellipsis in original). In assessing the "position of the United States," the court looks to both the government's litigation strategy and the actions of the agency below. See, e.g.,

---

[1] Plaintiffs attempt to elevate the test by arguing that the government must make a "strong showing." Application for Fees at 6, citing S & H Riggers and Rectors v. Occupational Safety and Health Review Comm'n, 672 F.2d 426, 430 (5th Cir. Unit B 1982). S & H Riggers and Rectors, however, was decided before the Supreme Court's decision in Pierce, and is therefore superseded. It is clear that the reasonableness standard now prevails. Dunn, 169 F.3d at 786.

Marcus v. Shalala, 17 F.3d 1033, 1035-36 (7th Cir. 1994).

### B. The Litigation Position of the Government Was Substantially Justified

The Court should deny fees because the Government's position was substantially justified. The crux of the government's litigation position in the instant case was that the government, consistent with due process, could afford temporary work authorization to aliens applying for asylum or adjustment of status but not afford similar proof to people purporting to be United States citizens. Under the test proposed by the government, such immigration distinctions are permissible provided that they are premised on a "facially legitimate and bona fide reason." Alternatively, the government's distinction would be sufficient if the basis for the distinction passed minimum scrutiny.

As a starting point, the Fifth Circuit has explained that where "the issue was one of first impression, and therefore novel[,]" "[t]his fact alone weighs in favor of substantial justification." See Davidson, 317 F.3d at 507 (citing Baker v. Bowen, 839 F.2d 1075, 1081 (5th Cir. 1988)). As the Court further explained that the "standard was designed to allow the government to advance in good faith . . . novel but credible . . . interpretations of the law. . . ." Id. (citing SEC v. Fox, 855 F.2d 247, 252 (5th Cir. 1988)) (internal quotation omitted and ellipsis in original). In the instant case, the issue raised was a novel one regarding the requirement to expand temporary work authorization. At the time, there was little to no precedent on the matter. Indeed, that absence of law persists. Accordingly, the facts alone weigh in favor of substantial justification.

In this particular case, the government's position was that the basis for distinguishing between asylum applicants and applicants for adjustment of status, on the one hand, and people claiming to be United States citizens, on the other, was

that the latter category of persons had access to no fewer than five alternative means of establishing their work authorization. Indeed, Social Security regulations permit a variety of means for establishing U.S. citizenship or permission to work, including: (1) certificate of citizenship; (2) certificate of naturalization; (3) passport; (4) citizen identification card; and (5) consular report of birth.[2] 20 C.F.R. §422.107(d). Any one of these modes of obtaining remedy will satisfy the requirement of proof of U.S. citizenship required for a social security card. In the instant action, plaintiffs have not only failed to pursue any of these alternative modes of proof, but they have openly refused to do so. Amended Complaint ¶ 20. The only reason given is that there are "mail" delays which they do not wish to suffer. Amended Complaint ¶ 20.

In stark contrast to the options available to citizens, aliens depend exclusively on the Attorney General's (now the Department of Homeland Security Secretary's) employment authorization. That position is not contrary to prior case law, and the basis of the distinction is, at least arguably, rational and presents a "genuine dispute." Davidson, 317 F.3d at 506.

Further enhancing the substantial justification is the fact that Congress and the Executive, consistent with Equal Protection, are free to implement remedies in a piecemeal fashion. The Supreme Court has frequently upheld under-inclusive classifications on the sound theory that a legislature may deal with one part of a problem without addressing all of it. See, e.g., Williamson v. Lee Optical Co., 348 U.S. 483, 488-89 (1955). Thus, the Supreme Court has found that a statute is not invalid under the Constitution because it might have gone farther than it did,

---

[2] As an example, seeking a passport is a legitimate option the plaintiffs could pursue. By regulation, the Department of State provides that: "In lieu of a certificate of citizenship, the applicant may submit evidence of his or her parent(s)' citizenship at the time of his or her birth, and evidence of his or her and his or her parent(s) residence and physical presence in the United States." 8 C.F.R. 51.44(b)(2).

Roschen v. Ward, 279 U.S. 337, 339 (1929), that a legislature need not "strike all evils at the same time," Semler v. Dental Examiners, 294 U.S. 608, 610 (1935), and that "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." Williamson, 348 U.S. at 489. In the instant case, it is clear that the provision of temporary relief was intended to help at least some groups. That the government did not act to anticipate every permutation of facts does not render the government's actions impermissible. Accordingly, in this case, where relief was aimed to at least some people in particular need but not others, does not mean that the government is not substantially justified. Indeed, if anything, plaintiffs' case proves the opposite: that there are people in need of temporary work authorization and that the government may act to assist those individuals.

