```
             UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
                   BROWNSVILLE DIVISION
```

ANTELMA DOMINGUEZ-PEREZ, et al.,    )
                                    )
v.                                  )   CA No. B-96-116
                                    )
TOM RIDGE, et al,                   )
_____)

### PLAINTIFFS' RESPONSE TO DEFENDANTS' OPPOSITION TO MOTION FOR AWARD OF ATTORNEYS FEES AND COSTS

Plaintiffs, through counsel, respectfully respond to the opposition of Defendants to their motion for attorneys' fees and costs. They further urge that they be allowed to amend their motion to include additional hours and that the motion be set for hearing. [1] (DOM:3).

### I. PLAINTIFFS' MOTION IS TIMELY, AS THE AGREED ORDER IS FINAL, AND IS NOT SUBJECT TO APPEAL.

Defendants first assert that Plaintiffs' motion is "prematurely filed," (INS:4), because they have until December 28, 2004 "in which to file an appeal." (INS:5). This is incorrect.

After Judge Vela entered his Final Order, Defendants filed a Rule 59 motion. Plaintiffs countered with an opposed motion to hold the Rule 59 motion in abeyance, for discussion of a possible amended order. In that pleading, Plaintiffs noted as follows, [Dkt. 59]:

> ... Petitioners are open to negotiating the issues raised therein, and consider that an amended order might be appropriate (such as, for example, to make explicit the necessity of filing an application for employment authorization, and specifying that such applications be adjudicated in the "same manner" as applications from similarly situated applicants for adjustment of status).

Plaintiffs sent Defendants a proposed agreed amended order, and filed with the Court a version which did not presuppose agreement, but which included the same amendments. [Dkt. 60]. The proposed agreed order included a clause specifying that, by agreeing

---

[1] Said pleading is cited herein, by page, as (INS:____). Plaintiffs' motion for fees and costs is cited as (DOM:___), and their memorandum in support thereof, as (DomP&A:___).

thereto, Defendants did not waive their right to appeal the underlying findings and conclusions of the Court. The version sent to the Court, premised on the presumption that it would be entered over Defendants' objections, and that appeal rights therefore would not be waived, did not contain this provision. [2] Shortly thereafter, Defendants abruptly changed their approach, suggesting that the entire case might be resolved by a proposed regulation, and agreeing to abate proceedings during such negotiations. As stated in their joint motion, [Dkt. 62] (emphasis added):

> Plaintiffs and Defendants hereby request that the Court hold in abeyance its decision on Defendants' Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) ... pending the parties' negotiation of possible settlement of *some or all outstanding issues*.

In fact, the parties came very close to settling the entire action. But the promised regulation was never promulgated, and negotiations for a nationwide settlement stalled over the issue of whether requests for interim employment authorization documents, ("EADs"), filed by N-600 applicants would be treated like those filed by applicants for adjustment of status, or whether, (like asylum seekers), class members would have to wait several months before *applying for* interim employment authorization. All other issues, including a specific award of attorneys' fees, were resolved. [3]

Unwilling to seriously undermine class members' rights, (even with the carrot of attorneys' fees), in 2003, Plaintiffs requested that the case be re-docketed, and tendered another proposed amended Order, with the changes outlined in their 1999 pleading. Given the absence of an agreement, the revised proposed order did not include either an award of attorneys' fees, or the clause stating that by

---

[2] Plaintiffs' Exhibits H and I, incorporated by reference.

[3] The inclusion of attorneys' fees left no doubt but that Defendants understood the negotiations as aimed at full settlement.

agreeing thereto, Defendants did not waive their appeal rights. [4]

At the status hearing on September 21, 2004, Defendants (correctly) advised the Court that the *sole* obstacle to settlement of the entire case was the time which class members would have to wait before they could obtain interim employment authorization. [5] Given that the differences, as stated by Defendants, were trivial, the Court instructed the parties to work them out. Taking Defendants' counsel at his word that a full settlement was within reach, on September 28, 2004, Plaintiffs faxed him a proposed Amended Final Order which would have resolved all issues. It therefore included an award of attorneys' fees, in the amount previously agreed, and did *not* contain the clause about not waiving appeal rights. [6]

