**ORIGINAL**

UNITED STATES DISTRICT COURT

United States District Court
Southern District of Texas
FILED

SOUTHERN DISTRICT OF TEXAS

MAR - 1 2005

BROWNSVILLE DIVISION

Michael N. Milby, Clerk of Court

ANTELMA DOMINGUEZ-PEREZ, ET AL.    CASE NO. CA-B-96-116
                               .
          PLAINTIFFS,          .
                               .
          V.                   .    BROWNSVILLE, TEXAS
                               .    MONDAY, SEPTEMBER 23, 1996
JANET RENO, ET AL.,            .    9:34 A.M. TO 10:16 A.M.
                               .
          DEFENDANTS.          .
. . . . . . . . . . . . . . . .


HEARING

BEFORE THE HONORABLE WILLIAM BLACK
UNITED STATES MAGISTRATE JUDGE


Trinity Transcription Services
122 Trinity Oaks Circle
The Woodlands, TX 77381
281-296-2290

**TRINITY TRANSCRIPTION SERVICES**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

ANTELMA DOMINGUEZ-PEREZ, ET AL.     CASE NO. CA-B-96-116
              .
          PLAINTIFFS,   .
              .
        V.           .    BROWNSVILLE, TEXAS
              .    MONDAY, SEPTEMBER 23, 1996
JANET RENO, ET AL.,        .    9:34 A.M. TO 10:16 A.M.
              .
          DEFENDANTS.   .
. . . . . . . . . . . . . . .

HEARING

BEFORE THE HONORABLE WILLIAM BLACK
UNITED STATES MAGISTRATE JUDGE

Appearances:

For the Plaintiff:            Elizabeth Brodyaga, Esq.
                             P.O. Box 3566
                             Harlingen, Texas 78551

For the Defendant:            Ernesto Molina, Esq.
                             Assistant United States Attorney
                             No Address Provided
                             Washington, D.C.

Court Recorder:              Gabriel Mendieta

Transcriber:                 Cheryl Hendershot
                             Trinity Transcription Services
                             122 Trinity Oaks Circle
                             The Woodlands, TX 77381
                             281-296-2290

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

1

1    **Brownsville, Texas; Monday, September 23, 1996; 9:34 a.m.**

2        **THE COURT:**  Good morning.  Please be seated.  All

3    right.  We've got *B-96-116, Dominguez-Perez, et al. against*

4    *Janet Reno, et al.*  Ms. Brodyaga, Ms. Garcia, how are you

5    ladies?

6        **THE COURT:**  Good morning.

7        **MS. BRODYAGA:**  Good morning, Judge.  I'm fine.  Thank

8    you.

9        **THE COURT:**  You're Mr. Molina?

10        **MR. MOLINA:**  Yes, your Honor.

11        **THE COURT:**  Okay.  Which branch of the Federal

12    Government are you with, Mr. Molina, are you the INS or the

13    Social Security?

14        **MR. MOLINA:**  Technically, I am with the Civil

15    Division of the Department of Justice.

16        **THE COURT:**  Okay.  All right.  Where are you as far

17    as service?  That was the --

18        **MS. BRODYAGA:**  Your Honor, the -- Mr. Treminski

19    (phonetic) was served on July 19th.  Janet Reno was served on

20    July the 23rd.  The U.S. Attorney and the Social Security

21    Administration were not served until August.  That was one of

22    the things --

23        **THE COURT:**  Okay.

24        **MS. BRODYAGA:**  -- that we were just discussing a

25    moment ago, as to whether -- the fact that a co-Defendant was

1  not served until August, puts off Mr. Treminski's obligation to

2  respond.

3        It's our position that it does not.  He was served

4  more than 60 days ago.  The filing says on its face that you

5  have 60 days within which to answer.  And we would request a

6  default be entered against Mr. Treminski.

7        **THE COURT:**  Okay.  Why not, Mr. Molina?

8        **MR. MOLINA:**  Your Honor, under Rule 40 -- under Rule

9  4, she needs to perfect service on all the Defendants.

10       Now pursuant to that Rule, the U.S. Attorneys office

11 and other Government offices have submitted to the Court

12 exactly how to perfect service.

13       **THE COURT:**  I know how -- we've been down this trail

14 before.  You know, I'll tell you something.  I know Congress

15 passed those laws.  It's just it always strikes me as

16 absolutely absurd when the Government comes in with full

17 knowledge of what somebody's claims are, with full notice of

18 everything, and then makes these arguments.

19       But, you know, that's my personal prejudice.  How

20 about Treminski?  His time to answer has run?

21       **MR. MOLINA:**  Well, your Honor, as Mr. Treminski must

22 be served along with all of the other Defendants as well.

23       **THE COURT:**  Fine.  I mean, the fact, you know,

24 apparently the Plaintiffs have opted to sue Immigration Service

25 and who else, the Social Security Administration, and the

1    Attorney General.  What if they had opted only to sue the

2    Immigration Service?  You wouldn't be standing here making the

3    argument that Treminski wouldn't be required to answer within

4    60 days, would you?  I mean, is your argument --

5             **MR. MOLINA:**  Yes, I would, your Honor.  Mr. Treminski

6    would have to be served along with Janet Reno --

7             **THE COURT:**  Well, no.  No.  You missed my question.

8    What if only Treminski had been served in his capacity as

9    District Director of the Internal Revenue Service?  He'd had to

10   file an answer within 60 days wouldn't he?

11            **MR. MOLINA:**  I am not prepared to answer that

12   question, your Honor.  I can -- well, your Honor, I came --

13   honestly, your Honor, I came here expecting discussion of

14   preliminary forms of relief.

15            **THE COURT:**  Well --

16            **MR. MOLINA:**  But I'm not hearing what you're --

17            **THE COURT:**  Well, yeah.  But you got to decide who's

18   in the ballpark before we can decide that, can't we?  I mean,

19   if we want to talk about preliminary forms of relief, and if

20   you're arguing that the service hasn't been affected, how can

21   you talk about preliminary forms of relief without talking

22   about who's here?

