ORIGINAL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR - 1 2005

Michael N. Milby, Clerk of Court

ANTELMA DOMINGUEZ-PEREZ, ET AL.        CASE NO. CA-B-96-116
                                   .
            PLAINTIFF,             .
                                   .
        V.                         .      BROWNSVILLE, TEXAS
                                   .      FRIDAY, NOVEMBER 15, 1996
JANET RENO, ET AL.,                .      10:00 A.M. TO 10:30 A.M.
                                   .
            DEFENDANT.             .
. . . . . . . . . . . . . . . . .  .


HEARING

BEFORE THE HONORABLE WILLIAM BLACK
UNITED STATES MAGISTRATE JUDGE


Trinity Transcription Services
122 Trinity Oaks Circle
The Woodlands, TX 77381
281-296-2290

TRINITY TRANSCRIPTION SERVICES

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

```
ANTELMA DOMINGUEZ-PEREZ, ET AL.     CASE NO. CA-B-96-116
                                .
              PLAINTIFF,         .
                                .
        V.                      .    BROWNSVILLE, TEXAS
                                .    FRIDAY, NOVEMBER 15, 1996
JANET RENO, ET AL.,             .    10:00 A.M. TO 10:30 A.M.
                                .
              DEFENDANT.         .
. . . . . . . . . . . . . . . .
```

HEARING

BEFORE THE HONORABLE WILLIAM BLACK
UNITED STATES MAGISTRATE JUDGE

Appearances:

```
For the Plaintiff:          Elizabeth Brodyaga, Esq.
                            P.O. Box 3566
                            Harlingen, Texas 78551

For the Defendant:          Ernesto Molina, Esq.
                            Assistant United States Attorney
                            No Address Provided
                            Washington, D.C.

Court Recorder:             Lucia Gomez

Transcriber:                Cheryl Hendershot
                            Trinity Transcription Services
                            122 Trinity Oaks Circle
                            The Woodlands, TX 77381
                            281-296-2290
```

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

**TRINITY TRANSCRIPTION SERVICES**

1    **Brownsville, Texas; Friday, November 15, 1996; 10:00 a.m.**

2        **THE COURT:**  Good morning.  Please be seated.  Okay.

3   *B-96-116, Dominguez-Perez, et al., against Janet Reno and*

4   *everybody else.*

5        How are you, sir?  You can come up and sit in front,

6   Mr. Muir (phonetic).  Don't be -- would you mind stepping

7   outside and asking the rest of our friends to join us?

8      **(Pause)**

9        **THE COURT:**  Okay.  We've got Ms. Brodyaga, and

10  Mr. Molina, and Mr. Muir.

11       Everybody ready?

12       **MS. BRODYAGA:**  Yes, your Honor.

13       **THE COURT:**  Okay.  I've gone through the current

14  spate of filings.  And let me make sure that I'm reasonably up

15  to speed.  Sometimes I feel like the sorcerer in the Sorcerer's

16  Apprentice.  So I could just say, "Stop," but I can't do that.

17       Apparently three of your four original Plaintiffs

18  have been granted -- have gone through the process and been

19  processed by a citizenship applications.

20       **MS. BRODYAGA:**  That's correct.

21       **THE COURT:**  And I gather, and you tell me if I'm

22  wrong, that you, in effect, concede with, at least with respect

23  to those three, this case is moot.  And they've gotten what

24  they wanted.

25       **MS. BRODYAGA:**  We conceded with respect to two of

1    them it is moot, Judge.  And --

2         **THE COURT:**  What about the third one?

3         **MS. BRODYAGA:**  The third one, your Honor, there are

4    some lingering effects to the delay, mainly the fact that she

5    was unable to be employed during the two years that --

6         **THE COURT:**  Well that's a damage issue.

7         **MS. BRODYAGA:**  Well it's not necessarily a damage

8    issue, Judge, because she has applications for residency

9    pending for her two minor children, who we are saying may very

10   well be held to be ineligible for residency because of her lack

11   of income.  And so we are asking that the Court in her case,

12   and in other cases where people are ultimately granted their

13   citizenship, but because of the fact that they were not allowed

14   to be employed during that time, they had such situations where

15   they may not be able to show adequate income to immigrate their

16   children, for example.  That immigration is stopped from --

17        **THE COURT:**  Okay.

18        **MS. BRODYAGA:**  -- holding that --

19        **THE COURT:**  What --

20        **MS. BRODYAGA:**  -- the children are going to be public

21   charges.

22        **THE COURT:**  Is that a -- I mean, I appreciate the

23   fact that those allegations, if you're able to substantiate all

24   that, you know, having an effect on those people.

25        But that sounds to me, superficially, at least, to be

1  a different type of cause of action than -- and different kind

2  of relief than what you're asking for here.

