UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 1 0 2005

Michael N. Milby, Clerk of Court

ANTELMA DOMINGUEZ-PEREZ, ET AL.        CASE NO. CA-B-96-116
                                   .
             PLAINTIFFS,           .
                                   .
        V.                         .     BROWNSVILLE, TEXAS
                                   .     MONDAY, AUGUST 24, 1998
JANET RENO, ET AL.,                .     2:12 P.M. TO 2:45 P.M.
                                   .
             DEFENDANTS.           .
. . . . . . . . . . . . . . . . . .


HEARING

BEFORE THE HONORABLE WILLIAM BLACK
UNITED STATES MAGISTRATE JUDGE


Trinity Transcription Services
122 Trinity Oaks Circle
The Woodlands, TX 77381
281-296-2290

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

ANTELMA DOMINGUEZ-PEREZ, ET AL.     CASE NO. CA-B-96-116
                                  .
              PLAINTIFFS,          .
                                  .
          V.                       .   BROWNSVILLE, TEXAS
                                  .   MONDAY, AUGUST 24, 1998
JANET RENO, ET AL.,                .   2:12 P.M. TO 2:45 P.M.
                                  .
          DEFENDANTS.              .
. . . . . . . . . . . . . . .

HEARING

BEFORE THE HONORABLE WILLIAM BLACK
UNITED STATES MAGISTRATE JUDGE

Appearances:

| | |
|---|---|
| For the Plaintiff: | Elizabeth Brodyaga, Esq.<br>P.O. Box 3566<br>Harlingen, Texas 78551 |
| | Lynn Coyle, Esq.<br>No Address Provided |
| For the Defendant: | Ernesto Molina, Esq.<br>Assistant United States Attorney<br>No Address Provided<br>Washington, D.C. |
| Court Recorder: | Gabriel Mendieta |
| Transcriber: | Cheryl Hendershot<br>Trinity Transcription Services<br>122 Trinity Oaks Circle<br>The Woodlands, TX 77381<br>281-296-2290 |

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

1

1    **Brownsville, Texas; Monday, August 24, 1998; 2:12 p.m.**

2         **THE COURT:**  Please be seated.  Okay.  We're back with

3    *B-96-116, Dominguez Perez against --*

4         **MS. BRODYAGA:**  Reno.

5         **THE COURT:**  When you were here the other day, the

6    Government told me there was no way they could produce certain

7    matters.  Some doubt was cast on that.  And I've asked you to

8    come back and explain to me why, Mr. Molina, it is that the

9    Immigration and Naturalization Service does not have the

10   capacity to produce the records concerning the number of

11   matters, pursuant to this -- what's the statutory citation,

12   again, or the administrative citation?

13        **MS. COYLE:**  Would that be 302?

14        **THE COURT:**  Section what is it?

15        **MS. COYLE:**  I believe it's 302.  You mean, the --

16        **THE COURT:**  Yeah.  All right.

17        **MS. BRODYAGA:**  N-600, I figured that was the one she

18   was looking at.

19        **THE COURT:**  What are you going to tell me, Mr.

20   Molina?

21        **MR. MOLINA:**  Well, your Honor, pursuant to your

22   request, I brought people who can help explain the N-600

23   system.

24        **THE COURT:**  All right.  Can you do it quickly?

25        **MR. MOLINA:**  Yes, we can, your Honor.

HOLLENBECK - DIRECT                                    2

1          **THE COURT:**  All right.  Go ahead.

2          **MR. MOLINA:**  Yvonne Hollenbeck, will you please come

3    up here?

4      **(Voices speaking off the record)**

5      **(Pause)**

6          **THE CLERK:**  Would you raise your right hand, please?

7      **(Witness sworn)**

8                      **DIRECT EXAMINATION**

9    BY MR. MOLINA:

10   Q    Ms. Hollenbeck, would you please state your name?

11   A    My complete name is Yvonne Mosul (phonetic) Hollenbeck.

12   Q    Okay.  And where do you work?

13   A    With the U.S. Immigration Service in Harlingen.

14   Q    How long have you worked there?

15   A    I've worked there for about ten years.

16   Q    What position do you occupy with the INS?

17   A    I'm an examinations assistant.

18   Q    Are you familiar with the G-22 computer system?

19   A    Yes, I am.

20   Q    What is it?

21   A    It is a statistical report which is done and uploaded

22   through Central Index System, inquiring how many applications

23   were approved, or granted, or so on and so forth.

24   Q    Is it your job to put numbers into that computer system?

25   A    After I've consolidated them, yes.

HOLLENBECK - DIRECT                    3

1  Q    All right.  Is that system capable of producing the number

2  of appeals filed by particular aliens --

3  A    No.

4  Q    -- for the years 1992 through 1996?

5  A    No.

6  Q    No.  So you never input that information into its computer

7  system?

8  A    No.

9       MR. MOLINA:  Now, your Honor, you had questions as to

10 why not --

11      THE COURT:  I don't care why not.  The thing that got

12 me the other day was that it's apparently an inconsistency

13 between what you've just said and information that was

14 furnished the Plaintiffs in this case under a Freedom of

15 Information Act request they made in what year was it?

16      MS. BRODYAGA:  The request was made in 1995, I

17 believe.

18      MR. MOLINA:  Sure.  I believe that can now be

19 explained, your Honor.

20      THE COURT:  Please do.

21   (Pause)

22      MR. MOLINA:  Your Honor, should I proceed informally

23 or formally?

24      THE COURT:  However you want to do it.

25      MR. MOLINA:  Okay.

HOLLENBECK - DIRECT                                4

1        **THE COURT:**  I mean, I'm just interested in finding

2   out what's going on and where we're headed.

