**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| **ANTELMA DOMINGUEZ-PEREZ**, et al.,<br>      **Petitioners/Plaintiffs,**<br><br>v.<br><br>**TOM RIDGE,** Secretary of Department<br>  of Homeland Security; **EDUARDO AGUIRRE,**<br>  Acting Director of the Bureau of<br>  Citizenship and Immigration Services;<br>**ALFONSO DE LEON,** Interim District Director<br>  of Bureau of Citizenship and Immigration<br>  Services, Harlingen, Texas, and<br>**JO ANNE B. BARNHART,** Commissioner of the<br>  Social Security Administration,<br>      **Respondents/Defendants.** | )<br>)<br>)<br>)   CA No. B-96-116<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED AND AMENDED MOTION FOR AWARD OF ATTORNEYS FEES AND COSTS

Petitioners/Plaintiffs Antelma Dominguez Perez et al (hereinafter, "Plaintiffs"), through counsel, respectfully urge the Court to order that Respondents/Defendants, (hereinafter, "Defendants"), pay reasonable attorneys fees, costs, and expenses in the instant case, under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. §2412.

### I.  BACKGROUND

On October 29, 2004, this Court entered an Amended Final Order in favor of Plaintiffs, denying all motions to dismiss, certifying the class, and granting Plaintiffs' Petition for a Writ of Habeas Corpus and their Complaint for Declaratory and Injunctive Relief. [Dkt. 75].  In their petition and complaint, Plaintiffs challenged, as unconstitutional and in violation of federal law, the policies of Defendants in refusing to issue interim employment authorization documents, ("EADs"), and Social Security cards to foreign-born sons and daughters of U.S. citizens who had pending applications for

Certificates of Citizenship, ("N-600" applicants).  As early as November 15, 1996, Defendants advised the Court that they would investigate the possibility that the relief Plaintiffs sought could be granted without amending the regulations. [Dkt. 16].  However, they neither determined that they already had the authority to do so, nor promulgated a new regulation giving themselves that authority. [1]  Instead, they vigorously defended against the action.

On November 10, 1998, after various hearings, lengthy discovery, and extensive briefing, United States Magistrate Judge John William Black recommended that the Court find as follows, [Dkt. 51, at 6]:

> Defendants' policy of denying interim work authorization documents to N-600 applicants, while granting such authorization to large classes of aliens, [was] not rationally related to any legitimate government interest. Indeed, it does not even pass muster under the most minimal standard, urged by Defendants, that there be a "facially legitimate and bona fide reason."

On February 26, 1999, the Court adopted the Magistrate's Report and Recommendation. [Dkt. 57].  On March 12, 1999, Defendants filed a Motion to Alter or Amend Judgment, under Rule 59(e), F.R.Civ.P. [Dkt. 58]. The parties then commenced what appeared to be promising settlement negotiations.  Given Defendants' representations that they intended to publish a regulation to resolve the problem on a nationwide basis, on June 7, 1999, the parties jointly requested that the Court hold proceedings in abeyance, which request the

---

[1]  Almost eight years later, Defendants formally announced their intention to eventually publish a regulation to that effect. *See,* Department of Homeland Security, Semi-Annual Agenda, June 28, 2004; Federal Register, Vol. 69, No. 123, p. 37535, Item No. 1124.

2

Court granted on July 21, 1999. [Dkt. 62,63]. However, after four years of waiting for a regulation, and attempting to negotiate a settlement absent a regulatory fix, no agreement was reached, and, on July 21, 2003, Plaintiffs moved the Court to lift the Order holding the case in abeyance, and enter an amended final order. The proposed Amended Final Order incorporated those points raised in Defendants' Rule 59 motion which Plaintiffs considered to have merit, [Dkt. 65-66], while still granting the substantive relief they sought, and to which the Court had found them to be entitled.

On April 21, 2004, the case was reassigned to this Honorable Court. Pursuant to the Court's inquiry, the parties concurred that the pending matters included only Defendants' Rule 59 motion, and Plaintiffs' motions to lift the stay, and enter an amended final order. At a status conference on September 21, 2004, Defendants advised the Court that during settlement negotiations, the parties had agreed on all issues except the period of time for adjudicating applications for EADs by class members; that Defendants had offered 120 days, and Plaintiffs wanted only a 90 day period. Plaintiffs apparently incorrectly understood this representation as including, among agreed matters, the specific award of attorneys' fees to which the parties had agreed during settlement negotiations. Given the slight difference between the time Defendants represented that they considered reasonable for adjudicating applications for EADs filed by class members, and that sought by Plaintiffs; the reasons expressed by Defendants for their position, and Plaintiffs' acceptance of Defendants' demand that EAD applications by asylum

