IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 2 3 2005

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ANTELMA DOMINGUEZ-PEREZ, et al, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | No. B-96-116 ) ) |
| TOM RIDGE, et al., | ) ) |
| Defendants. | ) |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO**
***PETITIONERS/PLAINTIFFS' RENEWED MOTION FOR AWARD OF ATTORNEYS FEES, COSTS AND EXPENSES***

Pursuant to the Court's order of September 1, 2005, the Defendants hereby provide their supplemental memorandum opposing *Petitioners/Plaintiffs' Renewed Motion for Award of Attorneys Fees, Costs and Expenses* ("*Renewed Fee Motion*").

**ISSUES PRESENTED**

1. Whether Plaintiffs have met their burden of showing that attorneys' fees are "fees actually incurred" where Plaintiffs have failed to provide fee agreements and where Plaintiff Dominguez is not required to pay attorneys' fees

2. Whether the Government's litigation position was substantially justified where the Government argued regarding the novel issue of whether aliens are differently situated that aliens may obtain work authorization only from the Attorney General, whereas U.S. Citizens have access to multiple sources of proof of work authorization.

3. Whether the Government's litigation position was substantially justified where there is no dispute that the "under-inclusive regulations" affording temporary work authorization if an

application for employment authorization is not granted within ninety days were intended to address part of a problem – i.e., to provide more immediate proof of work authorization for particular aliens who have no other recourse to obtaining work authorization.

3. Whether Plaintiffs may recover fees on behalf of unnamed class members where the bulk of their work was done on behalf of named class members who completed fee agreements in which they were not bound to pay fees.

## ARGUMENT

### I. PLAINTIFFS CANNOT RECOVER FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT GREATER THAN THE FEES ACTUALLY INCURRED

Plaintiffs cannot recover attorneys fees which were not actually incurred. The Equal Access to Justice Act ("EAJA") provides:

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). As a waiver of sovereign immunity, EAJA is narrowly interpreted. See Resolution Trust Corp. v. Gaudet, 192 F.3d 485, 487 (1999).

The Fifth Circuit has been clear in providing that a litigant can recover only those attorneys fees actually incurred. See Marre v. United States, 38 F.3d 832 (5th Cir. 1994). In Marre, the Court addressed the circumstances where a litigant was awarded attorneys fees in excess of the fee agreement with his attorney. See id. at 828. In particular, the litigant agreed to pay fees in the amount of fifty percent of any recovered money. Id. The award in the case was

$215,000. Id. The district court, however, awarded fees in the amount of $326,182.62.

The Fifth Circuit reduced the award to $107,500. The court looked to other fee-shifting statutes for guidance. Id. at 828. The court noted that under 42 U.S.C. § 4654, a party "actually incurs" only the amount owed under the contingency fee agreement. Id., citing U.S. v. 122.00 Acres of Land, 856 F.2d 56, 58 (8th Cir. 1988). The court further noted that under EAJA, where a party's fees are indemnified by another person, the litigant does not "incur" any fee. Id., citing United States v. Paisley, 957 F.2d 1161, 1164 (4th Cir. 1992). Accordingly, the court ruled that an award cannot exceed the fee actually incurred by the party. Id. at 829.

In the instant case, the plaintiffs have failed to prove the fees actually incurred. In the instant case, there were eleven named plaintiffs. However, plaintiffs have submitted only one fee agreement – that of Antelma Dominguez-Perez. Plaintiffs have fallen well short of meeting their burden regarding the "fees actually incurred." It bears mentioning that, while Plaintiffs' counsel allege that they do not request fees, they similarly admit that their clients completed fee agreement forms. See *Petitioner's Notice of Filing of Retainer Agreement and Related Declarations*, Attachments 2 and 3. Still, those agreements have not been produced, and Plaintiff have therefore failed to prove that the "fees actually incurred."

Moreover, the actual fee agreement produced reads more like a contingency fee agreement – i.e., the attorney gets paid only if the litigant prevails. In particular, paragraph 4 of the agreement reads that the client "shall not be obligated for any professional fee for the aforementioned legal services." *Petitioner's Notice of Filing of Retainer Agreement and Related Declarations*, Attachment 1 at ¶ 4. This paragraph demonstrates that the litigant is actually liable for no fees whatsoever. It bears repeating that in Marre, the Fifth Circuit relied on the decisions

3

of similar circumstances to rule that only actual fees incurred are recoverable. In <u>U.S. v. 122.00 Acres of Land</u>, the Eighth Circuit ruled that a "contingency fee" is not a "fee incurred." 856 F.2d 56, 58 (8th Cir. 1988); see also <u>SEC v. Comserv Corporation</u>, 908 F.2d 1407, 1414 (8th Cir. 1990). In <u>122.00 Acres</u>, the Eighth Circuit determined that where a fee agreement provided that "If there is no recovery, the undersigned will bear no expense for attorneys' fees," the property owner did not owe fees. <u>Id.</u> at 57. Similarly, in <u>Comserv</u>, the litigant was "able to pursue his [lawsuit] secure in the knowledge that he would incur no liability for attorneys' fees." <u>Comserv</u>, 908 F.2d at 1414. In <u>TGS International v. United States</u>, the Federal Circuit also ruled that a contingency fee is not a fee actually incurred. 983 F.2d 229, 230 (Fed. Cir. 1993). Furthermore, in <u>United States v. Paisley</u>, the Fourth Circuit ruled that where a litigant is otherwise indemnified for attorneys fees, a fee has not been "incurred" by that litigant. See 957 F.2d 1161, 1164 (4th Cir. 1992).

