UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| **ANTELMA DOMINGUEZ-PEREZ**, et al.,       )<br>    **Petitioners/Plaintiffs,**                )<br>                                             )<br>v.                                           )   CA No. B-96-116<br>                                             )<br>**TOM RIDGE,** Secretary of Department        )<br>  of Homeland Security; **EDUARDO AGUIRRE,**  )<br>  Acting Director of the Bureau of           )<br>  Citizenship and Immigration Services;      )<br>**ALFONSO DE LEON,** Interim District Director )<br>  of Bureau of Citizenship and Immigration   )<br>  Services, Harlingen, Texas, and            )<br>**JO ANNE B. BARNHART,** Commissioner of the  )<br>  Social Security Administration,            )<br>    **Respondents/Defendants.**               )<br>_____) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' RENEWED AND AMENDED MOTION FOR AWARD OF ATTORNEYS FEES AND COSTS**

TO THE HONORABLE COURT:

In their Supplemental Memorandum in opposition to Plaintiffs' renewed motion for attorneys fees, (herein cited as (DEF:____), Defendants do not address the primary question posed by the Court at the September 2, 2005, hearing on Plaintiffs' renewed motion for attorneys fees and costs. Specifically, the Court requested supplemental briefs on the issues of 1) whether pro bono representation of indigent litigants was treated differently under EAJA than private counsel under statutes such as that involved in *Marre v. U.S.*, 38 F.3d 823 (5th Cir. 1994), and 2) the manner in which representation was handled in the context of class actions.

Notably, the position now taken by Defendants is at odds with what the Government has asserted in other cases. *See, National Ass'n of Mfrs. v. DOL*, 159 F.3d 597,607 (D.C. Cir. 1998) ("The government does not contend that parties may never receive fees if they are

represented by pro bono counsel, and acknowledges the many cases in which this and other courts have held that parties may recover EAJA fees to pay such counsel"). Perhaps for this reason, they do not directly address the issue. Instead, their Supplemental Memorandum: 1) discusses "fees actually incurred" as the issue is posed in several cases which involve *other than* pro bono counsel, (DEF:2-4); 2) revisits the issue of whether their position was "substantially justified," (DEF:4-9), [1] and 3) argues that plaintiffs may not obtain a double recovery for fees based on the class action status, (DEF:9).  None of these discussions address the issues at bar.

## I.   REBUTTAL ISSUES

**A.   GIVEN THE DIFFERENT PURPOSES OF EAJA AND STATUTES SUCH AS 26 U.S.C. §7430(a), AND THE UNANIMOUS RULINGS OF THE COURTS THAT *PRO BONO* COUNSEL ARE ENTITLED TO ATTORNEYS FEES UNDER EAJA, THIS COURT SHOULD ALSO AWARD ATTORNEYS' FEES.**

**B.   THERE IS NO POSSIBILITY OF "DOUBLE RECOVERY" IN THE CASE AT BAR**

## II.   REBUTTAL ARGUMENT

As explained in *Sullivan v. Hudson*, 490 U.S. 877, 883-4 (U.S. 1989):

> In 1980, Congress passed the EAJA in response to its concern that persons "may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights. " 94 Stat. 2325. As the Senate Report put it:
>
>> "For many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process. . . . . When the cost of contesting a Government order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it." S. Rep. No. 96-253, p. 5 (1979).
>
> The EAJA was designed to rectify this situation by providing for an award of a reasonable attorney's fee to a "prevailing party" in a "civil action" or "adversary adjudication" unless the position taken by the United States in the proceeding at issue "was substantially justified" or "special circumstances

---

[1] The Court did not request further briefing on this issue, so Plaintiffs will refrain from responding to the Government's claims.

make an award unjust."

**A. GIVEN THE DIFFERENT PURPOSES OF EAJA AND STATUTES SUCH AS 26 U.S.C. §7430(a), AND THE UNANIMOUS RULINGS OF THE COURTS THAT *PRO BONO* COUNSEL ARE ENTITLED TO ATTORNEYS FEES UNDER EAJA ARE CORRECT, THIS COURT SHOULD AWARD ATTORNEYS' FEES.**

Defendants have not addressed the unanimous case law, holding that EAJA permits attorneys fees for *pro bono*, representation. *Marre v. U.S.,* on which Defendants primarily rely, involves a different statute, with a similar, but distinctively different history and purpose. As explained therein, *id.* at 828 (emphasis added):

