UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| **ANTELMA DOMINGUEZ-PEREZ**, et al.,  )<br>       **Petitioners/Plaintiffs,**     )<br>                                    )<br>v.                                  )        CA No. B-96-116<br>                                    )<br>**TOM RIDGE,** Secretary of Department )<br>  of Homeland Security; **EDUARDO AGUIRRE,** )<br>  Acting Director of the Bureau of  )<br>  Citizenship and Immigration Services; )<br>**ALFONSO DE LEON,** Interim District Director )<br>  of Bureau of Citizenship and Immigration )<br>  Services, Harlingen, Texas, and    )<br>**JO ANNE B. BARNHART,** Commissioner of the )<br>  Social Security Administration,    )<br>       **Respondents/Defendants.**         )<br>                                    ) | |

**PLAINTIFFS' OPPOSED MOTION TO ENFORCE AGREED ORDER, TO HOLD DEFENDANT ALFONSO DE LEON IN CONTEMPT, FOR DAMAGES, AND FOR EVIDENTIARY HEARING WITH RESPECT THERETO**

I.   INTRODUCTION

Plaintiff Anthelma Dominguez-Perez, and Plaintiffs Alfonso Acosta, (A90 453 081), Wilfredo Garza, (A98 898 226), Jose Angel Garza, (A98 898 209), William Morales, (A98 898 144), and Oralia Lopez de Palomares, (A98 354 386), hereinafter, "Plaintiffs", all of whom are members of the certified class herein, seek an Order, on their own behalf and on behalf of the class as a whole, enforcing the Amended Final Order entered October 29, 2004 in the instant case.

They further seek an Order holding Defendant Alfonso De Leon in contempt for his refusal to comply with said Amended Final Order; damages from Defendants' refusal to comply with said Order, and reasonable attorneys' fees.  They also request an evidentiary hearing, at which to demonstrate both Defendants' refusal to comply, and the damages they have suffered as a result.

## II.  BACKGROUND

The instant action was filed July 18, 1996, seeking an injunction, requiring Defendants to grant employment authorization documents, ("EADs"), and Social Security numbers to applicants for Certificates of Citizenship, ("N-600 applicants"). Defendants initially alleged that this would create an incentive for people to file fraudulent applications, although discovery disclosed that only a tiny percentage of N-600 applications had been denied for fraud.  By Order dated February 26, 1999, [Dkt. 57], the Hon. Filemon Vela certified the class, and granted the requested class-wide relief.  Judge Vela's Order also enabled Defendants to return to Court for relief in the event of suspected fraud in an application for a Certificate of Citizenship.  During the period that Judge Vela's Order was in effect, Defendants never once invoked the remedy permitted by this clause.  And from 1999 through 2004, the Order was implemented without serious difficulty.

On October 29, 2004, an (agreed) Amended Final Order was entered in the instant case. [Dkt. 75]. [1] By agreement of the parties, the clause empowering Defendants to return to Court in cases of suspected fraud was deleted, and replaced with a proviso that applications for EADs by N-600 applicants be adjudicated "in the same manner and in the same time frame as applications for EADs filed by aliens who have applied for adjustment of status" under 8 U.S.C. §1255.  For approximately another year, administrative of the Order continued without significant problems.

---

[1]  A copy of said Order is attached as Plaintiffs' Exhibit A.

2

### III.  THE FACTS

Then, somewhere around the beginning of 2006, Defendants changed their approach to the agreed Order.  Previously, they had processed applications for EADs, ("I-765s"), filed by N-600 applicants as they were filed, and issued the EADs as rapidly as administrative resources permit, just as I-765s filed by adjustment applicants have been, and continue to be, processed.  Further, on the rare occasions that this process lasted more than 90 days, Defendants issued interim EADs, also as is done for adjustment applicants. [2]

But in March, 2006, the undersigned received a complaint from Jaime Diez, an attorney with an extensive N-600 practice, that he could no longer obtain interim EADs for N-600 applicants whose I-765s had been pending more than 90 days.  The undersigned called Cheri Jones, Attorney for CIS, about the problem, and gave her the A-numbers of two of his clients, the Garza brothers.  On March 22, 2006, Ms. Jones responded in writing. [3]  She cited 8 C.F.R. §301.1(a)(1), and asserted that the N-600 applications for the two individuals were deemed not "properly filed" because additional evidence had been requested, and not yet received.  The undersigned replied that 8 C.F.R. §301.1(a)(1) did not apply to the N-600s in question, that the applications were properly filed under 8 C.F.R. §341.1 and §341.2, which applied to their cases, and that the refusal to adjudicate the I-765s violated both the spirit, and the

---

[2] Under the regulations, if this process takes longer than 90 days, Defendants are required to issue interim EADs, valid for up to 240 days, to applicants for EADs based on pending applications for adjustment of status.  8 C.F.R. §274a.12(d).

