```
                 UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                     BROWNSVILLE DIVISION

ANTELMA DOMINGUEZ-PEREZ, et al.,         )
     Petitioners/Plaintiffs,             )
                         v.              )   CA No. B-96-116
                                         )
TOM RIDGE, et al,                        )
     Respondents/Defendants.             )

                  EXHIBIT "L" IN SUPPORT OF
   PLAINTIFFS' OPPOSED MOTION TO ENFORCE AGREED ORDER, TO HOLD
      DEFENDANT ALFONSO DE LEON IN CONTEMPT, FOR DAMAGES,
       AND FOR EVIDENTIARY HEARING WITH RESPECT THERETO
```

Exhibit "L" is a recent Memorandum and precedent decision, explaining the "preponderance of the evidence" standard of proof as simply sufficient proof to lead one to believe that the fact to be shown is "probably true," *i.e.,* more likely true than not.

Respectfully submitted,

s/ Lisa S. Brodyaga
REFUGIO DEL RIO GRANDE, INC.
17891 Landrum Park Road
San Benito, TX 78586
Phone:  (956) 421-3226
FAX:    (956) 4213423
Texas Bar No:  03052800
Federal ID:    1178

Javier Maldonado, Attorney at Law
601 Howard St.
San Antonio, TX 78212
Phone:  (210) 277-1603
Fax:    (210) 225-3958

                    CERTIFICATE OF SERVICE

I certify that on May 11, 2006, a copy of the foregoing, with attachment, was mailed, first-class postage prepaid, to Ernesto Molina, Attorney, P.O. Box 878, Ben Franklin Station, Washington,D.C., 20044.

s/ Lisa S. Brodyaga



**U.S. Department of Homeland Security**
20 Massachusetts Avenue, N.W.
Washington, DC 20529



**U.S. Citizenship and Immigration Services**

To:      Service Center Directors
         District Directors
         Regional Directors
         Director, National Benefits Center
         Director, Office of Refugee, Asylum and International Operations

From:    Robert C. Divine *[signature]*
         Acting Deputy Director

Date:    January 11, 2006

Re:      *Matter of Chawathe* (January 11, 2006)

As Acting Deputy Director, I hereby designate the attached decision of the Administrative Appeals Office (AAO) in *Matter of Chawathe* a USCIS Adopted Decision. This AAO decision held that, for purposes of section 316(b) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1427(b), a publicly-held corporation may be deemed an "American firm or corporation" if the applicant establishes that the corporation is both incorporated in the United States and trades its stock exclusively on U.S. stock exchange markets. If the applicant is unable to establish by a preponderance of the evidence that the employer is both incorporated in the United States and trades its stock exclusively on U.S. stock markets, then the applicant must meet the requirements of *Matter of Warrach,* 17 I&N Dec. 285, 286-87 (Reg. Comm. 1979). As such, the nationality of the firm would be determined instead by the nationality of those who own 51 percent or more of the corporation. *Id.* The reasoning in this decision may also be applied in determining the nationality of a publicly-traded foreign corporation, where such a determination is required and not in conflict with existing law and/or regulations pertinent to the classification sought.

Finally, this Adopted Decision reemphasizes the preponderance of the evidence standard of proof applicable in most administrative immigration proceedings. Thus, even if the director has some doubt as to the truth, if the petitioner submits relevant, probative, and credible evidence that leads the director to believe that the claim is "probably true" or "more likely than not," the applicant or petitioner has satisfied the standard of proof. *See U.S. v. Cardozo-Fonseca,* 480 U.S. 421 (1987) (defining "more likely than not" as a greater than 50 percent probability of something occurring). USCIS adjudicators are reminded, however, that this standard of proof does not apply to those applications and petitions where a higher standard is specified by law, such as the clear and convincing standard required to rebut the presumption of a prior fraudulent marriage pursuant to section 245(e)(3) of the Act and to determine citizenship of children born out of wedlock pursuant to section 309(a)(1) of the Act.

