United States District Court
Southern District of Texas
FILED

JUN 3 0 2006

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ANTELMA DOMINGUEZ-PEREZ, et al, | ) ) ) | |
| Plaintiffs, | ) ) | No. B-96-116 |
| v. | ) ) | |
| TOM RIDGE, et al., | ) ) | |
| Defendants. | ) | |

---

**DEFENDANTS' OPPOSITION TO *PLAINTIFFS' OPPOSED MOTION TO ENFORCE AGREED ORDER, TO HOLD DEFENDANT ALFONSO DE LEON IN CONTEMPT FOR DAMAGES AND FOR EVIDENTIARY HEARING WITH RESPECT THERETO* AND INCORPORATED MEMORANDUM OF LAW**

PETER D. KEISLER
Assistant Attorney General
Civil Division

DAVID V. BERNAL
Assistant Director

ERNESTO H. MOLINA, JR.
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
(202) 616-9344
Attorneys for Respondent

# TABLE OF CONTENTS

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

NATURE AND STAGE OF THE PROCEEDINGS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF RELEVANT FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The 90-Day Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    The Putative Class Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

         1.    Jose Garza  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

         2.    Wilfredo Garza . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

         3.    Ramiro Acosta . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

         4.    Oralia Lopez de Palomares  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

         5.    William Morales  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    PLAINTIFFS FAIL TO PRESENT CLEAR AND CONVINCING EVIDENCE
    OF A VIOLATION OF THE INJUNCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    Burden Of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.    Plaintiffs Fail to Provide Any Legal Discussion of the Court's Contempt
         Authority or How the Prerequisites for Employing Such Authority Have
         Been Met  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    C.    Plaintiffs Fail To Meet Their Burden For Civil Contempt Because They
         Fail To Show That A Clear Term Of The Injunction Was Implicated In
         CIS Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

         1.    CIS's stop-time rules are not controlled by the injunction . . . . . . . . . . . . 9

         2.    CIS's Adjudication Procedures for N-600 Applications Are Not
            Within the Scope of the Injunction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

3.    CIS's Practice Regarding Temporary EADs During an Appeal from
an N-600 Does Not Fall Within the Scope of the Injunction . . . . . . . . . . 11

4.    CIS's alleged practice of adjudicating I-765 simultaneously with
the adjudication of an N-600 application does not fall within the
scope of the injunction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5.    Plaintiffs Fail To Meet Their Burden As A Matter Of Law Where
N-600 Applications Are Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

6.    The "non-issuance" of a temporary EAD after an I-765 has been
pending is not a matter falling within the scope of the injunction . . . . . . 13

D.    Plaintiffs Fail To Demonstrate By Clear And Convincing Evidence That
Any Particular Class Member Was Denied A Temporary EAD In A
Manner Contrary To The Injunction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1.    Wilfredo Garza . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

a.    Stop-time based on failure to provide further evidence . . . . . . . . 14

b.    Ineligibility based on grant of N-600 . . . . . . . . . . . . . . . . . . . . . . 16

2.    William Morales . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

3.    Jose Garza . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

4.    Ramiro Acosta . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5.    Oralia Lopez de Palomares . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

II.    PLAINTIFFS IMPROPERLY SEEK RECOVERY FOR LOST WAGES AS A
SANCTION AGAINST THE GOVERNMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## FEDERAL CASES

American Airlines v. Allied Pilots Assoc.,
    228 F.3d 574 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

John Doe #1 v. Veneman,
    380 F.3d 807 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Medrano,
    956 F.2d 101 (5th Cir. 1992)) (internal quotation omitted . . . . . . . . . . . . . . . . . . . . . . . . 8

NLRB v. Trailways,
    729 F.2d 1013 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Norman Bridge Drug Co. v. Banner,
    529 F.2d 822 (5th Cir. !976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Piggly Wiggly Clarksville v. Mrs. Baird's Bakeries,
    177 F.3d 380 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Shafer v. Army & Air Force Exchange Serv.,
    376 F.3d 386 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Test Masters Educational Serv. v. Singh,
    428 F.3d 559 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Travelhost v. Blandford,
    68 F.3d 958 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S. v. City of Jackson,
    359 F.3d 727 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S. v. United Mine Workers of America,
    330 U.S. 258 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Waffenscmidt v. MacKay,
    763 F.2d 711 (5th Cir. 1985), cert. denied, 474 U.S. 1056 (1986) . . . . . . . . . . . . . . . . . 7

Whitfield v. Pennington,
    832 F.2d 909 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

iii

## FEDERAL STATUTES

Section 245 of the Immigration and Nationality Act,
        8 U.S.C. § 1255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

## FEDERAL REGULATIONS

8 C.F.R. § 245.5(a)(5)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

8 C.F.R. § 274a.12(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8 C.F.R. § 274a.12(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

8 C.F.R. § 274a.12(a)(3)-(8) and (10)-(13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

8 C.F.R. § 274a.12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8 C.F.R. § 274a.12(c)(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

8 C.F.R. § 274a.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

8 C.F.R. § 274a.13(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Pursuant to the Court's order of June 5, 2006, the Defendants hereby oppose *Plaintiffs'*
*Opposed Motion to Enforce Agreed Order, To Hold Defendant Alfonso De Leon in Contempt for*
*Damages and for Evidentiary Hearing with Respect Thereto* ("Motion to Enforce") and provide
their incorporated memorandum of law.

