IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ANTELMA DOMINGUEZ-PEREZ, et al, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) No. B-96-116 ) |
| TOM RIDGE, et al., | ) ) ) |
| Defendants. | ) |

**DEFENDANTS' EXHIBIT A**

Attached is Defendants' Exhibit A, consisting of the Declaration of Alfonso R. De Leon, District Director, United States Citizenship and Immigration Services, Harlingen, Texas.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General
Civil Division

ERNESTO H. MOLINA, JR.
Senior Litigation Counsel

DAVID V. BERNAL
Assistant Director

U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Telephone:  (202) 616-9344

Dated: June 28, 2006

Attorneys for Defendants

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via Federal Express overnight delivery, this 28th day of June, addressed to: Lisa Brodyaga, Law Offices of Lisa S. Brodyaga, 17891 Landrum Park Rd., San Benito, Texas 78586

ERNESTO H. MOLINA, JR.
Senior Litigation Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ANTELMA DOMINGUEZ-PEREZ, et al, <br><br> Plaintiffs, <br><br> v. <br><br> TOM RIDGE, et al., <br><br> Defendants. | ) ) ) ) ) ) ) No. B-96-116 ) ) ) ) ) ) |

**DECLARATION OF ALFONSO R. DE LEON, DISTRICT DIRECTOR, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, HARLINGEN, TEXAS**

I, ALFONSO R. DE LEON, declare that:

1. I am employed by the Department of Homeland Security's ("DHS") United States Citizenship and Immigration Services ("CIS"), in the position of District Director of the Harlingen District in Harlingen, Texas.

2. I was first appointed to the position of interim District Director in March 2003 and, ultimately, appointed District Director in January 2004.

3. Among my various duties as District Director is the oversight of adjudications, including the adjudications of applications for certificate of citizenship ("N-600 applications"), adjustment of status applications ("I-485

applications"), applications for work authorization ("I-765 applications"), and the issuance of temporary employment authorization documents ("EADs").

4. I am familiar with the litigation in Dominguez-Perez v. Ridge, No. 96-116, including the injunction as reflected by the Final Amended Order, issued on October 28, 2004. It is my understanding that, pursuant to the terms of the injunction, temporary EADs are to be made available to N-600 applicants who file I-765 applications on the same basis that it is available to I-485 applicants who file I-765 applications.

5. During my tenure as District Director, I have taken steps to assure that the CIS Harlingen office comports with the order of the Court.

6. In the ordinary course of an I-485 application, the application is filed with the National Benefits Center ("NBC"). After being processed by NBC, the applications are then forwarded to the local CIS office for adjudication.

7. Under the ordinary course of an I-485 application, the applicant would also file an I-765 application with the NBC. Because the local CIS office has no control over the timing of the processing of the I-485 application, the consequence was that interim benefits, such as temporary EADs, were sometimes being issued. In other cases, because of the need of CIS to conduct document searches in Mexico to verify the documentation submitted with the I-485, further delay was incurred, and more interim benefits were issued.

8. On or about April 2005, CIS began a program at the NBC to reform its adjudications of I-485s. This program is called the "90-Day Program."

9. The goal of the 90-Day Program was to provide applicants with final decisions on their I-485 adjustment of status cases within ninety days. A further purpose was to reduce (but not necessarily eliminate) the issuance of interim benefits.

10. The 90-Day Program sought to alleviate the need to issue interim benefits. Under this program, the primary tool used is a stop-time rule. Under the stop-time rule, where an application is "improperly filed" – that is, it is incomplete because information is lacking or evidence essential to adjudicate the application is not provided – NBC issues a "Request for Further Evidence" form ("RFE") to the applicant. When an RFE is issued, the ninety-day deadline before the issuance of interim benefits is stopped until the RFE receives an adequate response. Once an appropriate response is received, the ninety-day period begins anew. An RFE may also be issued by the local office, before or after an interview, which would again invoke the stop-time rule.

11. Under the 90-Day Program, because the focus is the underlying I-485 application (and not the ancillary I-765 applications), the intent is to provide an adjudication of the I-485 application in ninety-days, if possible, and thereby render

the granting of ancillary applications unnecessary. If, however, the adjudication of the I-485 is not completed within ninety days, the ancillary applications will be adjudicated as appropriate, including the issuance of interim benefits where necessary.

12. In light of the injunction in the <u>Dominguez-Perez</u> case, requiring that N-600 applicants be afforded temporary EADs on the same or similar basis to that afforded to I-485 applicants, this Office has decided to apply the 90-Day Program in the N-600 context.

13. Unlike I-485s, N-600 applications are filed with the local office and are adjudicated in the local office. That difference not withstanding, N-600 applications are reviewed by adjudicators and the applicants interviewed. If the adjudicator finds that the application is incomplete or that evidence essential to adjudicate the application is missing, the adjudicator may issue an RFE. As with I-485 applicants, the issuance of the RFE stops any time limit regarding any ancillary applications. Thus, for I-765 applications, the RFE stops the ninety-day clock that would require the issuance of a temporary EAD. When the RFE has received an adequate response, the ninety-day clock begins anew.

14. It bears mentioning that I-485 applications and N-600 applications do not follow identical administrative paths. Where differences arise, this Office has generally proceeded on a case-by-case basis for determining how to proceed with the Court's injunction. One such area of difference is the consequence of a denial of the I-485 or N-600 applications. By regulation, an I-485 application is not subject to appeal to the Administrative Appeals Unit. N-600 applications, on the other hand, can be appealed. Therefore, affording a temporary EAD to an N-600 applicant would be a benefit unavailable to an I-485 applicant and not a procedure with which this Office is familiar. However, for the meantime, this Office has decided to make temporary EADs available to persons with timely-filed, pending appeals from the denial of an N-600.

15. Moreover, this Office does listen to individual complaints regarding compliance with the injunction and has always responded to assure compliance with the injunction.

16. I DECLARE under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of June 2006.

*[signature]*

ALFONSO R. DE LEON

District Director
U.S. Citizen and Immigration Services
U.S. Department of Homeland Security