```
              UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
                   BROWNSVILLE DIVISION
```

```
ANTELMA DOMINGUEZ-PEREZ, et al.,           )
                                           )
v.                                         )  CA No. B-96-116
                                           )
TOM RIDGE, Secretary of Department         )
  of Homeland Security; EDUARDO AGUIRRE,   )
  Acting Director of the Bureau of         )
  Citizenship and Immigration Services;    )
ALFONSO DE LEON, Interim District Director )
  of Bureau of Citizenship and Immigration )
  Services, Harlingen, Texas, and          )
JO ANNE B. BARNHART, Commissioner of the   )
  Social Security Administration.          )
                                           )
```

**PLAINTIFFS' REPLY TO DEFENDANTS' REQUEST FOR DISCHARGE OF THE ORDER TO SHOW CAUSE, AND TO THEIR OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE AGREED AMENDED FINAL ORDER, ETC.**

### TABLE OF CONTENTS

I.   PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR
     DISCHARGE OF THE ORDER TO SHOW CAUSE ...................   1
II.  PLAINTIFFS HAVE NOT "WAIVED THEIR ABILITY TO INVOKE
     THE COURT'S AUTHORITY" .................................   2
III. REPLY TO DEFENDANTS' OPPOSITION ........................   3
     A.  THE "90-DAY PROGRAM" SHOULD HAVE NO IMPACT ON THE
         ISSUANCE OF EADs ...................................   4
     B.  APPLICATIONS FOR EADs BASED ON PENDING N-600s ARE NOT
         BEING PROCESSED "IN THE SAME MANNER AND IN THE SAME TIME
         FRAME" AS THOSE BASED ON PENDING I-485s ............   4
     C.  THE "STOP-TIME" RULE AND "REQUESTS FOR EVIDENCE" ...   7
     D.  EAD APPLICATIONS FILED BY N-600 APPLICANTS WHOSE
         CASES ARE ON APPEAL ................................  12
     E.  OTHER ISSUES RAISED BY DEFENDANTS ..................  13
         1.  Individual Cases ...............................  13
         2.  Damages In Individual Cases ....................  15
         3.  EAJA FEES ......................................  15
IV.  CONCLUSION .............................................  16

## TABLE OF AUTHORITIES
### CASES

*Fuentes de Garza et al v. De Leon et al*,
    No C.A. M-04-238, Hon. Ricardo Hinojosa, presiding . . .   14

*Maldonado de Sanchez v. De Leon et al*,
    C.A. No. M-06-184, Hon. Randy Crane presiding   . . . . . .   5

*Whitfield v. Pennington*,
    832 F.2d 909 (5th Cir. 1987)   . . . . . . . . . . . . . .   18

### STATUTES

8 U.S.C. §1255   . . . . . . . . . . . . . . . . . . . 7, 12, 13, 15

### REGULATIONS

8 C.F.R. §103.2(a)(7)   . . . . . . . . . . . . . . . . . . . . . 9

8 C.F.R. §103.2(b)(8)(ii)   . . . . . . . . . . . . . . . . . . 10

8 C.F.R. §208.7(a)(2)   . . . . . . . . . . . . . . . . . . . 9, 12

8 C.F.R. §245.13(j)   . . . . . . . . . . . . . . . . . . . . . 12

8 C.F.R. §245.15(n)   . . . . . . . . . . . . . . . . . . . . . 12

8 C.F.R. §274a.12(c)(8)   . . . . . . . . . . . . . . . . . . . 12

8 C.F.R. §274a.12(c)(9)   . . . . . . . . . . . . . . . . . . 12-14

8 C.F.R. §274a.13(d)   . . . . . . . . . . . . . . 8, 9, 12, 15, 20

8 C.F.R. §301.1(a)(1)   . . . . . . . . . . . . . . . . . . . . . 9

8 C.F.R. §341.1   . . . . . . . . . . . . . . . . . . . . . . 9-11

8 C.F.R. §341.2   . . . . . . . . . . . . . . . . . . . . . . 9-11

**PLAINTIFFS' REPLY TO "DEFENDANTS' OPPOSITION" TO
PLAINTIFFS' OPPOSED MOTION TO ENFORCE AGREED ORDER, Etc.**

Plaintiffs herewith reply to Defendants' Opposition to said motion, (herein cited as (Ds:__).