IV. **PLAINTIFFS SHOULD NOT BE AWARDED FEES BECAUSE SPECIAL CIRCUMSTANCES MAKE AN AWARD OF FEES UNJUST**

The Court should decline to award fees in this case, or at least substantially reduce any award, because of special circumstances. A court may decline to award fees where "special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983); State of Louisiana, ex rel. Guste v. Lee, 853 F.2d 1219, 1224-25 (5th Cir. 1988); Dowdell v. City of Apopka, 698 F.2d 1181, 1189 (11th Cir 1983). The special circumstances exception is a "safety valve." Guste, 853 F.2d at 1224; National Treasury Employees Union v. Internal Revenue Service, 735 F.2d 1277 (11th Cir. 1984). Congress also intended the "special circumstances" exception to employ a certain degree of equitable considerations. H.R. Rep. No. 1418, 96th Cong., 2d Sess. 11 (1980), reprinted in 1980 U.S. Code Cong. & Admin. News 4953, 4984, 4990; U.S. v. 640.00 Acres of Land, 756 F.2d 842, 850 (11th Cir. 1985).

### A. The Court Should Deny Fees For Actions Taken After The Final Judgment Relating To Settlement Discussions And Defendants' 59(e) Motion

In this case, the Court should deny fees, at least in part, based on special circumstances. In this case, the Court issued its original order adopting the magistrate judge's report and recommendation on February 26, 1999. Within the prescribed time, the government filed its Rule 59(e) motion, raising particular considerations regarding the treatment of fraud and other issues. At the behest of both parties, efforts were taken to possibly settle the case, and the Court abated proceedings on July 19, 1999. Ultimately, the Court's amended order of October 29, 2004 addressed the concerns raised by the government in the Rule 59(e) motion.

Despite that fact, plaintiffs seek to recover fees for their post-59(e) motion activities. In particular, after the Court's February 26, 1999 order, plaintiffs seek to recover fees for 104.8 hours. See Fee Motion, Exhibit B at 4-7 (48.5 hours), Exhibit C Time Sheet at 1-4 (42.8 hours), Exhibit D at 3- (11.3. hours); Exhibit E at 4-5 (1.2 hours). At the requested rate of $125 per hour (plus adjustments), Plaintiffs seek $17,886.74 in fees, Exhibit F at 2-3, for their efforts at settlement, where settlement was not achieved and where the government was reasonable in its 59(e) motion insofar as its concerns were rectified in the amended order. That constitutes a special circumstance which does not justify the award of fees.

### B. The Court Should Deny Fees Relating To Administrative Actions

The Court should deny all fees relating to actions before the administrative agencies. The Supreme Court has ruled that EAJA does not permit recovery for work performed before the administrative agency. See Ardestani v. INS, 502 U.S. 129, 134 (1992).

Here, plaintiffs seek to recover for work performed at the administrative level. See Fee Motion, Exhibit B at 4 (10 hours); Exhibit E, Time Sheet at 1 (.3 hours).

For those hours, plaintiffs seek $1223.77 in recovery (for the Exhibit B hours) and $37.67. See Exhibit F at 2. Those fees should be denied.

### C. The Court Should Deny Fees for Non-Prevailing Activities or Unreasonable Charges

The Court should also deny fees for pre-filing activities, such as the preparation of the complaint. EAJA awards are only permitted to recover fees for reasonable activities. However, Plaintiffs seek to double-recover insofar as they seek recovery for duplicative actions. For example, Plaintiffs seek to recover regarding their motion to compel for 41.6 hours. See Fee Motion, Exhibit B at 4 (13 hours), Exhibit D at 3 (16.8 hours); Exhibit E at 4 (11.8 hours). At the proposed billing rate ($130.86), this amounts to $5,443.77. However, plaintiffs did not prevail on the motion to compel. Moreover, plaintiffs fail to indicate why three attorneys had to attend the same hearing. Accordingly, they cannot recover that amount.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Fee Motion. In the alternative, the Court should diminish the award of fees by $17,886.74, awarding only $55,939.99 in fees and costs.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General
Civil Division

DAVID V. BERNAL
Assistant Director

ERNESTO H. MOLINA, JR.
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-9344
Attorneys for Respondent

Dated: December 8, 2004

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via Federal Express overnight delivery, this 8th day of December, 2004, to:

>Ms. Lisa Brodyaga, Esquire
>17891 Landrum Park Road
>San Benito, TX  78586

ERNESTO H. MOLINA, JR.
Senior Litigation Counsel