At the follow-up status conference on October 4, 2004, Defendants announced that they had accepted the proposed Order submitted by Plaintiffs, save and except for one phrase. Plaintiffs agreed to remove that phrase. However, it was later discovered that when he made that agreement, Defendants' counsel was looking at Plaintiffs' 2003 proposed order, (Exhibit J), premised on *no* agreement between the parties, and thus including neither attorneys' fees nor a reservation of appeal rights, not that which had been faxed to him on September 28, 2004, (Exhibit K). After further consultation, counsel stated that while the latter version was acceptable in all other aspects, Defendants would not agree to pay attorneys' fees. However, Defendants did not request that the clause reserving their right to appeal be reinstated. In the interest of finally reaching

---

[4] Plaintiffs' Exhibit J, incorporated by reference.

[5] According to Defendants, that difference was between the 90 days Plaintiffs sought, and the 120 days Defendants had offered. Plaintiffs have a different recollection of the last offer which Defendants had made, but the specifics are not now pertinent.

[6] Plaintiffs' Exhibit K, incorporated by reference.

a full settlement of the action, Plaintiffs agreed to remove the award of attorneys' fees, explicitly advising Defendants' counsel that they would file a motion for attorneys' fees, and that the amount requested would consequently be greater than that previously negotiated. Defendants' counsel acknowledged that he understood.

Thus in its final form, the Amended Final Order included neither attorneys fees, nor a reservation of appeal rights. It therefore resembled that which had been premised on there being no agreement between the parties, and in which there was consequently no need to reserve appeal rights for either party, with the difference that the Amended Final Order was "approved on behalf of Defendants" by their attorney, whose name was signed, with his explicit permission, by the undersigned. Under Fifth Circuit precedent, such an order is final and not appealable. *See Haitian Refugee Center v. Civiletti*, 614 F.2d 92,93 (5th Cir. 1980). Indeed, had Plaintiffs not filed their motion within 30 days of the Amended Final Order, they would doubtless have lost the right to seek such fees, [7] if, for example, Defendants had opted to treat the Amended Final Order as a full settlement of all the issues in the case. Instead, Defendants now appear to claim that their fingers were crossed when they advised the Court on September 21, 2004, that the sole obstacle to full settlement was the time for processing EAD applications by class members, and that, even without a reservation of appeal rights in the Amended Final Order, they can still appeal that order. This is pure gamesmanship, and should not be rewarded. This Court should find that, by agreeing to an Amended Final Order, without a clause reserving appeal rights, Defendants waived same.

---

[7] *See, Briseno v. Ashcroft,* 291 F.3d 377 (5th Cir. 2002) (agreed order dismissing case without prejudice was final and non-appealable, and Court lacked jurisdiction over Plaintiffs' motion for attorneys' fees, which was filed more than 30 days thereafter).

Alternatively, should the Court conclude that the representations of Defendants' counsel, and the absence of the reservation of appeal rights in the Amended Final Order, are insufficient to show that the Amended Final Order was an agreed, and therefore unappealable Order, the Court may treat Plaintiffs' motion "as if it were filed during the thirty-day period following the final decision." *Sparling v. Sullivan,* 785 F.Supp. 312,318 (D.N.Y.N.Y. 1992) (*quoting* House Supp. Report No. 99-120, Part II, *reprinted in*, 1985 U.S. Code Cong. & Admin. News 132, 151, 156 n.26).

## II. DEFENDANTS' CLAIM THAT PLAINTIFFS' COUNSEL MUST PROVE THE RATE AT WHICH THEY WERE CONTRACTED IS GROUNDLESS.

Citing no legal authority, Defendants urge that Plaintiffs should be denied attorney's fees for failure to document the rate at which their services were contracted. Nothing in EAJA or known caselaw requires plaintiffs to submit such evidence. To the contrary, if a named Plaintiff did pay something related to the subject matter of the instant litigation, [8] the appropriate course would be to reimburse that person, rather than deny attorneys' fees for work done on his individual case, much less, for that done on behalf of the class. To characterize an award of attorneys fees as a

---

[8] The only Plaintiff who compensated counsel for work related to the instant litigation was Mario Salinas. In June, 1995, he paid the undersigned $600 to get him a Certificate of Citizenship, and to try to get a duplicate Social Security card. He made no additional payments after it was decided that a lawsuit would be required. The Boone children paid $245 to get their Certificates of Citizenship, and prior Orders to Show Cause cancelled, but nothing for their participation in the instant litigation. Likewise, Antelma Dominguez and her husband paid a total of $986 for her Certificate of Citizenship, and applications for adjustment of status for her husband and two of their children. They paid nothing for their participation in this litigation. The remaining named Plaintiffs were clients of other attorneys, and paid nothing to anyone in connection with the instant litigation. Nor did any unnamed Plaintiff pay anything in relation to this litigation.