23            **MR. MOLINA:**  Because parties may come forward, simply

24   with --

25            **THE COURT:**  Well but you've written a letter here

1  dated July the 26th that says you're not coming forward until

2  everybody goes through the hoops that we've tried to serve the

3  Government.  Are you prepared to speak for all of the

4  Defendants that the Plaintiffs have sued?

5          **MR. MOLINA:**  Yes, I am.

6          **THE COURT:**  Okay.  Then, you know, we're not going

7  to -- you're here today representing the Immigration Service,

8  the Attorney General, and the Social Security Administration.

9          **MR. MOLINA:**  Correct.

10          **THE COURT:**  All right.  Okay.  Well then all of my

11  ranting and raving about service is an exercise in futility

12  since you're here for all of them.

13          All right.  Let's turn the page and get to the

14  merits.

15          **MR. MOLINA:**  I apologize, your Honor.

16          **THE COURT:**  No.  No.  That's okay.  You know, this is

17  kind of a hot button with me.  And I mean, it's just, you know,

18  one of my pet peeves about the Government.  It's not going to

19  change because it's a pet peeve of mine.

20          All right.  What do you want to do?  These folks, as

21  I understand it, and you tell me if I'm stating your case

22  accurately.

23          The Plaintiffs in this case, individually, and as

24  representatives of a class, are people who are U.S. citizens by

25  reason of their having a U.S. citizen parent.  All of them were

1    born in Mexico.  And what they argue is that, in effect, that

2    they've been run around by Immigration Service and not provided

3    the documentation necessary for them to get Social Security

4    cards and must get in line; is that basically what you're

5    saying?

6        **MS. BRODYAGA:**  The announcement, your Honor, is both

7    the Immigration Service and Social Security, because Social

8    Security has an exclusive list of documents that they will

9    accept.

10       **THE COURT:**  Okay.

11       **MS. BRODYAGA:**  And Immigration will not give any of

12   the documents on that list until they have finally and fully

13   adjudicated the claims to citizenship.  So that this has been a

14   bone in the Harlingen District for many years.  But until IRTHA

15   (phonetic) passed, and it became impossible, for all intents

16   and purposes, for people to get employment without some sort of

17   authorization and a Social Security card.  That's when this

18   case came to a head.

19       Now the reason that I was hoping that the Government

20   would have answered by today, was that we have been informed,

21   and we've been informed for over a year, that solution's in the

22   works, solution's in the works, solution's in the works.

23       And I was hoping that they would come forward and

24   say, "Here's the solution.  And this case is now moot.  These

25   Plaintiffs can walk into the Social Security Office and get

1  their Social Security numbers, or walk over to INS and get a

2  document showing that they are entitled to Social Security

3  Numbers."

4         However the two agencies want to work it out between

5  themselves is satisfactory with me.  But it's not satisfactory

6  with me, is that they keep putting off any solution

7  indefinitely, because people are being seriously harmed by

8  this.

9         THE COURT:  Okay.  Have you thought about a solution,

10  Mr. Molina?

11         MR. MOLINA:  Yes, your Honor.  I've consulted with my

12  clients about potential solutions.

13         THE COURT:  Doesn't sound like it should be too hard

14  to do.

15         MR. MOLINA:  Well, your Honor, frankly the INS is

16  trying to process their applications.  In fact, on September

17  11th, 1996, a few weeks ago, a hearing was scheduled to --

18         THE COURT:  That you told these people about on

19  August the 28th.

20         MR. MOLINA:  Yes.  Yes, your Honor.

21         THE COURT:  That's pretty short; isn't it?  I mean,

22  if they've been trying to get -- you know, there's ways of

23  doing things and ways of doing things.  And to me when

24  somebody's been asking for a hearing, asking for a hearing, and

25  you say, "Yep, you're going to get it in, you know ten days,"

1   that's not really playing straight, is it?

2          **MR. MOLINA:**  Well, your Honor, considering that at

3   least three of these applicants have already had prior

4   applications that have been adjudicated, that flaws were found,

5   it seemed that the same information would have been more

6   readily available.

7          For example, in the case of Mr. Salinas (phonetic)

8   Rumaldo (phonetic), he had an application filed, it was

9   adjudicated, there were some problems found.  The problems were

10  eventually resolved.  According to the complaint, all that has

11  to be provided now is the same information before, plus the

12  resolution, and handed over to the INS for adjudication.

13         There's not much more that needs to be done, then

14  that is readily seen.

15         **THE COURT:**  Well my point, perhaps you didn't grasp

16  what I was saying, was that I'm not sure that it's a positive

17  step towards resolving these questions by giving people a

18  hearing on very, very short notice.

19         **MR. MOLINA:**  Well, it's --

20         **THE COURT:**  I mean, put it -- let me put it to you

21  this way.  How would you have reacted if we had set this

22  hearing down on like a week's notice?

23         **MR. MOLINA:**  This hearing has been set on a week and

24  a half's notice, your Honor.

25         **THE COURT:**  This hearing here?

1          **MR. MOLINA:**  This hearing here --

2          **THE COURT:**  Yeah.  Okay.

3          **MR. MOLINA:**  -- was set on a week and a half's

4     notice.

5          **THE COURT:**  Okay.  And you --

6          **MR. MOLINA:**  The INS' Department --

7          **THE COURT:**  But you --

8          **MR. MOLINA:**  And the INS -- Social Security

9     Administration, and are here to solicit --

10         **THE COURT:**  But why would it -- why couldn't you

11    have -- as I understood, Ms. Brodyaga asked to postpone that

12    September 11th hearing because she had a conflict, and some of

13    the other people did, too.

14         **MR. MOLINA:**  Your Honor --

15         **THE COURT:**  Was that done?

16         **MR. MOLINA:**  That was rescheduled, your Honor --

17         **THE COURT:**  Okay.

18         **MR. MOLINA:**  -- to October 7th.

19         **THE COURT:**  Okay.

20         **MR. MOLINA:**  A few weeks from now.  Now does the

21    Court have any problem with --

22         **THE COURT:**  I don't have any problem with that.

23         **MR. MOLINA:**  -- the hearing being October 7th?