3          But you were -- let me just -- let me make sure that

4  we're all on the same page.  My understanding of what you're

5  seeking is you're seeking class certification, first of all,

6  for a class of people who were born in foreign countries of

7  American parents, of U.S. citizen parents, who have filed

8  applications with the Immigration and Naturalization Service

9  using this Form N-600.

10          You're seeking a certification of that class in order

11  to do two things; first, to expedite the INS procedures to

12  determine whether the fact they are entitled to Certificates of

13  citizenship or not.  And secondly, with respect to Social

14  Security, to change the Social Security regulations till their

15  presentation of an N-600 application would be considered the

16  kind of document that Social Security would be -- would require

17  to issue a Social Security card.

18          And then, of course, would then -- would entitle

19  those people to employment authorization.  Is that -- that's

20  essentially what you're asking for; isn't it?

21          **MS. BRODYAGA:**  Except the cart's before the horse,

22  Judge.  We're saying that the Immigration --

23          **THE COURT:**  Right.

24          **MS. BRODYAGA:**  -- can give the employment

25  authorization on the basis of the pending application.

4

1        **THE COURT:**  All right.

2        **MS. BRODYAGA:**  And then Social --

3        **THE COURT:**  And then take that to Social Security.

4        **MS. BRODYAGA:**  -- Security.

5        **THE COURT:**  Okay.

6        **MS. BRODYAGA:**  And take that over to Social

7  Security --

8        **THE COURT:**  Okay.

9        **MS. BRODYAGA:**  And they give them the Social Security

10  cards.

11        **THE COURT:**  Okay.  But my question now with respect

12  to the last thing you've mentioned.  The children of people

13  who, because of INS' delay in processing their N-600

14  applications, will not be able to demonstrate sufficient income

15  to have those children come to this country and avoid the

16  problem of them becoming public charges.

17        **MS. BRODYAGA:**  And not so much the delay in

18  processing, but their refusal to give them employment

19  authorization during the time that it's pending, so that they

20  would be able to --

21        **THE COURT:**  Okay.

22        **MS. BRODYAGA:**  -- make that --

23        **THE COURT:**  Okay.

24        **MS. BRODYAGA:**  -- they would be able to be employed

25  and show that the children are not going to be public charges.

5

1      **THE COURT:**  We're getting back to the standing

2  question.  Now with respect to the relief that you're seeking

3  to the ones who have not yet had their situations cared for,

4  how do those last cases -- how do they tie into this?

5      I mean, I understand it's a, you know, part of the

6  same problem, but --

7      **MS. BRODYAGA:**  Well they tie in in the sense, your

8  Honor, and this is made explicit in our First Amended Complaint

9  where we added one count and added --

10     **THE COURT:** Okay.

11     **MS. BRODYAGA:**  -- one additional form of relief.

12     **THE COURT:**  Okay.

13     **MS. BRODYAGA:**  That for this transitional group,

14  Judge, that assuming that we are able to get, in the future,

15  employment authorization and, therefore, Social Security cards

16  for people while those applications are pending.  But the

17  transitional group of people who have been denied that

18  possibility, that INS be, essentially, estopped from saying,

19  "Well there is not enough income in that family," or has not

20  been during that period, to avoid the public charge problem."

21     **THE COURT:**  Okay.  You know, I'll tell you what's

22  troublesome to me about a lot of this.  And I'm rambling at

23  this point.  In some senses, it sounds to me as though what you

24  are looking for is for the Court to tell the Immigration

25  Service and the Social Security Administration to do their

1  business more efficiently.

2      I looked very quickly through the request for

3  admissions that you attached to the current pleading that you

4  filed, you know.  And I'm assuming the numbers you have there

5  are accurate.  You've asked the Government to admit them, and

6  they probably won't.

7      But, I mean, it sounds like a lot of people in this

8  situation.

9      **MS. BRODYAGA:**  There are.

10     **THE COURT:**  I mean, like hundreds.

11     **MS. BRODYAGA:**  And that, your Honor, is precisely why

12  we are not saying that they have to speed it up.  Because we

13  understand that there are cases that take investigation.

14     **THE COURT:**  Okay.

15     **MS. BRODYAGA:**  There are cases that are going to

16  delayed, but that the relief that we're asking is that they can

17  take all the time they need to so long as they let people work

18  in the interim.

19     **THE COURT:**  Okay.  Let me ask you this.  And this is

20  for my information more than anything else.

21     I gather from some of the things in your pleadings,

22  that when a U.S. citizen living abroad has a child, there's a

23  procedure that they can go through to register the birth of

24  that child with the U.S. Consulate.

25     **MS. BRODYAGA:**  Yes.

1          **THE COURT:**  And that had these people done that, that

2  all of this would not be a problem.  Or is that too simplistic?