3        **MR. MOLINA:**  That's fine.  I'll move ahead with that.

4   May I approach the witness?

5        **THE COURT:**  Go ahead.

6        **(Counsel approaches the witness)**

7   BY MR. MOLINA:

8   Q    Ms. Hollenbeck, I'm handing you, Plaintiff's Exhibit 3 in

9   this case.

10        Do you recognize the information that's presented on

11   that form, ma'am?

12   A    Yes, sir.

13   Q    What is it?

14   A    It's parts of the G-22 reports that we've uploaded into

15   the Central Index System.

16   Q    Okay.  Do you see where it says, "N-600s?"

17   A    Uh-huh.  Yes, sir.

18   Q    Is that the number of N-600 -- does that -- relates

19   numbers pertinent to N-600s?

20   A    Yes.

21   Q    Okay.  Does that system record appeals taken from denials?

22   A    No.

23   Q    No.  You never enter those --

24   A    Never.

25   Q    -- those numbers.  Okay.  That's fine.

HOLLENBECK - DIRECT                                    5

1      **MR. MOLINA:**  Now, your Honor, if I may address you?

2      **THE COURT:**  Yeah.  Go ahead.

3      **MR. MOLINA:**  Sure.  The numbers that are presented

4  there are comparable to the numbers that were produced for the

5  Plaintiffs in this case.

6      Upon further review, it was discovered that there was

7  a minor computer error, in which it was not related to the

8  Harlingen District.  But the evidence as produced, in what I

9  think became Plaintiff's Exhibit 2, shows that we tried to

10 break it down by number of application received, by number of

11 applications received by month, adjudicated by month, approved

12 by month, denied by month.

13     But because there was a single parameter that was

14 missing from the computer program, these numbers were not

15 limited to the Harlingen Office.  So the number can produce --

16 the system can't produce those numbers.  It is simply that that

17 system is not used to track the number appeals from the

18 Harlingen District.

19     **THE COURT:**  I'm not sure I'm understanding what

20 you're saying.

21     You can tell how many were filed, how many were

22 heard, and how many approved, and how many denied --

23     **MR. MOLINA:**  Correct.

24     **THE COURT:**  -- from Harlingen, or from the system as

25 a whole.

1    **MR. MOLINA:**  Correct, from the Harlingen Office.

2    **THE COURT:**  All right, but not those who were denied

3 an appeal.

4    **MR. MOLINA:**  That's correct.

5    **THE COURT:**  All right.  'Cause that data's not there.

6 But that's what you have; isn't it?

7    **MS. COYLE:**  Well, your Honor, what we do not have

8 were, first of all, what Mr. Molina's describing was not

9 produced.

10    He's saying that the numbers can be produced for the

11 Harlingen INS District Office --

12    **THE COURT:**  Right.

13    **MS. COYLE:**  -- and that was not produced. So now --

14    **THE COURT:**  Yeah.

15    **MS. COYLE:**  -- today he's telling us that it can be

16 produced.  They weren't produced --

17    **THE COURT:**  Well let's ask -- answer that question

18 first.

19    **MR. MOLINA:**  Sure.  When the instructions were given

20 to produce these numbers, the -- there was a mistake in which

21 the numbers were not limited to merely the Harlingen District.

22 So while we tried to produce the numbers, because of a specific

23 computer algorithm had to be written, and it -- that algorithm

24 did not limit the search to Harlingen cases.  Those numbers

25 were not produced.

HOLLENBECK - DIRECT                    7

1          Those numbers can be produced and will be produced

2    immediately.

3          THE COURT:  All right.  Okay.

4          MS. COYLE:  Okay.

5          THE COURT:  That takes care of that.  Right?

6          MS. COYLE:  That's the first issue.

7          THE COURT:  All right.  Okay.

8          MR. MOLINA:  But nowhere in any of the numbers they

9    produced, do they show appeals taken from denials.

10         THE COURT:  Okay.

11         MR. MOLINA:  And those are the numbers that cannot be

12   produced.

13         THE COURT:  All right.  Is that what you have on the

14   other stuff?

15         MS. COYLE:  No.  We do not have any numbers relating

16   to --

17         THE COURT:  Okay.

18         MS. COYLE:  -- appeals.

19         THE COURT:  Okay.  Well, if they can't do it, they

20   can't do it.  I mean, as much as I would like to, I can't make

21   the red sea part.  Okay.

22         MR. MOLINA:  Okay.

23         THE COURT:  Yes, ma'am.

24         MS. BRODYAGA:  If I may, Judge, the problem that I'm

25   having with this, is that it took until today for him to say

HOLLENBECK - DIRECT                              8

1   that --

2          THE COURT:  Well, I got real -- I've got a problem

3   with that, too.  And that's why I was --

4          MS. BRODYAGA:  Okay.

5          THE COURT:  -- grumpy with Molina the other day when

6   he came in here he was --

7          MS. BRODYAGA:  Right.

8          THE COURT:  -- too busy.  That's why we're back here

9   today.

10         I mean, I got a big problem with that.  I really do,

11  in a case that's bumping up four years old, now.  But that's

12  why we're here.

13         I mean, I can't -- as much as I would love to, I

14  can't re-write history.

15         MS. BRODYAGA:  No.  That's fine, Judge.  I just want

16  to make sure that --

17         THE COURT:  No.  Believe me I --

18         MS. BRODYAGA:  -- that was clear that we have been

19  presenting this information to them over this period of time.

20  And it took until today for him to acknowledge that it could be

21  produced.

22         THE COURT:  I take that point, Mr. Molina.

23         MS. COYLE:  Your Honor, I don't know if Mr. Molina is

24  done with the witness.  But the other documents that we

25  still -- well it's the subject of the motion are documents that

HOLLENBECK - CROSS                                9

1    are related to how that information is inputted.