3

seekers be treated differently than those filed by class members
herein and other categories of applicants, the Court ordered the
parties to reach an agreement.    After further discussions, on
September 28, 2004, Plaintiffs faxed Defendants a proposed Amended
Final Order intended to bridge the sole remaining gap, by linking
the time for adjudicating EAD applications by class members to the
regulation fixing the time for adjudicating such applications for
categories of aliens other than asylum seekers. That proposed Order
also included the previously agreed-upon award of attorneys fees.

At the follow-up hearing on October 4, 2004, the parties reached
agreement as to the wording of the Amended Final Order with respect
to the means of calculating the time to be allowed for adjudicating
applications for EADs by class members.    In response to an inquiry
by the Court, Defendants stated that this would resolve all the
objections raised in their Rule 59 motion.    Since Defendants had
previously advised the Court that this was the sole obstacle to
settlement, Plaintiffs modified the proposed Amended Final Order
that had been faxed to Defendants on September 28, 2004, so that it
reflected the agreement reached at that hearing, and to include
signature lines for all counsel. [2]   The undersigned signed it for

---

[2] Rather than specify a time for adjudicating applications for
EADs by class members, the issue was addressed by requiring that
they "be adjudicated in the same manner and in the same time frame
as applications for EADs filed by aliens who have applied for
adjustment of status under Section 245 of the Act, [8 U.S.C.
§1255]."    Thus, if 8 C.F.R. §274a.13(d) is amended to change the
time allotted to adjudicate applications for EADs based on pending
applications for adjustment of status, the time specified for an

herself and co-counsel, and sent it to Defendants by overnight
courier.  On review thereof, Defendants objected, however, to the
inclusion of the award of attorneys fees.  In order to finally
reach a settlement, Plaintiffs agreed to remove this clause, and
submit the issue to the Court. [3]  Having agreed on all clauses, and
the wording, Defendants' counsel gave the undersigned permission to
sign his name to the final version.  On October 28, 2004, the Court
signed the Amended Final Order.  With minor modifications, this
Order adopted the Magistrate Judge's Report and Recommendation.

Like the Final Order of February 26, 1999, the Amended Final Order
rejected Defendants' justifications for the disparate treatment
afforded N-600 applicants, denied all motions to dismiss, certified
the class, and established a procedure for class members to apply
for interim employment authorization documents.  The Amended Final
Order also granted Plaintiffs' Writ of Habeas Corpus and Complaint
for Declaratory and Injunctive Relief.  Respondents initially
appealed the Amended Final Order, but on June 14, 2005, filed an
unopposed motion to voluntarily dismiss said appeal.  The same day,
the Fifth Circuit granted that motion, and therefore said order
became a final, unappealable judgment.

## II.  DISCUSSION

The Court should award attorney's fees and costs to Plaintiffs, as
the prevailing parties.  The Court concluded that it violated Equal

application based on a pending N-600 will be adjusted accordingly.

[3]  Defendants' counsel acknowledged that he understood that,
as a result, the amount requested would be significantly larger
than that which had been previously negotiated.

Protection, as applied through the Fifth Amendment, for Defendants to deny interim employment authorization documents, and Social Security cards, to foreign-born children of U.S. citizens who are seeking Certificates of Citizenship, while granting such documents to broad classes of applicants for other forms of immigration status.  As noted by Magistrate Black, [Dkt. 51 at p.6], the Equal Protection violation was most poignantly illustrated by the case of lead Plaintiff Antelma Dominguez.  She could not obtain an EAD or Social Security card in connection with her N-600 application to recognize her status as a U.S. citizen, but her husband, Jose Luis Perez, obtained these documents by filing an application for adjustment of status, based on a visa petition filed by Plaintiff Dominguez.  In other words, while Ms. Dominguez could not obtain documents necessary to be lawfully employed in the U.S., based on a pending N-600 application to recognize her status as a U.S. citizen, her husband could obtain these documents, *based on his wife's claim to citizenship*.  The Court found no justification whatsoever for such disparate treatment,  and ordered that N-600 applicants also be permitted to apply for EADs, thus enabling them to likewise obtain Social Security cards.