The only Plaintiff (Ms. Dominguez-Perez) who has provided a fee agreement is in the same situation. She was not obligated to pay any fees. Accordingly, she did not incur any fees.

## II. THE GOVERNMENT'S POSITION WAS SUBSTANTIALLY JUSTIFIED

### A. Burden of Proof

Where a "prevailing party" exists under EAJA, the burden then shifts to the government to show that its litigation position was substantially justified. See <u>Jean v. Nelson</u>, 863 F.2d 759, 767 (11th Cir. 1988). The Supreme Court has expounded upon the meaning of "substantially justified" as "not 'justified to a high degree,' but rather 'justified in substance or in the main' – that is, justified to a degree that could satisfy the reasonable person. That is no different from the 'reasonable basis both in law and fact' formulation. . . ." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565

(1988). The fact that the government's position was not the prevailing one is not the appropriate test. See Nail v. Martinez, 391 F.3d 678, 684 (5th Cir. 2004). "The test is essentially one of reasonableness." CFTC v. Dunn, 169 F.3d 785, 786 (11th Cir. 1999). The Fifth Circuit has explained that "This standard is not overly stringent, however, and the position of the government will be deemed to be substantially justified 'if there is a "genuine dispute" . . . or "if reasonable people could differ as [to the appropriateness of the contested action.]"'" Davidson v. Veneman, 317 F.3d 503, 506 (5th Cir. 2003) (quoting Pierce, 487 U.S. at 565) (brackets and ellipsis in original).

> B. The Litigation Position of the Government Was Substantially Justified In Arguing That Aliens Are Differently Situated Than U.S. Citizens For Purposes Of Obtaining Proof Of Authorization To Work In The United States, Was Taken In A Case Of First Impression

The Court should deny fees because the Government's position was substantially justified. The crux of the government's litigation position in the instant case was that the government, consistent with due process, could afford temporary work authorization to aliens applying for asylum or adjustment of status but not afford similar authorization to people purporting to be United States citizens. The appropriate test governing the propriety of the Attorney General's decision is whether such immigration distinctions are premised on a "facially legitimate and bona fide reason." See Fiallo v. Bell, 430 U.S. 787, 794 (1977).[1]

As a starting point, the Fifth Circuit has explained that where "the issue was one of first impression, and therefore novel[,]" "[t]his fact alone weighs in favor of substantial justification."

---

[1] Under this standard, once a facially legitimate and bona fide reason is provided, the courts are not allowed to "look behind" that reason or test it. See Kleindienst v. Mandel, 408 U.S. 753, 770 (1972) (U.S. citizens' First Amendment rights).

5

See Davidson, 317 F.3d at 507 (citing Baker v. Bowen, 839 F.2d 1075, 1081 (5th Cir. 1988)). As the Court further explained the "standard was designed to allow the government to advance in good faith . . . novel but credible . . . interpretations of the law. . . ." Id. (citing SEC v. Fox, 855 F.2d 247, 252 (5th Cir. 1988)) (internal quotation omitted and ellipsis in original). In the instant case, the issue raised was a novel one – whether there was a need to expand temporary work authorization to putative U.S. Citizens where putative U.S. citizens are afforded several methods for proving work authorization from several different sources. As Plaintiffs admit, there was little to no precedent on the matter. *Renewed Fee Motion* at 14 n.7. Indeed, that absence of law persists. Accordingly, the facts alone weigh in favor of substantial justification.

In this particular case, one of the government's positions was that the basis for distinguishing between asylum applicants and applicants for adjustment of status, on the one hand, and people claiming to be United States citizens, on the other, was that the latter category of persons had access to no fewer than five alternative means of establishing their citizenship and the attend right to work. Indeed, Social Security regulations permit a variety of means for establishing U.S. citizenship or permission to work, including: (1) certificate of citizenship; (2) certificate of naturalization; (3) passport; (4) citizen identification card; and (5) consular report of birth. 20 C.F.R. § 422.107(d). In the instant action, Plaintiffs, throughout the entirety of their presence in the United States (for most of whom is purportedly since birth) failed to pursue any of these alternative modes of proof, and further openly refused to do so. Amended Complaint ¶ 20. The only reason given is that there are "mail" delays which they do not wish to suffer. Amended Complaint ¶ 20.

In stark contrast to the options available to citizens, aliens depend exclusively on the

Attorney General's (now the Department of Homeland Security Secretary's) employment authorization regulations. That position is not contrary to prior case law, and the basis of the distinction is arguably rational and presents a "genuine dispute." Davidson, 317 F.3d at 506.