> In a case involving similar fee-shifting provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. §§ 4654, the Eighth Circuit held that a party "actually incurs" only the amount owed under a contingency fee agreement. *United States v. 122.00 Acres of Land,* 856 F.2d 56, 58 (8th Cir.1988). This interpretation is consistent with other decisions under §§ 7430 and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. §§ 2412. *See United States v. Paisley,* 957 F.2d 1161, 1164 (4th Cir.1992) (holding that party entitled to full indemnification of attorney's fees by her employer did not "incur" any expenses under EAJA); *McCormack v. United States,* 891 F.2d 24,25 (1st Cir.1989) (rejecting pro se attorney's argument that he "paid" for his services by forgoing other opportunities on basis that taxpayer had not "paid" for services of an attorney or "incurred" any debt under §§ 7430); *United States v. McPherson,* 840 F.2d 244, 245 (4th Cir.1988) (same).

The purpose of EAJA can be seen from its very title: "Equal Access to Justice Act." And its goals are far more sweeping. *Spencer v. NLRB*, 712 F.2d 539,549-50 (D.C.Cir.1983) (footnotes omitted):

> The central objective of the EAJA, and of section 2412(d)(1)(A) in particular, was to encourage relatively impecunious private parties to challenge unreasonable or oppressive governmental behavior by relieving such parties of the fear of incurring large litigation expenses. Achievement of that end, it was believed, would promote three more general goals. First, Congress hoped to provide relief to the victims of abusive governmental conduct, to enable them to vindicate their rights without assuming enormous financial burdens. Second, it sought to reduce the incidence of such abuse; it anticipated that the prospect of paying sizeable awards of attorneys' fees when they overstepped their authority and were challenged in court would induce

administrators to behave more responsibly in the future. Third, by exposing a greater number of governmental actions to adversarial testing, Congress hoped to refine the administration of federal law -- to foster greater precision, efficiency and fairness in the interpretation of statutes and in the formulation and enforcement of governmental regulations.

As previously shown, [2] the courts which have addressed this issue have unanimously held that this purpose mandates that attorneys providing *pro bono* representation be allowed seek attorneys fees.

This is perhaps best illustrated by Eighth Circuit case law, which has addressed the issue from various angles. Its jurisprudence harmonizes the differing results, including *Cornella v. Schweiker*, 728 F.2d 978 (8th Cir. 1984) (allowing attorney fees under EAJA where claimant was represented by pro bono legal organization); and *U.S. v. 122.00 Acres of Land,* 856 F.2d 56,58 (8th Cir. 1988), cited by the Fifth Circuit in *Marre, supra*, and by Defendants at (DEF:4). In *SEC v. Comserve,* 908 F.2d 1407, (8th Cir. 1990), also cited by Defendants at (DEF:4), the Court reasoned (emphasis added):

> One thing is clear, however. Johnson has never paid any attorneys' fees. We thus turn to cases construing EAJA or similar statutes in instances where one or more prevailing parties did not pay out-of-pocket expenses.
>
> We turn first to *United States v. 122.00 Acres of Land*, 856 F.2d 56 (8th Cir. 1988), a case applying not EAJA, but the Uniform Relocation Assistance and Real Property Acquisition Policies Act,... whose fee shifting provisions turned on whether the fees had been "actually incurred." .. There the party seeking fees from the United States had property the government sought to obtain by eminent domain. He retained an attorney under a contingency fee contract which provided that: "'If there is no recovery, the undersigned will bear no expense for attorneys' fees.'" *Id*. at 57 (emphasis added by *122 Acres* court). Although the property owner prevail-

---

[2] *See* Plaintiffs' Supplemental Brief in Support of Plaintiffs' Renewed and Amended Motion Attorneys Fees and Costs, at pp.4-9.

4

ed in his jury trial for just compensation, the government ultimately abandoned its plans to obtain the property, and the case was dismissed prior to his recovery of any funds. We held that because the property owner had no obligation under the contingent fee arrangement to pay his attorney anything, he had not "incurred" attorneys' fees within the meaning of the statute. *Id*. at 58. The lesson of *122 Acres* is that fees are incurred when there is a legal obligation to pay them.

In the instant case, Comserv, not Johnson, was legally obligated to pay Johnson's attorneys' fees.... What is relevant is that, from the inception of the underlying lawsuit, Johnson was able to pursue his defense in the SEC action secure in the knowledge that he would incur no legal liability for attorneys' fees. To hold he "incurred" such fees is to turn the word upside down.