[3] At Ms. Jones' request, Mr. Diez gave written consent for her to discuss his clients' cases with the undersigned.  *See*, Plaintiffs' Exhibit B, incorporated herein.

letter, of the agreed Order in the case at bar. [4]

A similar problem arose with Ramiro Acosta. His N-600 was denied September 15, 2005. A timely appeal was filed. On December 2, 2005, he also filed a fee-paid I-765. After the expiration of the 90 day period, on March 31, 2006, counsel went to ICE in person, to request an interim EAD. Defendants declined to issue it. To date, the I-765 has not been adjudicated, and Mr. Acosta has not received an interim EAD. Petitioner's Exhibit C, incorporated herein.

A meeting in late March, 2006, between class counsel and Cheri Jones, Attorney for CIS, failed to resolve the issue. Nor did the subsequent exchange of correspondence. [5] Defendants continue to adhere to the position that, in the case of N-600's, a request for additional documentation means that the application was not "properly filed" in the first place. This, however, is not the position taken with respect to I-485 applications.

To the contrary, requests are frequently made for such additional evidence as missing divorce decrees, or birth certificates of children from prior unions. Defendants also occasionally demand further proof of the bona fides of the marriage on which an adjustment is premised, or additional evidence that a petitioner was born in the United States. However, in the 28 years that class counsel has been doing such work, she has never seen a situation where Defendants asserted that an application for adjustment of status was not "properly filed," and approval of an I-765 withheld, because further documentation was requested before the adjustment

---

[4] Exhibit B, *supra*.
[5] Petitioner's Exhibit D, incorporated herein.

4

application could be granted.  There have even been cases where Defendants have issued a "Notice of Intent to Deny," based on doubts as to the validity of the underlying marriage, but have nonetheless continued to issue and renew EADs based on the pendency of the I-485.  In fact, in cases where the I-485 has been denied, but a motion to reopen and/or reconsider is filed, Defendants have continued to issue EADs for years on end, while the motion to reopen and/or reconsider is processed. [6]

Nor is it only in cases where Defendants assert that the N-600 is "improperly filed" that they refuse to issue EADs.  Recently, they have simply been holding the I-765 in abeyance until the N-600 is adjudicated, even though that process takes well over 90 days.  The same day that they grant or deny the N-600, they deny the I-765, allegedly for lack of eligibility.  If the N-600 is denied, and the applicant files an appeal, he or she is instructed to file another I-765, with a new fee. [7]  If the N-600 is granted, the person is

---

[6] *See, e.g.,* the case of Rafaela Fuentes de Garza, A24 835 369.  She filed a pro se application for adjustment of status in 1994.  The same year, she was interviewed on that application, and it was determined she had been convicted of a crime involving moral turpitude, with respect to which no application for a waiver had been filed.  It was three more years before INS denied the application, during which period, she received EADs.  After the application was denied, she obtained counsel, who filed a timely motion to reopen, with the missing waiver, in January 1998.  INS has continued to grant her applications for EADs, up to the present, although the motion to reopen was not adjudicated until 2005, and the underlying I-485 and request for waiver remain pending.  *See,* Plaintiffs' Exhibit E, incorporated herein.

[7] This is what occurred with Plaintiff Jose Angel Garza.  He filed his N-600 and I-765 on November 18, 2005.  Defendants returned the I-765 with a notation that it was "not necessary at this time because N-600 has not been approved yet."  Counsel resubmitted it, but even after the 90 days had expired, Defendants refused to issue an EAD, claiming that because they had requested

told that s/he is ineligible for an EAD because s/he is a United States citizen, and must await issuance of the Certificate of Citizenship, at which point s/he will be able to obtain a Social Security number, and obtain employment.[8]  However, the citizen still has no EAD, and is unable to seek employment, for longer than the 90 days permitted under the regulations.[9]  If, however, Defendants issued the EADs in a timely manner, those applicants whose N-600s are granted would be able to seek employment much sooner, and those whose applications are denied would be able to

---

additional evidence, the N-600 was not "properly filed." The evidence requested was a DNA test, to show that he was actually the son of the USC father. Mr. Garza explained that such tests cost $600, and without an EAD, he was unable to obtain employment to pay for it. The N-600 was denied for lack of the DNA test. The I-765 was simultaneously denied, supposedly for lack of eligibility. Mr. Garza immediately appealed, and requested reconsideration, but Defendants told him to file (and pay for) a new I-765. However, if the N-600 was not, in Defendants' opinion, "properly filed," there is no guarantee that they would grant an EAD based on an appeal of that determination. Plaintiffs' Exhibit F, incorporated herein.