USCIS personnel are directed to follow the reasoning in this decision in similar cases.

**U.S. Department of Homeland Security**
20 Mass. Ave., NW, Rm. A3042
Washington, DC 20529



U.S. Citizenship
and Immigration
Services

FOR PUBLICATION

## MATTER OF CHAWATHE

### In Preservation of Residence for Naturalization Proceedings

### A74 254 994

### Decided by the Director, Administrative Appeals Office,
### January 11, 2006

1.   For purposes of section 316(b) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1427(b), a publicly held corporation may be deemed an "American firm or corporation" if the applicant establishes that the corporation is both incorporated in the United States and trades its stock exclusively on U.S. stock exchange markets.

2.   When an applicant's employer is a publicly held corporation that is incorporated in the United States and trades its stock exclusively on U.S. stock markets, the applicant need not demonstrate the nationality of the corporation by establishing the nationality of those persons who own more than 51 percent of the stock of that firm. *Matter of Warrach*, 17 I&N Dec. 285, 286-87 (Reg. Comm. 1979), clarified.

3.   In administrative immigration proceedings, the applicant must prove by a preponderance of evidence that he or she is eligible for the benefit sought. Even if the director has some doubt as to the truth, if the petitioner submits relevant, probative, and credible evidence that leads the director to believe that the claim is "probably true" or "more likely than not," the applicant has satisfied the standard of proof. *Matter of E-M-*, 20 I&N Dec. 77, 79-80 (Comm. 1989), followed.

4.   If the director can articulate a material doubt, it is appropriate for the director to either request additional evidence or, if that doubt leads the director to believe that the claim is probably not true, deny the application or petition.

ON BEHALF OF PETITIONER:        Self-Represented.

www.uscis.gov

A74 254 994
Page 2

**DISCUSSION:**  The application to preserve residence for naturalization purposes was denied by the Acting District Director, San Francisco, California, and is now before the Administrative Appeals Office (AAO) on appeal.  The appeal will be sustained.

The primary question presented in this matter is whether a publicly traded corporation may be considered an "American firm or corporation," pursuant to section 316(b) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1427(b), when its stock ownership is widely dispersed and there is no readily available means to determine the nationality of its owners.[1]  Upon review, the AAO concludes that a publicly held corporation may be deemed an "American firm or corporation" for purposes of section 316(b) of the Act if the applicant establishes that the corporation is both incorporated in the United States and trades its stock exclusively on U.S. stock markets.

The applicant is an employee of ChevronTexaco Corporation who was granted permanent resident status on June 26, 2000, as a member of a profession holding an advanced degree or having exceptional ability. Expecting to file an application for naturalization as a United States citizen in the future, the applicant filed an Application to Preserve Residence for Naturalization Purposes (Form N-470) with his local immigration office in San Francisco, California, on January 30, 2003.  The applicant seeks to preserve his residence for naturalization purposes under section 316(b) of the Act as a lawful permanent resident who will be temporarily absent from the United States for the purpose of employment with an "American firm or corporation."

In order to be naturalized as a United States citizen, the Act requires in part, that a person reside continuously in the United States as a lawful permanent resident for at least five years prior to filing an application for naturalization, and that the person be physically present in the United States for at least one half of the required residency period.  *See generally* section 316 of the Act, 8 U.S.C. § 1427.  Section 316(b) of the Act provides that an absence from the United States for a continuous period of one year or more shall break the continuity of the required five-year period of continuous residence.

However, section 316(b) of the Act also provides that no period of absence from the United States shall break the continuity of residence if the applicant proves to the satisfaction of the Secretary of Homeland Security that he or she:

> has been physically present and residing in the United States after being lawfully admitted for permanent residence for an uninterrupted period of at least one year and . . . is employed by an American firm or corporation engaged in whole or in part in the development of  foreign trade and commerce of the United States, or a subsidiary thereof more than 50 per centum of whose stock is owned by an American firm or corporation . . . .