### ISSUES PRESENTED

1.  Whether plaintiffs fail to meet their burden of proof where they fail to explain how they
satisfy the requirements for invoking the Court's contempt authority.

2.  Whether plaintiffs fail to meet their burden to show that any clear terms of the
injunction are implicated.

3.  Whether plaintiffs fail to demonstrate a violation of the injunction by clear and
convincing evidence in any individual cases.

4.  Whether plaintiffs improperly seek to recover damages against the government in the
absence of a waiver of sovereign immunity.

### NATURE AND STAGE OF THE PROCEEDINGS

The instant case involves named plaintiffs who claimed to have filed N-600 applications
for certificates of citizenship before the Immigration and Naturalization Service ("INS"), as well
as I-765 applications for employment authorization documents ("EADs") and sought to obtain
temporary EAD documents on the same basis such documents are afforded to I-485 applicants for
adjustment of status.  See Docket Entry 11, Plaintiffs' First Amended Petition for Writ of Habeas
Corpus, and Complaint for Declaratory and Injunctive Relief (hereinafter "Amended Complaint")
¶¶ 28, 32, 36, 39, 41, 42.  The class certified includes:

> all people who have filed or will file N-600 applications with the I.N.S. district
> office in Harlingen, whose claims to U.S. citizenship are being adjudicated, have
> been or will be unable to obtain social security cards because of lack of any of the
> specified documents evidencing their U.S. citizenship, which are acceptable to the
> Social Security office, and lack of any document from INS evidencing their right to

be employed in the United States as prima facie U.S. citizens [sic].

Amended Complaint ¶ 14.  Plaintiffs sought relief in the form of a declaratory judgment that the

practice of the INS violates the Fifth Amendment of the United States Constitution and requesting

an injunction stopping the INS practice.

On October 28, 2004, the Court amended its February 28, 1999 order.  See Docket Entry

# 75, Amended Final Order.  The Amended Final Order resolved the concerns raised in the

defendants' 59(e) motion and expressly provided that:

> (1) in order to obtain employment authorization documents, ("EADs"), applicants for
> Certificates of Citizenship must file separate applications, on the Form I-765, and either
> pay the prescribed fee, or request that the fee be waived in the same manner as other
> applicants for such documents; (2) applications for EADs based on pending applications for
> Certificates of Citizenship [shall] be adjudicated in the same manner and in the same time
> frame as applications for EADs filed by aliens who have applied for adjustment of status
> under Section 245 of the Act, [8 U.S.C. § 1255]; (3) any problems with fraudulent
> applications can be adequately addressed by defendants in the same manner as such
> problems are addressed with respect to those whose applications for EADs are based on
> other claims for immigration benefits, without the need for Court intervention on a case-by-
> case basis; (4) EADs are not to be construed as permanent but merely temporary work
> authorizations pending the final adjudication of plaintiffs' N-600 applications.

Amended Final Order at 1 (first bracket added, second bracket in original).

On May 8, 2006, plaintiffs filed their Motion to Enforce, alleging various violations of the

injunction.

## STATEMENT OF RELEVANT FACTS

### A.     The 90-Day Program

In mid-2005, the United States Citizen and Immigration Services ("CIS') began its 90-Day

Program for dealing with I-485 adjustment of status applications.  See Defendants' Exhibit A,

Declaration of Alfonso R. De Leon at ¶ 8.  The goals of the 90-Day Program were:  (1) to

adjudicate as many applications within ninety days of their filing as possible, and (2) to reduce the

2

need to issue interim relief. Id. at ¶ 9. A key tool in the program is the "stop-time" rule. The stop-time rule arrests the running of any time limit relating to ancillary applications (such as I-765 applications) in two circumstances: (1) where a Request for Further Evidence ("RFE") form is issued after the application is filed because the application was "improperly filed" insofar as application was incomplete or lacking documentation essential to adjudicating the application; or (2) where an adjudicator issued an RFE before or after interview. Once compliance with the RFE is achieved, the time period relating to the adjudication of ancillary applications begins anew. If there is no compliance with the RFE, applicants risk a denial of their application for failure to prosecute.

**B.    The Putative Class Members**

    **1.    Jose Garza**

Jose Garza filed his N-600 on October 25, 2005. Plaintiffs' Exhibit F at 5, 13. Plaintiffs' Exhibit F at 44. On November 14, 2005, Jose Garza submitted an I-765. Id. at 37. On November 18, 2005, the I-765 was returned as improvidently filed. Plaintiffs' Exhibit F at 42. An interview based on his application was held on January 27, 2006. Id. at 8. On February 16, 2006, CIS issued an RFE. Id. at 50. Jose Garza never responded to the request for further evidence, nor does he suggest that he did. His N-600 was denied on April 21, 2006. Id. at 8. On April 21, 2006, his I-765 was denied. Id. at 10. Sometime after April 27, 2006, he filed an appeal from the denial of the N-600 to the Administrative Appeals Unit, where he did submit further evidence or indicated that he would do so. Id. at 2.