### I. PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR DISCHARGE OF THE ORDER TO SHOW CAUSE

In their motion, filed and served by first-class mail on May 8, 2006, Plaintiffs requested an Order, on their own behalf and on behalf of the class as a whole, enforcing the Amended Final Order entered October 29, 2004 in the instant case.

In his Request for Discharge, at p. 1, counsel claims not to have received the filing sent by first-class mail,[1] although it was not returned to counsel by the USPS. And although counsel asserts that he has "registered with the CM/ECF system," said registration has not yet taken effect.[2] Further, on May 11, 2006, just three days after filing the instant motion, Plaintiffs filed and served, also by first-class mail, a documented captioned as follows:

EXHIBIT "L" IN SUPPORT OF
PLAINTIFFS' OPPOSED MOTION TO ENFORCE AGREED ORDER, TO HOLD

---

[1] Defendants' counsel also claims that, after his letter of May 3, 2006, he was expecting "further contact" from the undersigned, because counsel's letter of April 28, 2006, "gave the government until May 3, 2006, to respond." *See,* Declaration of Ernesto H. Molina, Jr., at ¶7-9. But counsel's letter of April 28, 2006, could hardly have been more clear. It was an ultimatum: resolve the problem, or face an enforcement action. As stated therein, (Plaintiff's Exhibit D, at page 4):

> I will give you until Wednesday, May 3, 2006, to resolve the issue, or I will return to Judge Hanen for enforcement.

Since his letter of May 3, 2006, clearly did not "resolve the issue," Defendants' counsel should have been on the lookout for a motion to enforce, rather than more (futile) correspondence.

[2] The Notice of Electronic Filing of Plaintiffs' Exhibit "R" (filed July 4, 2006), does not show Mr. Molina as one of the attorneys who received electronic notice.

DEFENDANT ALFONSO DE LEON IN CONTEMPT, FOR DAMAGES,
AND FOR EVIDENTIARY HEARING WITH RESPECT THERETO

Defendants do not allege that they failed to timely receive Exhibit "L." This is particularly striking since they note that Exhibits "O" and "P" arrived on June 20, 2006.[3] At the very least, receipt of Exhibit "L" should have put the Defendants on notice that such a motion had been filed. Nor do Defendants claim that on her return to the office in "mid-May," (*i.e.*, approximately a week after the instant motion was filed), Ms. Nancy Masso, AUSA, who received electronic service, overlooked not only the filing of the initial motion, but also Exhibits "L" and "M" (filed and served May 11, and June 1, 2006, respectively).[4]

The claim that there was "excusable neglect" in failing to timely respond, or request an extension of time in which to do so, is therefore unsubstantiated. Neglect, yes: *excusable* neglect, no.

## II. PLAINTIFFS HAVE NOT "WAIVED THEIR ABILITY TO INVOKE THE COURT'S AUTHORITY"

Defendants' first objection is to the organization of Plaintiffs'

---

[3] *See*, Declaration of Ernesto H. Molina, Jr., at ¶11. Since Defendants have provided only said declaration, and not "stamped" copies of the documents when received, much less the envelopes in which they were mailed, it is unknown whether the claim is that Exhibits "O" and "P" only reached counsel on June 20, 2006, or whether that was the date they arrived in the mailroom.

[4] Notably, Defendants did not provide an affidavit from Ms. Masso, explaining what instructions she left regarding the handling of electronic notifications of court filings during her absence. Rather, counsel in Washington, D.C., declares not only that she was on sick leave "from mid April through mid-May," but that "[u]pon her return to the office, in the process of wading through her accumulated work, she did not notice the filing." *Id.*, at ¶12.

motion. Rather than include a separate section called "argument," the issue was addressed in the section captioned "The Facts." It probably would have been better to include more separate captions, but Defendants could not have been mislead, and do not claim to have been misled, as to the nature of Plaintiffs' complaint. Their complaint, and the fact that it was based on the disparate treatment between I-765 applications based on pending adjustment applications, and those of N-600 applicants, was crystal clear. It had been discussed *ad naseum* in the negotiations and correspondence preceding the filing of the instant motion. *See,* Plaintiffs' Exhibit D. It was also clear from the motion itself. For example, at page 4, Plaintiffs argued:

> Defendants continue to adhere to the position that, in the case of N-600's, a request for additional documentation means that the application was not "properly filed" in the first place. This, however, is not the position taken with respect to I-485 applications.