"windfall" (INS:5), because counsel may have received payment from some of the plaintiffs, unfairly implies that counsel would not, as a matter of course, reimburse any such client.

In any event, apart from Mario Salinas, it is a moot point. As a class action, brought by attorneys associated with non-profit organizations, the work was performed not only for the named Plaintiffs, but on behalf of all those similarly situated. Thus, other than Mario Salinas, attorneys fees were never paid by any plaintiff, even with respect to subject matter of the litigation, and no plaintiff, named or otherwise, ever paid anything to anyone for the filing or prosecution of the instant action. [9] *Id.*

Further, regardless of whether written retainer agreements were executed with any or all of the named Plaintiffs, under Texas law, "[a]n attorney-client relationship depends on a contract, express or *implied*, between the parties." *Simpson v. James*, 903 F.2d 372,376 (5th Cir. 1990) (emphasis added). Plaintiffs and their attorneys had an implied contract to attempt to secure, through litigation, interim employment authorization and Social Security cards for the named plaintiffs and other class members.

### III. THERE WAS NO SUBSTANTIAL JUSTIFICATION, EITHER FOR THE INITIAL DENIAL OF INTERIM EMPLOYMENT AUTHORIZATION TO APPLICANTS FOR CERTIFICATES OF CITIZENSHIP, OR FOR THE DEFENDANTS' LITIGATION AND SETTLEMENT STRATEGIES.

Defendants incorrectly allege that Plaintiffs misstated EAJA's substantial justification test. Nowhere in the motion or supporting memorandum do Plaintiffs cite *S&H Riggers and Rectors v. Occ.*

---

[9] In the case of Mario Salinas, the agreement covered only the prosecution of the N-600, and the attempt to get a duplicate Social Security card for him personally. It was entered into more than a year before the instant litigation was filed, and a few weeks before it was even contemplated. Still, in an excess of caution, if and when fees are awarded, he will be reimbursed.

*Safety and Health Review Comm'n*, 672 F.2d 426 (5th Cir Unit B 1982). *See,* (INS:6,n.1). Rather, Plaintiffs rely on *Pierce v. Underwood*, 487 U.S. 552 (1988), and Fifth Circuit cases that explain *Pierce*.

As previously shown, Defendants were not substantially justified in denying interim employment authorization to N-600 applicants while affording such documents to numerous classes of aliens. The lead plaintiff's case starkly shows the unfairness and unreasonableness of Defendants' position. They refused to issue interim employment authorization to Plaintiff Antelma Dominguez, who had applied for a Certificate of Citizenship, but issued such authorization to her husband, who applied for adjustment of status based on *her* pending application for a Certificate of Citizenship. In other words, Ms. Dominguez could not get an EAD on the basis of her claim to be a U.S. citizen, but her husband could. This is beyond unreasonable.

The instant action was filed July 18, 1996, and as early as November 15, 1996, Defendants advised the Court that they would investigate the possibility that the relief Plaintiffs sought could be granted without amending the regulations, [Dkt. 16], thus implicitly recognizing the justice of Plaintiffs' position. Further, the regulations are under the sole control of Defendants, but eight years later, they have not progressed beyond the initial planning stages for a regulatory "fix." [10] And to date, Defendants have tendered no legitimate reason for the discrimination at issue.

Defendants' primary justification for the discrimination between Antelma Dominguez and her husband is the claim that she had other means of obtaining proof of her status as a U.S. citizen. (INS:7-

---

[10] *See,* Department of Homeland Security, Semi-Annual Agenda, June 28, 2004; Federal Register, Vol. 69, No. 123, p. 37535, Item No. 1124, wherein Defendants formally announced their intention to eventually publish a regulation to that effect.