24         **THE COURT:**  I don't have any problem with that.  No.

25    I don't have any problem with that.

1          **MR. MOLINA:**  Okay.

2          **THE COURT:**  I mean, that should address you concern.

3          **MS. BRODYAGA:**  Your Honor, well, no, your Honor.  It

4    does not.  Because what that does is to address the individual

5    applications of these people.  It does not address the

6    underlying problem.

7          **THE COURT:**  Okay.  So your concern's about process.

8          **MS. BRODYAGA:**  And what we would then have to do

9    would be to bring through and to add additional Plaintiffs

10   until such time as the class has been certified so that this

11   issue is not mooted out.

12          What the Government clearly tried to do is to moot

13   out the issue by, you know, adjudicating these four.

14          Now ironically, Judge, two days after that -- well

15   first, let me go back.

16          On September 11th, I was in the Harlingen District.

17   And I met with the examiner who was supposed to adjudicate

18   these cases.  He had all the files before him.  And I went over

19   all of the issues in all of the cases.  And we did agree to

20   October 7th as a reset date.

21          **THE COURT:**  Okay.

22          **MS. BRODYAGA:**  But we have not received any notices

23   of that.  So I wasn't sure whether that was actually going to

24   happen or not.

25          **THE COURT:**  Sounds like it is.

1          **MS. BRODYAGA:**  They did not send out -- well they

2    haven't sent me -- sent the notices to me and to the client.

3          **THE COURT:**  Okay.

4          **MS. BRODYAGA:**  But two days later, Judge, the husband

5    of the lead Plaintiff here, who has filed an application for

6    residency on the basis of her claim to citizenship, she is a

7    U.S. citizen.

8          **THE COURT:**  Okay.

9          **MS. BRODYAGA:**  She filed an I-130 Petition to

10   classify him as an immediate relative on his behalf.  He filed

11   an application for lawful permanent residency on the basis of

12   that.

13          His application came up for a hearing two days later

14   on September 13th.  We all went to that hearing, with the

15   Plaintiff, with her mother, a U.S. citizen mother, and asked

16   them, "Okay.  Adjudicate her citizenship.  This is you.  This

17   is INS.  You're fully capable, and qualified, and competent, to

18   decide whether she's a U.S. citizen.  Please do so."  And they

19   declined to do so.

20          In fact, it was all I could do to keep them from

21   denying the husband's application until the third application

22   for certificate has been adjudicated.  Understand, Judge,

23   what's she's asking for is not citizenship, but merely proof of

24   her citizenship.

25          **THE COURT:**  I understand your point in all these

1  cases.  These people are citizens.

2         **MS. BRODYAGA:**  That's correct.

3         **THE COURT:**  I mean it's a question of getting the

4  proper documentation so that they can get a Social Security

5  card and go to work.

6         **MS. BRODYAGA:**  That's correct.  And this is typical

7  of people who have any kind of --

8         **THE COURT:**  Yeah.

9         **MS. BRODYAGA:**  -- complication, any wrinkle in their

10  application.

11         Throw it in the back burner if not the bottom drawer

12  and never emerge again for years and years.

13         And, in fact, we're preparing a few other Plaintiffs

14  to be added as named Plaintiffs in anticipation of the fact

15  that they're going to moot out these four probably.  And some

16  of the applications go back as far or further than these people

17  do.

18         So what we're looking for is a solution to the

19  underlying problem.  At least they are here as class

20  representatives as well as in their own right.

21         **THE COURT:**  Well let me --

22         **MS. BRODYAGA:**  And granting them their Certificates

23  of Citizenship may resolve their individual problems --

24         **THE COURT:**  Yeah.

25         **MS. BRODYAGA:**  --  but it does nothing for the

1   problem.

2       **THE COURT:**  Okay.  Well what you're -- if I'm

3   understanding what you're saying, is what you're interested in

4   is the INS establishing some kind of a procedure to process

5   these in an orderly and a timely fashion.

6       **MS. BRODYAGA:**  And that when they are filed, they be

7   given some document, equivalent to what someone who is applying

8   for residency is given, which enables them to get a Social

9   Security card while they're adjudicating -- are being --

10  adjudicate -- while their applications are being adjudicated.

11      It's not just that they be adjudicated in a timely

12  and order fashion.  It's that while they are pending, they

13  should be -- have a document which entitles them to get a

14  Social Security card.

15      If the husband of the Plaintiff can do so, based on

16  her claim to citizenship, there is absolutely no reason in the

17  world why she should not in her own right, also be able to get

18  such a document.

19      **THE COURT:**  What is it -- and you're going to have to

20  help me with the process here.

21      What does the INS give somebody to get a Social

22  Security card like the people that Ms. Brodyaga is talking

23  about?  Not the ones who have claims of citizenship, but those

24  who are claiming the right to be here through being married to

25  a U.S. citizen, or -- and the like.

1       **MR. MOLINA:**  In certain cases, for example -- asylum

2  cases.

3       **THE COURT:**  Well forget about that for a second.  I

4  know those are treated differently.

5       **MR. MOLINA:**  Oh, okay.

6       **THE COURT:**  I mean --

7       **MR. MOLINA:**  What the INS can provide, that the

8  Social Security Administration will accept, is either a

9  Certificate of Citizenship --

10       **THE COURT:**  Okay.  So that's what these folks want

11  ultimately.

12       **MR. MOLINA:**  Yes.

13       **THE COURT:**  But what's Ms. Brodyaga's saying about

14  is, until that happens, what can someone get?

15       **MR. MOLINA:**  Until someone has an alien status or

16  citizenship adjudication --

17       **THE COURT:**  Okay.

18       **MR. MOLINA:**  -- there's not much they can get, your

19  Honor.

20       **THE COURT:**  Well wait a minute.  Wait a minute now.

21  What Ms. Brodyaga's telling me, if I understand it correctly,

22  is for someone who marries a person who has a claim of

23  citizenship that's not yet been adjudicated, that they do get

24  something to take to Social Security to get a card.  What is it

25  that they get?