3          **MS. BRODYAGA:**  That's a little bit simplistic,

4  Judge --

5          **THE COURT:**  Okay.

6          **MS. BRODYAGA:**  -- because it's not just a question of

7  registering the birth.  It's a question of proving at that time

8  all of the other elements, including how many years you have

9  lived in the United States prior to -- prior to the birth of a

10  child, et cetera.

11          You can't just walk into the consulate and say I had

12  a child born abroad.  That child is a U.S. citizen.

13          **THE COURT:**  Well, but I assume that were you to talk

14  into a consulate and say I have a child born abroad and I'm a

15  U.S. citizen, that they would tell you about all this stuff,

16  they give you forms to fill out to where you could get that

17  process started.

18          **MS. BRODYAGA:**  That may very well be, Judge.  But

19  that is not a well known procedure.  That is not something

20  that --

21          **THE COURT:**  You got to go ask, you know.

22          I'll be very candid with you.  I don't have a lot of

23  sympathy for kind of the dumb bunny problem.

24          In other words, if you are living in a foreign

25  country, and you're a U.S. citizen, and you have a child, it

1   would seem to me that even at a very minimal level of education

2   and sophistication, you should know that there are things you

3   should do to protect your childrens' rights as U.S. citizens.

4   And that the first thing would be to go to the U.S. Consulate

5   and say, "Look here I am.  I'm living in, you know, Monterrey,

6   Mexico City, Compeche (phonetic), wherever, I've had this

7   child.  You know, what do I need to do to protect this child's

8   future right as a U.S. citizen?"

9           I mean, is that asking too much of any of these

10  people?

11          **MS. BRODYAGA:**  Your Honor, it's -- first of all, it's

12  something that a great many people do not know that their

13  children are U.S. citizens when they are born abroad.  And it

14  is also essentially punishing the child for the ignorance of

15  the parents.

16          **THE COURT:**  Well the hell of life, Ms. Brodyaga, is

17  that happens a lot, you know, I mean, and I'm not being

18  facetious when I say that.

19          Unfortunately, you know, we could spend the rest of

20  the day speculating about those aspects of life and living

21  where children are punished for the inadequacies of their

22  parents at almost every level.  And, you know, it's a topic for

23  another conversation, in another forum, another day.

24          Well look, let's get on with this.  So what I'm

25  hearing you saying is that, with at least with respect to two

1  of your four original Plaintiffs, this action with respect to

2  them is moot.

3          **MS. BRODYAGA:**  That's correct.

4          **THE COURT:**  And you've got the two left; one is the

5  guy that's in prison.

6          **MS. BRODYAGA:**  That's correct.

7          **THE COURT:**  And the other one is the lady who's

8  gotten her Certificate of Citizenship, but by reason of the

9  delay, your concern is that -- that her children may have

10 trouble immigrating, because they would be considered charges

11 on society.

12         **MS. BRODYAGA:**  That's correct.

13         **THE COURT:**  And then you've added a whole bunch of

14 other people in your amended complaint who, I assume, and

15 I've -- in fact, I mean, I've looked through this quickly

16 because it's just come to my attention that it's been filed.

17 And that's a problem that we've talked about in another

18 forum -- who, I assume have the same sorts of problems that the

19 original -- that the two who presumptively won't be here

20 anymore have.

21         **MS. BRODYAGA:**  Correct.

22         **THE COURT:**  All right.  Is that -- okay.

23         **MS. BRODYAGA:**  And in one of the cases, it has an

24 added twist Judge, that the person was found to be a U.S.

25 citizen by an Immigration Judge.  And Immigration is appealing

1   that also, so --

2          THE COURT:  Well that's -- they can't help that, you

3   know.

4          MS. BRODYAGA:  Right.

5          THE COURT:  I mean --

6          MS. BRODYAGA:  No, I understand.  But I'm just saying

7   that --

8          THE COURT:  We could have the ripples on this extend

9   out --

10          MS. BRODYAGA:  I understand that, but I'm just

11   saying --

12          THE COURT:  Yeah.

13          MS. BRODYAGA:  -- you know --

14          THE COURT:  That's a different problem.

15          MS. BRODYAGA:  Except that for such a person still

16   not to be able to have employment authorization and work

17   permit, Judge, is what we're saying here.

18          THE COURT:  Well, I mean, I guess the argument you

19   could make there would be that that's just a sort of shade or a

20   phase of the original problem.

21          MS. BRODYAGA:  Correct.

22          THE COURT:  I mean, the original problem still

23   exists, it's just it's further down the road --

24          MS. BRODYAGA:  Exactly.

25          THE COURT:  -- at some point.

1          Okay.  Now Mr. Molina, I assume that the filing of

2    the amended complaint renders moot your Motion to Dismiss on

3    lack of standing, at least to the new people --

4          **MR. MOLINA:**  As to that --

5          **THE COURT:**  I mean, I'm not talking about the old

6    people.  You know, we've already conceded two of them are gone.