2            In other words --

3            **THE COURT:**  Well this sounds like the lady that can

4    tell you that.

5            **MS. COYLE:**  Okay.

6            **THE COURT:**  I mean, she's the one that --

7            **MS. COYLE:**  Can we have a moment?

8            **THE COURT:**  You actually do that; don't you?

9            **MS. COYLE:**  Can I --

10           **THE COURT:**  Okay.  Go ahead.  I mean, we're -- this

11   is a -- not -- I don't -- I mean, it may be adversary, but I

12   regard it as an information seeking device.  So let's have at

13   it.

14                       **CROSS EXAMINATION**

15   BY MS. COYLE:

16   Q    Okay is it Ms. Hollenbeck?

17   A    Hollenbeck.

18   Q    Hollenbeck.

19           So it's your job to actually input the information in

20   the computer?

21   A    Yes.

22   Q    Okay.  Can you just describe how does that take place?  So

23   that concretely, how do you go about doing that?

24   A    Okay.  We have a report that's given -- a blank report to

25   each officer, an INS employee, so every day they have to

HOLLENBECK - CROSS                                    10

1   calculate how many -- if they're scheduled to, to view, they

2   have to write down, I did so many granted interviews; so many

3   approved, so on and so forth throughout the month.

4          End of the month they turn that in.  And I get them

5   all together.  Supervisor reviews it, gives it to me.  I

6   consolidate it into one report, which, and then in turn, I have

7   to update it into a central index system.

8   Q    Okay.  When you say you consolidated it into one report,

9   does that take place by your taking those individual reports

10  from the adjudicators --

11  A    Uh-huh.

12  Q    --  and entering that into the computer?

13  A    Yes.

14  Q    Okay.  And have you been -- received any training on how

15  to do this?  You've been in your position ten years, how did

16  you learn how to go about --

17  A    No.  When I go on board, there was another lady that was

18  already there.  And she just sat me down.  She goes, "This is

19  what I do.  This is the report the way I do it.  And here you

20  go."

21  Q    Okay.  If at any time you run into a glitch in inputting

22  that information in the computer, you have a problem, you know,

23  some sort of difficulty in going about entering that

24  information, what do you do?

25  A    Well, I usually try and seek or call somebody else knows

HOLLENBECK - CROSS                          11

1   about it, like, you know, another person who worked with it,

2   and to help me out on it.

3   Q    Okay.  So do you have any manual or any reference material

4   at all that you refer to --

5   A    No.

6   Q    -- in going about inputting this information?

7   A    No, not that I know of.

8   Q    Okay.  And if someone can't solve a problem that you're

9   talking to, where do they go to find --

10  A    Oh, I haven't come across a problem, yet.

11  Q    Okay.  And you've had no training at all on how to

12  maintain records and information?

13  A    Records and information, or as far as just this report?

14  Q    This report.  Okay.

15  A    I have had updated versions of just the correction, but

16  it's like a little memo.

17  Q    Okay.  And what --

18       THE COURT:  Excuse me.  The correction that

19  Mr. Molina was just talking about as far as fixing the --

20       THE WITNESS:  No.  They had an updated training --

21       THE COURT:  Okay.

22       THE WITNESS:  -- supposedly for the G-22 report.  But

23  all it was was just to correct like a one line is now supposed

24  to say this on another line, just an updated version.  But it's

25  not a manual per se.  It's just a memo.

HOLLENBECK - CROSS                                      12

1   Q     A memo.  Okay.  As you go about your job throughout the

2   year, is it every so often that you get these updated memos, or

3   memos to give you sort of a latest information?

4   A     This is the first memo that I've received since I've been

5   there in my ten years.

6   Q     Okay.

7   A     Yeah.

8   Q     And when did you get that?

9   A     Just this past year.  I think in November of '97.

10  Q     November of '97.  And that came out of a training you

11  said?

12  A     Yeah.

13  Q     And then who goes to that training?

14  A     They picked me to go.

15  Q     Okay.  So you do this --

16  A     A supervisor, yeah.

17  Q     Okay.  So you did attend a training?

18  A     Yes.

19  Q     Okay.  And what --

20  A     All they did was just review a memo.  They didn't give out

21  no manuals.  It wasn't even computer training.  They didn't

22  even have computers set up.

23        All it was is that, "Here's your memo."  And we read

24  through the memo.  And that's it.

25        THE COURT:  Is this one of these things about -- what

TRINITY TRANSCRIPTION SERVICES

HOLLENBECK - CROSS                                    13

1  I'm hearing you say is you were doing it one way one -- at a

2  certain time.  They put out a memo.  And you met with somebody

3  who said, "Okay.  You know, we're going to change it.  Instead

4  of doing it the way we were doing it before, this is the way

5  we're going to do it now."

6            **THE WITNESS:**  No.  No.  What I'm trying to explain is

7  like they had -- I was trained to do it this way.  And then

8  they said, okay.  Instead of line 153 saying "N-400's," it's

9  going to say "N-400A."

10           **THE COURT:**  Okay.

11           **THE WITNESS:**  And that's going to -- and you have to

12 receive -- this line is going to be, you know, for that.  I

13 said, okay.

14           And that's all.  It was just replacing -- they had

15 deleted, you know, some of the numbers.  And that's it.

16 **BY MS. COYLE:**

17 Q    Okay.  And you were referring to, and you've entered the

18 number -- I think you've already been handed a copy of what was

19 marked as Exhibit 3; is that right?

20 A    Uh-huh.  Yes.

21 Q    And you have entered the workload numbers on the far left,

22 like 160, 160B?