Clearly, the Government's position herein was not substantially justified. [4]  As previously noted, Defendants implicitly conceded

---

[4]  Even the government now acknowledges that N-600 applicants should be permitted to obtain EADs, and recently announced its intention to eventually publish a regulation to that effect.  *See,* Department of Homeland Security, Semi-Annual Agenda, June 28, 2004; Federal Register, Vol. 69, No. 123, p. 37535, Item No. 1124.

early in the litigation that the action was meritorious, and represented to the Court that they would investigate the possibility of awarding the relief sought without even having to promulgate new regulations. Yet they fought the action tooth and nail. Even after concluding that a new regulation would be appropriate, six years after the Magistrate Judge issued his Report and Recommendation, and more than five years after the Hon. Filemon Vela entered a Final Order granting the relief requested, that regulation has barely reached the planning stage. [5] Now, they have voluntarily dismissed their appeal, further acknowledging the merit of Plaintiffs' claims. Further, Plaintiffs are clearly "prevailing parties." They are therefore entitled to attorneys fees and costs. As provided by 28 U.S.C. §2412(d)(1)(A):

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

Petitioners satisfy each of these requirements, and should be awarded reasonable attorney's fees, costs, and other expenses.

### A. PLAINTIFFS HAVE TIMELY APPLIED FOR EAJA FEES

The EAJA statute sets forth the maximum time in which a prevailing party may seek an award of fees and other expenses: within 30 days of a final judgment. By statute, "'final judgment' means a

---

[5] *See,* Department of Homeland Security, Semi-Annual Agenda, June 28, 2004, *supra*, which amounts only to an announcement of the intent to promulgate such a regulation.

judgment that is final and not appealable, and includes an order of settlement." 28 U.S.C. §2412(d)(2)(G). The Supreme Court has interpreted this deadline to be thirty days after a judgment has become final, *i.e.,* after a "judgment rendered by a court that terminates the civil action for which EAJA fees may be received." *Melkonyan v. Sullivan*, 501 U.S. 89,96 (1991). The Amended Final Order, granting class certification, establishing a procedure for the processing of interim EADs for N-600 applicants, and granting Plaintiffs' habeas petition and complaint, constitutes a final judgment for purposes of EAJA fees.

On December 22, 2004, Defendants filed a notice of appeal from the Court's October 28, 2004 Amended Final Order. On June 14, 2005, Defendants requested voluntary dismissal of their appeal. The same day, the Fifth Circuit granted that motion and issued its mandate. Accordingly, the thirty-day clock began to run June 15, 2005. The Court's October 28, 2004, is thus final and unappealable. [6]

**B.  PLAINTIFFS ARE PREVAILING PARTIES AND CAN RECOVER EAJA FEES.**

The Amended Final Order granted Plaintiffs' petition for a writ of habeas corpus and complaint for declaratory and injunctive relief. It is a favorable final judgment on the merits of Plaintiffs' claims, and clearly satisfies the prevailing party requirement of

---

[6] Plaintiffs still consider that under Fifth Circuit precedent the Court's October 28, 2004 Amended Final Order was final as of that date. *See Haitian Refugee Center v. Civiletti*, 614 F.2d 92, 93 (5th Cir. 1980) (holding that the United States could not appeal an injunction to which it agreed). For this reason, they filed their application for fees in November, 2004. The issue of whether the Order became final on October 28, 2004, or June 14, 2005, is moot. Either way, Plaintiffs timely requested attorneys fees.

the EAJA.  This Court ordered virtually all the relief Plaintiffs requested, and Plaintiffs achieved the very benefit they sought in the Petition and Complaint.  *See, Sims v. Apfel*, 238 F.3d 597, 600 (5th Cir. 2001) (providing that a plaintiff may be considered a "prevailing party" under the EAJA if he "succeed[s] on *any* significant issue in litigation which achieves *some* of the benefit the parties sought in bringing the suit") (emphasis added).

Courts have applied various formulations of the "prevailing party" standard.  Fundamentally, "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Hewitt v. Helms*, 482 U.S. 755, 760 (1987).  The U.S. Supreme Court recently has interpreted this standard to mean a "material alteration" or "court-ordered 'chang[e] [in] the legal relationship'" of the parties. *Buckhannon Bd. of Home Care v. West Va. Dep't of Health and Human Resources*, 532 U.S. 598, 604 (2001) (quoting *Texas State Teachers Assn v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989) (rejecting the Fifth Circuit's "central issue" test)).  Even an award of nominal damages may support attorney's fees.  *See, Farrar v. Hobby*, 506 U.S. 103, 112 (1992).  The Supreme Court also has expressly recognized that injunctive or declaratory relief may constitute "relief on the merits," if the judgment results in "the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*."  *Hewitt, supra*, 482 U.S. at 761 (emphasis in original).  "This is no less true of a declaratory judgment suit than of any other action."  *Id.; see, Walker v. City of Mesquite*,

9

313 F.3d 246 (5th Cir. 2002) (holding that parties seeking attorney's fees had "prevailed" where the court awarded the declaratory relief they had sought).