Plaintiffs suggest that the existence of adequate alternatives is irrelevant because there is no temporary authorization available while they seek alternatives. *Renewed Fee Motion* at 15-16. Plaintiffs miss the point. As an initial matter, temporary work authorization is available only if an application for employment authorization is not adjudicated with ninety days. See 8 C.F.R. § 274a.13(d). Any one of the other alternatives could have (long before the application for a certificate of citizenship was filed) addressed the issue. Moreover, the agency is entitled to consider the alternatives available to the individuals who seek temporary work authorization. An alien, unlike a citizen, can seek authorization to work only from the Attorney General, while the Attorney General may have no authority to "authorize" a U.S.-citizen to work. A U.S. citizen actually seeks "proof" of work authorization, not work authorization and has any of a number of different avenues available. When the agency considers the risk of fraud, the best use of resources, and the availability of alternatives for citizens, its rational and reasonable judgment may be that it will not (for the present) offer temporary authorization to citizens.

    C.    **The Government's Acted On A Facially Legitimate And Bona Fide Reason In Creating Temporary Work Authorization To Aid Those Aliens Who May Have No Other Recourse**

Further enhancing the substantial justification is the fact that Congress and the Executive, consistent with Equal Protection, are free to implement remedies in a step-wise fashion. The Supreme Court has held that an under-inclusive classification does not necessarily run afoul of equal protection because the government can deal with one part of a problem without addressing

7

all of it. See, e.g., Williamson v. Lee Optical Co., 348 U.S. 483, 488-89 (1955). Thus, the Supreme Court has found that a statute is not invalid under the Constitution because it might have gone farther than it did, Roschen v. Ward, 279 U.S. 337, 339 (1929), that a legislature need not "strike all evils at the same time," Semler v. Dental Examiners, 294 U.S. 608, 610 (1935), and that "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." Williamson, 348 U.S. at 489.

In the instant case, it is clear that the provision of temporary relief was intended to help at least some groups. This is a fact that the Plaintiffs do not deny. Similarly, Plaintiffs do not argue that the covered aliens did not benefit from the temporary work authorization. Accordingly, as a matter of reasonableness, the government was substantially justified in making temporary work authorization available to the covered aliens.

That the government did not act to anticipate every permutation of facts does not render the government's actions impermissible. While certain anomalies may occur (such as the oft-invoked circumstances of Ms. Dominguez-Perez), that does not diminish the government's facially legitimate motive for acting in the first instance. At most, it shows that more action is necessary. Accordingly, in this case, where relief was aimed to address the needs of some people in particular need but not others, the government was substantially justified.

### III. THE PLAINTIFFS MAY NOT OBTAIN A DOUBLE RECOVERY FOR FEES BASED ON THE CLASS ACTION STATUS

At the hearing of September 2, 2005, counsel for Plaintiffs suggested that counsel may seek fees based on the success of the class action nature of the case. This is an overstatement. It appears that the Fifth Circuit has ruled that in a class action, counsel may recover fees for actions on behalf of the class. See Walker v. United States HUD, 99 F.3d 761, 766 (5th Cir. 1996) (dealing with enforcement of a consent decree in 42 U.S.C. § 1988(b)).

However, even assuming that the doctrine applies outside of the enforcement of a consent decree, Plaintiffs are not entitled to recover all fees for all actions. The Fifth Circuit has explained that attorneys cannot "double recover" fees. See DP Solutions v. Rollins, 353 F.3d 421, 436 (5th Cir. 2004); Ochoa v. Employers National Insurance Co., 724 F.2d 1171, 1178 (5th Cir.), vacated on other grounds, 469 U.S. 1082 (1984), reaffirmed, 754 F.2d 1196, 1199 (5th Cir. 1985). Put otherwise, an attorney cannot get paid twice for the same work. In the instant case, the vast majority of work was performed for named Plaintiffs. The only actions taken separate and apart from that work that would be done for the Plaintiffs (who have their own fee agreements) would be the work done for the motion to certify the class and (perhaps) the inclusion of the class in the complaint. See, e.g., *Renewed Fee Motion,* Exhibit C, Attachment 1 at 2 (September 24, 1996 entry). Accordingly, even assuming that Plaintiffs may recover for actions taken on behalf of the class, they cannot make recourse to the class to seek compensation for work performed on behalf of the named Plaintiffs.

9

## CONCLUSION

For the foregoing reasons, the Court should deny the Renewed Fee Motion.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General
Civil Division

DAVID V. BERNAL
Assistant Director

ERNESTO H. MOLINA, JR.
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Telephone:   (202) 616-9344

Dated: September 22, 2005         Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via Federal Express overnight delivery, this 22th day of September 2005, addressed to:

Ms. Lisa Brodyaga, Esquire
17891 Landrum Park Road
San Benito, TX  78586

ERNESTO H. MOLINA, JR.
Senior Litigation Counsel