Such verbal gymnastics are not necessary to serve the primary intent of Congress in creating EAJA. That intent was "'to diminish the deterrent effect of the expense involved in seeking review of, or defending against, unreasonable government action.'" ... *Cornella v. Schweiker*, 728 F.2d 978, 981 (8th Cir. 1984) (citations omitted). Neither the client in *122 Acres* nor Johnson in the instant case required the assistance of a federal fee-shifting statute to overcome the deterrent of attorneys' fees. ... To allow either to shift his fees under a statute intended to remove the deterrent effect of fees is pointless.

**We acknowledge there is an exception to the requirement that a legal liability for attorneys' fees must be incurred in order to be eligible for an EAJA award. In Cornella v. Schweiker, 728 F.2d 978, 987 (8th Cir. 1984), we held that parties who were represented by pro bono counsel are not barred from receiving an EAJA award, even though they had not actually been assessed attorneys' fees. In so holding, we relied in part on legislative history, which suggests that awards to pro bono organizations were contemplated by Congress**. *See id*. (quoting H.R. Rep. No. 1418, 96th Cong., 2d Sess. 15, reprinted in 1980 U.S. Code Cong. & Admin. News 4994). We held that where a pro bono attorney "forgives" a fee to a client unable to afford legal expenses, that client is eligible for an EAJA award on the basis of that arrangement with the attorney. Other courts have reached a similar result. *See*, *e.g.*, *American Ass'n of Retired Persons v. EEOC*, 277 U.S. App. D.C. 189, 873 F.2d 402, 406 (D.C. Cir. 1989); *Watford v. Heckler*, 765 F.2d 1562, 1567 n. 6 (11th Cir. 1985).

***122 Acres* and *Cornella* can be harmonized once the EAJA's**

> **purpose to remove the deterrent effect of attorneys' fees is understood. The client in *122 Acres* had eliminated any deterrent effect of fees by means of his contract with his attorney. Fees ceased to exercise a deterrent effect on his litigation decisions. Nor is it apparent that the incidence of litigation by those deserving representation would be increased. By contrast, in *Cornella* we observed that "if attorneys' fees to pro bono organizations are not allowed . . ., it would more than likely discourage involvement by these organizations in [cases against the government], effectively reducing access to the judiciary. . . ."** *Id*. at 986-87. **Thus, by assisting in the financing of the pro bono representation effort, EAJA unquestionably contributes to removing the deterrent effect of fees for those pro bono-dependent clients and thereby increases the incidence of deserving representation. Thus, neither *122 Acres*, when its reasoning is applied to EAJA, nor *Cornella* is at odds with the intent of Congress to reduce or eliminate the deterrent effect of fees.**

The teaching of *122 Acres*, *Cornella* and *Comserv* is clear:

EAJA attorney's fee awards must always serve the principal purpose of the statute which is "to avoid the deterring effect which liability for attorney fees might have on parties' willingness and ability to litigate meritorious civil claims or defenses against the Government." *U.S. v. Paisley*, 957 F.2d 1161, 1164 (4th Cir. 1992).  Thus, as the Fourth Circuit emphasized in *Paisley*, "in any situation in which the eligibility of a particular prevailing party for an EAJA award is in issue, it is appropriate to inquire whether that party would, as a practical matter, have been deterred from litigating had it been known that a fee-shifting award was not available upon a successful conclusion." Obviously, where a party has the financial means and is not deterred from litigating his claims, the central purpose of EAJA is not advanced by a fee award.

Indigent clients who are dependent on pro bono counsel, however, are in a wholly different category. "If attorneys' fees to pro bono organizations are not allowed . . ., it would more than likely discourage involvement by these organizations in [cases against the government] effectively reducing access to the judiciary." *SEC v. Comserv. Corp.*, 908 F.2d at 1415. Consequently, EAJA fee awards must be allowed for legal aid and pro bono-dependent clients because such awards remove the deterring effect of fees, increase legal representation, and open the court's doors to meritorious claims. *Id.*; *U.S. v. Paisley*, 957 F.2d at 1164; *cf. Nat'l Assoc. of Mftrs. v. DOL*, 159 F.3d at 607.