The case of Ramiro Acosta demonstrates this point. His I-765 was filed after his appeal was filed. It has now been pending for five and a half months, has never been adjudicated, and Defendants have refused to issue an interim EAD. Plaintiffs' Exhibit C.

[8]  This is what has occurred with Plaintiff Wilfredo Garza. His N-600 and I-765 were filed on November 18, 2005. He has been informed that the N-600 has now been "granted," and that his Certificate of Citizenship will be issued on May 23, 2006. But Defendants claim that, in the interim, he is ineligible for an EAD. He seeks damages, in the form of lost employment, from the failure of Defendants to timely issue his EAD. Plaintiffs' Exhibit G, incorporated herein.

[9]  For this reason, Plaintiffs Morales and Lopez are seeking damages. Mr. Morales filed an N-600 and I-765 on August 15, 2005. The N-600 was granted on April 28, 2006, but he was never given an EAD. Plaintiffs' Exhibit H, incorporated herein. Ms. Lopez filed her N-600 on December 4, 2005, and her I-765 on December 21, 2005. No EAD, or interim EAD, was issued. Rather, both applications were denied on April 3, 2006. Ms. Lopez has appealed the denial of the N-600.  There is no appeal from the denial of the I-765. Plaintiffs' Exhibit I, incorporated herein.

earn the money necessary to fight the case.

Notably, the current manner of adjudicating N-600s is also not in accordance with the regulations. Problems with the adjudication of N-600s in the Harlingen District began November, 2004, with the filing of a habeas action to force adjudication of an N-600 that had been pending for several years. *Garcia-Zavala v. Monzon et al*, CA M-04-408 (S.D.Tx., McAllen Division, Hon. Ricardo Hinojosa, Presiding). An Examiner was sent down from San Antonio to adjudicate the application, which was ultimately denied, amid great controversy as to the alleged bias and prejudgment of the Examiner. An appeal is pending. The brief in support thereof can be found at M-04-408, Petitioner's Exhibit N, [Dkt. 33-34] (available on PACER), and is herein incorporated by reference.

As shown above, the Harlingen CIS Office, under Defendant De Leon, now applies a far higher standard for granting N-600 applications, in terms of requiring "concrete" or "objective" evidence, than is warranted by the regulations and/or case law. Defendant De Leon is currently demanding "concrete evidence" of the time the source parent was physically present in the United States, and refuses to rely on affidavits or even live testimony of witnesses. *See*, Exhibit C. The same rigidity is seen in terms of proving that the source parent was born in the United States, (as in the case of Armando Garcia), or that he is the biological father of the applicant, (as with Jose Angel Garza).

That this is erroneous is seen from the regulations themselves, as explained in counsel's letter to Cheri Jones of March 23, 2006,

with copy to Ernesto Molina, who represents Defendants herein,[10] and from the recent grant of appeals from Defendants' denials of N-600 applications.[11] For example, in the Decision of the Director of the Administrative Appeals Office dated March 2, 2006, at pps. 2-3, the Director notes that affidavits were submitted in support of the application, and finds said affidavits "sufficiently detailed" to meet the applicant's burden of proof. And the decision of December 19, 2005, sustains the appeal, noting that the preponderance of the evidence requirement only means that the applicant must show that something is "probably true," and finding that this burden had been met in that case. *Id.*

Yet even after the receipt of these two Decisions, (and probably others), granting the appeals from denials of N-600s, Defendant De Leon denied the N-600 application of Jose Angel Garza, for failure to provide a DNA test, even though there was ample evidence to show that it was "probably true" that he was his father's biological son, including the testimony of the father, the late filed birth certificate, the stunning physical resemblance, and the fact that the only reason that a DNA test had not been obtained as requested was Defendants' refusal to issue the applicant an EAD, so that he could get a job, and pay for it.

When coupled with Defendant De Leon's new procedure of declining to adjudicate the I-765 until the N-600 is adjudicated, no matter how long it takes, and then denying the I-765, regardless of whether the N-600 is granted or denied, it is clear that the agreed Amended

---

[10] *See,* Exhibit B.
[11] Plaintiffs' Exhibit J, incorporated herein.

Final Order has been converted into a hollow shell.  When one adds to this the refusal of Defendant De Leon to issue an interim EAD to an applicant whose appeal is pending, even after the I-765 has been pending for more than five months, it is clear that Defendant De Leon has no intention of continuing to abide by said Order. [12]

The above facts show complete disregard for the October 29, 2004, agreed Amended Final Order.  For this reason, Plaintiffs seek an Order, finding Defendant De Leon in contempt, and jailing him until he agrees to comply with said Order.  They also seek damages for those members of the Plaintiff class in whose cases Defendants have refused to issue EADs in accordance with the agreed Amended Final Order, and an evidentiary hearing, at which Plaintiffs may further demonstrate Defendants' willful refusal to comply with said Order.