In the present matter, the director determined that the applicant had failed to establish that his employer, ChevronTexaco Corporation, was an "American firm or corporation" as required by the Act.  The director

---

[1] A "stock" is a proportional part of a corporation's capital represented by the total number of equal units (or shares) owned, and granting the stockholder the right to participate in the management of the corporation and share in its profits. *See generally Black's Law Dictionary* 1428 (7th Ed., West 2002).

A74 254 994
Page 3

determined further that the applicant had failed to establish that his temporary overseas employer, Saudi Arabian Texaco, qualified as a ChevronTexaco Corporation "subsidiary" under section 316(b) of the Act. The director denied the application for preservation of residence for naturalization purposes on this basis.

On appeal, the applicant asserts that his employer, ChevronTexaco Corporation (hereafter referred to as ChevronTexaco), was incorporated in the State of Delaware and qualifies as an "American firm or corporation" under section 316(b) of the Act. The applicant also asserts that Saudi Arabian Texaco is owned and controlled by ChevronTexaco and therefore qualifies as a "subsidiary of an American corporation."

For purposes of section 316(b) of the Act, the nationality of a firm or corporation has traditionally been determined through tracing the percentage of individual ownership interests in a firm or corporation, and by tracing the nationality of the persons having principal ownership interests (more than 50 percent) in the firm or corporation. The Immigration and Naturalization Service Regional Commissioner stated in *Matter of Warrach,* 17 I&N Dec. 285, 286-87 (Reg. Comm. 1979), that:

> [W]hen it is shown that 51 percent or more of the stock of the employer corporation is owned by a foreign firm, such firm is a "foreign corporation" within the meaning of section 316(b). The fact that a firm is incorporated under the laws of a state of the United States does not necessarily determine that it is an American firm or corporation. The nationality of such firm would be determined by the nationality of those persons who own more than 51 percent of the stock of that firm.

Thus, under the principles set forth in *Matter of Warrach*, ChevronTexaco's incorporation in the State of Delaware does not establish that ChevronTexaco is an "American firm or corporation." Rather, the applicant must also demonstrate that more than 50 percent of ChevronTexaco is owned by persons who are U.S. citizens. The applicant in the present matter provided no evidence to establish who the individual ChevronTexaco stockholders are, or to establish the percentage of ownership interests held by each stockholder. Nor did the applicant provide evidence or information to establish the nationality of each stockholder or owner of the corporation. The applicant therefore failed to establish that ChevronTexaco is an "American corporation" as defined in *Matter of Warrach*.

The AAO notes that the principles set forth in *Matter of Warrach* apply well to traditional situations involving closely held companies or corporations. The *Warrach* principles fail, however, to address or to take into account the difficulties of tracing the ownership interests and nationalities of modern, publicly-held corporations that have thousands of stockholders and capital stock that is traded on a daily basis on the stock markets. [2]

---

[2] In general, the capital stock of a corporation may be "closely held" or "publicly held." A closely held corporation issues stock to a few stockholders, and that stock is not traded on the public stock markets or securities exchanges. By contrast, the stock of a publicly held corporation is listed on the public stock markets and is traded to and among the general public. *See Black's Law Dictionary* at 341-344. The U.S. public stock markets or securities exchanges include the New York Stock Exchange (NYSE), the Nasdaq Stock Market (NASDAQ), the American Stock Exchange (AMEX), the Pacific Stock Exchange (PCX), the

A74 254 994
Page 4

The present record contains a copy of ChevronTexaco Corporation's 2002 Securities and Exchange Commission (SEC) Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, (SEC Form 10-K).  An SEC Form 10-K is the report that publicly held corporations file with the SEC on an annual basis; the report provides a comprehensive overview of a corporation's business and financial condition and includes audited financial statements. *See generally* U.S. SEC, *Quick Answers*, *http://www.sec.gov/answers/form10k.htm* (last updated April 8, 2005).