Counsel for plaintiffs brought Jose Garza's case to the attention of counsel for defendants on March 29, 2006 (Plaintiffs' Exhibit D at 2), and requested a specific explanation on April 28, 2006. Id. at 4 . On April 28, 2006, counsel for defendants explained the circumstances (Id. at 6),

and on May 3, 2006, gave a supplemental response. Id. at 10.

### 2.   Wilfredo Garza

Wilfredo Garza is the brother of Jose Garza. His circumstances follow a similar path to that of his brother, with some exceptions. He filed his N-600 on November 18, 2005. Plaintiffs' Exhibit G at 3. On February 16, 2006, CIS issued a Request for Further Evidence. Id. at 4. Wilfredo Garza never responded to the request. However, because of an enterprising adjudicator, CIS was able to find additional evidence in his brother's separately filed N-600 application and ultimately approved the N-600. Id. at 2.

Counsel for plaintiffs brought Wilfredo Garza's case to the attention of counsel for defendants on March 29, 2006 (Plaintiffs' Exhibit D at 5), and requested a specific explanation on April 28, 2006. Id. at 2 . On April 28, 2006, counsel for defendants provided an explanation (Plaintiffs Exhibit D at 6), and on May 3, 2006, gave a supplemental response. Id. at 10.

### 3.   Ramiro Acosta

Ramiro Acosta ("Acosta") filed an N-600 application on August 1, 2003. Plaintiffs' Exhibit C at 2. He does not indicate whether he filed an I-765 application for proof of employment authorization at that time and alleges no breach of the injunction at that time. On September 15, 2005, CIS denied his N-600 application. Id. at 2. On September 23, 2005, Acosta filed an appeal of the decision to the AAO and filed an I-765 application. Id. at 5, 7. On March 31, 2006, Acosta was scheduled to appear before CIS regarding the issuance of a temporary Employment Authorization Document ("EAD"). Id. at 23. According to plaintiffs, at that time, CIS declined to issue a temporary EAD. Motion to Enforce at 4.

Counsel for plaintiffs brought Acosta's case to the attention of counsel for defendants on March 29, 2006 (Plaintiffs' Exhibit D at 2), and requested a specific explanation by April 28, 2006.

4

Id. at 4 . On April 28, 2006, counsel for defendants addressed the circumstances, explaining that, while it was unclear whether the injunction included Acosta's circumstances, CIS had agreed to provide timely responses in such cases. Id. at 8.

### 4.    Oralia Lopez de Palomares

Oralia Lopez de Palomares ("Lopez") filed an N-600 application on December 2, 2004. Plaintiffs' Exhibit I at 11. She was afforded a hearing on her N-600 application on January 3, 2005. Plaintiffs' Exhibit I at 11. An RFE was issued to her on January 2, 2005. See Plaintiffs' Exhibit I at 11. Lopez obtained an EAD that expired on January 2, 2006. Defendants' Exhibit B at 2. On June 14, 2005, the RFE was re-sent to Lopez's attorney. Defendants' Exhibit B at 3. A partial response was received on July 7, 2005. Plaintiffs' Exhibit I at 12. On December 21, 2005, she filed an I-765 application for proof of work authorization. Plaintiffs' Exhibit I at 2. On April 3, 2006, CIS denied the N-600 application. Plaintiffs' Exhibit I at 11. On April 3, 2006, CIS denied her I-765 application. Plaintiffs' Exhibit I at 2. On or about May 4, 2006, she filed an appeal to the AAO. Plaintiffs' Exhibit 1 at 4.

Counsel for plaintiffs never brought the case of Lopez to the attention of counsel for defendants before the filing of the Motion to Enforce.

### 5.    William Morales

William Morales ("Morales") filed an N-600 application and an I-765 application. Plaintiffs' Exhibit H at 2. On September 28, 2005, CIS issued an RFE to Morales. On April 5, 2006, his N-600 application was granted. Plaintiffs' Exhibit H at 3. On April 28, 2006, he was issued a Certificate of Citizenship. Plaintiffs' Exhibit H at 4. Also on April 28, 2006, his I-765 application was denied for failure to establish eligibility under 8 C.F.R. § 274a.12(a) or (c). Plaintiffs' Exhibit H at 2.

Counsel for plaintiffs never brought the case of Morales to the attention of counsel for defendants before the filing of the Motion to Enforce.

### SUMMARY OF ARGUMENT

Plaintiffs fail to meet their burden of proof to invoke the Court's contempt authority. As an initial matter, plaintiffs provide absolutely no explanation of how they satisfy the requirements to invoke the Court's contempt authority. Accordingly, they have waived their ability to invoke the Court's authority.

Furthermore, plaintiffs complaints generally address matters not clearly covered by the injunction. While plaintiffs complain that their applications are being subjected to a "stop-time" rule, the injunction does not limit the authority of CIS to employ such a rule. Moreover, the injunction does not clearly address the adjudication procedures for the adjudication of underlying N-600 applications. Similarly, the injunction does not clearly require the issuance of temporary EADs after an N-600 application has been denied and an appeal is thereafter taken, particularly where I-485 applicants do not have similar access to an appeal. The injunction also does not clearly control the question of whether CIS must adjudicate the I-765 before the N-600, and such a decision belongs solely to the agency. Plaintiffs' complaint that applicants whose N-600 applications are granted have had their I-765s denied is also outside the scope of the injunction, and there is no violation since I-485 applicants are subject to a similar rule. Additionally, the non-issuance of temporary EADs is not a matter falling under the injunction insofar as the injunction does not put N-600 applicants in any better position than I-485 applicants whose documents are not timely issued.