Obviously, this relates to the clause in the injunction requiring that EAD applications based on N-600s "be adjudicated **in the same manner and in the same time frame** as applications for EADs filed by aliens who have applied for adjustment of status."

### III.   REPLY TO DEFENDANTS' OPPOSITION

Defendants' Opposition to the substance of Plaintiffs' motion is equally thin. They appear to claim that the injunction imposes no limitations on their processing of EADs for N-600 applicants, and assert that Plaintiffs have not shown that "a clear term of the injunction" is implicated by their conduct. Neither claim is true.

3

### A. THE "90-DAY PROGRAM" SHOULD HAVE NO IMPACT ON THE ISSUANCE OF EADs

Defendant De Leon's affidavit, [5] sets out the "90-Day Program" for adjudicating applications for adjustment of status, ("I-485s"), and Certificates of Citizenship, ("N-600s"). [6] Plaintiffs applaud this initiative, but note that it is irrelevant herein. As explained therein, one goal is allegedly "to alleviate the need to issue interim benefits." (ADL:10). Said affidavit also asserts,(ADL:7):

> Because the local CIS office has no control over the timing of the processing of the I-485 application, [7] the consequence was that interim benefits, such as temporary EADs, were sometimes being issued.

This is a *non sequitur.* It would make sense only if the processing of such EADs were tied to the processing of the I-485 applications, the way that Defendant De Leon now ties the processing of I-765s filed by N-600 applicants to the adjudication of the underlying N-600. However, this is not the case for I-485 applicants.

### B. APPLICATIONS FOR EADs BASED ON PENDING N-600s ARE NOT BEING PROCESSED "IN THE SAME MANNER AND IN THE SAME TIME FRAME" AS THOSE BASED ON PENDING I-485s.

As Mr. De Leon concedes, applications for EADs are generally filed simultaneously with adjustment applications, (ADL:7). As shown by Plaintiffs' Exhs. M and R, CIS currently issues EADs to I-485

---

[5]  Said affidavit is cited herein by paragraph as (ADL:_).

[6]  It is curious that Defendants have not produced any documentation relating to the "90-day" program, other than the Declaration of Defendant De Leon. At best, this leaves Plaintiffs, and the Court, guessing as to the details of the program.

[7]  Nor does the local CIS office control the processing of an I-765 filed with an I-485. As shown by Exhibit M, such an I-765 is processed, on receipt, by the National Benefits Center, ("NBC").

applicants within about sixty days of filing the application, and schedules interviews on the underlying I-485s for approximately four months (not 90 days), after receipt.[8]  Therefore, regardless of whether the I-485 is granted, denied, or continued at the initial interview, the EAD has usually been issued and no "interim" document is required. *Interim EADs are generally necessary only if an EAD application is not processed on receipt, but withheld, and adjudicated simultaneously with the underlying application.*

The problem currently before the Court arises because Defendant De Leon, who has sole control over EAD applications filed by N-600 applicants, does not process them on receipt, the way NBC does with applications for EADs based on I-485 applications.  Rather, his office has recently starting withholding adjudication of the EAD applications based on N-600s until the N-600 is adjudicated.[9]

Defendants do not dispute the disparity, but claim that it is not within the scope of the injunction.  *See,* (Ds:12) (emphasis added):

---

[8] The importance of this fact is shown by the case of Ms. Maldonado de Sanchez.  Because counsel was scheduled to be out of town on the day of the interview, she called the number provided on the interview notice, and was assured that it would be rescheduled. Nonetheless, Defendant De Leon denied the application for failure to appear at the interview, and refused to reopen the case on his own motion.  This engendered yet another lawsuit.  *Maldonado de Sanchez v. De Leon et al,* C.A. No. M-06-184, Hon. Randy Crane presiding.  Fortunately, however, her EAD is valid until December 2006.  Hopefully, the matter will have been resolved by then.

[9] Note that Defendants do not deny that this is what they are doing, as shown by Plaintiffs' Exhibit H, (I-765 filed August 15, 2005, and denied on April 28, 2006, the date the Certificate of Citizenship was issued) and Plaintiffs' Exhibit I, (I-765 filed December 21, 2005; I-765 and N-600 both denied April 3, 2006).