8).  As previously discussed, the case was not about documenting Plaintiffs' status as U.S. citizens, but about securing interim EADs, and Social Security cards, while they obtained such documentation.  *See*, (DomP&A:17) (emphasis added):

> [I]t is simply not true that alternate methods exist for Plaintiffs to secure documentation evidencing their right to work while they seek proof of their status as U.S. citizens.  **None of the other agencies mentioned by Defendants which can provide proof of citizenship**, (on presentation of the same evidence as demanded by Defendants prior to granting a Certificate of Citizenship), such as the Department of State, **can offer interim employment authorization documents while**, for example, an application for a passport is pending with the agency.

Unable to rebut this assertion, Defendants elected to ignore it.

Defendants' second rationale is that they are "free to implement remedies in a piecemeal fashion," (INS:8), citing *Williamson v. Lee Optical Co,* 348 U.S. 483,488-89 (1955). [11]  The instant litigation challenges administrative discrimination, under the sole control of Defendants, not a legislative choice.  Nor is it about piecemeal implementation of "a remedy."  The problem in *Williamson* was very different.  As explained therein (internal citations omitted):

---

[11]  Defendants appear to have abandoned their claim, which was unsupported by any evidence, that there is a greater incidence of fraud in applications for Certificates of Citizenship, than in other type of permanent status in the U.S.. *See,* Exhibit "O" [Dkt. 60], Defendants' Second Supplemental Responses to Plaintiffs' Requests For Production of Documents, and 8 (of 1229) pages submitted therewith.  Specifically, included are pages 0816, 0818, 0820, 0822, 0824, 0826, and 0828, which show the total number of N-600 applications adjudicated by the Harlingen District Office between October 1991, and July 1998, broken down as to applications approved, applications denied for fraud, and applications denied for other reasons.  They show that of the total of 2,757 N-600 applications adjudicated during that period, only 34 (less than 1.25%), were denied for fraud.  In re-urging their Rule 59 motion, Defendants made no attempt to show that the rate of fraud has increased in the years since the Final Order was first issued.

> The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. ... Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. ... The legislature may select one phase of one field and apply a remedy there, neglecting the others. ... The prohibition of the Equal Protection Clause goes no further than the invidious discrimination. We cannot say that that point has been reached here. For all this record shows, the ready-to-wear branch of this business may not loom large in Oklahoma or may present problems of regulation distinct from the other branch.

In *Williamson,* the distinction was between opticians, and sellers of ready-to-wear glasses. Here, the discrimination is between the claimant of a status herself, (Plaintiff Dominguez), and someone asserting rights through her by virtue of her claim, (her husband). It is as if, in *Williamson*, the statute allowed employees of an optician to perform the tasks, (because they were employees of an optician), but forbid the optician himself to do so. This would be as irrational as the discrimination involved herein. [12] As noted in the Magistrate's Report & Recommendation, [Dkt.51, at 6]:

> [Such discrimination is] not rationally related to any legitimate government interest. Indeed, it does not even pass muster under the most minimal standard, urged by Defendants, that there be a "facially legitimate and bona fide reason."

Particularly given their early recognition of the injustice of the situation, [Dkt. 16], [13] Defendants' attempt to claim substantial

---

[12] Nor is Defendants' position advanced by *Semler v. Dental Examiners*, 294 U.S. 608,610 (1935) (INS:9). There, a statute limited the ability of dentists to advertise, while not imposing similar restrictions on other professions. The Court concluded that the State was entitled to "deal with the different professions according to the needs of the public in relation to each."

[13] Further, the provision of employment authorization is not a statutorily mandated, or limited, function. As Plaintiffs urged from the inception, even regulatory authorization is not required.

justification for their discriminatory policies falls flat.

Defendants also characterize the instant litigation as novel, or as presenting issues of first impression. (INS:7). Plaintiffs neither sought an expansive interpretation of the Equal Protection Clause, nor mounted a complex legal challenge to the Immigration and Nationality Act. Nor were the facts particularly complicated: Defendants had a blanket policy of denying interim employment authorization and Social Security cards to N-600 applicants. The case presented the application of well-settled equal protection principles to a particular instance of governmental discrimination. Moreover, the mere assertion that the issues are novel or of first impression does not automatically shield Defendants from liability under EAJA. *See, Russell v. National Mediation Bd*, 775 F.2d 1284, 1290 (5th Cir. 1985); *Keasler v. U.S.*, 766 F.2d 1227, 1231 (8th Cir. 1985) ("That a case presents an issue of first impression in the forum does not ipso facto make the government's position in the litigation reasonable."). A different, less rigorous standard also do not apply simply because the issues were novel or of first impression. *Russell, supra* at 1290. The Government must still have a reasonable basis in law or fact for its position and shoulder its responsibility in proving substantial justification.