1          **MR. MOLINA:**  It's some form of work authorization

2    that is --

3          **THE COURT:**  Okay.

4          **MR. MOLINA:**  -- that is given --

5          **THE COURT:**  All right.  So then they --

6          **MR. MOLINA:**  -- saying that they do have some type of

7    alien status --

8          **THE COURT:**  All right.  So then --

9          **MR. MOLINA:**  -- before entering the United States.

10         **THE COURT:**  -- the critical document as far as the

11   Social Security Administration -- take off your INS hat for a

12   minute.  And pull on your Social Security hat.

13         **MR. MOLINA:**  Sure.

14         **THE COURT:**  The critical document, as far as Social

15   Security is concerned, is something from the INS that says that

16   they have a certain alien status --

17         **MR. MOLINA:**  Correct.

18         **THE COURT:**  -- that lets them be here legally.

19         **MR. MOLINA:**  Correct.

20         **THE COURT:**  All right.  What's the problem with

21   arranging a process within the -- put your INS hat back on --

22   arranging some kind of a process within the INS system to where

23   when someone like Ms. Brodyaga's clients comes in and says, "I

24   have a claim of citizenship based on the fact that my father

25   was a U.S. citizen."  Why can't the INS have a system where

1   they issue one of these work authorizations for them then to

2   take to Social Security and get a copy while the other thing is

3   pending?

4         I assume, you tell me if I'm wrong on this.  I'm

5   assuming that if it turns out that a person who has made a

6   claim of citizenship by reason of their father being a citizen,

7   that that proves not to be true, that there's a mechanism in

8   place for the Social Security to jerk that card.

9         **MR. MOLINA:**  Yes.  There is, your Honor.

10        **THE COURT:**  Okay.  So I mean it's not -- in other

11  words, giving them the Social Security card is not an

12  irrevocable step that, you know, means that once and forever

13  they're in the system.

14        **MR. MOLINA:**  Correct, your Honor.  A Social Security

15  card can be taken back.  However, the Social Security

16  Administration has certain affirmative obligations not to give

17  out a Social Security card to those who do not meet their

18  requirements.

19        **THE COURT:**  And I'm not following you.

20        **MR. MOLINA:**  And if we're now looking for some type

21  of document for the INS to provide, that type of relief is

22  within the discretion of the INS.

23        **THE COURT:**  Okay.  Well that's -- now we're back to

24  your INS hat.

25        **MR. MOLINA:**  Yes.

1    **THE COURT:** And that's my question.  Is what is it

2  that the INS issues to people whose application for some kind

3  of status is pending while it's pending?

4    I mean, from what Ms. Brodyaga tells me, is there is

5  a form that INS issues in those cases before they've made an

6  adjudication.  There's some kind of a temporary residency

7  status, or what -- I mean, I just don't know what it is

8  that's --

9    **MR. MOLINA:** It is essentially --I'm sorry that is

10  the only way to describe that I'm aware of.  It is simply a

11  certification that this person is authorized to work in the

12  United States.

13    **THE COURT:** Predicated on their having file an

14  application for citizenship?

15    **MR. MOLINA:** No, not citizenship, your Honor.  In

16  cases where an alien has requested a waiver --

17    **THE COURT:** Okay.

18    **MR. MOLINA:** -- for instance, or an adjustment of

19  status.

20    **THE COURT:** Okay.

21    **MR. MOLINA:** That's a popular one.

22    That type of a claim does get the temporary

23  authorization.

24    **THE COURT:** Well, so there is, then, in place, a

25  process by which those temporary work permits are issued.

1        **MR. MOLINA:**  Once there is some type of a

2   determination by the INS that this person is an alien, or has

3   some status at all.

4        **THE COURT:**  Okay.

5        **MS. BRODYAGA:**  Your Honor, may I?

6        **MR. MOLINA:**  In other words, your Honor, the INS does

7   not simply freely give out these work authorizations to anyone

8   who submits an application.

9        **THE COURT:**  Right.

10       **MR. MOLINA:**  There is a type of process where they

11  try to hold that and not throw these authorizations out.

12       **THE COURT:**  No.  I can understand that.  But maybe

13  I'm missing a point here.

14       As I understand what Ms. Brodyaga just told me, there

15  is a process where somebody can get a work authorization before

16  a final determination is made as to their status.

17       **MR. MOLINA:**  Yes.

18       **THE COURT:**  Okay.  So why can't you do that for these

19  folks?

20       **MR. MOLINA:**  The Attorney General did not exercise

21  her discretion in that direction at this time.

22       I can't answer anything beyond that, your Honor.

23       **THE COURT:**  Yeah.

24       **MR. MOLINA:**  I'm trying hard.

25       **THE COURT:**  No.  I mean, I -- you know, that's an

1    answer.  Whether I like it or not is a different matter.  But

2    again, I'm not -- that's not my function to like it or not.

3         It strikes me as strange that what we're seeing here

4    is a system set up to where people who are citizens, I mean,

5    that -- for the sake of this discussion, let's take the view

6    that everybody that has made these applications does, in

7    fact -- are, in fact citizens.

8         I mean, yeah.  I'm sure you're going to run into some

9    people that are making fraudulent applications, but put that

10   aside for the moment.  I mean, hopefully the INS can screen

11   those out.  But at some point, you know, it strikes me as

12   strange that there can't be some mechanism in place to let

13   these people work, and then process their applications in a

14   fairly timely way.  I mean, how long does it take to do this?

15        **MR. MOLINA:**  Well the application is there, your

16   Honor.  That's the best I can tell you.

17        In this case what you have are at least three of the

18   members here who had faulty applications.

19        **THE COURT:**  Well --

20        **MR. MOLINA:**  They weren't --

21        **MS. BRODYAGA:**  Objection, your Honor.

22        **THE COURT:**  Maybe you could have a process in place

23   to where you say to people, "Look."  You know, "You filed your

24   application," you know, "the time clock is running."  And

25   you've got 90 days, 120 days, or you know, some time to perfect

1    it.  And if you don't, you're out.