7          **MR. MOLINA:**  Correct, your Honor.

8          **THE COURT:**  One's in prison.

9          **MR. MOLINA:**  Yes.

10         **THE COURT:**  And we can debate the merits or demerits

11   of his problem in a second.

12         **MR. MOLINA:**  Okay.

13         **THE COURT:**  I mean, your argument, he lacks standing

14   because he hasn't shown an injury, because he's in jail, he

15   can't work.

16         **MR. MOLINA:**  Correct.

17         **THE COURT:**  And that's part of your argument.

18         **MR. MOLINA:**  Yes, sir.

19         **THE COURT:**  Okay.  But what about all these new

20   people?

21         **MR. MOLINA:**  I only received the amended complaint

22   yesterday afternoon, your Honor.  I haven't had the chance to

23   get into to.

24         **THE COURT:**  Well let's assume that Ms. Bardyaga's

25   representations are correct, and that those people are in the

1   same situation as the two who have already had their

2   applications processed and who are, you know, gone.

3          **MR. MOLINA:**  Okay.

4          **THE COURT:**  Wouldn't that render your motion -- your

5   standing motion moot?

6          **MR. MOLINA:**  Not as to the remaining Plaintiffs from

7   the original complaint.

8          **THE COURT:**  Right.

9          **MR. MOLINA:**  There's still part of them.

10         **THE COURT:**  Yeah.

11         **MR. MOLINA:**  And new arguments, as of yet, I do not

12   know --

13         **THE COURT:**  Okay.

14         **MR. MOLINA:**  -- apply to the most recent seven

15   Plaintiffs that have been --

16         **THE COURT:**  Okay.

17         **MR. MOLINA:**  -- added.  They may have altogether

18   different standing problems.  I --

19         **THE COURT:**  Right.

20         **MR. MOLINA:**  -- didn't have.

21         **THE COURT:**  Well, you could -- okay, you know.

22         **MR. MOLINA:**  I don't know that at this stage.

23         **THE COURT:**  Well at least for the -- on the grounds

24   that you have alleged in the motion that you filed with respect

25   to the two, your motion or, excuse me, with respect to -- okay.

1    I've got my tongue twisted here.

2          A new group of Plaintiffs have been added, which I

3    told Ms. Brodyaga she could do the last time you were here,

4    because this, remember, they were concerned INS would get off

5    the dime and take care of these folks.  And they have, at least

6    with two of them -- three -- you're arguably three, but we

7    could concede two, right?

8          **MR. MOLINA:**  Yes.

9          **THE COURT:**  Okay.  So now there's seven more.  And

10   the allegations, I assume, and again like you, I've not

11   reviewed the -- you can tell from that, the fact that I missed

12   the point about the argument made with respect to the folks

13   whose delay has caused problems for them.

14         What I'm getting at is this.  Are we at a point where

15   we can -- and, you know, let me digress for a second.

16         You, of course, all recognize my jurisdictional

17   limitations.  I mean, all I can do with respect to class

18   action, injunctions, or whatever, is take evidence and make a

19   report and recommendation to Judge Baila (phonetic).

20         I mean, I have no jurisdiction, absent your both

21   consenting to my handling the case under 636(c).  I have no

22   jurisdiction to either grant class certification or grant

23   injunctive relief.  I mean, you both understand that, don't

24   you?

25         **MR. MOLINA:**  Yes.

1    **THE COURT:**  Okay.  So, with respect to -- it sounds

2    to me like the first thing we might want to consider.  And this

3    is, you know, is not what this thing is set for today, is talk

4    about class certification.

5    Is there any question in your mind but that the

6    people that Ms. Brodyaga has added, assuming everything that,

7    you know, that her comments about their situations are true,

8    that they would comprise a representative of a class of people

9    who have these problems?

10    **MR. MOLINA:**  At present, I can't speak for the new

11    people.

12    **THE COURT:**  All right.  Okay.  Well let me -- maybe I

13    asked the question in the wrong way.

14    Is there any doubt in your mind, I mean, putting

15    aside the merits of the case for a second.  I mean, I'm not,

16    you know -- we're talking about class.  We're talking about

17    commonality, and size, and all that sort of thing.  That there

18    is a group of people out there, some several hundred, if

19    Ms. Brodyaga's numbers and the request for admissions are to be

20    taken at face value, that there are several hundred people out

21    there who have filed N-600 applications for issue.

22    And I assume was that -- the issuance in the strict

23    consent that you have a problem with?

24    **MR. MOLINA:**  Correct.