23 A    Yeah.  Uh-huh.

24 Q    Okay.

25 A    That's just the numbering on it.

HOLLENBECK - CROSS                                      14

1   Q    Okay.  And 163 represents -- there was like 161 represents

2   N-600 applications; is that right?

3   A    Yes.

4   Q    Is that still the case that 161 is the code that -- why

5   don't you just describe, what does 161 mean?

6   A    It's just -- they're numbers for their numbering system.

7   Q    Okay.  To track --

8   A    Yeah.

9   Q    -- the applications that are filed.  Okay.

10       THE COURT:  In certain areas; is that what that is?

11  You have different numbers for each specific --

12       THE WITNESS:  Yeah.  This is just a line.  This is

13  their numbering line.

14       THE COURT:  "Their" being yours, if you're working --

15       THE WITNESS:  Well --

16       THE COURT:  -- for the INS.  Okay.

17  (Laughter)

18       THE WITNESS:  Yeah.

19       THE COURT:  All right.  All right.  Okay.

20  BY MS. COYLE:

21  Q    Okay.  So is it still the case that 161 indicates N-600s?

22  Or is it the code that's used to track N-600s?

23  A    I believe so, yes.  I don't want to say, "yes,

24  definitely," 'cause I haven't, you know, I don't know it by

25  memory.

1          **THE COURT:**  Do you have a book that tells you that?

2          **THE WITNESS:**  No, sir.

3          **THE COURT:**  How do you know that when you're punching

4    the numbers into the computer?

5          **THE WITNESS:**  Because it comes up on the system.

6          **THE COURT:**  Do you have a menu on the computer that

7    tells you what those numbers mean?

8          **THE WITNESS:**  No.  There's no book.  It's just on the

9    screen.  It comes up on the screen.  And it'll say, "N-600."

10   And that's all I go by.

11         **THE COURT:**  Oh, okay.  So you put in those.  And then

12   when the form comes out, it's got that code number --

13         **THE WITNESS:**  Exactly.

14         **THE COURT:**  -- on it?  I got it.

15         **THE WITNESS:**  That's kind of what I was saying a

16   while ago.

17         **THE COURT:**  Okay.

18         **THE WITNESS:**  They're the ones who number it.

19         **THE COURT:**  Okay.

20         **THE WITNESS:**  I don't know what their -- how they got

21   the number 160 --

22         **THE COURT:** So you just put in those -- you put in the

23   raw data, and then when you punch out whatever you punch out to

24   make it come out with the report.  The computer does the

25   collation when you --

1          **THE WITNESS:**  Yes.

2          **THE COURT:**  -- when it computes it.  Okay.  Okay.

3    Excuse me.

4    **BY MS. COYLE:**

5    Q    Ms. Hollenbeck, is part of your job, then, to produce

6    record citations.  I understand you're putting this

7    information.  Is it on a daily basis?

8    A    No.

9          **THE COURT:**  Monthly.

10          **THE WITNESS:**  This is a monthly.

11   **BY MS. COYLE:**

12   Q    Monthly.  At the end of the month.  Okay.

13   A    At the end of the month.  Yes.

14   Q    And then as part of your job also to produce the -- you

15   know, to run a report, or generate a report?

16   A    Well actually, when I input it, it itself produces it.

17   But it takes several days --

18   Q    Okay.

19   A    -- for it to come out.

20   Q    And you mean, "it," you mean the computer itself to

21   generates --

22   A    Yeah.  Yeah.  The report is generated by the computer, not

23   by me.

24   Q    Okay.  And is that the G-22 --

25   A    Uh-huh.

1   Q    -- Report?   Okay.

2        And then what happens to the report?

3   A    I just keep it in a folder with like --

4   Q    I'm sorry.

5   A    And then just keep it -- Yeah.  I just keep it in a folder

6   for a record.

7   Q    Okay.  So you maintain the reports in a folder in your

8   office?

9   A    Uh-huh.

10  Q    And how -- do you have those each month for --

11  A    Yes, for each month.

12  Q    Okay.  And for how many years?

13  A    As far as I've been there, we've still had them.

14  Q    So at least ten years.

15  A    Well I haven't been with that department for the whole ten

16  years --

17  Q    Oh, okay.

18  A    -- but --

19  Q    Okay.

20  A    -- since I've been at -- I believe maybe about six.

21  Q    Okay.

22  A    Five to six years that I've been with that department.

23  Q    Okay.  And so there's a form that's regularly filled out

24  by the adjudicators --

25  A    Yes.

HOLLENBECK - CROSS                          18

1   Q    -- at the end of the month?  What is that form called?

2   A    The G-22.2E.

3        THE COURT:  What do you do with those after you put

4   it in the -- information into the computer?

5        THE WITNESS:  I just put it in the file folder -- put

6   all of them together.  And I put the -- when the report comes

7   back, I just keep it in the folder.

8        THE COURT:  Wow.  You get pretty fat folders, then.

9        THE WITNESS:  Yes, I do.

10        THE COURT:  And is that done that every -- that's

11   done every month.

12        THE WITNESS:  Every month.

13        THE COURT:  So then you've got six years of --

14        THE WITNESS:  From one --

15        THE COURT:  -- monthly folders that have the report

16   and the raw data, which are these G-22- whatever you said.

17        THE WITNESS:  Yes.  Uh-huh.

18        THE COURT:  Okay.

19   BY MS. COYLE:

20   Q    And where did you put that memo from -- you said about a

21   year ago, maybe November of '97, you had that training memo.

22   A    Uh-huh.

23   Q    Where does that memo go?  Do you maintain those?

24   A    I have it.

25   Q    A folder?

HOLLENBECK - CROSS                    19

1  A    Oh yeah.  I have a folder for it, when I went to the

2  training.