In the case at bar, Plaintiffs obtained not merely "some relief on the merits of [their] claim" but *virtually all* the relief they sought.  In their First Amended Petition for a Writ of Habeas Corpus and Complaint, Plaintiffs urged the Court to:

> 1.  Certify the case as a class action;
> 2.  Issue a declaratory judgment that the Defendants' policies violated, among other things, the Fifth Amendment to the U.S. Constitution;
> 3.  Enjoin Defendants from continuing to deny N-600 applicants a document evidencing their right to work in the U.S. pending adjudication of the N-600 application;
> 4.  Enjoin Defendants from not issuing documents evidencing employment authorization to N-600 applicants; and,
> 5.  Enjoin the Commissioner of Social Security from not issuing Social Security cards to N-600 applicants whose applications have not been finally adjudicated.

*See*, First Amended Petition for a Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, [Dkt. 11, at 19-20].  In his Report and Recommendation, United States Magistrate Judge John Black recommended that the Court certify the case as a class action.  [Dkt. 51, at 5].  Magistrate Black also recommended that Plaintiffs' habeas petition and complaint for declaratory and injunctive relief be granted in whole.  *Id*. at 7.  In addition, Magistrate Black recommended that "declaratory relief be ordered finding that Defendants' policies of refusing to issue class members authorization to work in the United states and Social Security cards violates Equal Protection, as protected by the Due Process Clause of the Fifth Amendment to the U.S. Constitution."

10

*Id*.  Finally, Magistrate Black recommended that Defendants be
enjoined from denying class members a document evidencing their
right to work in the United States and a Social Security card.  *Id*.
On October 29, 2004, the Court adopted, in full, the Magistrate's
Report and Recommendation.  The Court also established a procedure
for processing EAD applications and issuing such documents to N-600
applicants in the Harlingen district.  The essential elements of
this Order were preserved in the Amended Final Order.  Plaintiffs
therefore received the relief they sought.  The Amended Final Order
also affected the behavior of Defendants toward Plaintiffs, by
requiring Defendants to accept applications for interim EADs from
N-600 applicants and issue EADs to eligible applicants.

### C.  DEFENDANTS WERE NOT SUBSTANTIALLY JUSTIFIED

Further, Plaintiffs are entitled to EAJA fees because Defendants
were not substantially justified in denying interim EADs and Social
Security cards to applicants for Certificates of Citizenship.

The EAJA provides, at 28 U.S.C. §2412(d)(1)(B) that:

> Whether or not the position of the United States was
> substantially justified shall be determined on the basis
> of the record (including the record with respect to the
> action or failure to act by the agency upon which the
> civil action is based) which is made in the civil action
> for which fees and other expenses are sought.

As modified by Congress in its 1985 renewal and amendments to EAJA,
the "position of the United States" is also specifically defined to
include the agency's underlying action as well as the Government's
litigation position.  In its first decision on an EAJA award, the
Supreme Court discussed the standard for substantial justification,

finding that the government's position must be reasonable in both fact and law. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (*citing*, *inter alia*, *Hanover Building Materials, Inc. v. Guiffrida*, 748 F.2d 1011, 1015 (5th Cir. 1984)); *Davidson v. Veneman*, 317 F.3d 503, 506 (5th Cir. 2003) ("In a petition for attorneys' fees under the EAJA, it is the government's burden to show that its position in every stage of the proceedings was substantially justified"); *Sims, supra*, 238 F.3d at 602; *Herron v. Bowen*, 788 F.2d 1127, 1130 (5th Cir.1986). "Substantially justified" means "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person." *Sims*, 238 F.3d at 602 (citing *Pierce v. Underwood*, 487 U.S. at 565); *Herron*, 788 F.2d at 1132 ("The crux of the substantial justification standard is reasonableness"). The government's position need not be "frivolous or groundless" to be considered unreasonable. *Id.* at 1132.