The Fifth Circuit is also sensitive to the purpose of EAJA. *See Clifton v. Heckler*, 755 F.2d 1138, 1142 (5th Cir. 1985) ("The EAJA was enacted to lessen the likelihood that challenges to bureaucratic action would be deterred by the high cost of litigating against the government"); *Baker v. Bowen*, 839 F.2d 1075, 1084-85 (5th Cir.1988) (distinguishing between limited availability of attorneys and the special expertise of certain attorneys, and concluding that "the ultimate issue" was whether claimants with colorable claims would be disadvantaged by denial of access to the courts due to the lack of available representation). It is thus urged that, although the Fifth Circuit has not addressed the issue directly, (if only because the Government has never before contested eligibility for such fees), there is no reason to believe that it would deviate so markedly from the principles established

by other circuits, and not previously contested by the Government.

**B. THERE IS NO POSSIBILITY OF "DOUBLE RECOVERY" IN THE CASE AT BAR**

Defendants concede that in class actions, Fifth Circuit precedent allows attorneys fees "for actions on behalf of the class," (DEF:9), citing *Walker v. HUD*, 99 F.3d 761,766 (5th Cir. 1996). Still, they worry about "double recovery," *id.* [3] This is baseless.

As noted at the September 2nd hearing, all hours relating to work before the agency were removed from the time-sheets. And, as previously explained, any and all fees paid to counsel were for work before the agency, work which was separate and apart from that done in connection with the instant litigation. Lest thereby any confusion, counsel has submitted herewith a supplemental declaration, clarifying this point.

Wherefore, it is urged that the Court grant Plaintiffs' Amended Motion, and award counsel $80,531.95 in attorneys' fees, plus the $5.00 filing fee for initiating the instant action. In the alternative, it is urged that the Court conduct an evidentiary hearing with respect to the instant motion, in which case it is also urged that counsel be allowed to amend their time sheets, and the amount requested, to reflect the additional time spent in connection with Defendants' appeal, and the instant amended motion for attorneys' fees. *See, e.g., Powell v. Commissioner*, 891 F.2d

---

[3] Having been paid nothing for their representation in the case at bar, and two times zero still being zero, counsel could receive nothing, and this would be doubly nothing!

1167, 1171 (5th Cir. 1990) (litigants may recover for time spent seeking attorneys fees, regardless of whether the Government's position on the fees issue was substantially justified).

Respectfully submitted,
REFUGIO DEL RIO GRANDE, INC.
17891 Landrum Park Road
San Benito, TX 78586
Phone:  (956) 421-3226
FAX:    (956) 4213423

s/ Lisa S. Brodyaga
Texas Bar No:  03052800
Federal ID:    1178

LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW OF TEXAS
Javier N. Maldonado
S.D. Bar No. 20113 Texas Bar No. 00794216
118 Broadway Street, Suite 502
San Antonio, TX  78205-2074
Phone: 210-277-1603
Fax: 210-225-3958
ATTORNEYS FOR THE PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that on September 29, 2005, a true and correct copy of the foregoing, and of the attached Declaration of Lisa Brodyaga, were mailed, first-class postage prepaid, to:

Ernesto H. Molina, Jr.
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C., 20044


s/ Lisa S. Brodyaga
_____

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ANTELMA DOMINGUEZ-PEREZ, et al., )
    Petitioners/Plaintiffs, )
)
v. )    CA No. B-96-116
)
TOM RIDGE, et al, )
    Respondents/Defendants. )
)

### DECLARATION OF LISA S. BRODYAGA

I, Lisa S. Brodyaga, declare under penalty of perjury as follows:

The time log I have submitted in support of the amended motion for attorneys fees and costs does not include any work for which I have been compensated by anyone. As previously explained,[1] I reviewed my receipt book for the relevant time period, and found as follows: Mario Salinas was the only Plaintiff who compensated counsel for work related to the instant litigation. In June, 1995, he paid the undersigned $600 to apply for a Certificate of Citizenship, and to try to get a duplicate Social Security card. He made no additional payments after it was decided that a lawsuit would be required, and the $600 he paid was fully earned by work done before the INS and Social Security Administration. The Boone children paid $245 to obtain Certificates of Citizenship, and have prior Orders to Show Cause cancelled, but nothing for their participation in the instant litigation. Antelma Dominguez and her husband paid a total of $986 for her Certificate of Citizenship, and applications for adjustment of status for her husband and two of their children. They paid nothing for their participation in this litigation. The remaining named Plaintiffs were clients of other attorneys, and paid nothing to anyone in connection with the instant litigation. Nor did any unnamed Plaintiff pay anything in relation to this litigation.

Further declarant sayeth not.

_____
Lisa S. Brodyaga
September 28, 2005

---

    [1]    See, Plaintiffs' Response to Defendants' Opposition to Motion for Award of Attorneys Fees and Costs, filed December 15, 2004, at page 5, note 8.