### IV.   THIS COURT HAS JURISDICTION TO ENFORCE ITS ORDER

As the Supreme Court noted in *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (internal citations omitted):

> Consent decrees have elements of both contracts and judicial decrees. ... A consent decree "embodies an agreement of the parties" and is also "an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." ... Consent decrees entered in federal court must be directed to protecting federal interests. In Firefighters, we observed that a federal consent decree must spring from, and serve to resolve, a dispute within the court's subject-matter jurisdiction; must come within the general scope of the case made by the pleadings; and must further the objectives of the law upon which the complaint was based.

---

[12]   There are rumors that Defendant De Leon intends to retire soon, so it may be that he simply considers that he can leave any problems for his successor to resolve.

The agreed Amended Final Order herein meets these criteria, and is thus enforceable under "the rules generally applicable to other judgments and decrees." As the Fifth Circuit noted in *Hospitality House, Inc. v. Gilbert*, 298 F.3d 424, 430 (5th Cir. 2002):

> In Kokkonen v. Guardian Life Insurance Co., 511 U.S. 375, 128 L. Ed. 2d 391, 114 S. Ct. 1673 (1994), the Supreme Court explained that "enforcement of [a] settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." Id. at 378. The Court held that a court's "ancillary jurisdiction" "to manage its proceedings, vindicate its authority, and effectuate its decrees" provides such an independent jurisdictional basis to enforce a settlement agreement only if "the parties' obligation to comply with the terms of the settlement agreement has been made part of the order of dismissal." Id. at 380-81. The Court specified two ways in which a court may make a settlement agreement part of its dismissal order: "either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." Id. n6
>
> n6 The Kokkonen Court made clear that a district court may have ancillary jurisdiction to enforce a settlement agreement even where, as in the instant case, the previous dismissal was not effected by court order, but rather by the filing of "a stipulation of dismissal signed by all parties" pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii). FED. R. CIV. P. 41(a)(1)(ii). The Court noted that even though Rule 41(a)(1)(ii) "does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal," the district court has the authority to make a settlement agreement part of its dismissal order "if the parties agree." 511 U.S. at 381-82.

Here, the agreement of the parties was specifically incorporated into the Amended Final Order. As the Supreme Court further noted in Kokkonen, *supra* at 381 (emphasis added):

> The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal -- either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement)

>       or by incorporating the terms of the settlement agreement
>       in the order. In that event, *a breach of the agreement
>       would be a violation of the order, and ancillary
>       jurisdiction to enforce the agreement would therefore
>       exist.*

In the case at bar, Defendants' breach of the agreed Amended Final Order is, by definition, a violation of that Order, and jurisdiction therefore exists to enforce it.  As further noted in *Federal Sav. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 397-398 (5th Cir. 1987), a consensual order has the same binding force and effect as any judicial order, once it is entered by a court acting within its jurisdiction, and must be obeyed until it is vacated or withdrawn.  The instant order has not been vacated or withdrawn, and must therefore be obeyed.

WHEREFORE, it is respectfully urged that this Court issue an Order to Show Cause, directing Defendant De Leon to show cause why he not be held in contempt for his refusal to abide by the agreed Amended Final Order.  It is further urged that an evidentiary hearing be conducted, at which Plaintiffs may submit further evidence in support of their motion to enforce said Order, and for damages resulting from Defendants' failure to comply.  It is further urged that the Court thereafter find Defendant De Leon in contempt of Court; and order that damages be paid for his refusal to abide by the agreed Amended Final Order herein, and that Plaintiffs be awarded attorneys fees, and such other and further relief as the Court may deem just and appropriate under the circumstances.

Respectfully submitted,

s/ Lisa S. Brodyaga
REFUGIO DEL RIO GRANDE, INC.
17891 Landrum Park Road

```
San Benito, TX 78586
Phone:  (956) 421-3226
FAX:    (956) 4213423
Texas Bar No:  03052800
Federal ID:    1178

Javier Maldonado, Attorney at Law
601 Howard St.
San Antonio, 78212
Phone:  (210) 277-1603
Fax:    (210) 225-3958
```

CERTIFICATE OF SERVICE AND CONSULTATION

I certify that I have been in communication with Ernesto Molina, Attorney for Defendants, about the instant matter and that he has made it clear that Defendants are opposed to the relief requested. I further certify that on May 8, 2006, a true and correct copy of the foregoing, with proposed Order, was mailed, first-class postage prepaid, to him at P.O. Box 878, Ben Franklin Station, Washington, D.C., 20044.

s/ Lisa S. Brodyaga
_____