In the present matter, the submitted SEC Form 10-K reflects that ChevronTexaco is incorporated in the state of Delaware and that ChevronTexaco stock is traded on the New York Stock Exchange, located in New York, New York, and on the Pacific Stock Exchange, located in San Francisco, California.  The AAO notes that the Restated Certificate of Incorporation of ChevronTexaco Corporation, dated October 9, 2001, reflects that ChevronTexaco stock is traded publicly, and that "[t]he total of shares of all classes of stock which the Corporation shall have authority to issue is four billion one hundred million (4,100,000,000), of which one hundred million (100,000,000) shares shall be Preferred Stock . . . and four billion (4,000,000,000) shares shall be Common Stock."

The AAO recognizes that the widely-dispersed ownership of publicly held corporations makes it extremely difficult, if not impossible, for an applicant under section 316(b) of the Act to trace the interests and nationalities of its stockholders.  As in this case, a publicly traded corporation may issue billions of shares of stock which are traded daily by the general public.

Examining a question relating to the nationality of a corporation and section 319(b) of the Act, 8 U.S.C. § 1430, a 1995 Legal Opinion by the Immigration and Naturalization Service, Office of the General Counsel (now Citizenship and Immigration Services, Office of Chief Counsel) discussed the U.S. State Department regulations and precedent legal decisions interpreting the definition of a corporation's nationality for purposes of the treaty trader and investor nonimmigrant visa classification.[3]  The Legal Opinion observed that a corporation is normally found to have the nationality of whoever owns more than 50 percent of the corporation's capital stock.  The Legal Opinion indicated that it would be anomalous to have two conflicting principles to decide the same issue, with the variance depending upon which section of the Act applied to the case. *See* U.S. Department of Justice, Immigration and Naturalization Service, Office of General Counsel, "Interpretation of American Firm or Corporation for section 319(b) INA," Gen. Co. Op. No. 95-21 (September 14, 1995) (available at 1995 WL 1796328).  The Legal Opinion concluded that the definition of

---

Philadelphia Stock Exchange (PHLX), the Chicago Stock Exchange (CHX), Boston Stock Exchange (BSE), and the National Stock Exchange (NSX).

[3] Section 319(b) of the Act, 8 U.S.C. § 1430, relates in part, to the naturalization requirements of spouses of U.S. citizens who are employed overseas by an "American firm or corporation" and who are engaged in whole or in part in the development of foreign trade and commerce of the United States, or a subsidiary thereof.

A74 254 994
Page 5


"American firm or corporation" established for purposes of nonimmigrant treaty trader and investors should also apply to relevant cases under sections 316(b) and 319(b) of the Act, as well.[4]

The AAO notes that the U.S. Department of State expanded the nationality definition of a corporation for nonimmigrant treaty trader and investor purposes in Volume 9 of the Foreign Affairs Manual, 9 FAM 41.51 N3.2, which states, in pertinent part that:

> In cases where a corporation is sold exclusively on a stock exchange in the country of incorporation, however, one can presume that the nationality of the corporation is that of the location of the exchange. The applicant should still, and may be requested to provide the best evidence available to support such a presumption. In the case of a multinational corporation whose stock is exchanged in more than one country, then the applicant must satisfy the consular officer by the best evidence available that the business meets the nationality requirement.

As noted by *Matter of Warrach*, 17 I&N Dec. at 287, the fact that a firm is incorporated under the laws of a state of the United States does not necessarily determine that it is an American firm or corporation. However, given the difficulty of tracing the nationalities and ownership interests of modern public corporations, the AAO finds that it is reasonable to presume that a publicly held corporation meets the definition of "American firm or corporation" for section 316(b) purposes if the applicant demonstrates that the employer is both incorporated in the United States and trades its stock exclusively on U.S. stock markets.[5]

In the present matter, the AAO finds that the evidence contained in the record establishes that ChevronTexaco is incorporated in the United States and that it is a publicly held corporation whose stock is exclusively sold on United States stock exchange markets. The applicant has therefore established that ChevronTexaco qualifies as an "American firm or corporation" under section 316(b) of the Act.