As for the individual cases brought to the Court's attention, such cases fail to show clear and convincing evidence of a violation of the injunction. Wilfredo Garza was subject to the stop-

6

time rule and never responded to the RFE issued to him. Moreover, once an enterprising

adjudicator found evidence (not provided by Wilfredo Garza) and granted the N-600 application,

Wilfredo Garza became ineligible for a temporary EAD. There is also no clear and convincing

evidence of a violation in the case of Morales. Morales had an RFE issued within ninety days of

his I-765 application and was therefore subject to the stop-time rule. There is no clear and

convincing evidence of a violation in the case of Jose Garza. Jose Garza received an RFE within

ninety days of the filing of his I-765 and never provided a response. Thus, he was subject to the

stop-time rule. .Plaintiffs fail their burden in the case of Acosta. While Acosta is seeking

treatment not afforded to I-485 applicants insofar as he wants a temporary EAD pending an appeal

from his N-600 denial, CIS has already agreed to provide timely responses in those types of cases.

The case of Lopez falls under the same agreement.

Finally, plaintiffs cannot recover for damages absent a waiver of sovereign immunity.

## ARGUMENT

**I.    PLAINTIFFS FAIL TO PRESENT CLEAR AND CONVINCING EVIDENCE OF A
       VIOLATION OF THE INJUNCTION**

### A.    Burden Of Proof

The Fifth Circuit has made it clear that a district court generally retains jurisdiction to

enforce its injunction. Test Masters Educational Serv. v. Singh, 428 F.3d 559, 577 (5th Cir. 2005).

"Courts possess the inherent authority to enforce their own injunctive decrees." Travelhost v.

Blandford, 68 F.3d 958, 961 (5th Cir. 1996); see also Whitfield v. Pennington, 832 F.2d 909, 913

(5th Cir. 1987). Among the various tools available to the district court is the power of civil

contempt. See Waffenscmidt v. MacKay, 763 F.2d 711, 716 (5th Cir. 1985). "Judicial sanctions

in civil contempt proceedings, may in a proper case, be employed for either or both of two

7

purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." U.S. v. United Mine Workers of America, 330 U.S. 258, 303-04 (1947); see also Whitfield, 832 F.3d at 913 ("The civil contempt sanction is coercive rather than punitive and is intended to force a recalcitrant party to comply with a command of the court."); Norman Bridge Drug Co. v. Banner, 529 F.2d 822, 827 (5th Cir. !976) ("Compensatory civil contempt reimburses the injured party for the losses and expenses incurred because of his adversary's noncompliance.").

In order to make a showing meriting employment of the civil contempt power, "the movant must establish by clear and convincing evidence that (1) a court order was in effect, (2) the order required specified conduct by the respondent, and (3) the respondent failed to comply with the court's order." U.S. v. City of Jackson, 359 F.3d 727 (5th Cir. 2004). "Clear and convincing evidence" is

> that weight of proof which []produces in the mind of the trier of fact a firm belief or conviction as to the established truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts[] of the case.

Shafer v. Army & Air Force Exchange Serv., 376 F.3d 386 (5th Cir. 2004) (quoting In re Medrano, 956 F.2d 101, 102 (5th Cir. 1992)) (internal quotation omitted). "The contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." American Airlines v. Allied Pilots Assoc., 228 F.3d 574, 581 (5th Cir. 2000) (citing NLRB v. Trailways, 729 F.2d 1013, 1017 (5th Cir. 1984). However, the power may be employed only when the contemnor "violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." See Piggly Wiggly

8

Clarksville v. Mrs. Baird's Bakeries, 177 F.3d 380, (5th Cir. 1999) (quoting Travelhost, 68 F.3d at 961 (quoting First Financial Group of Texas, 659 F.2d at 669)). Judicial contempt power is "a potent weapon which should not be used if the court's order upon which the contempt was founded is vague or ambiguous." Id. (quoting Martin v. Trinity Industries, 959 F.2d 45, 47 (5th Cir. 1992)). Therefore, "the contempt power should only be invoked where a specific aspect of the injunction has been clearly violated." Id.

**B.    Plaintiffs Fail to Provide Any Legal Discussion of the Court's Contempt Authority or How the Prerequisites for Employing Such Authority Have Been Met**

As an initial matter, the Court should not employ its contempt authority because plaintiffs fail to properly articulate the basis for their claim. In the instant case, plaintiffs' Motion to Enforce contains no "argument" section. Rather, plaintiffs present only an "Introduction," "Background," "The Facts," and a discussion of the Court's jurisdiction to enforce an order. They provide no explanation of how the alleged violations amount to violations of the injunction. That failure to articulate is reason enough to deny the invocation of the Court's contempt power.