> Plaintiffs make a generalized complaint that CIS has begun to adjudicate I-765 applications simultaneously with the decision regarding the underlying relief... This complaint is without merit.
>
> The scope of the injunction is clear: *CIS is required only to make temporary EADs available* to N-600 applicants with pending I-765 applications on the same basis as it is available to similarly situated I-485 applicants with pending I-765 applications. *The Amended Final Order makes no requirement whatsoever regarding the time of those adjudications. Rather, the timing of the adjudication is a matter of discretion*, as is the decision whether to grant an I-765. [10]

Perhaps Defendants' counsel should re-read the agreed Amended Final Order. Paragraph 2 provides as follows (emphasis added):

> (2) applications for EADs based on pending applications for Certificates of Citizenship be adjudicated **in the same manner and in the same time frame** as applications for EADs filed by aliens who have applied for adjustment of status under Section 245 of the Act, [8 U.S.C. §1255].

The phrase "in the same manner and the same time frame" refers to the adjudication of applications for EADs, not just the issuance of temporary EADs when more than 90 have lapsed without adjudication. Since EAD applications based on I-485s are processed when filed, and adjudicated once the required security checks are completed, [11] compliance with the injunction requires Defendant De Leon to also process EAD applications based on N-600s when they are filed.

Notwithstanding Defendants' assertion that the "90-day" program was instituted in "about April 2005," (ADL:8), even very recently filed

---

[10] In her 28 years of practicing immigration law, counsel has never seen an I-765 filed by an adjustment applicant denied in the exercise of "discretion."

[11] Such security checks are not required for N-600 applicants, since citizenship is independent of any criminal history.

applications for employment authorization, (I-765s), based on applications for adjustment of status are treated differently (more favorably), than are I-765s based on applications for Certificates of Citizenship, (N-600s). I-765s based on I-485s are processed on receipt, and EADs issued promptly, (within approximately sixty days), even though an interview notice for the underlying adjustment application is sent out shortly thereafter, setting an interview date for approximately 120 days after the filing of the applications. (Plaintiffs' Exhs. M and R). By contrast, Defendant De Leon withholds processing of EADs based on N-600s until the interview on the underlying N-600 application, regardless of whether that occurs within 90 days specified by 8 C.F.R. §274a.13(d), and the EAD is then denied, whether the N-600 is granted or denied. [12] This not only violates Paragraph 2 of the agreed Amended Final Order, but it amounts to simple theft of the I-765 filing fee, currently $180, for N-600 applicants. [13]

### C. THE "STOP-TIME" RULE AND "REQUESTS FOR EVIDENCE"

In the exchanges leading up to the filing of the instant motion,

---

[12] Mr. Morales filed an N-600 and I-765 on August 15, 2005. The N-600 was granted on April 28, 2006, but he never received an EAD. (Plaintiffs' Exh. H). Ms. Lopez filed her N-600 on December 4, 2005, and her I-765 on December 21, 2005. No EAD, or interim EAD, was issued. Rather, both applications were denied on April 3, 2006. Ms. Lopez has appealed the denial of the N-600. There is no appeal from the denial of the I-765. (Plaintiffs' Exh. I).

[13] This is not an issue of "being tardy" in the issuance of provisional EADs for N-600 applicants. CIS simply refuses to issue them. For example, Ramiro Acosta applied for an EAD on December 2, 2005. (Plaintiff's Exhibit C, at p.7). To date, it has not been adjudicated, and Defendants have refused to issue a temporary EAD.

Defendants never once mentioned a "stop-time" rule. Rather, they defended their actions on the basis that where additional evidence was requested, an application was not "properly filed." *See,* letter from Defendants' counsel, dated April 28, 2006, reiterating Defendants' position. Plaintiffs' Exhibit D, page 6:

> In a letter dated March 22, 2006, Ms. Jones explained that when further documentation is necessary to adjudicate the application, CIS deemed the underlying application was "improperly filed" insofar as evidence required by 8 C.F.R. § 301.1(a)(1) was not provided. [14]

Defendants now claim that the stop-time rule is simply another way of saying that an application was "improperly filed." (Ds:3). This, too, is false. There is a significant difference between deeming an application "improperly filed," [15] and a "stop-time" rule. In the former case, no time accumulates towards the 90-day limit of 8 C.F.R. §274a.13(d). In the latter, the clock stops as of the issuance of the request for additional evidence, and does not start running again until the evidence is received. This is how EADs based on asylum applications are treated. *See,* 8 C.F.R. §208.7(a)(2) (emphasis added): [16]

---

[14] 8 C.F.R. §301.1 does not apply to the instant case. Rather, Plaintiffs' N-600s were all filed under 8 C.F.R. §341.1 and §341.2.