Several circuit courts have indicated that "the most powerful indicator of the reasonableness of an ultimately rejected position is a decision on the merits and the rationale which supports that decision." *U.S.S.E.C. v. Zahareas*, 374 F.3d 624, 627 (8th Cir. 2004) (quoting *Friends of Boundary Waters Wilderness v. Thomas*, 53 F.3d 881, 885 (8th Cir. 1995)) (reversing district court's denial of EAJA

---

For example, Defendants have long provided employment authorization to some informants who are working with the Government, even without explicit regulatory authorization.

fees where, among other things, the government's changing legal theories were not supported by the facts); *Golembiewski v. Barnhart*, 382 F.3d 721,725 (7th Cir. 2004) (reversing denial of fees where "strong language against the government's position" in the merits decision indicated unreasonableness of the government's position); *U.S. v. Paisley*, 957 F.2d 1161,1167 (4th Cir. 1992) (stating that merits decisions "and more critically their rationales — are the most powerful available indicators of the strength, hence reasonableness, of the ultimately rejected position"); *Swiney v. Gover*, 14 Vet.App. 65,72 (2000).

This does not mean that simply because the government lost, it was not substantially justified. *Pierce v. Underwood*, *supra*, clearly rejects an equation of the decision on the merits with lack of substantial justification in the government's litigating position. Rather, where the government's position was not credible, *Russell, supra,* 775 F.2d at 1290, or its argument had no basis in law or fact, *Golembiewski, supra,* 382 F.3d at 725, the government was not substantially justified in defending the lawsuit.

Here, neither the law, nor the facts, supported the Government's position. The case could easily have been resolved without extensive litigation. Even if Defendants had not anticipated that N-600 applicants might need interim employment authorization, once that need was identified, they could, and should, have remedied the problem, instead of litigating it for over eight years. Even now, rather than honor a previously agreed award of attorneys' fees, Defendants prefer to litigate that issue as well, thus driving up the total time and energy Plaintiffs must invest in the case.

**IV. PLAINTIFFS ARE ENTITLED TO ATTORNEYS FEES FOR THEIR EFFORTS IN GETTING DEFENDANTS TO AGREE TO THE AMENDED FINAL ORDER, WHICH WAS EXACTLY WHAT PLAINTIFFS HAD SUGGESTED IN 1999**

The Government also opposes the request for the 104.8 hours which Plaintiffs expended after February 26, 1999, on the stated grounds

that, (INS:10) (emphasis added):

> Plaintiffs seek $17,886.74 in fees ... for their efforts at settlement, where settlement was not achieved and where *the government was reasonable in its 59(e) motion insofar as its concerns were rectified in the amended order.* That constitutes a special circumstance which does not justify the award of fees.

This ignores the history of the negotiations. Thus, while Defendants correctly note that the Amended Final Order addressed the concerns raised in their Rule 59 motion, the delay in getting from the Rule 59 motion to the agreed final order was solely of their own making. *In 1999, Plaintiffs affirmatively suggested the very changes ultimately included in the final order*. The fact that it took Defendants five years to agree to the same changes they requested in their Rule 59 motion is not the fault of Plaintiffs.

Most of the time Plaintiffs invested after Judge Vela's Final Order was spent addressing the Rule 59(e) motion and negotiating with Defendants. Ms. Kenney's hours after February 26, 1999, all related to pending motions, review of the Court's orders, and settlement. Ms. Coyle's hours related to the Rule 59(e) motion, settlement discussions, and Plaintiffs' efforts to reinstate this case in the Court's regular docket. Mr. Maldonado's hours all related to settlement discussions, efforts to lift the Court's stay, the draft of the amended final order, and the EAJA application. Ms. Brodyaga's hours after February 26, 1999, all relate to responding to the Rule 59(e) motion, settlement efforts, the lifting of the stay, hearings before the Court to resolve this matter, and the EAJA application. This is all compensable time.