2          MR. MOLINA:  So, your Honor, it seems that what

3    you're saying is that you're not opposed to the idea that the

4    INS have some sort of mechanism for screening out fraudulent

5    applications.

6          THE COURT:  Of course not.  I don't think Ms.

7    Brodyaga would.

8          MR. MOLINA:  Could the INS use certain other methods

9    they use, in say, asylum cases, where we give, or we say you

10   can apply for this Certificate of Citizenship, but we're not

11   going to give you a work authorization for 180 days to help

12   weed out those false applications.

13         MS. BRODYAGA:  Objection, your Honor.  May I be heard

14   on this issue?

15         THE COURT:  Yeah.  Go ahead, ma'am.

16         MS. BRODYAGA:  We have a situation here where a

17   person such as the husband of Plaintiff Anthelma (phonetic)

18   Dominguez walks into the Immigration Service, files an

19   application seeking adjustment of status on the basis of her

20   claim to citizenship.

21         THE COURT:  Right.

22         MS. BRODYAGA:  He simultaneously files an application

23   for employment authorization.

24         THE COURT:  Okay.

25         MS. BRODYAGA:  By law, he is entitled to that

1  employment authorization as a matter of law.  It's not

2  discretionary.

3       And I have here, and would like to present to the

4  Court, a copy of the documents --

5     **(Pause)**

6     **MR. MOLINA:**  For what purpose, ma'am, would you --

7     **MS. BRODYAGA:**  Well I'm just showing to you since you

8  haven't --

9     **THE COURT:**  No.  I want to see it.

10    **MR. MOLINA:**  I just don't know what I'm supposed to

11  look at and understand --

12    **THE COURT:**  Well I think --

13    **MR. MOLINA:**  -- is your --

14    **THE COURT:**  I think where Ms. Brodyaga is headed is

15  people in this category are treated differently than people who

16  have come in and made an application --

17    **MS. BRODYAGA:**  Right.

18    **THE COURT:**  -- for --

19    **MS. BRODYAGA:**  That is the document that was issued

20  to the husband of Ms. Anthelma Perez Dominguez.  That is her

21  husband, Jose Enrique (phonetic).

22    **THE COURT:**  Okay.

23    **MS. BRODYAGA:**  Now he was issued that document simply

24  on the basis that the application was filed, and that it was

25  *prima facia* complete.

1          **THE COURT:**  Okay.

2          **MS. BRODYAGA:**  Now his wife's application for a

3 Certificate of Citizenship also had to be *prima facia* complete

4 before INS would accept it for processing.

5          **THE COURT:**  Okay.

6          **MS. BRODYAGA:**  But there is no equivalent procedure

7 by which when she files her application for Certificate of

8 Citizenship, she can simultaneously request, and be granted,

9 employment authorization.

10          **THE COURT:**  That's the --

11          **MS. BRODYAGA:**  So she is being penalized because she

12 is a U.S. citizen, rather than a foreign national claiming an

13 immigration benefit.

14          **THE COURT:**  I think that's the meat of coconut; isn't

15 it?  I mean, right there?

16          **MR. MOLINA:**  Sure.  I can understand what's been

17 said, your Honor.  And --

18          **THE COURT:**  Can't you fix that?

19          **MR. MOLINA:**  Well, your Honor, here's the problem.

20 You're asking me to suppose they are United States citizens.

21          **THE COURT:**  Well -- okay.  Okay.

22          **MR. MOLINA:**  Now you did ask that, your Honor.  Now

23 the difference is, when this man comes into the INS, files this

24 application, he has a status.  What is it?  He's accepted the

25 fact that he is an alien.

1    **MS. BRODYAGA:**  Your Honor?

2    **MR. MOLINA:**  The INS has something they can hold on

3    to.

4    In this case, there is no such status, your Honor.

5    While there is a claim to citizenship, there -- that is not the

6    case until the INS makes such a factual determination.  That's

7    what the hearing is about.

8    The INS wants to make this factual determination.

9    **THE COURT:** Well, but see --

10    **MR. MOLINA:**  Because some person has now come forward

11    with an acceptable status.

12    **THE COURT:**  I think the flaw in your reasoning is

13    that what Ms. Brodyaga's point is, is that if this fellow can

14    get this authorization by bootstrapping in on his wife's claim

15    of citizenship, why should he be in a better position than she

16    is?

17    I mean, you're saying that it's because he has

18    recognized his status as an alien.

19    **MR. MOLINA:**  Because she is coming in -- okay.

20    Because he is coming as an alien, your Honor --

21    **THE COURT:** Right.

22    **MR. MOLINA:**  -- with such an accepted status, she, at

23    present, has no such status before the INS.

24    **MS. BRODYAGA:**  Your Honor?

25    **THE COURT:**  Well let me --

1          **MR. MOLINA:**  Your Honor, we're just asking --

2          **THE COURT:**  As I understand it --

3          **MR. MOLINA:**  -- for the chance to find that she is a

4    U.S. citizen.  Once that's determined, everything goes into

5    place, and all the problems go away.  The INS simply wants that

6    chance, which is why the September 11th hearing was set, which

7    is why the October 7th hearing is --

8          **THE COURT:**  Well --

9          **MR. MOLINA:**  -- apparently set.

10          **THE COURT:**  But that's -- there's two issues here.

11    One is dealing with these peoples' individual problems, and the

12    other is trying to have a system in place that makes this sort

13    of problem be able to be resolved without the necessity of

14    coming here.

15          And --

16          **MS. BRODYAGA:**  May I?

17          **THE COURT:**  Yeah.  Go ahead.

18          **MS. BRODYAGA:**  Your Honor, in terms of his saying

19    that the alien has a status, when Ms. Perez walked into INS

20    with her application for Certificate of Citizenship, she

21    presented proof that she was born abroad.

22          **THE COURT:**  Okay.

23          **MS. BRODYAGA:**  So that if her claim to citizenship is

24    ultimately denied, INS has all the evidence that they need to

25    put her in deportation proceedings, and to expel her from the

24

1  country, which would be exactly the same thing that would

2  happen to her husband, because if she has given them document

3  that says I was born in Mexico.