25    **THE COURT:**  Okay.  But they're out there.  And that

1  they are languishing in this limbo of having applications

2  pending, and because of INS' administrative problems, they

3  haven't been acted on.  And yet, they do not have certificates

4  that would permit them to work.

5          I mean, is there any doubt that there's a lot of

6  people like that?

7          **MR. MOLINA:**  More like -- "a lot" is relative.  But

8  I --

9          **THE COURT:**  I mean, more than, I mean, more than ten?

10         **MR. MOLINA:**  More than on two hands.

11         **THE COURT:**  Okay.

12         **MR. MOLINA:**  Less than the number of people in the

13  world.

14         **THE COURT:**  Well all right.  Okay.  That pins it

15  right down.

16         I mean, there are a lot of people in that situation.

17         **MR. MOLINA:**  There are people, yes.

18         **THE COURT:**  Okay.  Let me ask this question.  And I

19  tend to jump around as you've probably see the spots in front

20  of me.

21         Ms. Brodyaga has made a good point in some of her

22  pleadings.  And I know from other matters that there are

23  regulations or procedures in immigration status, where people

24  who are in this country under different -- by different means,

25  are given authorizations to work.  I mean, that's true; isn't

1    it?

2            **MR. MOLINA:**  That is true.

3            **THE COURT:**  People who are seeking asylum, for

4    example, people who were -- I think some of them are even here

5    illegally.

6            **MR. MOLINA:**  True.  Yes.  They may be in deportation

7    proceedings et cetera.

8            **THE COURT:**  That's okay.  There you go.  I mean, at

9    least INS takes the position they're here illegally.  Whether

10    they're right or wrong --

11            **MR. MOLINA:**  Yes.

12            **THE COURT:**  -- of course, is a matter for, you know,

13    to go through the administrative and judicial process to prove

14    up.

15            Why can't Immigration have a regulation to let these

16    folks, who if they're to be believed, have valid claims to U.S.

17    citizenship?  Why can't you let them work here while those

18    claims are pending?

19            You know, and think of it.  You know, put yourself in

20    this situation.  It's a Catch-22.  You know, okay.  You come

21    in.  You filed your application to, I mean, I won't say to get

22    citizenship status.  I mean, you are a citizen.  It's just a

23    question of going through the administrative process to prove

24    to the satisfaction of the Immigration Service that you are, so

25    you can get whatever paperwork that they issue, right?

1      **MR. MOLINA:**  Yes.

2      **THE COURT:**  Well during that period, why can't you

3  let these people have these work permits?  I mean, you know,

4  you're letting the people in deportation, asylum seekers, and

5  all other kinds of rascals do it.  You know, why not these

6  folks?

7      **MR. MOLINA:**  That's the question you told me you

8  would find an answer to.

9      **THE COURT:**  Well fine.  Do you think I -- did you

10  find conflict, or did you get another bunch of bureaucratic run

11  around?

12      **MR. MOLINA:**  In actuality, your Honor, there very

13  well may be an answer.  I --

14      **THE COURT:**  Tell us.  Maybe we can all go home.

15      **MR. MOLINA:**  At this point, I can't represent to you

16  in a Federal Court, but it is being pushed up the channels,

17  because it may be the solution that disposes of this entire

18  case.

19      **THE COURT:**  Well let me ask you this now.  And I'm

20  speaking as a -- someone that is congenitally lazy.  Is this

21  one of these solutions that's going to come down the road

22  within our lifetimes?

23      **MR. MOLINA:**  Your Honor, at present, it's pushed --

24      **THE COURT:**  I'm going to be 56 in another couple of

25  weeks.  I mean, I ask that not entire facetiously.

1    **MR. MOLINA:**  Well certainly, your Honor.  It should

2    be coming down very soon.

3    **THE COURT:**  Like very, you know, I'm not hearing --

4    I'm hearing "very soon" and "should."

5    **MR. MOLINA:**  Well, your Honor --

6    **THE COURT:**  Look, I know you're here.  And we're all

7    standing here.  And I'm wearing the black dress and all that

8    stuff.  Just give me an idea.

9    **MR. MOLINA:**  I have found --

10    **THE COURT:**  And I mean no one's going to drag you up

11    and, you know, Ms. Brodyaga might want to shoot you, but I

12    won't let her.

13    **MR. MOLINA:**  Your Honor, we may very well have the

14    regulation.  The permits -- it's just that I cannot make that

15    representation until I make sure that those in INS that should

16    have a say, have had their say.

17    It may be that the regulation is already out, that it

18    provides the solution to this case.  It's just a matter of now

19    having to check with one more sector of INS to make sure it is

20    an appropriate recommendation.

21    Moreover, Congress just passed the <u>Illegal</u>

22    <u>Immigration Reform and Immigration Responsibility Act</u>, which

23    made some minor changes to employment authorization.  And now

24    the INS is trying to cope with what it's going to do with that.