3  Q    Okay.  And what else is in that folder?  Is that where you

4  keep all your other sort of memos and other -- whichever you --

5  A    This is my personal file folder for my notes for whenever

6  at work, you know, any time they give me some kind of training,

7  I keep a folder.

8  Q    Okay.  So it's sort of your instructions.  It's you own

9  manual --

10  A    Yeah.

11  Q    -- so to say.  Okay.  So to speak.

12  A    Well, not a manual, but --

13  Q    But it's your own collection of guides -- of memos to

14  guide you --

15  A    Just notes.  Just notes.

16  Q    Okay.

17          **MS. COYLE:**  Thank you.  I'm done.  Thank you.

18          **MR. MOLINA:**  Your Honor?

19          **MS. BRODYAGA:**  Judge, may I ask a couple of

20  questions?

21          **THE COURT:**  Yeah.  Go ahead.

22                    **CROSS EXAMINATION**

23  BY MS. BRODYAGA:

24  Q    Do you know whether there are other databases at

25  Immigration that you don't deal with that would, for example,

HOLLENBECK - CROSS                          20

1    keep track of fees that are received?

2    A    I don't really know.

3    Q    So you just have a very limited -- access to a limited

4    part of the computer; is that right?

5    A    Uh-huh.

6    Q    Do you know who would keep track of fees that are

7    received?

8    A    The fees are probably the Records Department.  They're the

9    ones that's in charge of all the -- I don't get these.  No.

10   Q    Is it correct that when an appeal is filed there's

11   generally a fee associated with that?

12   A    Yeah.

13   Q    So there might be some other record base somewhere that

14   would have that information that you're not familiar with; is

15   that correct?

16   A    Probably.  I don't know.

17           **MS. BRODYAGA:**  Thank you.

18           **MR. MOLINA:**  Do you have any further questions for

19   her?

20           **THE COURT:**  Nope.  Thank you very much.

21           **MR. MOLINA:**  Thank you.

22           **MS. BRODYAGA:**  Thank you.

23           **MR. MOLINA:**  You may step --

24       **(Witness steps down)**

25           **THE COURT:**  is there a money record that would show

1    the number of appeals that are filed in these cases?

2            MR. MOLINA:  I'm unaware that a money record would --

3            THE COURT:  Well you see --

4            MR. MOLINA:  -- provide that information.

5            THE COURT:  You see where Ms. Brodyaga's going with

6    that.

7            MR. MOLINA:  Oh, yeah.  I see it absolutely, your

8    Honor.  But I'm unaware of any such system.  And the system

9    I --

10           THE COURT:  But what I'm hearing from Ms. Hollenbeck

11   is that, and from you is, that there's a system by which these

12   categories are kept in terms of certain inflow and outflow, but

13   not appeals of denials, that are -- or people who were unhappy

14   with the decision of the INS.

15           MR. MOLINA:  Correct.

16           THE COURT:  But there may be a system by which you

17   could pay a filing fee to appeal. I guess, what the appeal

18   would go to the BIN (phonetic)?

19           MS. BRODYAGA:  Generally, no, in these cases it goes

20   first to the Regional Commissioner, right?

21           MR. MOLINA:  I think that's correct.

22           THE COURT:  Okay.

23           MS. BRODYAGA:  The fee is paid to Harlingen.

24           THE COURT:  Right.

25           MS. BRODYAGA:  And the file is then assembled and

1  sent up to the adjudicator of the appeals.  But you actually go

2  to Harlingen to pay the fee in Harlingen.

3        **THE COURT:**  Right.  And you can't tell what portion

4  of these cases have been appealed?

5        **MR. MOLINA:**  As this discovery was framed, your

6  Honor, what she asked for --

7        **THE COURT:**  Well, no.  No.  No.  No.  No.  No.  We're

8  not going to play --

9        **MR. MOLINA:**  Well --

10       **THE COURT:**  -- word games with --

11       **MR. MOLINA:**  I'm not trying to play word games.  I'm

12  trying to be honest, your Honor.

13       **THE COURT:**  I would hope so.

14       **MR. MOLINA:**  We can produce those numbers if they

15  submitted an interrogatory asking --

16       **THE COURT:**  I thought that's what we were here about.

17       **MR. MOLINA:**  This is a production of documents, your

18  Honor.  The main point was --

19       **THE COURT:**  Oh, Mr. Molina, you're getting yourself

20  deeper in.

21       **MR. MOLINA:**  I'm sorry, your Honor.  I have no intent

22  to do so.

23       **THE COURT:**  Well, I mean, the fact of the matter is,

24  they've asked for this information.  I mean, if they didn't --

25  if they put requests for production instead of interrogatory,

1  and you're relying upon that, I mean, boy you're telling a very

2  unsympathetic forum as far as that stuff is concerned.

3      **MR. MOLINA:**  I understand that.

4      **THE COURT:**  I mean, you know, I mean, we're -- you

5  know, this isn't a little kiddo game where you put the block in

6  the right hole because it's square instead of round.

7      I mean, what you're saying is that you could -- if

8  they asked you the question, instead of asking you for the

9  paper, you could tell them?  I mean, is that what you're

10  telling me?

11      **MR. MOLINA:**  We would send someone to go do all the

12  footwork for that, your Honor.  And we're not unwilling to do

13  that.  We're never refused --

14      **THE COURT:**  Well that --

15      **MR. MOLINA:**  -- to be willing to collect the

16  information.  But that's going to have to be done by hand.  And

17  we only asked --

18      **MS. COYLE:**  Your Honor, there's no mystery in our

19  request.  As Ms. Hollenbeck just testified, she has a room full

20  of reports that she generates at the end of every month that

21  she's been doing for at least six years.  That is directly

22  response to Request for Production Number Nine and Ten.  The --

23      **THE COURT:**  Yeah.  I'm trying to take you to the next

24  step, though.  Because if your concern is appeals --

25      **MS. COYLE:**  Okay.  That's correct.