Defendants' policy regarding its disparate treatment of applicants for Certificates of Citizenship, and for other forms of status in the U.S., including some which are derivative of an application for Certificates of Citizenship, (such as with Plaintiff Dominguez and her husband), was not reasonable either in fact or law, and was not justified to a degree that could satisfy a reasonable person. Plaintiffs' constitutional challenge sought benefits Defendants afforded to aliens seeking various types of status in the U.S., but denied to citizenship claimants. Plaintiffs sought the same ability to engage in lawful employment afforded numerous classes of aliens, including those seeking permanent resident status based on

12

visa petitions filed on their behalf by class members!
There is simply no factual or legal justification for denying
interim employment authorization and Social Security cards to
claimants to U.S. citizenship, while making such documents
available to their non-citizen spouses and children, on the basis
of the class member's claim to be U.S. citizen. [7] Defendants
conceded as much in November of 1996, [Dkt. 16], and have now
formalized that concession by agreeing to the Amended Final Order.
It is inexcusable that the instant litigation was dragged out for
nine years in the interim, and that the long-awaited regulatory
"fix" is still only in the preliminary planning stages.

Even if class members were *not* presumed to be "aliens," those
policies were never rationally related to any legitimate
governmental reason. [8] "[E]ven in the ordinary equal protection

---

[7]   There is a substantial body of caselaw holding that
Congress may make rules affecting aliens that would be unacceptable
if applied to U.S. citizens. *See, e.g., Demore v. Kim,* 538 U.S.
510, 521 (2003). But there is no precedent for giving benefits to
aliens seeking status in the U.S. which are denied to persons *who
are seeking recognition of their claimed status as U.S. citizens.*
To the contrary, persons claiming to be U.S. citizens are entitled
to procedural protections not available to aliens. *See, Hernandez
v. Cremer*, 913 F.2d 230 (5th Cir. 1990), wherein the Court held that
persons who present themselves for admission at a United States
border with facially adequate documentation of United States
citizenship have the right to a fair procedure reasonably
calculated to produce a correct determination of their status.

[8]   It was by means of a "presumption" that Plaintiffs were
"aliens," and not U.S. citizens, that Defendants attempted to
rationalize abandoning their discriminatory policies. Agents of
Defendants used to say that INS was "not in the business of giving
employment authorization to U.S. citizens." But to the extent
Defendants have statutory authorization to issue EADs to *any* class
of persons, that authorization is not limited to providing such
documents to "aliens." *See,* 8 U.S.C. §1324a(b)(1)(B) and (C),

case calling for the most deferential of standards, [the Supreme Court] insist[s] on knowing the relation between the classification adopted and the object to be attained." *Romer v. Evans*, 517 U.S. 620,632 (1996). The Government cannot rely on a classification "whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary and irrational." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432,447 (1985). In adopting the Magistrate Judge's Report and Recommendation, this Court found no merit to Defendants' justifications for the disparate treatment.

Defendants argued that the disparate treatment was justified for the following reasons: (1) to discourage the filing of fraudulent N-600 applications, (2) because U.S. citizens have no need for work authorization, (3) to avoid a flood of applications which would overwhelm the agency, and (4) that alternative methods exist for Plaintiffs to obtain the documents they seek. Points and Authorities in Support of Motion to Dismiss, [Dtk. 29 at 37].

First, there is no basis for Defendants' implicit suggestion that fraud is more prevalent in N-600 applications than in applications for other immigration benefits, such as adjustment of status. Statistics developed during discovery demonstrated that fraud in filing N-600s was not a significant problem. And significantly, in the five and a half years between entry of the initial Final Order,

---

allowing employers to accept as proof of employment authorization such documents "as the Attorney General finds, by regulation, sufficient for purposes of this [sub]section."

[Dkt. 57], and the Amended Final Order, [Dkt. 75], the Government *never once* invoked the provision in the initial Order allowing them to seek judicial intervention, in the event of suspected fraud.

As to the second point, it is unclear whether Defendants were suggesting that Plaintiffs did not need to work, or that they did not need employment authorization documents, because they were U.S. citizens. Plaintiffs, who are not wealthy individuals, filed this action to secure interim EADs to enable them to support their family and themselves. Potential employers could not lawfully hire members of the Plaintiff class, since they could not demonstrate either U.S. citizenship, or employment authorization. 8 U.S.C. §1324a(a). Nor is Defendants' "floodgates" claim borne out by the facts. Defendants tendered no statistics showing a significant rise in N-600 applications in the Harlingen district after the Court's order went into effect in February, 1999. Moreover, under 8 C.F.R. §1274a.12(a), EADs are available to numerous classes of aliens, most of whose claims of equitable entitlement to be employed in the U.S. are far more tenuous than that of the Plaintiff class, such as, for example, the spouses and unmarried dependent children of foreign government officials, and employees of the Coordination Council for North America. *See,* 8 C.F.R. §1274a.12(c)(1) and (2).