In addition, the AAO finds that the applicant has established that Saudi Arabia Texaco (SAT) qualifies as a "subsidiary" of ChevronTexaco under section 316(b) of the Act. Under section 316(b) of the Act, an applicant must establish that she or he is "[e]mployed by an American firm or corporation engaged in whole or in part in the development of foreign trade and commerce of the United States, or a subsidiary thereof more than 50 per centum of whose stock is owned by an American firm or corporation."

---

[4]  The current case, however, is readily distinguished from the case addressed by the 1995 Legal Opinion. The alien in that case was employed by a closely-held corporation that was the wholly-owned subsidiary of a multi-tiered business entity. The ultimate parent corporation was incorporated abroad, and the majority of its stock was owned by persons who were not U.S. citizens or nationals. Thus, the employing corporation was a foreign corporation because the ultimate parent corporation was a foreign corporation. In this current appeal, the AAO is examining the nationality of the publicly traded parent corporation, rather than a closely held subsidiary.

[5]  Note that both facts must be present in order for a publicly traded firm to be considered "American." If a firm or corporation does not satisfy both criteria, the applicant must meet the requirements of *Matter of Warrach*, 17 I&N Dec. at 285, to establish that the employer is an "American firm or corporation."

A74 254 994
Page 6


The AAO notes that the ChevronTexaco SEC Form 10-K submitted by the applicant states that:

> ChevronTexaco Corporation, a Delaware corporation, manages its investments in subsidiaries and affiliates, and provides administrative, financial and management support to U.S. and foreign subsidiaries that engage in fully integrated petroleum operations, chemicals operations, coal mining, power and energy services. The company operates in the United States and approximately 180 other countries.

*See* SEC Form 10-K at 3. In discussing its international operations, the SEC Form 10-K states further that "Saudi Arabia Texaco, *a ChevronTexaco subsidiary*, holds a concession to produce onshore crude oil from the Partitioned Neutral Zone (PNZ), located between the Kingdom of Saudi Arabia and the State of Kuwait." *Id.* at 15-16 (emphasis added).

In addition, the record contains a letter written by Mr. Tim Miller, Assistant to the President, Saudi Arabian Texaco, stating that "ChevronTexaco is engaged in the development of foreign trade and commerce of the United States through its *wholly-owned subsidiary* – Saudi Arabian Texaco (SAT), which is located in Kuwait." (Emphasis added.) The letter also states that the applicant will be assigned temporarily to SAT in Kuwait for 2 to 3 years in the same capacity that he fills at ChevronTexaco in California, and that while abroad, the applicant will continue to be paid his annual salary by ChevronTexaco.

Although the applicant could have submitted more probative evidence to establish that SAT is a subsidiary of ChevronTexaco, such as direct evidence of the ownership of SAT stock, the AAO finds that the SEC Form 10-K and the letter written by his employer are sufficient to establish by a preponderance of evidence that SAT is a wholly-owned subsidiary of ChevronTexaco.[6] Except where a different standard is specified by law, a petitioner or applicant in administrative immigration proceedings must prove by a preponderance of evidence that he or she is eligible for the benefit sought. *See e.g. Matter of Martinez*, 21 I&N Dec. 1035, 1036 (BIA 1997) (noting that the petitioner must prove eligibility by a preponderance of evidence in visa petition proceedings); *Matter of Patel*, 19 I&N Dec. 774, 782-3 (BIA 1988) (noting that section 204(a)(2)(A) of the Act requires a higher standard of clear and convincing evidence to rebut the presumption of a fraudulent prior marriage); *Matter of Soo Hoo*, 11 I&N Dec. 151, 152 (BIA 1965) (finding that the petitioner had not established eligibility by a preponderance of the evidence because the submitted evidence was not credible).