**C.    Plaintiffs Fail To Meet Their Burden For Civil Contempt Because They Fail To Show That A Clear Term Of The Injunction Was Implicated In CIS Conduct**

**1.    CIS's stop-time rules are not controlled by the injunction**

Plaintiffs improperly seek to invoke the Court's civil contempt power for purported "requirements" of the injunction which are not part of the injunction. The Court's injunction in this case has, at its core, only a requirement that the temporary employment documents be made available on the same basis in which they are afforded to I-485 applicants who seek such documentation. To be certain, the Court's order contains no requirement regarding the N-600 process or any particular type of process be afforded. Rather, the only concern of the Amended

9

Final Order is that "applications for EADs based on pending applications for Certificates of Citizenship be adjudicated in the same manner and in the same time frame as applicants for EADs filed by aliens who have applied for adjustment of status under [INA § 245, 8 U.S.C. § 1255]. . . ." Amended Final Order at 1. Indeed, as if to emphasize that the Amended Final Order's primary concern was that EADs be available on a comparable basis for N-600 and I-485 applicants and that no particular procedures were required, the Amended Final Order specified that "any problems with fraudulent applicants can be adequately addressed by defendants in the same manner as such problems are addressed with respect to those whose applications for EADs are based on other claims for immigration benefits. . . ." Amended Final Order at 1-2.

Plaintiffs' arguments in the Motion to Enforce, however, relate primarily to the procedures used, not about whether similar rules are being employed to I-485 and N-600 applicants. However, the Court's order does not make any particular requirement regarding the actual procedures employed, so long as comparable procedures are employed as to I-485 applicants. Thus, plaintiffs cannot properly seek to constrain the defendants' selection of procedures. Further, as is explained by District Director De Leon, the 90-Day Program was initiated with I-485 applicants, so there is no doubt that it is applied to them. Defendants' Exhibit A at ¶¶ 8-11.

Plaintiffs cannot now complain that they are subject to the same rules as I-485 applicants. For example, plaintiffs complain that, in cases where there is inadequate evidence to make an adjudication, CIS has deemed the application as "not properly filed." Motion to Enforce at 4. Along those lines, plaintiffs also complain that CIS has been using a procedure whereby when additional evidence is requested, CIS deems the 90-day period for the issuance of a temporary EAD "tolled" or "abated." Motion to Enforce at 5. This Court's order does not preclude CIS employing the 90-Day Program or from deeming what will constitute a "properly filed" application

10

so as to begin the 90-day clock, nor does the injunction preclude a stop-time rule where additional evidence is requested. Thus, plaintiffs fail to meet their burden of proof.

### 2. CIS's Adjudication Procedures for N-600 Applications Are Not Within the Scope of the Injunction

Plaintiffs also complain that "the current manner of adjudicating N-600s is also not in accordance with the regulations." Motion to Enforce at 7 (suggesting that CIS now employs a "far higher standard" for granting N-600 applicants than is warranted by law or regulation). The Amended Final Order does not purport to regulate the procedures used or the weighing of evidence in the context of an actual N-600 application. Thus, whatever CIS's particular finding or procedures in a particular case, that complaint falls outside the context of the injunction.[1]

### 3. CIS's Practice Regarding Temporary EADs During an Appeal from an N-600 Does Not Fall Within the Scope of the Injunction

Furthermore, the injunction does not clearly regulate what should happen in the case of an applicant whose N-600 and I-765 are denied, who takes an appeal from the denial of the N-600 applicant and re-files an I-765. Again, the only requirement of the injunction is that temporary EADs be afforded to N-600 applicants on the same basis that they are afforded to an I-485 applicant. However, the instant case is one where plaintiffs seek treatment above and beyond that

---

[1] Indeed, plaintiffs' present cases illustrate the utility of the stop-time system. Such a course was the case provided by plaintiffs at Plaintiffs' Exhibit J. The district director initially denied the N-600 application. Plaintiffs' Exhibit J at 2. On appeal, the AAO found that, "[o]n appeal, the applicant submits U.S. Census Bureau information for his grandfather and copies of several affidavits regarding his father's physical presence in the United States." Id. The AAO determined that, as a result of the supplemental evidence, there was sufficient evidence presented to make a finding. This clearly demonstrates how the submission of further evidence can assist in the adjudication of an application. Similarly, the second case in Plaintiffs' Exhibit J (which is not redacted) similarly demonstrates that the appellant provided "additional information relating to his mother's physical presence. . . ." Plaintiffs' Exhibit J at 5. Thus, plaintiffs' cases actually demonstrate the propriety of CIS's request for additional information, as such additional information can frequently be produced and prove necessary to adjudicate the case.

afforded to I-485 applicants. As it happens, an I-485 applicant whose application is denied by the district director is not afforded an administrative appeal. See 8 C.F.R. § 245.5(a)(5)(ii) (2006). An N-600 applicant, on the other, can pursue an appeal. Thus, rather than seeking comparable treatment, plaintiffs are seeking treatment not afforded to I-485 applicants.

While plaintiffs claim that there were discussions with the defendants and defendants' counsel that purportedly "failed to resolve this issue," (Motion to Enforce at 4), plaintiffs were clearly informed by defendants' counsel on April 28, 2006, that, while it appeared Mr. Acosta's circumstances did not require the availability of temporary work authorization, defendants would endeavor to afford timely treatment in such cases. See Plaintiff's Exhibit D at 8-9. Thus, how it is that "resolution" was not achieved is unclear, since CIS has agreed to make temporary EADs available to persons in Mr. Acosta's circumstances. Nevertheless, defendants maintain that such persons are not clearly within the ambit of the injunction. Moreover, with the agreement to provide such persons with adjudications, defendants are acting within any alleged requirement.