[15] Although there are some specific requirements for adjustment applicants, an application is generally deemed to be "properly filed" if the fee is received. 8 C.F.R. §103.2(a)(7).

[16] The Court may recall Defendants' insistence, during the telephonic conferences held in 2004, that EADs filed by N-600 applicants should not be treated like those for asylum applicants, because asylum seekers received different treatment, given their special needs. Plaintiffs readily agreed, because, as they noted at the time, requests for EADs by asylum applicants are treated *less favorably* than those of other applicants. They cannot file for EADs until their applications have been pending for five months, and are subject to a "stop-time" rule. 8 C.F.R. §208.7.

> (2) The time periods within which the alien may not apply for employment authorization and within which the Service must respond to any such application and within which the asylum application must be adjudicated pursuant to section 208(d)(5)(A)(iii) of the Act shall begin when the alien has filed a complete asylum application in accordance with §§ 208.3 and 208.4. Any delay requested or caused by the applicant shall not be counted as part of these time periods, including delays caused by failure without good cause to follow the requirements for fingerprint processing. *Such time periods shall also be extended by the equivalent of the time between issuance of a request for evidence pursuant to § 103.2(b)(8) of this chapter and the receipt of the applicant's response to such request.*

Moreover, an N-600 applicant is under no obligation to provide additional documents in response to a "Request for Further Evidence." If the applicant considers that enough documentary evidence has been provided to comply with 8 C.F.R. §341.1 and §341.2, s/he may stand on that evidence, supplemented, if appropriate, by testimonial evidence, and if the application is denied, appeal the denial. [17] *See,* 8 C.F.R. §103.2(b)(8)(ii).

Because it is true that an adjustment application which is not "properly filed" will not support an application for an EAD, in their motion, Plaintiffs concentrated on showing that: 1) if not accompanied by the evidence necessary to be "properly filed," I-485 applications are returned to the sender, and  2) the applications

---

[17] Defendant De Leon's standards for adjudicating N-600's, and the rejection of those standards by the Director of the Administrative Appeals Office, are relevant precisely for this reason. *See,* (Ds:11). Defendant De Leon ties adjudication of the I-765 by an N-600 applicant to the adjudication of the underlying N-600. Such I-765s may therefore be denied based solely on *his perception* of the merits of the N-600. That his perception is sometimes incorrect is shown by Plaintiffs' Exhs. J, L and P-2.

wherein Defendants had refused to timely adjudicate the I-765, or issue interim EADs, based on pending N-600s had been received, and were accompanied by sufficient evidence to comply with 8 C.F.R. §341.1 and §341.2, and to be "properly filed." [18]

When an I-485 is submitted, its sufficiency is checked before the fee is processed. If deficient, it is returned, together with the tendered fee. *See,* Plaintiffs' Exhibit P-1 [Dkt. 151]. [19] If the fee is accepted, the I-485, and any simultaneously filed I-765, are promptly processed, and EADs in such cases are currently being issued well before the 90-day deadline. Plaintiffs' Exhibit M.

Defendants have now introduced a whole new rationale for their refusal to timely process I-765s from N-600 applicants, to wit, the

---

[18] Plaintiffs are not suggesting that Defendants return N-600s when they consider additional evidence is needed. *See,* (Ds:15-16). But the perceived need for additional evidence does not mean that an application is not "properly filed." This is clearly seen from 8 C.F.R. §341.1 and §341.2, which contemplate that *testimony* can be used to meet the evidentiary requirements. Nor do Plaintiffs object to the use of "Requests for Evidence." (Ds:11,n.1). However, the "stop-time" rule is not a necessary corollary of the use of RFE's. It is an invention which allows Defendant De Leon to circumvent the intent, and the letter, of the Amended Final Order.