It must also be noted that the special circumstances provision is narrowly construed. *Martin v. Heckler*, 773 F.2d 1145 (11th Cir. 1985). Plaintiffs should not be penalized for attempting to resolve the matter amicably, particularly where Defendants are

solely responsible for the six year delay in reaching a final accord. *See, Sorenson v. Concannon*, 161 F.Supp.2d 1164, 1169 (D.Conn. 2001) (concluding that attorney time spent in unsuccessful settlement discussions was compensable under EAJA).

### V.  WITH ONE EXCEPTION, DEFENDANTS' OTHER COMPLAINTS ARE LIKEWISE WITHOUT MERIT.

Defendants also wrongly argue, (INS:11), that Plaintiffs should not be compensated for work performed drafting initial pleadings and developing the theory of the case.  Legal precedent clearly supports Plaintiffs' claim for time spent preparing to file the instant lawsuit. *See, Webb v. Bd. of Education*, 471 U.S. 234, 243 (1985) (reviewing fee award under 42 U.S.C. §1988); *Pollgreen v. Morris*, 911 F.2d 527, 536 (11th Cir. 1991) (stating that EAJA compensates for time spent preparing civil action under EAJA); *Gough v. Apfel*, 133 F.Supp.2d 878, 880 (D.W.Va. 2001) (same). Thus, Plaintiffs oppose any reduction time spent researching the legal theories and preparing the initial complaint.

Defendants are also incorrect in arguing that Plaintiffs seek recovery for duplicative activities, (INS:11).  In support of their argument, Defendants cite only Plaintiffs' hours expended in the motion to compel and the hearings held to address that motion and others.  No other instances of duplication are challenged by Defendants.  Initially, it is important to note that the hearing in question was conducted over two days.  On each date, two attorneys for the plaintiffs were present, not three, as Defendants suggest. In addition to the motion to compel, the hearing also addressed other issues, including Plaintiffs' motion to supplement their class certification motion.  But most importantly, Defendants incorrectly assert that "plaintiffs did not prevail on the motion to compel." *Id.*  Following two days of evidentiary hearings,

Magistrate Judge Black *granted* Plaintiffs' motion to compel. *See* [Dkt. 48]. Two attorneys were needed to assign specific tasks to each: in addressing the multiple issues before the Court, preparing and presenting evidence in support of the motion, and effectively examining the witness tendered by INS.

In one area Defendants are probably correct: Plaintiffs cannot be compensated for what can be considered "work-up" time: *i.e.,* time spent laying the predicate for the instant case, such as by taking Plaintiffs to the Social Security Office, and making what were known to be futile requests for Social Security cards, so that Defendants could not complain that they lacked "standing" to sue.

At page 1 of Ms. Brodyaga's timesheet, (page 4 of Exhibit "B"), 9.4 hours, not 10, should be excluded.[14] In Ms. Kenney's timesheet, only .2 hours, not 1.3, are attributable to work that is not compensable. Accordingly Plaintiffs agree that their hours be reduced by 9.6 hours, because such time is either not compensable, or is not properly documented, apart from non-compensable hours.

Finally, Plaintiffs concur that the EAJA statute must be strictly construed, (INS:1).[15] However, they would note that none of the above discussions turns on a "construction" of the EAJA statute, and this principle is thus irrelevant to the case at bar.

Respectfully submitted,

s/

---

[14] The additional .6 hours, discussing the suit with Plaintiff Dominguez-Perez, is justified. Some of the other hours would also be acceptable, such as the additional time spent talking with her, and doing research, but they are excluded because they were not properly separated from time spent at the Social Security office.

[15] *See, Ardestani v. INS*, 502 U.S. 129, 138 (U.S. 1991).

```
LISA BRODYAGA (Attorney-in-charge)
Refugio Del Rio Grande
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
Fax (956) 421-3423
Texas Bar No:  03052800
```

and

```
Javier Dominguez and David Armendariz,
Lawyers' Committee for Civil Rights Under Law of Texas
118 Broadway St., Ste. 302
San Antonio Texas 78205
(210) 227-1603
(210) 225-3958 (fax)
```

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing, with Exhibits H through K, was mailed, first class postage prepaid, to Ernesto H. Molina, Jr. Attorney, OIL, Box 878, Ben Franklin Station, Washington, D.C. 20044, on December 15, 2004.


s/
Lisa Brodyaga