4  Now to me, it's mind boggling that INS says, "Oh well

5  we're perfectly happy to give employment authorization for her

6  husband because he's admitted he's an alien, but she can't have

7  it, yet, because she may be a U.S. citizen.  And we have to

8  prove that she's -- we have to make that decision before she

9  can have anything."

10  **THE COURT:**  I get a troubled with that, too,

11  Mr. Molina.

12  Let me ask you this.  How long does it take the INS

13  to process an application for Certification of Citizenship, or

14  whatever?  What do you call that?

15  **MR. MOLINA:**  A Certification of Citizenship, your

16  Honor.

17  **THE COURT:**  All right.  Okay.  How long's it take to

18  process that?

19  **MR. MOLINA:**  It varies depending on the proof that

20  might be necessary, your Honor.  The entire process requires

21  first a filing.

22  **THE COURT:**  Okay.

23  **MR. MOLINA:**  Then the setting of the hearing date.

24  **THE COURT:**  All right.  Well, okay.  Let's take that.

25  How long between the time something's filed and the time a

1  hearing date is set.

2      **MR. MOLINA:**  It varies at this point, your Honor,

3  because right now INS has been going through a reshuffling in

4  light of a lot of litigation.  They're trying to reorient all

5  of their facilities in order to be able to quickly process all

6  the applications that come in.

7      **THE COURT:**  Well let me ask you.  Let's get real

8  concrete.

9          Somebody walks in today, and they have a completed

10 application with all the documentation attached to it.  How

11 long before they get a hearing?

12     **MR. MOLINA:**  I couldn't give you a date, your Honor.

13 Your Honor --

14     **THE COURT:**  Yeah.

15     **MS. BRODYAGA:**  Your Honor --

16     **MR. MOLINA:**  -- the INS is in a strange position at

17 this point of recently getting more help to process these

18 applications.

19         So it's a matter of we don't know.  We're trying our

20 best to get through all of them.

21     **THE COURT:**  Well help me out a little bit.  Is it 30

22 days, or 30 years?

23     **MR. MOLINA:**  It's certainly not 30 years, your Honor.

24     **THE COURT:**  Okay.  Is it 25 years?

25     **MS. BRODYAGA:**  And it's certainly not 30 days.

1          **THE COURT:**  Well, I mean, just give me a range,

2   instead of --

3          **MR. MOLINA:**  Well, your Honor, I mean, as you see,

4   your Honor, what the -- in this case, the longest application

5   that's been waiting has been maybe two years.

6          **THE COURT:**  That's a long time.  I mean --

7          **MR. MOLINA:**  Well, your Honor --

8          **MS. BRODYAGA:**  In other words, some of these --

9          **MR. MOLINA:**  -- that's where your right.  There

10  are --

11         **MS. BRODYAGA:**  -- have been waiting for six years.

12         **MR. MOLINA:**  I'm sorry, your Honor.  That's why the

13  Social Security Administration is understanding.  They

14  understand that there are different administrative procedures

15  that people have to go through for different reasons.

16         The INS route has INS concerns.  The INS is worried

17  about immigration naturally, naturalization, et cetera.

18         The Department of State, in processing passports, can

19  go a different route.  The Social Security Administration has

20  provided a myriad of ways they can go in order to get what they

21  want.

22         **THE COURT:**  But for these folks, the bottleneck is

23  the INS; isn't it?

24         **MR. MOLINA:**  With the procedure they have selected,

25  yes, your Honor.

1          **THE COURT:**  Well what other -- okay.  In other words,

2     if they had walked in and said I'm not a citizen, I'm an alien.

3     You would say fine and dandy, here's a work authorization.

4          Well, I'm claiming political asylum.

5          **MR. MOLINA:**  Your Honor, I'm not authorized to speak

6     on that topic.  But --

7          **THE COURT:**  But, I mean, you say the method they've

8     selected.  They've come in and said, I'm -- you know, it's not

9     a question of the method they've selected.  It's what their

10    status is.

11         They are putative U.S. citizens.

12         **MR. MOLINA:**  Your Honor, they've selected the INS

13    which is only one route that they can select.

14         **THE COURT:**  How else do they do it?

15         **MR. MOLINA:**  They can go passport, your Honor.  They

16    can apply for a passport.  In fact, Department of State

17    regulations state that if you want a passport from the United

18    States, that showing that you're a citizen, all you have to do

19    is file proof that your parent was a citizen --

20         **THE COURT:**  Okay.

21         **MR. MOLINA:**  -- at the time you were born.

22         **THE COURT:**  All right.

23         **MR. MOLINA:**  Apparently, there are now perfected

24    Certificates of Citizenship, no doubt showing when they were a

25    citizen from birth, et cetera.  All they have to do is submit

1   that to the passport agency and they can be done.

2   **MS. BRODYAGA:** Your Honor, it's not that simple. We

3   have tried that in some of these cases. We have had cases

4   where the hold up was, for example, that the passport office

5   will only accept original documents.

6   They will not accept certified copies. If the

7   original document happens to be INS' files, for example, and

8   INS won't give it back, which they frequently won't, or if all

9   that existed is a certified copy, you cannot do it.

10   We have been down that road. It's not necessarily

11   that simple. And there's no passport office here in the Valley

12   where you can go deal face to face with somebody. It's a

13   question of mailing things off and getting things mailed back.

14   And it's equally a nightmare, your Honor. It's not as simple

15   as the Government would make it out to be.

16   Now I would take issue with the question that these

17   have been only pending for two years, your Honor. The Broome

18   (phonetic) children filed their applications in October of

19   1990. There was a dispute -- and it's not -- also not true

20   that the applications were faulty.

21   The issue in both the Broome children and in the

22   Salinas case was whether or not the parent to whom they were

23   claiming to have derived citizenship was, indeed, a U.S.

24   citizen.

25   In both those cases, we've had to litigate that

1    before these could be fully and finally adjudicated.

2        **THE COURT:**  Well you can't really quarrel with

3    though, Ms. Brodyaga.