25    I'm trying to get the answer from them.  I'm hoping

1    that at least within the next month, I'm hoping.  It shouldn't

2    take them much longer than that to provide the answer for me.

3    But I can assure you that if it is the answer, it's the answer

4    you're looking for.  It will provide --

5         **THE COURT:**  I was born here.

6         **MR. MOLINA:**  You've asked me the question.  It's the

7    answer to your question.

8         **THE COURT:**  All right.

9         **MR. MOLINA:**  I just simply cannot give it to you at

10   this time.

11        **THE COURT:**  Yeah.  No I understand what you're

12   saying.  But then that provides, I guess, some hope; doesn't

13   it?  I mean, you know, it's --

14        **MS. BRODYAGA:**  Hope springs eternal, your Honor.

15        **THE COURT:**  Well it does.  And I always like to think

16   of us as being optimists.

17        Well let me ask you this, Ms. Brodyaga.  Let's assume

18   for the sake of this discussion that Mr. Molina's right and

19   some time within the near term, rather than the far term,

20   there's going to be a regulation that's going to solve this

21   problem.  What would that do to your case?

22        Now I'm speaking bureaucratically.  See here's what

23   I'm getting at.  And again, this is purely my own workload

24   considerations.

25        I don't want to get in the situation where, you know,

1  we've taken a lot of evidence, have gone through a lot of

2  briefing, and a lot of discussion, I've written a lengthy

3  report and recommendation to Judge Baila on the issue of class

4  certification, injunctive relief, and all that.  And it turns

5  out that, you know, like the ink is barely dry on my signature,

6  and bingo, you know, this all goes away.

7          **MS. BRODYAGA:**  Your Honor, we wouldn't like that,

8  either, because that means a lot of work for everyone.

9          **THE COURT:**  Yeah.

10          **MS. BRODYAGA:**  The problem is that, you know, as

11  you've indicated, there are a lot of maybes and shoulds and --

12          **THE COURT:**  Right.

13          **MS. BRODYAGA:**  -- et cetera.  Perhaps my interim

14  suggestion would be that we deal only at this point, or deal

15  first with the issue of class certification --

16          **THE COURT:**  Okay.

17          **MS. BRODYAGA:**  -- so that we don't have to keep

18  coming back and adding new plaintiffs.

19          **THE COURT:**  Well that's -- I think you're right.

20          **MS. BRODYAGA:**  And then perhaps wait and see a little

21  bit.

22          **THE COURT:**  Yes.

23          **MS. BRODYAGA:**  Give the Government a reasonable

24  period of time, because, you know, we all have other things we

25  need to do; give them a reasonable period of time to see if

1    they do, in fact, solve the problem.

2         **THE COURT:**  Let me make one thing very clear to both

3    of you.  In these comments, I'm not trying to duck doing the

4    job and avoid doing the work.

5         You know, if it's one of these things where it's all

6    going to become moot, you know, in a month, I've got things to

7    do that aren't going to become moot in another month.

8         But I'm not trying to evade, you know, the workload.

9    As a matter of fact, this is relatively new material for me.

10   And it's always interesting to get into something new.

11        **MS. BRODYAGA:**  We're not taking it that way.

12        **THE COURT:**  Okay.  Well good.  I just wanted to make

13   that real clear.

14        Well look, what about the class certification,

15   Mr. Molina?

16        **MR. MOLINA:**  Yes, your Honor.

17        **THE COURT:**  I mean, you know, it sounds to me, at

18   least facially, that a case has been made for a class that

19   these folks should be certified.  Now there may be later on

20   subclasses and all that for different people like the fellow in

21   prison, for example, or the lady who's claiming that the delay

22   has jeopardized her kids' chance of coming.

23        But I can see where you could, you know, break them

24   into subclasses, which you could do.

25        **MR. MOLINA:**  Well, your Honor, first of all, we've

1  not been able to respond to the Motion for Class Certification

2  because we had the pending Motion to Dismiss.

3          **THE COURT:**  Right.

4          **MR. MOLINA:**  Well particularly --

5          **THE COURT:**  Well forget that.

6          **MR. MOLINA:**  We can not --

7          **THE COURT:**  I mean, you know, this case isn't going

8  to go away, Mr. Molina.  I mean, as much as you'd like to -- as

9  much as you would like it to, you know, and Ms. Brodyaga is

10  getting somewhat harsh with you in some of these pleadings

11  about procedural -- well we won't get into that.

12          **MR. MOLINA:**  Certainly, your Honor.

13          **THE COURT:**  We won't get into that.

14          **MR. MOLINA:**  Well right now, your Honor, there are

15  numerous problems that the class might run into.  And we'd like

16  the opportunity to present those in writing.

17          **THE COURT:**  How much time do you want to do that?