24

1          **MS. BRODYAGA:**  Yes.

2          **MS. COYLE:**  Go ahead.

3          **MS. BRODYAGA:**  Yeah.  Well that is one of our

4    concerns.  We're concerned about both of them.  I was just

5    concerned that -- because she indicated they don't keep track

6    of the appeals.  And I believe that.  I don't have any problem

7    with that.

8          But I also know that when you pay a fee to the

9    Government --

10         **THE COURT:**  Well that's --

11         **MS. BRODYAGA:**  -- somebody keeps --

12         **THE COURT:**  Yeah.

13         **MS. BRODYAGA:**  -- track of that.

14         **THE COURT:**  Hope so.

15         **MS. BRODYAGA:**  And that when Mr. Molina says, "do the

16   footwork," to me that information has to be embodied in a

17   computer record somewhere, because it is attached to a fee.

18         And I don't believe, and he hasn't really said this,

19   and I'm not accusing him of misrepresenting to the Court, but I

20   don't think that it's a question of pulling the files off the

21   shelf to find that information.  I think that information is in

22   a computer somewhere, and that it -- that a report with that

23   information could be generated, because the Government is very,

24   very careful about money.  And appeals involve money.

25         **THE COURT:**  Well what about that?  I mean, I think

1   the Clerk's Office down here can tell you how many cases go

2   from here to the Fifth Circuit.  Now how they --

3             **MR. MOLINA:**  The --

4             **THE COURT:**  -- do it, I don't know.  But I mean, you

5   know, that doesn't strike me as something -- it strikes me as

6   something that INS ought to be interested in.

7             I mean, how do they know what to do with the case

8   after its appealed?  How do they know what happens to it on

9   appeal if they don't have this kind of data someplace.

10           But, I mean, I don't mean in a shoebox someplace

11   where they just, you know, where that boldly it goes, and then,

12   you know, maybe it comes back, maybe you never hear from it

13   again, and why.

14           What is it you ladies want at this point?

15            **MS. COYLE:**  Well --

16            **THE COURT:**  Tell him because you're going to get it.

17            **THE COURT:**  Okay.  Well initially we'd like what

18   Mr. Molina apparently has already claimed he can produce

19   immediately that we haven't seen, which are the documents that

20   are responsive to Requests Number Nine and Ten, which are the

21   summaries of the number of N-600s filed, adjudicated, approved,

22   and denied from --

23            **THE COURT:**  Okay.  That you can do right away.

24            **MS. COYLE:**  -- for the Harlingen District.

25           Then we'd also -- I believe that the Form G22.2,

1   that's completed by the adjudicators each month is responsive

2   as well, because part of our request went to how this

3   information is tracked.  So we'd like a copy of that form.

4           THE COURT:  Better be careful what you ask for, you

5   know.

6           THE COURT:  A copy of the form.

7           MS. COYLE:  A copy of the form.

8           THE COURT:  Okay.

9           MS. COYLE:  We don't need every single --

10          MR. MOLINA:  Well one copy of the form.

11          THE COURT:  A copy of the --

12          MR. MOLINA:  Do you want full or blank.

13          MS. COYLE:  It can be -- you can show us what it

14  looks like completed and not completed, blank and completed, so

15  we can see how it's configured.

16          MR. MOLINA:  Okay.  Give me just a moment so I can

17  write that down.

18          MS. COYLE:  Okay.

19          THE COURT:  'Cause what I have a vision of is --

20          MS. COYLE:  Yeah.  No.  We don't need everybody's --

21          THE COURT:  Yeah.  Okay.

22          MS. COYLE:  -- 'cause we'd have to read everyone of

23  them.

24          MR. MOLINA:  That's called a G22.3?

25          MS. BRODYAGA:  Point two.

1          **MS. COYLE:**  Point two.

2          **MR. MOLINA:**  Oops.  Okay.

3          **THE COURT:**  That's the raw data form that you,

4  Ms. Hollenbeck, get that then goes -- you put it into the

5  computer.

6          **MS. COYLE:**  Right.  Okay.

7          **THE COURT:**  Okay.

8          **MS. BRODYAGA:**  And then we'd like to also have a copy

9  of the memo from November of '97, because that directly bears

10  on how Ms. Hollenbeck enters the information in the computer.

11  There's been a change.

12          Again, most -- a good number of our requests go

13  towards what documents does the person that actually enters

14  this information into the computer use when they go about their

15  job.

16          **MR. MOLINA:**  Do you want it if it does not refer to

17  N600s?

18          **MS. COYLE:**  We don't need if it if doesn't refer to

19  N600s.

20          **MR. MOLINA:**  Okay.  Let me just make sure that I

21  write that down as well.

22          **MS. COYLE:**  Okay.

23      **(Pause)**

24          **MS. COYLE:**  Well, yeah.  I mean --

25          **MR. MOLINA:**  Oh, no.  No.  No.  No.

1    **MS. COYLE:** If it refers to applications, that would

2    include it, but that would it, but --

3    **MR. MOLINA:** Oh, yeah. I understand that. I

4    understand what you're saying.

5    **MS. COYLE:** Okay. In other words if it has some

6    bearing on how N-600s are recorded and reports are generated.

7    **MR. MOLINA:** Sure.

8    **MS. COYLE:** Okay. And then anything else that -- any

9    other memos that Ms. Hollenbeck may have received in the course

10    of her six years in this position that bear on how she goes

11    about entering information on the applications in the computer.