Finally, it is simply not true that alternate methods exist for Plaintiffs to secure documentation evidencing their right to work *while they seek proof of their status as U.S. citizens*. None of the other agencies mentioned by Defendants which can provide proof

15

of citizenship, (on presentation of the same evidence as demanded by Defendants prior to granting a Certificate of Citizenship), such as the Department of State, can offer interim employment authorization documents while, for example, an application for a passport is pending with the agency.

Finally, Plaintiffs would again draw the Court's attention to the Department of Homeland Security's semi-annual regulatory agenda; 69 FR 37535 (June 28, 2004). Almost eight years after representing to the Court that Defendants might be able to issue EADs to the Plaintiff class, even without amending the regulations, Defendant Ridge finally took the first step toward promulgating a regulation which will provide the precise relief granted by the Court, (with Defendants' consent), *to wit,* a procedure for N-600 applicants to obtain EADs, and therefore, Social Security cards.

In sum, Defendants cannot show they were substantially justified in their litigation position. Nor are there special circumstances which would render an award of fees unjust. Consequently, this Court should conclude that Plaintiffs, as the prevailing parties, are entitled to attorneys fees, costs, and other expenses, under the EAJA, 28 U.S.C. §2412(d)(1)(A).

### E.  AWARD SOUGHT

Plaintiffs seek attorneys' fees, costs, and expenses reasonably expended and detailed in the exhibits attached to Plaintiffs' Renewed and Amended Motion for Award of Attorneys' Fees, Costs and Expenses. Prior to 1996, EAJA allowed for awards of $75 per hour.

As amended in 1996, it now provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor ... justifies a higher fee." 28 U.S.C. §2412(d)(2)(A). Plaintiffs' attorneys seek a cost of living increase to the statutory maximum.

In *INS v. Jean*, 496 U.S. 154 (1990), the Supreme Court noted that "the specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." *Id.*, at 163. Recognizing that inflation could defeat the purpose of EAJA, Congress provided for an allowance for the cost of living increase. *Baker v. Bowen*, 839 F.2d 1075, 1084 (5th 1988); *see also, Perales v. Casillas*, 950 F.2d 1066, 1976 (5th Cir. 1992) (concluding that the cost of living adjustment "was an attempt to allow the statute to be self-updating in light of the modern realities of inflation"). And while the increase is not automatic, district courts must seriously consider it so as to not undermine the purposes of EAJA. Finally, the Fifth Circuit requires that cost of living adjustments "be made to reflect the appropriate rate in the year in which the services were rendered." *Perales v. Casillas*, *supra* at 1076.

Plaintiffs' counsel submit that they are entitled to appropriate cost of living adjustments for the hours expended from 1995 through 2005. As shown in Exhibits D, E, F, and G to Plaintiffs' Renewed and Amended Motion for Award of Attorneys' Fees, Costs and Expenses, Plaintiffs reasonably expended a total of 616.7 hours in

17

prosecuting the instant action.  With appropriate cost of living adjustments, they urge that they should be awarded a total of $81,718.53 in attorneys' fees, plus the $5.00 filing fee for initiating the instant action.

### III.  CONCLUSION

Plaintiffs are the prevailing parties, having obtained the full declaratory and injunctive relief they sought in challenging the denial of interim employment authorization documents and Social Security cards to applicants for Certificates of Citizenship. Moreover, Defendants' litigation position was not substantially justified and no special circumstances make an award unjust. Therefore, this Court should order that Defendants pay Plaintiffs' reasonable attorney's fees and costs under the EAJA.


Respectfully submitted,


/s  LISA BRODYAGA (Attorney-in-charge)
Refugio Del Rio Grande
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
Fax (956) 421-3423
Texas Bar No:  03052800

Javier N. Maldonado and David A. Armendariz
Texas Lawyers' Committee for Civil Rights
118 Broadway St., Ste. 302
San Antonio Texas 78205
(210) 277-1603
(210) 225-3958 (fax)

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing, with proposed Order, was mailed, first class postage prepaid, to Ernesto H. Molina, Jr.

Attorney, OIL, Box 878, Ben Franklin Station, Washington, D.C. 20044, on July 11, 2005.

S/ Lisa Brodyaga