---

[6] The standard of proof should not be confused with the burden of proof. The burden of proving eligibility for the benefit sought remains entirely with the applicant. Section 316(b)(2) of the Act; *see also* section 291 of the Act, 8 U.S.C. § 1361. Additionally, the "preponderance of the evidence" standard does not relieve the petitioner or applicant from satisfying the basic evidentiary requirements set by regulation. There are no regulations relating to a corporation's eligibility as an "American firm or corporation" under section 316(b) of the Act. Had the regulations required specific evidence, the applicant would have been required to submit that evidence. *Cf.* 8 C.F.R. § 204.5(h)(3) (requiring that specific objective evidence be submitted to demonstrate eligibility as an alien of extraordinary ability).

A74 254 994
Page 7


The "preponderance of the evidence" standard requires that the evidence demonstrate that the applicant's claim is "probably true," where the determination of "truth" is made based on the factual circumstances of each individual case. *Matter of E-M-*, 20 I&N Dec. 77, 79-80 (Comm. 1989). In evaluating the evidence, *Matter of E-M-* also stated that "[t]ruth is to be determined not by the quantity of evidence alone but by its quality." *Id*. Thus, in adjudicating the application pursuant to the preponderance of the evidence standard, the director must examine each piece of evidence for relevance, probative value, and credibility, both individually and within the context of the totality of the evidence, to determine whether the fact to be proven is probably true.

Even if the director has some doubt as to the truth, if the petitioner submits relevant, probative, and credible evidence that leads the director to believe that the claim is "probably true" or "more likely than not," the applicant or petitioner has satisfied the standard of proof. *See U.S. v. Cardozo-Fonseca*, 480 U.S. 421 (1987) (defining "more likely than not" as a greater than 50 percent probability of something occurring). If the director can articulate a material doubt, it is appropriate for the director to either request additional evidence or, if that doubt leads the director to believe that the claim is probably not true, deny the application or petition.

Here, the submitted evidence is relevant, probative, and credible. As a document that is based on audited financial statements and reviewed by a federal agency, the information in the SEC Form 10-K is highly credible and warrants substantial weight in immigration proceedings. And although the specific claim that SAT is a "wholly-owned subsidiary" is not supported by independent evidence, the letter from the applicant's employer is relevant, uncontroverted by any other evidence, and generally supported by the SEC Form 10-K. Furthermore, as the assistant to the president of SAT, the author is in a position to have first-hand knowledge of the corporation's relationship with ChevronTexaco. As required under the applicable standard of proof, the evidence establishes that it is "probably true" that SAT is a subsidiary of an "American firm or corporation," with at least 50 percent of its stock owned by of ChevronTexaco as required by section 316(b) of the Act.

The AAO finds that the evidence sufficiently establishes that the applicant's overseas employer, Saudi Arabian Texaco, qualifies as a subsidiary of ChevronTexaco under section 316(b) of the Act. The evidence further establishes that the applicant's assignment to work with SAT is temporary and for the purpose of assisting ChevronTexaco to engage in the development of foreign trade and commerce.

From the evidence in the record, the AAO finds that ChevronTexaco meets the definition of an "American corporation," since it is incorporated in the United States and is publicly traded solely on U.S. stock exchanges. The AAO also finds that Saudi Arabian Texaco is a "subsidiary" of ChevronTexaco, and that ChevronTexaco owns more than 50 percent of the stock in Saudi Arabian Texaco. On the basis of these findings, the AAO concludes that the applicant meets the requirements for preservation of his residence for naturalization purposes pursuant to section 316(b) of the Act. The appeal will therefore be sustained.

**ORDER:**    The appeal is sustained.