4.    **CIS's alleged practice of adjudicating I-765 simultaneously with the adjudication of an N-600 application does not fall within the scope of the injunction**

Plaintiffs make a generalized complaint that CIS has begun to adjudicate I-765 applications simultaneously with the decision regarding the underlying relief. See Motion to Enforce at 8. This complaint is without merit.

The scope of the injunction is clear: CIS is required only to make temporary EADs available to N-600 applicants with pending I-765 applications on the same basis as it is available to similarly situated I-485 applicants with pending I-765 applications. The Amended Final Order makes no requirement whatsoever regarding the timing of those adjudications. Rather, the timing of the adjudication is a matter of discretion, as is the decision whether to grant an I-765..

12

Plaintiffs' suggestion that the timing of the District Director's adjudication makes a "hollow shell" of the Amended Final Order is beyond the pale. The fact is that, so long as I-485 and N-600 applicants are treated similarly, the underlying equal protection concern behind the Amended Final Order is entirely satisfied. The fact that the adjudication timing makes unnecessary the grant of an I-765 is of no moment.

### 5. Plaintiffs Fail To Meet Their Burden As A Matter Of Law Where N-600 Applications Are Granted

Plaintiffs complain that some class members have had N-600 applications granted but have had their I-765 denied. Motion to Enforce at 5-6, 8. Such a circumstance, however, does not fall within the scope of the injunction. The injunction requires only that N-600 applicants should be afforded temporary EADs to the extent I-485 applicants are afforded temporary EADs, not the effect of a denial of an I-765.

Moreover, plaintiffs have not shown that comparable treatment has not been afforded. Indeed, by regulation, an alien whose I-485 is granted is not eligible for temporary work authorization. Such aliens are authorized to work. See 8 C.F.R. § 274a.12(a)(1). However, such aliens are not authorized to file I-765s (and by extension, receive temporary EADs). See 8 C.F.R. § 274a.13(a) (only aliens under 8 C.F.R. § 274a.12(a)(3)-(8) and (10)-(13) may file I-765 applications). Therefore, in such cases, an N-600 applicant whose application is granted is afforded the same treatment afforded to an I-485 applicant whose application is granted.

### 6. The "non-issuance" of a temporary EAD after an I-765 has been pending is not a matter falling within the scope of the injunction

Plaintiffs complaint that, occasionally, an individual did not receive a temporary EAD after ninety days had passed since the filing of an I-765 application does not fall within the scope of the injunction. It is important to observe that the complaint is not that the individual with a pending

13

N-600 was denied the temporary EAD on a basis which does not occur to I-485 applicants. Rather, the complaint is solely that CIS has been tardy in issuing the document.

That complaint, however, falls outside the scope of the injunction. Again, the scope of the injunction is only that N-600 applicants who file I-765 applicants are to be afforded temporary EADs on the same basis as I-485 applicants. To the extent that any individual temporary EAD may be late in issuing (as opposed to being denied as not falling under the categories of 8 C.F.R. § 274a.13), the injunction does not put an N-600 applicant in any better position than an I-485 applicant, much less does it do so in a clear, unequivocal manner.

> **D.  Plaintiffs Fail To Demonstrate By Clear And Convincing Evidence That Any Particular Class Member Was Denied A Temporary EAD In A Manner Contrary To The Injunction**
>
> > **1.  Wilfredo Garza**
> >
> > > **a.  Stop-time based on failure to provide further evidence**

Plaintiffs demonstrate, by clear and convincing evidence, neither a clear provision of the injunction nor a violation of that provision in the case of Wilfredo Garza. Wilfredo Garza did not receive a temporary EAD for two reasons: (1) He was subject to the stop-time rule where he failed to provide further evidence, and (2) he was ultimately found to be a U.S. citizen.

As for the first point, as explained supra at 9-11, the use of a stop-time rule does not fall within the ambit of the injunction. Further, plaintiffs fail to demonstrate that similarly situated I-485 applicants are not subject to the stop-time rule. As shown by District Director De Leon, this is clearly wrong, as the 90-Day Program was originally employed to I-485 applications. See Defendants' Exhibit A at ¶¶ 8-11.

To be certain, plaintiffs suggest that, in the past, I-485 applicants have not been subject to a stop-time rule. See Motion to Enforce at 5 n.6 (the case of Rafaela Fuentes de Garza ("Fuentes")).

14

However, Fuentes' case is quite beside the point for several reasons. First, there it appears that Fuentes' case predates the 90-Day Program. Further, plaintiffs have not shown that an RFE has been issued to Fuentes since the 90-Day Program has begun or that hers is a case which, in the opinion of CIS, requires additional evidence.[2] Indeed, according to CIS records, Fuentes last received an extension of her work authorization on April 21, 2005. See Defendants' Exhibit C at 2. There is no evidence that Fuentes has received an extension after the expiration of her last extension, nor that it was done while she had an outstanding RFE. Consequently, plaintiffs have made no showing that I-485 applicants – particularly those that involve a petition by a U.S.-citizen spouse (the case relied upon by the Court as the basis for its issuance of the injunction) – are not presently subject to a similar stop-time rule. Absent such a showing, plaintiffs fail to meet their burden.