[19] Plaintiffs erroneously submitted two exhibits, (Docket Nos. 151 and 152), as Exhibit "P." For clarity, they will be referenced as Exhibits P-1 and P-2, respectively. And in fact, the DeVilliers application was rejected not because the form was improperly filled out, but because he is already a lawful permanent resident, and the CIS computer does not know how to handle such complications. It therefore asserted that the "priority date" could not be ascertained, even though the application was supported by an I-130 from his U.S. citizen wife. This makes him an "immediate relative," for whom no "priority date" is required. It took counsel two months to ascertain the true nature of the problem.

so-called "stop-time" rule.  However, if applied to I-765s based on adjustment applications, said "stop-time" rule would be in direct conflict with 8 C.F.R. §274a.13(d) (emphasis added):

> (d) Interim employment authorization. The district director shall adjudicate the application within 90 days from the date of receipt of the application by the INS, **except in the case of an initial application for employment authorization under § 274a.12(c)(8), which is governed by paragraph (a)(2) of this section**, and § 274a.12(c)(9) insofar as it is governed by §§ 245.13(j) and 245.15(n) [20] of this chapter.  Failure to complete the adjudication within 90 days will result in the grant of an employment authorization document for a period not to exceed 240 days.

Applications for EADs under §274a.12(c)(8) are those based on pending asylum applications.  As noted above, such applications are subject to "stop-time" rules.  See, 8 C.F.R. §208.7(a)(2).  But there is no equivalent "stop-time" rule for EADs based on I-485s filed under 8 U.S.C. §1255.  Nor is there any "wiggle room" in 8 C.F.R. §274a.13(d), such as would allow CIS to start imposing stop-time rules on I-765's based on such applications, (which they do not claim to have done), and thus, on N-600 applicants.

A "stop-time" rule imposed on applicants for EADs based on N-600s, and not on applicants for EADs based on I-485s, and which would be in violation of the regulations if so applied, violates Clause 2 of the injunction, requiring that applications for EADs based on pending N-600s "be adjudicated **in the same manner and in the same time frame** as applications for EADs filed by aliens who have

---

[20] 8 C.F.R. §§245.13(j) and 245.15(n) relate to adjustment applications under statutes other than 8 U.S.C. §1255, and are thus not relevant to this analysis.

applied for adjustment of status under Section 245 of the Act." (emphasis added). There is no ambiguity in that clause.

### D. EAD APPLICATIONS FILED BY N-600 APPLICANTS WHOSE CASES ARE ON APPEAL.

Finally, Defendant De Leon asserts that the injunction is "unclear" with respect to N-600 applicants whose cases are on appeal, because applicants for adjustment of status whose applications have been denied cannot file appeals. (Ds:17-18). This claim is also bogus.

As provided by 8 C.F.R. §274a.12(c)(9) (2006) (emphasis added):

> (c) Aliens who must apply for employment authorization. An alien within a class of aliens described in this section must apply for work authorization. If authorized, such an alien may accept employment subject to any restrictions stated in the regulations or cited on the employment authorization document. BCIS, in its discretion, may establish a specific validity period for an employment authorization document, which may *include any period when an administrative appeal or judicial review of an application or petition is pending*.
> ...
> (9) An alien who has filed an application for adjustment of status to lawful permanent resident pursuant to part 245 of this chapter. ...

Defendant De Leon has long interpreted §274a.12(c)(9) as including adjustment applicants in whose cases motions to reopen and/or reconsider were pending. Although he has recently claimed to have reinterpreted said regulation, [21] he continues to issue EADs under such circumstances. *See,* Plaintiffs' Exhibits E and K. Further, since the inception of the instant litigation, it has been

---

[21] This issue is currently under litigation in *Fuentes de Garza et al v. De Leon et al,* No C.A. M-04-238, Hon. Ricardo Hinojosa, presiding.

undisputed that N-600 applicants whose cases were on appeal were included. In fact, the case of one named Plaintiff was on appeal when she joined the action, [22] and during the entire history of the action, Defendants never before indicated that they considered such persons to be excluded. Still, some seven months after Ramiro Acosta filed his fee-paid I-765, Defendants have refused to either adjudicate it, or issue an interim EAD. (Plaintiffs' Exh. C).