4        **MS. BRODYAGA:**  No, I'm not quarreling with that,

5    Judge.  I do not quarrel with that.

6        But I do quarrel with is the fact that while this is

7    going on, these people are in limbo.  They are precluded by

8    law --

9        **MR. MOLINA:**  Your Honor?

10       **MS. BRODYAGA:**  -- from being employed --

11       **THE COURT:**  Let me --

12       **MS. BRODYAGA:**  -- because they cannot get a document

13   that demonstrates their entitlement to be employed.  The

14   children are in school.  They don't have Social Security cards.

15   Mr. Salinas, unfortunately, now is in jail.  He had a lawful

16   Social Security card that was issued to him when he was

17   considered to be a permanent resident.  While his father's

18   status was being litigated, he lost his status as a permanent

19   resident, because he was convicted of a drug offense.  He lost

20   his Social Security card.

21       After we finally proved that his father was, indeed,

22   a U.S. citizen, and they granted the Certificate of Citizenship

23   to his older brother, which means they're no longer any factual

24   or legal issues involved in his case.  If his older brother's a

25   citizen, he is a citizen.

1        We came back and we requested a duplicate Social

2   Security card from the Social Security Administration saying,

3   "We can prove to you beyond any doubt right today, that this

4   man is a U.S. citizen."  They said, "No," because these were

5   not any of the documents on the list issued by INS.

6        We went to INS.  We filed an updated application for

7   Certificate of Citizenship for him.  But because his file is

8   this thick, it got put in the bottom drawer without his ever

9   being granted a hearing.

10        One of the problems that's currently at INS, is that

11   they do not necessarily take them in chronological order.  They

12   take the ones first that they think are the simple ones.

13        **THE COURT:**  That's a triage system.  They deal with

14   the most people in the shortest time.  All right.

15        **MS. BRODYAGA:**  They have a little triage system.  But

16   a simple one, Judge, may -- if it's determined by the thickness

17   of the file, rather than by actually examining the file, as it

18   was in that case.

19        His application was pending well over a year, I

20   believe, it was like a year and a half, before he finally was

21   granted this hearing for September 11th.  And he wouldn't have

22   been granted anything if we hadn't sued.

23        And he's now back in jail.  And part of this is the

24   frustration that he was on probation.  He couldn't work,

25   couldn't get a Social Security card.  He was in trouble with

1   his probation officer, et cetera.  And he, you know, he got

2   into a fight.  And he's back in jail.

3          And I attribute that in part, not exclusively, but in

4   part to the fact that we were unable to get him back on track

5   so that he could prove that he was a worthy member of society.

6   They wouldn't give him a duplicate Social Security card.

7          And we went in there with iron-clad proof that he was

8   a U.S. citizen.  Iron-clad proof, Judge.  And the Social

9   Security Office said, "No, you know.  We can't take it because

10  it's not on the list of documents.  And we don't do independent

11  adjudications of their citizenship.  We wait and let that be

12  done by the State Department or INS."

13         And we went to INS.  And we said, "Here is iron-clad

14  proof he's a citizen.  Please give him his card.  Please

15  expedite it."  And we were told, "No.  We can't expedite it."

16         And it turns out that far from expediting it, what

17  they did was they put it at the bottom of the stack, based on

18  the thickness of the file.

19         And what we're asking is that these people be given

20  the same rights that anyone else going into Immigration and

21  asking for a discretionary benefit, like adjustment of status,

22  that they be given some provisional document that authorizes

23  them to be employed, while we go through all this litigation.

24         If it took six years, well actually only four years

25  to prove that the father of these children was a U.S. citizen.

32

1    And it took four years.  Okay.  He was, and finally won.   INS

2    accepted it.  They granted residency to his current wife

3    through him on the basis of that claim of citizenship in 1994.

4    And after that happened, we went back and filed updated

5    applications for the children.

6           The original applications were never denied.  They

7    were recommended for denial, but they were never denied.  They

8    just sat in a file, you know, from 1990.

9           So please give them their Certificates of

10   Citizenship.  This was over a year ago.  No, excuse me.  I'm

11   getting my dates mixed up.  But this was -- yes.  This was.  It

12   was over a year ago. because it was '94 that the father got it.

13   It was early '95.  So it's been a year and a half since we

14   requested that they do, you know, that they give the children

15   their Certificates of Citizenship.

16          And what we're saying is that, yes, part of the

17   problem is that in some cases, there are delays.  The standard

18   case, a simple file, you know, only has half a dozen documents

19   in it, and you know, they can look at it, and it looks real

20   good, that person may get a hearing within three to six months.

21          **THE COURT:**  That's not too bad.

22          **MS. BRODYAGA:**  That's not too bad.  But if there is

23   any complication in the case, it goes into a drawer somewhere.

24   And getting it out of that drawer is virtually impossible, as

25   can be seen by some of these cases.

1        **THE COURT:**  Okay.

2        **MS. BRODYAGA:**  But what we are saying is that

3   everyone who is a U.S. citizen should be entitled to an interim

4   documentation, or everyone who files that type of application,

5   if it is denied, they have also given INS proof that they were

6   born abroad, INS can put them in deportation proceedings, can

7   revoke the Social Security Number, revoke the employment

8   authorization, if it turns out that they are not U.S. citizens.

9        But if they are U.S. citizens, they should not be

10  made to wait two, four, six years before they can lawfully be

11  employed in the United States.  And that's the situation that

12  we see in a lot of these cases.

13        It's not unusual for cases to go on for years, Judge.

14        **THE COURT:**  What's wrong with that?

15        **MR. MOLINA:**  What's wrong with that, Judge?

16        **THE COURT:**  Yeah.  I mean --

17        **MR. MOLINA:**  She explained to you, your Honor, by her

18  own words, that three to six months.  You said that --

19        **THE COURT:**  Well that's okay.  But the problem is the

20  ones that are complicated that take a lot longer.

21        **MR. MOLINA:**  Well you've just explained the problem

22  right there, your Honor.  They're complicated applications.

23        **THE COURT:**  Yeah.  But if somebody should, you know,

24  hiding them in the bottom drawer, that's not right.