18          **MR. MOLINA:**  If we could have --

19          **THE COURT:**  Make is short.

20          **MR. MOLINA:**  Is 20 days too long?

21          **THE COURT:**  I mean, I take it -- I mean, I'll put it

22  to you right now.  I take this view right now.  And I don't

23  think this needs an evidentiary hearing.

24          Number one, you know, representations have been made

25  that there's lots of people out there with the same kind of

1  problem.  I mean, you know, if somebody asked me if I -- if it

2  were within my power right this minute, I'd say, "Hey, I'm

3  going to certify this class."  And you can tell, I guess, from

4  that what I probably suggest to Judge Baila that he'd do.

5      And you know, really, from your standpoint, that

6  kinds of a no lose deal, because the fact that allegations of

7  class have been made, probably with no limitation problems with

8  this kind of case, are there?  Not where I come from.

9      But yeah, I mean, I don't see that being a problem

10 that the Government should really be terribly concerned about.

11 I mean, it's either trying to mold down one at a time, or

12 hundreds at a time.  I mean, the same issues are going to be

13 presented.

14     I mean, let's assume, let's assume that Mr. Molina

15 runs back up and hollers.  And he says to the INS, "Let's pull

16 out these seven people and kick them to the top," and bingo.

17 You know what's going to happen.  I mean, there's going to be

18 seven more, and seven more, and seven more.

19     **MS. BRODYAGA:**  We have some more waiting in the

20 wings, Judge, just in case.

21     **THE COURT:**  Oh I have no doubt to that.

22     **(Laughter)**

23     **THE COURT:**  Several hundred I gathered.  You know --

24     **MS. BRODYAGA:**  But I really cannot represent to the

25 Court that I know that it's that many.  That's why we put ours

1  in stair steps --

2        **THE COURT:**  All right.

3        **MS. BRODYAGA:**  -- because that's in the Immigration's

4  knowledge and not ours.  But I do know that it is a substantial

5  number.

6        **THE COURT:**  Well that raises another question, too.

7  Assuming that a class is certified, what are you going to do

8  about notice and all that stuff?  I mean --

9        **MS. BRODYAGA:**  Well, your Honor, then we would get

10  into the discovery so that INS would have to give us the names

11  of those individuals --

12        **THE COURT:**  Well --

13        **MS. BRODYAGA:**  -- at INS so that we could notify

14  them.

15        **THE COURT:**  Right.

16        **MS. BRODYAGA:**  That should not be that difficult once

17  it has been --

18        **THE COURT:**  Does INS keep this class of persons

19  separated?  I mean, could INS find out how many people there

20  are who have this kind of application pending?

21        **MR. MOLINA:**  There is no one location that holds that

22  information that I am aware of.

23        **THE COURT:**  You know, I have a hell of a time with

24  that.  If I go to the gas station and charge gasoline on my

25  credit card, they can put it in a computer and tell whether

1   I've paid my bill like that.  You know, I mean, why can't we

2   expect at least as much from Immigration Service as we can from

3   Exxon?

4           MR. MOLINA:  Well, your Honor, at present, systems

5   are being upgraded but --

6           THE COURT:  Not in the --

7           MR. MOLINA:  I can't begin to speculate as --

8           THE COURT:  You know, I don't expect --

9           MR. MOLINA:  -- to that.

10          THE COURT:  I don't expect it as -- and, you know,

11  speaking philosophically, we may not want the Government to be

12  that efficient.  But that's again, another topic of

13  conversation.

14          MS. BRODYAGA:  There are ways of obtaining that

15  information.  It may not be just pushing a button like Exxon

16  can do, but --

17          THE COURT:  Well, but by the same token,

18  Ms. Brodyaga, I don't want to put the INS in a situation where

19  they've looked at -- you know ten people pulled off doing what

20  they're doing to manually run through thousands and thousands

21  of --

22          MS. BRODYAGA:  It would not be that, your Honor,

23  because they do keep records of what types of applications are

24  filed.  And it would be ordinarily a question of ascertaining

25  how many of those that have been filed are still pending.

1       They would not have to go through manually that great

2  number of records.  It would take a little work, Judge.

3       **THE COURT:**  Okay.

4       **MS. BRODYAGA:**  But from my understanding of the

5  procedures it would not be a question of putting a large number

6  of people through a large period of time.

7       **THE COURT:**  Okay.  Well look, why don't we do this?

8  And, you know, I really do enjoy your coming down here, but I'd

9  like to see it, you know, come to a resolution.

10      Why don't you go ahead and respond to the class

11 motion by -- you said 20 days, that would be --

12      **(Pause)**

13      **THE COURT:**  Today is the 15th?  How about like

14 December the 10th?

15      **MR. MOLINA:**  December 10th.