12    **MR. MOLINA:** Okay. Well --

13    **MS. COYLE:** That's exactly what we were asking for.

14    And in addition, is this issue appeals. And, you

15    know, we'd like to, at least, at a minimum, look and see, based

16    on how fee information -- and we know that you track the fees,

17    because they have to report to Congress and how about -- they

18    spend their money. And how much money's generated.

19    So we know information on fees is definitely kept.

20    So we'd ask that you identify for us whether or not fee

21    information on the appeals of an N-600 are maintained.

22    **MR. MOLINA:** Now it may happen. And just to forewarn

23    you, that they may not record them -- the fees being collected

24    as individualized N-600 applications. In other words, the fees

25    were N-600s, maybe identical to that that were N-400s, so they

1  all get lumped into one category.

2      **THE COURT:**  Do you know that?  Do you know what the

3  amount is?

4      **MS. BRODYAGA:**  Judge, what I do know is that when you

5  get a receipt for paying a fee --

6      **THE COURT:**  Okay.

7      **MS. BRODYAGA:**  -- the computer generates the number

8  of the form that it is for.  A number of the individual for

9  whom it is paid, and the amount of the fee.  And that comes out

10 on a little register receipt that you get.

11     So I know that they at least key that information

12 into the system.

13     **THE COURT:**  The N-600.

14     **MS. BRODYAGA:**  The N-600.  Because when you file one,

15 the application -- the receipt says it's for an N-600.

16     Now for the appeal, since the appeals -- he's

17 correct.  The appeals are -- will cover more than one type of

18 form.  It won't necessarily -- it will have the form number for

19 the appeal, which would include, for different kinds of

20 application, or it may include different kinds of applications.

21 That I don't recall right now.

22     **THE COURT:**  So what you're saying, is if you go in

23 there and just file an application, into the INS office in

24 Harlingen, you're going to get a receipt that show the specific

25 type.  But what you're saying is if you then appeal an adverse

1  ruling, it may not when --

2      **MS. BRODYAGA:**  It may not because the appeal form

3  itself has a number.  And that's the number that will show up

4  on the receipt.

5      **THE COURT:**  The appeal form.  What number's on the

6  appeal form?  Is that a cause number or --

7      **MS. BRODYAGA:**  No.  It's a --

8      **MR. MOLINA:**  I think it's a document number.

9      **MS. BRODYAGA:**  It's a document number.

10      **MR. MOLINA:**  Right.  Yeah.

11      **MS. BRODYAGA:**  Right.  It's a form number.

12      **MR. MOLINA:**  It's a -- like a tax form's a 1040.

13      **THE COURT:**  Okay.

14      **MS. BRODYAGA:**  Right.  Right.

15      **MR. MOLINA:**  This is his --

16      **THE COURT:**  Oh, I see what you're saying.

17      **MS. BRODYAGA:**  Exactly.  Right.  Exactly.  Like the

18  N-600 is the form number.  It's a form number of the appeal.

19      And since the appeal covers several -- or different

20  kinds of applications may be able to be appealed by the same

21  form.  And I'm not sure of that.  I'm saying --

22      **THE COURT:**  Okay.

23      **MS. BRODYAGA:**  -- but to that extent he may be

24  correct, because that information may be broader than the

25  information that we're requesting, because there may be more

1  than one type of application that you can appeal using the same

2  form.

3          THE COURT:  Is the filing fee the same for each of

4  those?

5          MS. BRODYAGA:  Yes.

6          THE COURT:  Okay.

7          MR. MOLINA:  Okay.  Then we'll --

8          THE COURT:  I don't know if I can help you with that

9  one, then.

10         MS. BRODYAGA:  Well we may not.  That's what I'm

11 saying.  I'm not sure right off, 'cause this didn't occur to me

12 until just now.  And I have to go back and check as to whether

13 you can use the same form for more than one kind of appeal.

14 That I would have to double check.

15         THE COURT:  What else?  Anything?

16         MS. BRODYAGA:  I think that's it.  I think that's it.

17 Right.

18         THE COURT:  Okay.  Is there anything else we need to

19 chat about we're all here.  I know Mr. Molino doesn't want to

20 come back from Washington if he can help it.

21         MS. COYLE:  The only other thing, Judge, is that I

22 included with our Motion to Compel, we did request fees -- it

23 has a drafted motion in expenses.  You' know we've --

24         THE COURT:  I've kept it.  But I'm not a sanctions

25 guy.  I mean, I hear what you're saying, believe me.  And I'm

1   extremely sympathetic to it, but, I mean, let me hold that one

2   as a Sword of Damocles hanging over Mr. Molina's head.

3       **MS. COYLE:**  Okay.  Well we did send him the copies of

4   earlier requests, and gave him plenty of notice.

5       **THE COURT:**  Well I'm not -- you know, you've won your

6   battle.  I mean, I'm not quarreling with that.  But, before we

7   pound the last stake down, let's wait on that.

8       Mr. Molina, when can you do all this?

9       **MR. MOLINA:**  The summaries by year, where the number

10  of application by much the format that we produced for them

11  here, can be produced, I believe in about a week.

12      As you've heard, it takes a few days to generate the

13  report.  And then that's all we're concerned about.  We can't

14  produce it sooner than the computer spits it out.

15      As for the remainder, which is the blank application,

16  or the blank form, I should say, the G-22.2, that we can --

17  will produce, I would say with the numbers.

18      **THE COURT:**  How about September the first?

19      **MR. MOLINA:**  That's a week -- I think --

20      **THE COURT:**  Now it's a little more than a week.

21      **MR. MOLINA:**  Well, a week from tomorrow.