Plaintiffs also appear to suggest that Wilfredo Garza and his brother, Jose Garza, were not afforded that treatment ordinarily accorded to "improperly filed" applications. See Plaintiffs' Exhibit P at 1 (raising the example of Jorge De Villiers ("De Villiers")). Plaintiffs reliance on De Villiers' case is ill-conceived. First, as is made clear by the District Director, under the 90-Day Program, if an application is not properly filed because of a lack of evidence, an RFE will issue. De Villiers' case is not one of missing evidence; rather, his application form was not filled-out completely. Accordingly, his application was defective and was therefore rejected. Thus, his is not a comparable case.

Moreover, plaintiffs' complaint is based on the false belief that the only option for dealing with an "improperly filed" application is to reject it outright. Indeed, such an all-or-nothing

---

[2] Indeed, as a motion to reopen was granted, CIS apparently found that there is enough evidence to allow the application to be reconsidered.

15

proposition neither resembles reality nor works to the best interest of everyone involved.  Plaintiffs

overlook the fact that one viable method for dealing with an improperly filed application is, at the

adjudicator's discretion, to afford an opportunity to cure the problem.

### b.    Ineligibility based on grant of N-600.

Wilfredo Garza also did not receive a temporary EAD his I=765 was denied based on the

grant of his N-600 application – i.e., he was ultimately found to be U.S. citizen.  As was discussed

supra at 13, there is no disparity of treatment when compared to the circumstance of an I-485

applicant.  In the case of an alien with a pending I-485 applicant and a pending I-765 application, if

the alien has his I-485 granted, he is ineligible to receive additional proof of work authorization.

See 8 C.F.R. § 274a.13(a) (omitting from the category of eligible aliens those aliens listed in 8

C.F.R. § 274a.12(a)(1)) and 274a.12(c)(9) (listing aliens with pending I-485 applications as eligible

for work authorization).  Thus, as a matter of law, there is no disparate treatment, much less clear

and convincing evidence of it.  Thus, plaintiffs fail to meet their burden.

### 2.    William Morales

Like in the case of Wilfredo Garza, plaintiffs fail to show a violation of the injunction in

the case of William Morales.  While he filed an I-765 application on August 15, 2005 (Plaintiffs'

Exhibit H at 2), an RFE was issued in his case on September 28, 2005 – i.e., within ninety days.

Accordingly, he was subject to the stop-time rule.

Of course, plaintiffs never brought Morales' case to the attention of defendants' counsel and

therefore they did not afford CIS an opportunity to cure the problem.  The reason why it was not

brought to defendants' counsel's attention is clear:  plaintiffs submitted the Certificate of

Citizenship, issued on April 28, 2006, meaning that he probably already had notice of the grant as

much as thirty days earlier.  See, e.g., Plaintiffs' Exhibit G at 2 (Wilfredo Garza's notice of

approval dated April 21, 2006, setting issuance of the certificate of citizenship for May 23, 2006). Upon the grant of his N-600 application, he was ineligible for a temporary EAD, and certificate of citizenship was proof enough of Morales' right to work.

### 3. Jose Garza

Plaintiffs fail to show clear and convincing evidence of an abridgment in the case of Jose Garza. Jose Garza was subjected to the stop-time rule. Motion to Enforce at 5 n.7. In particular, he filed his application on November 18, 2005. Eighty-eight days later – i.e., within the ninety-day time limit – on February 16, 2006, CIS issued an RFE, thereby arresting the clock. As was discussed supra at 9-11 that rule applies to both N-600 and I-485 applicants.

Plaintiffs make no suggestion that Jose Garza complied with the request for additional evidence, thereby re-starting the clock. Further, they fail to present the case of any I-485 applicant not afforded similar treatment in comparable circumstances since the 90-Day Program started. Thus, they fail to show clear and convincing evidence of a violation of the injunction.

### 4. Ramiro Acosta

Plaintiffs make no clear and convincing showing of a violation of the injunctive order in the case of Acosta. As was discussed supra at 11-12, Acosta, who seeks temporary employment authorization on the basis of his pending appeal from the denial of an N-600 application is seeking treatment above and beyond that afforded to an I-485 applicant, who cannot file appeals. At a minimum, it cannot be suggested that the injunction is clear on the matter.

Moreover, there is no violation in Acosta's particular case. As plaintiffs were informed by letter dated April 28, 2006, despite the unclear circumstances of Acosta's particular case, the District Director agreed to provide timely, appropriate responses to an I-765 application based on a pending appeal from the denial of an N-600 comparable to that of a person with a pending N-600

17

application. Since the date of the district director's agreement to do so, ninety days have not expired. Thus, there is no violation. Moreover, as was discussed supra at 13-14, the fact that CIS may be late in issuing a temporary EAD in any particular case does not fall within the scope of the injunction.