### E. OTHER ISSUES RAISED BY DEFENDANTS
#### 1. Individual Cases

Defendants assert that the cases of the Garza brothers, and Oralia Lopez, were properly handled because they were subjected to the "stop-time" rule. (Ds:14-15 - Wilfredo Garza) (Ds:17 - Jose Garza) (Ds:18-19 - Oralia Lopez). [23] As discussed above, no such rule is applied to I-485 applicants, and if applied, would be in violation of the regulations. The 90-day rule for adjudication of I-765s, or issuance of interim documents, under 8 C.F.R. §274a.13(d) is very

---

[22] *See, e.g.,* First Amended Petition, [Dkt. 11], paragraph 9:

9. Plaintiff MARIA DEL ROSARIO GUTIERREZ de LIMAS is a U.S. citizen, who filed an N-600 application in 1990. Said application was denied by INS on September 1, 1993. Ms. Gutierrez de Limas filed a timely administrative appeal, which is still pending.

[23] Defendants further justify the case of Oralia Lopez by noting that her prior EAD expired on January 2, 2006, and claim that the 90-day period of 8 C.F.R. §274a.13(d) only begins to run with the date of the expiration of the prior EAD. Again, this is contrary to the plain language of the regulation, as well as common sense. The whole point of filing an I-765 prior to the expiration of the previous document is to avoid large gaps of coverage. And the regulation at issue, 8 C.F.R. §274a.13(d) is very clear: the 90 days starts to run with the *filing* of an application, not the expiration of a previous document.

specific, and mandatory ("shall"). It specifically exempts applicants based on asylum applications, to whom the "stop-time" rule is applied by regulation. There is no authority to impose such a rule on applicants for adjustment of status under 8 U.S.C. §1255. Nor do Defendants even claim, (much less proffer evidence), that they have (illegally) done so.

Defendants' invocation of a "stop-time" rule is not only improper under the regulations, but exposes the on-going controversy in the Harlingen District Office over Defendant De Leon's recently "hardened" attitude towards N-600s. While that battle is being fought, *inter alia*, before the Administrative Appeals Unit, his attempt to import his new standards for adjudicating N-600s into the adjudication of applications for EADs based on N-600s, by means of a "stop-time" rule, is indeed a matter for this Court.

In essence, Defendants' justification is the claim that they can impose a "stop-time" rule on the adjudication of such an EAD, if the documentary evidence submitted in support of an N-600 does not meet Defendant De Leon's new standards. This not only violates Clause 2 of the injunction, but, as illustrated by the case of Jose Angel Garza, it contravenes the whole point of issuing EADs to such applicants: it deprives them of the ability to earn the money they need to prosecute their applications. This is particularly important given the on-going controversy over the standards being imposed by Defendant De Leon in adjudicating such applications.

Their defense in the case of William Morales is limited to a complaint that counsel did not bring the problem to the attention of the attorney in Washington, D.C., (Ds:16-17). However, D.C. counsel did not help "resolve" any of the problem cases, so doing so would doubtless have been equally futile. Moreover, the case of Mr. Morales was included primarily to show the new policy of ignoring an I-765 based on an N-600 until the N-600 is adjudicated, and then denying it, regardless of the disposition of the N-600.

As to Ramiro Acosta, whose fee-paid EAD was filed December 2, 2006, Defendants assert that they are entitled to 90 days to adjudicate the application, measured from the date that they *agreed* to do so, and that no matter how tardy the adjudication, it does not violate the injunction. (Ds:17-18). As shown above, this is beyond bogus.

### 2. Damages In Individual Cases

Here, Defendants are probably correct. Plaintiffs have not located a waiver of sovereign immunity which would apply herein. However, an order requiring Defendants to refund the filing fees in those cases where the "stop-time" rule was applied, and the I-765 only adjudicated (and invariably denied), when the underlying N-600 was either approved or denied, would not implicate sovereign immunity. Further, the mere fact that Defendants need to resort to this defense shows their awareness of the weakness of their position.

### 3. EAJA FEES

Defendants also complain that "a request for EAJA fees is improper, as plaintiffs have made no showing regarding the requirements of

15

EAJA," (Ds:20). Actually, it is not that such a request is "improper," but that it would be *premature* to be specific. The request was meant as a place-holder, in the event of a favorable ruling on the merits.