25        **MR. MOLINA:**  Well, I mean, that's quite an allegation

1    to make without, I mean, your Honor, she -- you understand, and

2    she has said that the INS is trying to get through the

3    situation as quickly as they can.

4          The applications come in.  They try to process.

5          **THE COURT:**  Okay.  That begs the question.  And the

6    question really isn't the fact that the INS may be dilatory in

7    handling a complicated application.  The question is, why not,

8    be it a simple or a complicated application, why not give these

9    people some kind of temporary work authorization while the INS

10   is trying to resolve its own internal problems with either lack

11   of staff or whatever.

12         And, I mean, I don't want to get involved, you know.

13   I'm already managing the jail over here.  I don't want to be

14   managing the INS.

15         **MR. MOLINA:**  Certainly, your Honor.  But understand

16   that the INS needs something it can hold to, but it won't --

17         **THE COURT:**  Well it's got it.  It's got it.

18         **MR. MOLINA:**  It has what, your Honor?

19         **THE COURT:**  It's got an application from someone that

20   claims that they're a citizen.

21         **MR. MOLINA:**  That why we're trying to adjudicate it

22   as quickly as possible.

23         **THE COURT:**  Yeah.  But see you're -- we're circling

24   around.  You're biting yourself in the tail here.

25         It has that application, just as it has an

35

1  application from somebody seeking asylum, just as it has an

2  application from someone seeking an adjustment of their status.

3       Why can't it treat these people the same way it

4  treats those who are seeking an adjustment of status, or those

5  who are seeking asylum.  And I think that's what they're asking

6  you to do.

7       **MR. MOLINA:**  Because these people have absolutely no

8  status in the United States at present, your Honor.

9       I mean if --

10      **THE COURT:**  Yeah they do.  They have a status

11 called -- you can call putative claim of citizenship status.

12 Well, you call -- you know, putative claim of asylum, you know.

13      **MS. BRODYAGA:**  Treat them as changes of claim, Judge.

14      **MR. MOLINA:**  Understandable, your Honor.  But --

15      **MS. BRODYAGA:**  It's sufficient that INS took their

16 money, and they go over these applications at the time they are

17 filed.  And if they are not facially approvable, they don't

18 accept them, or they're not supposed to, the same as they do

19 with applications for adjustment.

20      If you walked in with an Application for Adjustment

21 of Status that didn't -- the husband of Ms. Perez, if you

22 walked in and you do not have everything that you have to show

23 in order for him to be eligible, then they don't even take your

24 money.  They make you sit there for three hours and send you

25 home.  And the same thing happens with the claims for

1    citizenship, Judge.

2         And the other thing that I find very puzzling is that

3    earlier this spring I was told by an attorney for INS that the

4    Government was on the verge of issuing some sort of temporary

5    document.  In fact, we withheld filing suit for several months

6    here, because we were told that any day now.  It was on

7    somebody's desk.  Somebody was on vacation, tomorrow, and et

8    cetera.

9         And finally, we gave -- our patience gave up there,

10   too.  But we were told at that time that the Government was on

11   the verge of issuing some sort of document to people, such as

12   the class members here, which would enable them to get a Social

13   Security card.  And I am astounded that that has not been

14   mentioned yet, today.

15        I would like to know whether that was pure

16   fabrication, or whether that is, indeed, the case, whether they

17   are resolving this by developing some sort of procedure to

18   grant interim employment authorization to people who have

19   pending applications, such as the Plaintiffs herein.

20        **THE COURT:**  Good question.

21        **MR. MOLINA:**  Well I would have to consult with my

22   client, Judge.

23        **THE COURT:**  Well why don't you plan to do that.

24        You know, let me put it to you this way.  I assume

25   you've gotten the drift from my questioning and comments

1  that -- I have a real hard time seeing -- well, and I

2  understand what you've said.  But I have a very hard time

3  understanding why the people in this particular class should be

4  treated differently, you know, from people in other classes,

5  you know, regardless of what their status is.

6        To me, if somebody comes in and makes certain

7  applications for certain things, it's just not right for them

8  to be treated differently because of some INS-manufactured

9  classification system.  And I don't say that in a pejorative

10  way.

11        I mean, you know, you've obviously got to have

12  certain categories that you plug people into when making these

13  applications.  But if somebody has made an application to be

14  here permanently, whatever you want to call it, it seems to me

15  they should all be treated the same way.  And I don't know why

16  the INS cannot develop a mechanism to do that.

17        And again, you know, this is -- you've got strings.

18  If people lie on their applications, you can prosecute them for

19  perjury, or you can pull their Social Security cards, or revoke

20  their status.

21        And, you know, the fact that the people are real

22  busy, and that there are a lot of these, to me, shouldn't

23  result in hardships being placed on those who ultimately will

24  prove to have a legitimate claim to citizenship, and if you'll

25  keep them in a limbo status where they can't work here legally

1   while their applications are pending.

2        I mean, God knows we've got enough people working

3   here illegally that, you know, there seems to be no penalty

4   attached to that.  You know, it seems to me that someone could

5   sit down and, you know, in fairly short order develop a process

6   to take care of that.  I mean, Ms. Brodyaga's -- has expressed

7   frustration at several levels, you know, like the time it

8   takes, and people sitting around and all that.  I can

9   understand that.

10       But why can't the INS deliver a temporary work permit

11  to someone that comes in with, as Ms. Brodyaga puts it, a

12  facially adequate application.  And I mean, you know, I don't

13  want to hear the argument they don't have the, you know, with

14  their status is different and all that.  I mean, you've made

15  that.  I understand your point.

16       And, you know, frankly, that's means a distinction

17  without a difference.  I mean, again, why should somebody be

18  treated differently because they claim citizenship as opposed

19  to somebody that's seeking asylum, seeking adjustment of

20  status, or whatever.

21       I mean, it's -- you know, you're going to guess wrong

22  sometimes.  I mean, I don't have a question -- just like you

23  are on all the rest of them.  You know, some of these asylum

24  claims you're going to guess wrong.  Some of the adjustment of

25  citizen -- of status, you're probably going to be wrong on some