16      **THE COURT:**  And I would also ask that you exert

17 whatever influence you and Mr. Muir have with the INS to

18 expedite the issuance of a reg.

19      Let me ask you this, I thought that if new

20 regulations were proposed, I mean, just speaking as a general

21 administrative law proposition, doesn't there have to be some

22 kind of a public publication of that, and invite comments from

23 the public and all that?  Has that been done?  Are you aware of

24 anything like that?

25      **MS. BRODYAGA:**  No, Judge, I mean, as not to my

1    knowledge.

2         **THE COURT:**  Am I right in that?  I mean, this isn't

3    something where just all of a sudden it's going to --

4         **MR. MOLINA:**  Well --

5         **THE COURT:**  -- spring full blown from the head of

6    Immigration Services.

7         **MR. MOLINA:**  Well generally to promulgate a new

8    regulation, that's the case, your Honor.

9         **THE COURT:**  Yeah.

10        **MR. MOLINA:**  It may very well be that present

11   regulation --

12        **THE COURT:**  Okay.

13        **MR. MOLINA:**  -- permits.  We've just got to make sure

14   that we're not --

15        **THE COURT:**  I see.  We're going to have --

16        **MR. MOLINA:**  -- misrepresenting that regulation to

17   the Court.

18        **THE COURT:**  Okay.

19        **MR. MOLINA:**  That's all what it's on.

20        **THE COURT:**  We're having a "come to Jesus" session

21   about whether or not what's already on the books could apply to

22   these folks?

23        **MR. MOLINA:**  Yes.

24        **MS. BRODYAGA:**  Well that's better, Judge.

25        **THE COURT:**  Yeah.

1          **MR. MOLINA:**  That's why --

2          **THE COURT:**  Okay.  I'm not even going to ask.  I

3   don't want to know any more details about it.

4          Okay.  Okay.  Well that'll be -- yeah.  That would be

5   great.  Okay.  Why don't you encourage that process, because,

6   you know, I mean, you just -- and I'm speaking very non-

7   judicially here.  Just simply as a matter of justice.  It just

8   doesn't sound right to me that people who have an incoming

9   claim to citizenship are being handicapped in their efforts to

10  live and support their families by some, you know, gap in the

11  administration, when others -- I mean, if it were a uniform

12  policy that nobody got temporary work permits or whatever,

13  okay.  You know, you don't like it, but you can live with it.

14         I mean, this just doesn't sound right.  I mean, it

15  really doesn't.

16         **MR. MOLINA:**  I understand what you're saying, your

17  Honor.

18         **THE COURT:**  And you're probably looking at the most

19  conservative guy you could have had all day today.

20      **(Laughter)**

21         **THE COURT:**  But I mean, it's just -- it's just not

22  right.

23         And I really hope you can resolve this without --

24  okay.  Why don't you file your response to the class motion by

25  the 10th.  I'll get that out just as quickly as I can, and you

1  know, Ms. --

2  **MS. BRODYAGA:** If we could have a couple of days, your

3  Honor, to file any --

4  **THE COURT:** Ms. Brodyaga you file all this stuff.

5  Trust me, Ms. Brodyaga, okay?

6  **MS. BRODYAGA:** Thank you.

7  **THE COURT:** Just trust me. Okay.

8  And you know, I also encourage brevity in everybody's

9  filing.

10  **MR. MOLINA:** In the response?

11  **THE COURT:** Sure.

12  **MS. BRODYAGA:** I'm sorry I didn't hear that, sir.

13  **THE COURT:** I said I encourage brevity. Listen

14  carefully. Okay.

15  Well, I mean, you know, if -- just, you know,

16  speaking again purely administratively, I -- you know, I read

17  fairly quickly. And I don't move my lips. And if I'm just

18  pointed in the right direction, I can usually come up with some

19  kind of an answer. But if I've got to plow through this, you

20  know, the rhetoric. I don't need the rhetoric I guess is what

21  I'm saying.

22  I'd like to assume that everybody walks in here in

23  the spirit of attempting to resolve these issues. Again, I'm

24  sure it's my naiveté, but, I can't help that.

25  After that, let's assume for the sake of argument,

1   that while I have you all here, let's assume that the class

2   certification -- that I make a recommendation to Judge Baila

3   that the class be certified and that, you know, turn off the

4   machine --

5        **(The Court goes off the record)**

6        **(This portion of the proceeding was adjourned at 10:30**

7   **a.m.)**

**TRINITY TRANSCRIPTION SERVICES**

1 <u>CERTIFICATION</u>

2

3 I certify that the foregoing is a correct transcript from the

4 electronic sound recording of the proceedings in the above-

5 entitled matter.

6

7

8 _Cheryl A. Wadewitz_                      _February 22, 2005_

9                  Transcriber                        Date

10 CA-B-96-116

11 11/15/96 - 02/22/05