22      **THE COURT:**  September 4th.  Okay?  Provide it before

23  labor day.

24      **MR. MOLINA:**  I imagine that will be ample for those.

25      Just to make sure, the memo, as well, we should be

1  able to have by that date.  Any other memos we can -- we'll

2  conduct a search for again.  And as for the fees, I have to ask

3  how the system works, whether they do keep track of that.  And

4  we will look -- we will produce that number.

5        THE COURT:  Well you need to -- you should know or

6  not fairly quickly.

7        MR. MOLINA:  Yes.

8        THE COURT:  Let me tell you this.  Based on what we

9  talked about last Friday when you were all here, I'm

10  thinking -- I'm trying to think.  And I'm throwing this out

11  just as part of our ongoing discussion.

12        I'd have to confess, I started about looking at this

13  case not terribly sympathetic to the idea of ordering the

14  Government to make permits available to these folks, just more

15  from the standpoint of mucking around with the system, than

16  anything else.  But in view of what you told me the other day,

17  Mr. Molina, about the INS apparently taking the position that

18  they're just simply not going to do that, I'm becoming much

19  more sympathetic.

20        I mean, I come back to what we said the other day.

21  This strikes me as just an inherently unfair system.  I mean,

22  it seems to me that this group of people who have made

23  application have been segregated out for treatment different

24  than other people who have made applications.  And you know,

25  that bothers me.  That really does.

34

1      And I have a hard time understanding why.  And I

2 understand your point about fraud, and, you know, all that kind

3 of stuff.  But, you know, that -- there's other ways of solving

4 that problem than to penalize everybody for the sins of some

5 others.

6      What I'm going to try and do, I'll be very candid

7 with you, is I'm going to try and craft a report and

8 recommendation.  And I ask you ladies to help me with this to

9 where that can be done.

10      And again, that's a change in my thinking about this.

11 Doesn't it bother you a little bit?  Just a little bit?

12      **MR. MOLINA:**  Well, your Honor, I mean, I -- frankly,

13 because there -- people are given so many opportunities by the

14 time they're 18 --

15      **THE COURT:**  Well forget that.  Like I say, we can't

16 go back and rewrite history.

17      I mean, by the time they're 18, I mean, God knows I'd

18 have to think of myself being barred from not doing something

19 at age 5, 6, 10, 12, 15, or 16, and then decide after I got to

20 be over 18 that, holy moly, well I didn't know.  Which is, I

21 think, what they've told me that's happened in a lot of these

22 cases.

23      **MR. MOLINA:**  I consider it very unfortunate that

24 these people are cut off to that.

25      **THE COURT:**  Yeah.  It really is.

1          MR. MOLINA:  But it --

2          THE COURT:  I know --

3          MR. MOLINA:  No.

4          THE COURT:  -- I'm putting you on the spot by asking

5     you that question --

6          MR. MOLINA:  Oh --

7          THE COURT:  -- but I like --

8          MR. MOLINA:  Your Honor --

9          THE COURT:  -- to do that.

10         MR. MOLINA:  I understand.  And I do feel for the

11    people.  I understand --

12         THE COURT:  Well we're --

13         MR. MOLINA:  -- their circumstances.

14         THE COURT:  -- here to see if we can do more than

15    just give them your sympathy, Mr. Molina, which I'm sure they

16    all appreciate quite enough.

17         MR. MOLINA:  Well see --

18         MS. COYLE:  They'd rather have work authorization.

19         THE COURT:  Yeah.  I thought so.

20         MS. BRODYAGA:  It certainly is nice, but they'd

21    rather --

22         THE COURT:  I mean, I don't expect you to drop by the

23    mall and buy cards at the Hallmark Store.

24    (Laughter)

25         MR. MOLINA:  I'm surely going to --

1        **THE COURT:**  But --

2        **MS. COYLE:**  The situation is getting desperate.  I

3   mean --

4        **THE COURT:**  Why don't you ladies do something for me.

5   And let's -- I don't ask this often.  But I look to you because

6   you're certainly much more expert than I am.

7        As you know, I've got to couch this in the form of a

8   report and recommendation to -- wasn't in this case, I think.

9        **(Voices speaking off the record)**

10       **THE CLERK:**  Judge Tomlinson.

11       **THE COURT:**  It's Judge Tomlinson?

12       **MS. COYLE:**  I think so.

13       **MR. MOLINA:**  Is it?  I thought it was Judge Bailess'

14   (phonetic) case, your Honor.

15       **MS. BRODYAGA:**  I believe it's Judge Ellis.  I think

16   it's Judge Ellis.

17       **THE COURT:**  This is as of the August 20 reports in.

18       Do me a report and recommendation -- well, draft of

19   one that I can take a look at with some authorities in it as to

20   what you're -- the way I do these is to lay out the issues, and

21   what the facts are, and what I recommend the Judge ought to do,

22   which runs from that.

23       Okie doke.  Is there anything else we need to do?

24       **MR. MOLINA:**  Not that I'm aware of, your Honor.

25       **THE COURT:**  Okay.

1          **MS. BRODYAGA:**  Thank you.

2          **THE COURT:**  Thank you all.  We'll see you later.  I'm

3    sorry to have kept you here over the weekend, Mr. Molina.  I'm

4    sure you would have much rather been back in Washington, but --

5          **(This proceeding was adjourned at 2:45 p.m.)**

1
　
## CERTIFICATION

2

3  I certify that the foregoing is a correct transcript from the

4  electronic sound recording of the proceedings in the above-

5  entitled matter.

6

7

8  *Cheryl A. Hendershot*       *March 8, 2005*

9          Transcriber               Date

10  B-04-CR-741

11  09/28/04 - 03/08/05