Plaintiffs apparently present the case of Claudia Enriquez de Portales ("Enriquez") as a comparable example of an I-485 applicant who obtained work authorization pending administrative review. See Plaintiffs' Exhibit O. Plaintiffs' fail to present the full story. Enriquez was an I-485 applicant seeking adjustment on the basis of an I-130 petition by her U.S.-citizen spouse. Id. at 4. However, her I-130 was denied for lack of evidence demonstrating the requisite hardship to obtain a waiver of inadmissibility. Id. at 4-5. It was not denied as the result of inadequate proof of her husband's or son's citizenship. More importantly, CIS denied only the I-130, leaving the I-485 pending. The alien took an appeal solely from the I-130 denial. As the I-485 remained pending, the alien remained eligible for a temporary EAD. Morales' case is in stark contrast, as his N-600 application was denied and was therefore no longer pending. Accordingly, the cases are dissimilar.

### 5.    Oralia Lopez de Palomares

Just as in the case of Acosta, plaintiffs fail to present clear and convincing evidence of an abridgment in the case of Lopez. On December 2, 2004, Lopez filed her N-600 application. Plaintiffs' Exhibit I at 11. On January 3, 2005, Lopez was informed that she needed to provide further evidence. Plaintiffs' Exhibit I at 11. On June 14, 2005, the RFE was re-sent to her attorney. As explained in the District Director's ultimate decision in the case, she never provided the requested evidence; thus, the request remained outstanding. Id. It was only after the request for additional evidence that Lopez filed her I-765 on December 21, 2005. Plaintiffs' Exhibit I at 2.

Thus, at all times during which the I-765 was pending – from December 21, 2005, until its denial on April 3, 2006 – Lopez's case was subject to the stop-time rule of the 90-Day Program.

Moreover, plaintiffs neglect to tell the full story. They omit the fact that Lopez had already been issued an EAD, which expired on January 2, 2006. See Defendants' Exhibit B at 2. While her I-765 was filed on December 21, 2005, because of CIS computer systems and her prior temporary work authorization, her ninety-day period did not begin to run until the expiration of her prior EAD. Thus, the adjudication of her I-765 on April 3, 2006 falls on the ninetieth day after the expiration of her prior work authorization. Thus, there was no abridgment of the injunction.

While Lopez has filed an appeal from the denial of the N-600, she does not claim to have filed a second I-765 application. However, in the event she does, as was the case with Acosta, the District Director has agreed to adjudicate I-765 applications filed during appeals from denials in the same manner afforded to pending N-600 applications.

## II.    PLAINTIFFS IMPROPERLY SEEK RECOVERY FOR LOST WAGES AS A SANCTION AGAINST THE GOVERNMENT

Plaintiffs improperly request compensation for certain class members' lost wages as a sanction. The award of compensatory damages as a sanction is improper in actions against the United States government. See John Doe #1 v. Veneman, 380 F.3d 807 (5th Cir. 2004). The Fifth Circuit has emphasized that "unless the government has expressly waived its immunity, sovereign immunity bars sanctions." Id. (citing United States v. Idaho ex rel. Dep't of Water Res., 508 U.S. 1, 8-9 (1993)). In John Doe #1, the Fifth Circuit faulted the district court for failing to identify a waiver that would permit the sanction. Id. The Fifth Circuit also concluded that EAJA was not an appropriate basis for awarding attorneys fees, noting that the Doe plaintiffs did not plead for attorneys fees and that the district court failed to consider whether the government's position was

substantially justified. Id.

In the instant case, plaintiffs seek compensatory damages as a sanction on behalf of several class members. See Motion to Enforce at 6 n.8 (on behalf of Wilfredo Garza) & n. 9 (on behalf of Morales and Lopez). However, plaintiffs point to no statute providing the waiver of sovereign immunity for such an award. Thus, imposing a sanction granting compensatory damages is improper.[3] Further, a request for EAJA fees is improper, as plaintiffs have made no showing regarding the requirements of EAJA.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion to Enforce.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General
Civil Division

ERNESTO H. MOLINA, JR.
Senior Litigation Counsel
DAVID V. BERNAL
Assistant Director

U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel::    (202) 616-9344
Fax:    (202) 616-4975

Dated: June 28, 2006

Attorneys for Defendants

---

[3] While plaintiffs propose that a jailing of Mr. De Leon is appropriate, they actually state the case against such an extreme sanction. The instant injunction has been in place for more than seven years. Whenever problems were brought to the attention of CIS (or the former Immigration and Naturalization Service), problems have always been remedied. Furthermore, District Director De Leon has made clear his intent to assure his Office's compliance with any clear requirement of the injunction. See Defendants' Exhibit A at § 15.

20

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via Federal

Express overnight delivery, this 28th day of June 2006, addressed to:


Ms. Lisa Brodyaga, Esquire
17891 Landrum Park Road
San Benito, TX  78586


ERNESTO H. MOLINA, JR.
Senior Litigation Counsel

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| ANTELMA DOMINGUEZ-PEREZ, | ) | |
| et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. B-96-116 |
| v. | ) | |
| | ) | **ORDER** |
| TOM RIDGE, et al., | ) | (Proposed) |
| | ) | |
| Defendants. | ) | |

Upon consideration of *Plaintiffs' Opposed Motion to Enforce Agreed Order, To Hold Defendant Alfonso De Leon in Contempt for Damages and for Evidentiary Hearing with Respect Thereto ("Motion to Enforce"),* and the defendants' opposition thereto, the *Motion to Enforce* is hereby DENIED.

Signed in Brownsville, Texas, this ___ day of June/July, 2006.


_____
ANDREW S. HANEN
United States District Judge