## IV. CONCLUSION

As explained in *Whitfield v. Pennington*, 832 F.2d 909, 913-914 (5th Cir. 1987) (emphasis added):

> A consent order, while founded on the agreement of the parties, is nevertheless a judicial act, enforceable by sanctions including a citation for contempt. United States v. City of Miami, 664 F.2d 435, 439-40 (Former 5th Cir. Dec. 1981) (en banc). *A party may be held in contempt if he violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order.* Sec. and Exch. Comm'n v. First Financial Group of Texas, Inc., 659 F.2d 660, 669 (5th Cir. Oct. 1981). The civil contempt sanction is coercive rather than punitive and is intended to force a recalcitrant party to comply with a command of the court. American Trucking Ass'n, Inc. v. Interstate Commerce Comm'n, 728 F.2d 254, 255 (Former 5th Cir.), cert. denied, 469 U.S. 930, 105 S. Ct. 324, 83 L. Ed. 2d 261 (1984); see also Thyssen, Inc. v. S/S Chuen On, 693 F.2d 1171, 1173-74 (5th Cir. 1982). *Intent is not an issue in civil contempt proceedings; rather, the question is whether the alleged contemnors have complied with the court's order.* Jim Walter Resources v. Int'l Union, United Mine Workers of America, 609 F.2d 165, 168 (5th Cir. 1980). In a civil contempt action, proof of contempt must be "clear and convincing." United States v. Rizzo, 539 F.2d 458, 465 (5th Cir. 1976). We review a district court's refusal to hold a party in civil contempt under an "abuse of discretion" standard. Neely v. City of Grenada, 799 F.2d 203, 207 (5th Cir. 1986).

There is "a definite and specific court order" requiring Defendant De Leon "to perform ... particular ... acts." Specifically, Clause 2 of the Amended Final Order provides as follows (emphasis added):

> (2) applications for EADs based on pending applications for Certificates of Citizenship be adjudicated **in the same manner and in the same time frame** as applications

16

>   for EADs filed by aliens who have applied for adjustment
>   of status under Section 245 of the Act, [8 U.S.C. §1255].

Defendant De Leon has acknowledged that he has "knowledge of that order." As shown above, he has failed to abide by that Order.

WHEREFORE, it is respectfully urged that Plaintiffs have shown, by clear and convincing evidence, that Defendant De Leon has failed to comply with the clear mandate of that provision. Plaintiffs have shown, and Defendants do not deny, that I-765s filed by adjustment applicants are currently being processed on receipt, and that the EADs are usually issued within 60 days, while the interviews on the underlying applications are generally scheduled within about 120 days. They have further shown that the regulations governing the issuance of EADs to adjustment applicants do not permit application of a "stop-time" rule, such as exists with asylum applicants. Nor, almost parenthetically, do Defendants assert that they are imposing "stop-time" rules on I-765s for adjustment applicants.

Plaintiffs have also shown, and Defendants do not deny, that I-765s filed by N-600 applicants are no longer being processed on receipt, but are now being suspended, pending adjudication of the N-600, at which time they are being denied, regardless of whether the N-600 is granted or denied. They have also shown that when processing of the N-600, and therefore, of the I-765, takes more than 90 days, Defendants refuse to issue interim EADs, as is mandated for I-765s based on adjustment applicants by 8 C.F.R. §274a.13(d).

It is further urged that the Court therefore find Defendant De Leon

17

to be in contempt of Court, and that appropriate sanctions be imposed. It is further urged that the Court order that restitution be paid to those Plaintiffs whose I-765s were not adjudicated within 90 days, and no interim EAD issued, and whose I-765s were thereafter denied when their N-600s were decided on the merits.

Finally, they urge that Plaintiffs be awarded attorneys fees, and such other and further relief as the Court may deem just and appropriate under the circumstances.

Respectfully submitted,

s/ Lisa S. Brodyaga
REFUGIO DEL RIO GRANDE, INC.
17891 Landrum Park Road
San Benito, TX 78586
Phone:  (956) 421-3226
FAX:    (956) 4213423
Texas Bar No:  03052800
Federal ID:    1178

Javier Maldonado, Attorney at Law
601 Howard St.
San Antonio, 78212
Phone:  (210) 277-1603
Fax:    (210) 225-3958

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was mailed, first-class postage prepaid, to Ernesto Molina, Jr., at P.O. Box 878, Ben Franklin Station, Washington, D.C., 20044, on July 5, 2006.

s/ Lisa S. Brodyaga
_____